# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC.,<br><br>               Petitioner,<br><br>   -against-<br><br><br>AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A.,<br><br><br><br>              Respondents. | Case No. 07 CV 11121<br><br>ECF CASE<br><br><br>**PETITION TO CONFIRM<br>ARBITRATION AWARD** |

Petitioner Comverse, Inc. ("Comverse" or "Petitioner"), as and for its petition against respondents American Telecommunication, Inc. Chile S.A. ("ATI Chile"), American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A., and American Telecommunication Peru S.A. (collectively, "ATI" or "Respondents"), alleges as follows:

## NATURE OF THE CASE

1.     This is a proceeding to confirm a final arbitration award rendered on November 29, 2007 (the "Arbitration Award"), by a duly convened arbitral tribunal of the International Centre For Dispute Resolution of the American Arbitration Association (the "ICDR").

DOCSNY-281938v01

2.     The underlying agreement to arbitrate is set forth in the Value Added Reseller Agreement (the "VAR Agreement"), entered into on or about July 22, 2004, between Comverse and ATI Chile whereby Comverse approved ATI Chile as the exclusive reseller of Comverse's telecommunications Systems (as defined in the VAR Agreement) in certain countries and as a non-exclusive reseller in certain other countries, granting ATI Chile the rights to market and distribute Comverse's Systems in these countries.  A copy of the VAR Agreement is annexed hereto as Exhibit "A."

3.     The VAR Agreement contains a broad arbitration clause (the "Arbitration Agreement") that provides:

> Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance with the then prevailing Rules of the American Arbitration Association.  Any such arbitration shall be held in English.  Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems.  The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to [sic] any award made by the arbitrator(s).  Each party shall bear its own costs, expenses and fees (including attorneys' fees) incurred in connection with this Section 23.8.

Ex. A § 23.8.

## PARTIES

4.     Comverse, Inc. is a leading provider of software and telecommunications systems. Comverse is a corporation duly organized and existing under the laws of the State of Delaware, and has its principal place of business at 200 Quannapowitt Parkway, Wakefield, Massachusetts, 01880.

5.     ATI consists of a group of affiliated companies that have functioned as distributors of products for the telecommunications industry.

2

DOCSNY-281938

6.     Upon information and belief, ATI Chile is a Chilean corporation with offices at La Concepión 177, Providencia, Santiago, Chile.

7.     Upon information and belief, American Telecommunication Inc. Bolivia S.A. is a Bolivian corporation with offices at Calle Reyes Ortiz 73, Piso 17, Of. 1702, Edificio Torres Gundalch, Torre Oeste, La Paz, Bolivia.

8.     Upon information and belief, American Telecommunication do Brasil Ltda. is a Brazilian corporation with offices at Bloco 2, Sala 302, Barra da Tijuca, Rio de Janeiro, RJ, CEP 22631-370, Brasil.

9.     Upon information and belief, American Telecommunication Inc. Ecuador ATIECUADOR S.A. is a Ecuadorian corporation with offices at Av. 6 de Diciembre 2816, Piso 3, Of. 301, Edificio Josueth González, Quito, Ecuador.

10.    Upon information and belief, American Telecommunication Peru S.A. is a Peruvian corporation with offices at Av. Ricardo Rivera Navarrete 525, Piso 6, San Isidro, Lima 27, Peru.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the action under 28 U.S.C. § 1332, as Petitioner and Respondents are residents of different states and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

12.    Jurisdiction over ATI Chile is proper by virtue of the Arbitration Agreement, pursuant to which any arbitration related to the VAR Agreement shall take place in New York, New York and the parties "consent to the jurisdiction of the Courts of New York, New York in connection with respect to [sic] any award made by the arbitrator(s)." Ex. A § 23.8.

13.    The VAR Agreement, on its face, was entered into between Comverse, Inc., on behalf of itself and its subsidiaries, and ATI Chile. *See* Ex. A. However, during the course of

the arbitration hearings, because claims against Comverse were being asserted by both ATI Chile and ATI Chile's sister companies, the issue of the involvement of ATI Chile's sister companies was clarified by ATI's counsel in a letter to the Arbitral Tribunal dated March 22, 2007. The letter clarified that "American Telecommunication Inc. Bolivia S.A.[,] American Telecommunication do Brasil Ltda.[,] American Telecommunication Inc. Ecuador ATIECUADOR S.A. [and] American Telecommunication Peru S.A.," all agreed: (1) "to be bound by the arbitration agreement set forth in Section 23.8 of the Value Added Reseller Agreement between Comverse, Inc. and its subsidiaries, on the one hand, and American Telecommunication, Inc. Chile S.A., on the other, executed on or about July 22, 2004"; and (2) to be "subject to the jurisdiction of the Tribunal appointed in the above-referenced arbitration." A copy of the March 22, 2007 letter from ATI's counsel is attached hereto as Exhibit "B."

14.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) and (c), because the ICDR arbitration, which forms the basis of this proceeding, was conducted in this district and because Respondents are subject to personal jurisdiction in this district.

## BACKGROUND

**Comverse Institutes Arbitration**

15.    On July 26, 2006, as a result of ATI's failure to perform its obligations under the Agreement, Comverse filed a Demand for Arbitration and a Statement of Claim with the ICDR (collectively, the "Arbitration Demand"). A copy of the Arbitration Demand (without its exhibits) is attached hereto as Exhibit "C."

16.    As described in the Arbitration Demand, Comverse terminated the Agreement and ATI's appointment as a Comverse reseller thereunder, effective July 22, 2006. Ex. C ¶ 9. Two types of post-termination claims were set forth in the Arbitration Demand: (1) a claim concerning Comverse's effort to collect over $20 million that was due and owing from ATI, and

4

(2) the enforcement of ongoing obligations under the Agreement designed to protect Comverse's goodwill and proprietary information (*i.e.*, non-competition and non-disclosure provisions). *See generally* Ex. C.

17.     On September 7, 2006, ATI submitted a Statement of Defense and Counterclaims, and on January 16, 2007, ATI submitted an Amended Statement of Defense and Counterclaims. A copy of ATI's Amended Statement of Defense and Counterclaims is attached hereto as Exhibit "D."

18.     ATI asserted nine counterclaims against Comverse, totaling approximately $75 million in an effort to offset the substantial amounts owed to Comverse, including: (1) breach of warranty obligations; (2) breach of the VAR Agreement by failing to fulfill pending purchase orders or to consult with ATI on termination of the VAR Agreement; (3) breach of the VAR Agreement by failure to pay ATI for supplied technology and services, and certain commissions; (4) breach of the VAR Agreement by failing to provide necessary support services and spare parts to ATI customers; (5) breach of the VAR Agreement by contacting ATI customers within exclusive territories; (6) breach of the VAR Agreement by directly or indirectly inducing or attempting to induce ATI's employees into its employ; (7) breach of the VAR Agreement's implied covenant of good faith and fair dealing; (8) seeking a declaration that the non-competition clause in the VAR Agreement was invalid and unenforceable; and (9) unjust enrichment by Comverse's failure to re-purchase inventory and its refusal to fill certain purchase orders and provide support for long-term support and supply contracts. *See generally* Ex. D.

**The Arbitration Hearing**

19.     The parties agreed to the appointment of a panel of three arbitrators, and on September 11, 2006, October 13, 2006, and October 16, 2006, the three arbitrators were appointed by the ICDR (the "Arbitral Tribunal"). The parties engaged in document discovery

and submitted fact and expert witness statements, as well as pre-hearing briefs prior to the hearing.

20.    The hearing was held in New York City on March 19, 20, 21, 22, 23, 26, 27, 28 and 29, 2007 (the "Arbitration Hearing") and was conducted in accordance with the ICDR Procedures, the procedural orders issued by the Arbitral Tribunal, the joint proposal of the parties regarding the hearing procedure, and the IBA Rules on the Taking of Evidence in International Commercial Arbitration.    During the Arbitration Hearing, the Arbitral Tribunal heard oral testimony from the witnesses presented by the parties and one additional witness (whose testimony was requested by the Arbitral Tribunal).

21.    Following the Arbitration Hearing, the parties submitted post-hearing briefs on May 18, 2007.  On September 14, 2007, the Arbitral Tribunal requested further briefs from the parties on the issue of damages on one of ATI's counterclaims.  Both parties submitted such briefs on September 29, 2007.

**The Arbitration Award**

22.    The Arbitration Hearing was declared closed on October 29, 2007, and on November 29, 2007, the Arbitral Tribunal after "having duly heard the proofs and allegations of the Parties" issued the Arbitration Award.  A copy of the Arbitration Award is attached hereto as Exhibit "E."

23.    The Arbitration Award is a sixty-five page document that fully analyzes the claims of the parties and was decided on the basis of ATI's agreement that it was subject to the jurisdiction of the Arbitral Tribunal.  Ex. E at 6.  The Arbitration Award is a "Final Award" pursuant to the ICDR Procedures (Ex. E at 1) as well as for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Arbitral Awards (*id.* at 64).

DOCSNY-281938

24.     The Arbitral Tribunal awarded Comverse the following sums:

(i)     US$5,884,799.60 against ATI Chile;

(ii)    US$12,296,346.00 against American Telecommunication do Brasil Ltda;

(iii)   US$3,218,714.00 against American Telecommunication Peru S.A.;

(iv)    US$16,438.00 against American Telecommunication Inc. Bolivia S.A.; and

(v)     US$878,978.00 against American Telecommunication Inc. Ecuador ATIECUADOR S.A.

*Id.* at 62.

25.     The Arbitral Tribunal awarded ATI Chile the total sum of US$4,562,193.77 in connection with its third, fifth and sixth counterclaims; found in favor of ATI on liability for its fourth counterclaim, but held that ATI failed to prove any resulting damages; and dismissed ATI's remaining counterclaims. *Id.* at 62-63.

26.     The Arbitral Tribunal awarded simple interest to all parties at the applicable rate for judgments in New York State from the date of the Arbitration Award until the date of payment of all sums. *Id.* at 63. The Arbitral Tribunal further held that all fees and expenses of the arbitration shall be borne equally by Comverse and ATI Chile, and the parties shall bear their own legal costs. *Id.*

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth above, Comverse prays for relief as follows:

(1) An order confirming the final Arbitration Award rendered on November 29, 2007, by a duly convened Arbitral Tribunal of the International Centre For Dispute Resolution of the American Arbitration Association, in its entirety;

(2) The issuance of judgments against Respondents in the following amounts:

(i) US$5,884,799.60 against ATI Chile;

DOCSNY-281938

(ii) US\$12,296,346.00 against American Telecommunication do Brasil Ltda;

(iii) US\$3,218,714.00 against American Telecommunication Peru S.A.;

(iv) US\$16,438.00 against American Telecommunication Inc. Bolivia S.A.; and

(v) US\$878,978.00 against American Telecommunication Inc. Ecuador ATIECUADOR S.A.; and

(3)  For such other and further relief as this Court deems just and proper.

Dated: New York, New York
       December 7, 2007

                                Respectfully submitted,


                                DICKSTEIN SHAPIRO LLP



                                By:    s/Deborah A. Skakel
                                       Howard Graff (HG7057)
                                       Deborah A. Skakel (DS8599)
                                       Lindsay A. Bush (LB0391)
                                1177 Avenue of the Americas
                                New York, New York 10036
                                (212) 277-6500
                                Attorneys for Petitioner Comverse, Inc.

To:    Neil E. McDonell, Esq.
       Dorsey & Whitney LLP
       250 Park Avenue
       New York, New York 10177-1500
       (212) 415-9200
       Attorneys for Respondents

DOCSNY-281938v01

# EXHIBIT A

COMVERSE , INC.
AND
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.

VALUE ADDED RESELLER AGREEMENT



## Table of Contents

PARTIES AND UNDERSTANDING.................................................................. 1

A.  INTRODUCTION

    1.    DEFINITIONS ............................................................................. 1

    2.    TERM ......................................................................................... 2

    3.    SCOPE OF AGREEMENT ........................................................... 2

B.  GENERAL OBLIGATIONS OF THE PARTIES

    4.    LICENSES ................................................................................... 3

    5.    TITLE ......................................................................................... 5

    6.    COMVERSE'S WARRANTIES ...................................................... 5

    7.    ATI'S WARRANTIES ..................................................................6

    8.    INDEMNIFICATION ....................................................................6

    9.    LIMITATION OF LIABILITY ........................................................ 7

    10.    DEFAULT AND OPPORTUNITY TO CURE ..................................7

    11.    TERMINATION .......................................................................... 8

C.  SALES

    12.    ORDERS.....................................................................................9

    13.    ACCEPTANCE OF AND SHIPMENT OF ORDERS ........................9

    14.    CUSTOMER'S CANCELLATION OF A PURCHASE ORDER ...................10

    15.    DELIVERY ................................................................................10

    16.    ACCEPTANCE OF SYSTEMS .....................................................10

    17.    PRICE AND PAYMENT TERMS...................................................10

D.  SPECIFIC OBLIGATIONS OF THE PARTIES

    18.    TRAINING AND OTHER COMVERSE OBLIGATIONS...................13

    19.    OTHER ATI OBLIGATIONS .......................................................13

    20.    SERVICE LEVEL AGREEMENT/SUPPORT SERVICES....................13



E.  PRODUCT MODIFICATIONS

20.     CATEGORIES, COSTS AND OWNERSHIP RIGHTS ...................................................11

F.  LAWS AND REGULATIONS

21.     COUNTRY/INTERNATIONAL .........................................................................11
G.  MISCELLANEOUS

22.     GENERAL PROVISIONS .........................................................................13

## SCHEDULES

| Schedule | Title |
|---|---|
| A | Description of the Licensed Software, Equipment and Documentation |
| B | Designated Territories |
| C | End-User Software Sub-License Agreement |
| D | Technical Activity Matrix and Description |
| E | Comverse's Trademarks |
| F | Service Level Agreement/Support Services |
| G | Non-Disclosure Agreement for Distributor's Personnel and Agents |
| H | Installation Hardware Functionality Test Plan |



# PARTIES AND UNDERSTANDING

This Value Added Reseller Agreement (the "Agreement") is made by and between Comverse, Inc., on behalf of itself and its subsidiaries, with its corporate offices at 100 Quannapowitt Parkway, Wakefield, MA 01880, USA, (hereinafter referred to as "Comverse"), and American Telecommunication, Inc. Chile S.A., with its primary place of business at La Concepción 177, Providencia, Santiago de Chile (hereinafter referred to as "ATI").

**WHEREAS**, ATI desires to become a Value Added Reseller of Comverse and thereby obtain certain purchasing/licensing and distribution rights to certain of Comverse's enhanced voice messaging and information processing systems; and

**WHEREAS**, Comverse wishes to grant such rights to ATI upon the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## A.    INTRODUCTION

**1.    DEFINITIONS**

1.1    For the purpose of this Agreement, the terms below shall have the following definitions as indicated:

1.1.1    "Effective Date" -- the earliest date that a duly authorized officer of both parties sign this Agreement.

1.1.2    "Equipment" -- certain enhanced voice messaging and information processing equipment of Comverse as more fully described in Schedule A attached hereto.

1.1.3    "Software" -- means the executable (object code) version of Comverse's proprietary computer software as further described in Schedule A attached hereto.

1.1.4    "System(s)" -- means collectively the Equipment and Software as those terms are defined above.

1.1.5    "Documentation" -- all existing written user manuals, reference manuals, training manuals, release notes and/or other relevant materials as may be further described in Schedule A attached hereto and that are produced by Comverse to assist ATI in instructing the end-user customers on how to use the System, and all such new manuals, release notes and other materials developed during the term of this Agreement by Comverse and/or provided hereunder.

1.1.6    "Collateral Material" -- means all marketing documents used to describe the System(s).

1.1.7    "Designated Territories" -- unless otherwise specified herein, only those geographic locations as more fully described in Schedule B attached hereto.

1.1.8    "Services" -- means the activities for which ATI has primary or support responsibility as described in Schedule D attached hereto.

Release 1.5

1.1.9   "Non-Disclosure Agreement" -- means the Non-Disclosure Confidentiality Agreement dated October 16, 2003 between the parties and attached hereto as Schedule G.

## 2.    TERM

2.1    The initial term of this Agreement shall commence on the Effective Date and unless otherwise terminated as provided herein, shall continue in full force and effect for two (2) years.

2.2    Upon and after the end of the initial term of this Agreement, this Agreement shall continue in full force and effect, for successive one year terms provided that (a) either party may terminate this Agreement for convenience upon ninety (90) days prior written notice to the other party or (b) this Agreement is not otherwise terminated as provided herein.

## 3.    SCOPE OF AGREEMENT

3.1    Comverse hereby appoints ATI and ATI hereby accepts such appointment, to be a reseller of the Systems, subject to the provisions set forth below.  With respect to the accounts located within Chile, Bolivia, Ecuador, and Peru, and for TIM Brazil in Brazil and Telefonica Celular del Paraguay S.A. in Paraguay, ATI shall be Comverse's exclusive reseller. With respect to the accounts located within Colombia, Uruguay, and Mexico, and for all other accounts located within Brazil and Paraguay, ATI shall be Comverse's non-exclusive reseller. Accounts located within other countries will be handled on a case-by-case basis.  In making such appointment, Comverse hereby grants to ATI the rights to market and distribute the Systems in the Designated Territories only, by providing the Services.  Comverse agrees to sell and license to ATI, and ATI may purchase and license from Comverse, the System(s) for the purposes of reselling and sublicensing the System(s).

3.1.1   ATI and Comverse shall work together to develop a business plan and market analysis (including sales forecasts) for each account.

3.1.2   ATI and Comverse shall update each business plan and market analysis described above on a yearly basis and one quarter prior to the termination of the current term. Such plan shall include a support implementation plan with respect to each account (including manpower, procedures and processes).  Comverse shall have the right not to pursue any prospective accounts.  ATI agrees that the business plan forms the basis for evaluating the success of the business plan developed and agreed upon by the parties.

3.1.3   Comverse shall have the right to distribute Systems in the Designated Territories directly or indirectly to multi-national accounts with facilities in the Designated Territories and to any potential customer who states its refusal to deal directly with ATI.  In the event of such distribution by Comverse, compensation for ATI shall be decided on a case by case basis.

3.1.4   ATI agrees that it shall not, directly or indirectly, market, sell, license, lease, distribute and/or otherwise transfer any products similar to, or competitive with, the Systems within the Designated Territories or outside of the Designated Territories during the term of this Agreement and for a period of one year following any termination of this Agreement. The products listed in the attached Schedule I shall be excluded from this non-competition prohibition. The parties agree that this list may change from time to time with any such changes to be put in writing and mutually agreed upon by the parties.

Release 1.5

3.2    In performing its obligations hereunder, ATI shall employ its own personnel and shall be responsible for them and their acts. Comverse shall in no way be liable for ATI, its employees or its agents for any losses, injuries, or damages caused by or attributed to the acts and/or omissions of ATI, its employees, or its agents.

# B.    GENERAL OBLIGATIONS OF THE PARTIES

## 4.    LICENSES

4.1    <u>Software and Documentation</u> -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, license to distribute and sublicense the Software and the Documentation in the Designated Territories only, for use only on the Equipment on which or with which it was shipped. ATI is granted no rights (a) to the source code version of Software or (b) to translations or derivative works of the Software or the Documentation.

    4.1.1    ATI shall hold the Software and Documentation in confidence and agrees not to modify or copy, in whole or in part, the Software and/or Documentation except as described in Section 4.1.4 below. ATI further agrees to take all steps necessary to insure that the Software and Documentation, in whole or in part, are not disclosed to or duplicated for, any unauthorized third parties, including but not limited to those steps ATI would take to protect information, data or other property of its own that it regards as proprietary or confidential.

    Except as may be otherwise explicitly authorized in writing by Comverse, ATI agrees it shall not inspect, decompile, disassemble or reverse engineer the Software, or tamper with, bypass or alter the security features of same.

    4.1.2    ATI may sublicense the Software in object code form only and the Documentation in the Designated Territories only, without any right of further distribution or sublicensing.

    4.1.3    Sublicenses to Software shall be granted by ATI to each end-user customer only pursuant to written sublicense agreements with provisions that substantially conform to the end-user software sublicense set forth in Schedule C attached hereto. All copies of the Software licensed by ATI shall have reproduced on them all copyright and other proprietary notices specified by Comverse. ATI agrees to enforce all such sublicense agreements.

    4.1.4    Comverse grants ATI the right to produce copies of translated Documentation and Collateral Material only to the extent required to market to and support the accounts.

4.2    <u>Trademarks</u> -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, non-transferable license to use, in the distribution of the Systems, certain designated trademarks of Comverse as set forth in Schedule E attached hereto.

    4.2.1    Except as may be otherwise explicitly authorized in writing by Comverse, ATI shall not remove or alter, nor permit the removal or alteration of, any designated Comverse trademarks, tags, labels or other identifying markings placed by Comverse on any Systems products, packages or containers provided hereunder without the prior written consent of Comverse. In no event shall ATI have the right to market, sell, lease, license or otherwise distribute, directly or indirectly, the Systems under the name of any third party.

Release 1.5

AMERICAN TELECOMMUNICATION, INC. · FISCALIA ·

4.2.2    Comverse may, at any time, unilaterally add to or delete from the list of trademarks set forth in Schedule E.

## 5.    TITLE

5.1    Title to and all risks of loss or of damage to the Equipment shall be transferred from Comverse to ATI upon shipment of the Equipment to ATI.

5.2    Title to all Software and Documentation furnished to ATI hereunder, and all intellectual property rights therein, including without limitation all rights in any patents and copyrights, shall remain vested in Comverse and its licensors at all times. ATI agrees that the Software, Documentation and any related materials provided hereunder are entitled to protection under the patent and copyright laws of the United States and the Designated Territories, and ATI shall not remove any patent, copyright or other proprietary notices of Comverse or its licensors from same.

## 6.    COMVERSE'S WARRANTIES

6.1    Comverse hereby represents and warrants that it has full right, interest and authority to enter into and perform its obligations under this Agreement.

6.2    Comverse warrants that the Equipment delivered hereunder will be free from material defects in workmanship and materials for a period of one (1) year starting forty-five (45) days after the date of initial shipment of the Equipment to ATI (the "Warranty Period"). If any item of Equipment shall require repair or replacement by Comverse in accordance with such warranty, Comverse will effect replacement or repair as soon as possible but not later than thirty (30) days. Comverse also warrants that the repaired or replacement item will be free from material defects in workmanship and materials for the balance of the Warranty Period of the replaced item, or for ninety (90) days, whichever is longer. Comverse warrants all spare parts will be free from material defects in workmanship and materials for a period of ninety (90) days from the date of installation. Any changes to the Warranty Period ATI may negotiate with end-user customers must be approved in advance by Comverse.

6.3    Comverse warrants that during the Warranty Period, all Software licensed hereunder will substantially conform to Comverse's applicable then current published specifications when delivered. ATI must notify Comverse in writing of any defect in the Software, and if the Software is found to be substantially defective, Comverse's sole obligation under this warranty is to correct such defect in a reasonable manner determined by Comverse. Comverse does not warrant that the Software will meet all requirements of ATI or its end-user customers, or that the operation of the Software will be completely error free, or that all Software defects will be corrected. Comverse will correct any and all service affecting Software deficiencies or provide an adequate work-around(s) for same.

6.4    The foregoing warranties above are contingent upon proper use and maintenance of the System by ATI and/or its end-user customers, and are Comverse's sole responsibility hereunder. In addition, however, the foregoing warranties shall not apply to defects or failures in the System due, without limitation, to the following: (i) accident, neglect or misuse; (ii) failure or defect of electrical power, electrical static discharges, external electrical circuitry, air-conditioning or humidity control; (iii) the use of items not provided by Comverse; (iv) unusual stress; or (v) any party other than Comverse or a customer representative trained and certified by Comverse or ATI modifying, adjusting, repairing, servicing or installing the System.

6.5    If Comverse is unable, after reasonable efforts, to repair or replace the Equipment or to correct the Software, ATI's sole remedy shall be the refund of the purchase price paid by it.

Release 1.5

6.6 Upon the expiration of the Warranty Period for each System, Comverse will provide the support services described in the attached Schedule F so long as the end-user customers have signed the Comverse form of support agreement with ATI.

6.7 SUBJECT TO THE FOREGOING WARRANTIES, COMVERSE MAKES NO OTHER WARRANTIES HEREUNDER, WHETHER EXPRESS, IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 7.   ATI'S WARRANTIES

7.1 ATI represents and warrants that it has the full power and authority to enter this Agreement, has obtained all applicable government approvals to enter and to perform this Agreement, will keep such approvals in force, and shall obtain such additional government approvals as may from time to time be required.

7.2 ATI warrants that all ATI personnel and agents who provide services on behalf of ATI hereunder will be fully qualified to provide such services under the laws of the country where such services are provided and trained and approved by Comverse.

7.3 ATI warrants that it shall at all times promote the Systems and Comverse's goodwill and reputation, at its own expense, and shall conduct its business in a highly ethical manner and in accordance with its obligations under this Agreement.

7.4 ATI warrants that, at the request of Comverse, ATI's personnel and agents shall sign non-disclosure agreements with Comverse in the form attached hereto as Exhibit G.

## 8.0   INDEMNIFICATION

8.1 Comverse agrees to defend, indemnify and hold ATI harmless from and against any and all loss, damage, liability or expense (including reasonable attorneys' fees) assessed against ATI or incurred by ATI, arising out of any claim, suit or proceeding brought against ATI asserting or alleging that the System in the form furnished hereunder constitutes an infringement of any United States patent, trademark or copyright, provided ATI notifies Comverse promptly in writing of any such claim, suit or proceeding and gives full and complete authority, information, and assistance to Comverse in the defense of such claim, suit or proceeding, and provided further that Comverse shall have sole control of the defense of any such claim, suit or proceeding and of all negotiations for its settlement or compromise.

8.2 If the System is held to be infringing and its use is enjoined, Comverse shall be discharged from its prospective liabilities if, at its own expense and election, it does one of the following: (1) procure for ATI the right to continue using the System; (2) modify the System so it becomes non-infringing; or (3) remove the System and refund the purchase price paid by ATI for such infringing System(s) the use of which is prevented using an amortization schedule of three (3) years. Comverse shall not have any liability to ATI under this Agreement if any allegation of infringement is based upon the interconnection and/or modification and/or use of the System in combination with other devices not furnished by Comverse where the System would not by itself be infringing, or upon any use of the System for which the System was not designed, or if the infringement arises out of compliance with ATI's specifications or designs or out of modifications made to the System unless such modifications are made by Comverse.

8.3 The foregoing states Comverse's entire liability with respect to infringement of patents, trademarks or copyrights by the System hereunder.

8.4    ATI agrees to defend, indemnify and hold Comverse harmless from and against any and all loss, damage, liability or expenses (including reasonable attorneys' fees) assessed against Comverse or incurred by Comverse, arising out of any claim, suit or proceeding brought against Comverse relating to or arising from (a) ATI's breach of warranties as set forth in Section 7. above and (b) any personal injury (including without limitation death) or property damage caused by or attributed to the acts and/or omissions of ATI, its employees or its agents.

Release 1.5

9. **LIMITATION OF LIABILITY**

9.1 IN NO EVENT SHALL COMVERSE BE LIABLE HEREUNDER FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF COMVERSE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.2 IN NO EVENT SHALL COMVERSE'S LIABILITY HEREUNDER EXCEED THE AMOUNT RECEIVED FROM ATI BY COMVERSE FOR THE PURCHASE ORDER TO WHICH THE LIABILITY PERTAINS.

10. **DEFAULT AND OPPORTUNITY TO CURE**

10.1 Subject to the provisions of Section 11.1 below, neither party shall be deemed to be in default under the terms of this Agreement unless the party alleging the default sends a written notice setting forth the nature of the alleged default, and the defaulting party shall fail to substantially cure such default within thirty (30) days following the receipt of such notice.

11. **TERMINATION**

11.1 <u>For Cause</u> – This Agreement may be terminated by either party upon the failure of the other party to cure any material default following the notice and opportunity to cure set forth in Section 10. above, provided, however, that:

11.1.1 Only twenty (20) days prior written notice by Comverse shall be required and this Agreement shall terminate after said twenty (20) day period if ATI fails to make any payments due hereunder and ATI fails to cure said violation to Comverse's satisfaction within said twenty (20) day period; and

11.1.2 Either Comverse or ATI will have the right to terminate this Agreement immediately without notice to the other party if the other party intentionally or negligently violates any of its obligations under the Non-Disclosure Agreement or Sections 4. or 7 above or in the event that any of ATI's personnel or agents violate any of their obligations set forth in their non-disclosure agreements with Comverse; and

11.1.3 Sixty (60) days prior written notice shall be required and this Agreement shall terminate after said sixty (60) day period if any of the following remain uncured: (i) if the other party becomes insolvent or unable to pay its debts in the ordinary course of its business; (ii) if a voluntary or involuntary petition under applicable bankruptcy laws is filed by or against the other party; (iii) if a receiver is appointed for the business affairs of the other party or the other party makes an assignment for the benefit of creditors; (iv) if the other party liquidates or ceases doing business as a going concern; or (v) if there is a change in the control or majority ownership of ATI not otherwise expressly assented to by Comverse.

11.1.4 Comverse shall have the right to terminate this Agreement immediately in the event that ATI is acquired by a competitor of Comverse.

11.2 <u>For Convenience</u> -- This Agreement may be terminated by either party with the appropriate prior written notice pursuant to the provisions of Section 2.2 herein.



7

Release 1.5

11.3    Remedies — In the event this Agreement is not renewed by ATI or Comverse pursuant to Section 11.2 above or is terminated by Comverse pursuant to Section 11.1 above, then the following shall occur:

11.3.1    Comverse shall fill any pending purchase orders from ATI;

11.3.2    the licenses provided to ATI hereunder shall terminate on the effective date of termination;

11.3.3    all sublicenses granted to the Registered Accounts prior to the effective date of termination shall continue in full force and effect;

11.3.4    any purchase orders received by ATI prior to the effective date of termination must be delivered to Comverse. No commissions will be payable to ATI after termination;

11.3.5    ATI shall notify promptly its accounts in writing that it is no longer an authorized Comverse ATI;

11.3.6    Final plans to transition the accounts to another source of distribution and support shall be determined by Comverse after consultation with ATI; and

11.3.7    Comverse shall have no liability to ATI for damages of any kind, including incidental or consequential damages, on account of such termination or expiration of this Agreement. Without limiting the generality of the foregoing, Comverse shall not be liable to ATI on account of such termination or expiration for reimbursement or damages for the loss of goodwill, prospective profits or anticipated sales, or on account of any expenditures, investment, leases or commitments made by ATI or for any reason whatsoever based upon or growing out of such termination or expiration.

## 12.    ORDERS

12.1    Unless otherwise agreed, the prices for the Systems on all orders placed by ATI hereunder must be stated in U.S. dollars.

12.2    ATI may purchase and license each System for accounts by submitting purchase orders for same by hard copy or facsimile, provided however, that all such orders are subject to acceptance by Comverse's corporate office. Under no circumstances will Comverse accept, or be obligated to accept, purchase orders hereunder directly from any of accounts without the prior written consent of Comverse.

12.3    Except as otherwise provided, ATI will place firm purchase orders for Systems, meaning an end-user customer has issued a purchase order to ATI such that Comverse has at least sixty (60) days lead time before any scheduled shipment of Systems is required. At the time of its placement of an order with Comverse, ATI shall provide Comverse with a letter certifying its receipt of a firm purchase order from an end-user customer. All shipments are subject to availability. Comverse will use reasonable efforts to fill orders with shorter shipping date schedules, provided that Comverse may charge ATI, after consultation, its then current expedite charge for filling such an order as requested. Unless Comverse expressly agrees in writing, no additional or different provisions appearing anywhere on ATI's purchase order shall become part of such order.

## 13.    ACCEPTANCE AND SHIPMENT OF ORDERS



Release 1.5

13.1    Comverse agrees to notify ATI promptly regarding a) whether Comverse accepts or rejects each of ATI's purchase orders, b) shipping details associated with each order, and c) any subsequent changes in Comverse's delivery schedule and/or shipping plans.

## 15.    DELIVERY

15.1    Comverse shall deliver each System to ATI F.O.B. Comverse's principal plant of manufacture. In the absence of specific shipping instructions from ATI, Comverse will select a common and/or freight forwarder carrier, but shall not thereby assume any liability in connection with the shipment of any System delivered hereunder.

15.2    Insurance coverage for in-transit goods, beyond such coverage provided by the common carrier/freight forwarder, is the sole responsibility of the ATI.

## 16.    ACCEPTANCE OF SYSTEMS

16.1    Upon delivery to ATI of each System, ATI and Comverse shall work jointly to obtain acceptance from the customer in accordance with mutually agreed upon Acceptance Test Procedures ("ATP"). After complete delivery of a System to the end-user customer, acceptance of a System shall occur on completion of ATP or commercial deployment, whichever occurs first.

## 17.    PRICE AND PAYMENT TERMS

17.1    Comverse and ATI will discuss and agree upon the margins, and delivery schedules for each purchase hereunder. ATI agrees that the terms it provides to an end-user customer will be consistent with the terms agreed upon with Comverse.

17.2    Comverse may modify the prices presented to ATI upon sixty (60) days prior written notice to ATI. No such modification shall apply to any items for which Comverse has accepted a purchase order prior to the effective date of such modification.

17.3    All products sold to ATI will be invoiced upon shipment by Comverse. All payments to Comverse shall be made in U.S. dollars. In the event of any default in payment by ATI, Comverse may decline to make further shipments.

17.4    Prices do not include any customs, duties, value added tax, income tax or any other tax or assessment which may be levied by local authorities. Any such amounts levied, whether withheld at source or otherwise, will be added to the prices.

17.5    Without first obtaining Comverse's approval, ATI shall have no right of offset with respect to any payment owed to Comverse due to issues ATI is experiencing with an end-user customer paying ATI in accordance with the agreed upon payment terms between ATI and such end-user customer.

## D.    SPECIFIC OBLIGATIONS OF THE PARTIES

## 18.    TRAINING AND OTHER COMVERSE OBLIGATIONS

18.1    Comverse agrees to comply with its requirements as set forth in Schedules D and F including without limitation, the requirements to provide to ATI certain technical training, certification and re-certification services, and to perform certain general localization and sales activities.

Release 1.5

19.    **OTHER ATI OBLIGATIONS**

    19.1    ATI agrees to comply with its requirements as set forth in the attached Schedules D, F and G.

20.    **SERVICE LEVEL AGREEMENT/SUPPORT SERVICES**

    20.1    The parties agree to comply with each of its respective requirements under the terms of the Service Level Agreement and consistent with the description of support services provided in Schedule F attached hereto.

# E.    PRODUCT MODIFICATIONS

21.    **CATEGORIES, COST AND OWNERSHIP RIGHTS**

    21.1    The parties agree that from time to time during the term of this Agreement, Comverse may change the System(s) offered hereunder in the form of product modifications and that Comverse may charge ATI for such modifications.

# F.    LAWS AND REGULATIONS

22.    **COUNTRY/INTERNATIONAL**

    22.1    ATI shall at all times cooperate promptly with Comverse to enable Comverse to comply with the provisions of any United States Export Administration Act, War Powers Act, and any other law or Executive Order relating to control of exports or transfer of technology, and the regulations of the United States Departments of State, Commerce and Defense relating thereto (in present form or as amended in the future) as they may apply to ATI's activities. ATI shall also comply with the requirements of the United States Foreign Corrupt Practices Act and United States Anti-Boycott Regulations (in present form or as amended in the future) as they may apply to ATI's activities hereunder. In particular, with respect to the United States Foreign Corrupt Practices Act, ATI agrees that it and its owners, officers, directors, employees, or agents thereof have not and will not pay, offer, promise, or authorize the payment, directly or indirectly, of any monies or anything of value to any government official or employee, or any political party or candidate for political office for the purpose of influencing such official's acts or decisions to obtain or retain business as contemplated under this Agreement.

    22.2    This Agreement and ATI's performance hereunder is specifically made subject to any and all laws, regulations, orders or other restrictions on the export from the United States of America of computer software, hardware, telecommunications equipment and technical knowledge or know-how relating thereto, which may be imposed from time to time by the Government of the United States of America. ATI agrees that Systems purchased/licensed hereunder will not be exported or otherwise transferred, directly or indirectly, in whole or in part, without ATI first obtaining Comverse's written consent and a license from the U.S. Department of Commerce and/or any other appropriate agency of the U.S. Government, as required. ATI further agrees that it will obtain the written assurance of each of its Registered Accounts to which each System is distributed such that each Registered Account will comply with said export control laws, regulations, orders and restrictions.

Release 1.5

22.3    ATI shall immediately advise Comverse of any new import or export law, regulation, order or other restriction in the Designated Territories which might affect the implementation of this Agreement and ATI agrees to comply with all each law, regulation, order or restriction.

## G.    MISCELLANEOUS

**23.    GENERAL PROVISIONS**

23.1    All notices required to be given hereunder shall be in writing and shall be deemed given if delivered personally, or if sent by facsimile (whereby the receiving party shall acknowledge receipt of same by facsimile within two (2) business days from receipt of the initial facsimile) with a copy of such notice sent by air mail, to the person identified below at the address as set forth at the beginning of this Agreement, or such other person or address as may be specified in a written notice delivered in accordance with this Section 23.1:

If to COMVERSE:                        Attention:
                                       Legal Department
                                       100 Quannapowitt Parkway
                                       Wakefield, MA  01880

If to ATI:                  Attention:    _____
                                         _____

23.2    ATI may not assign its rights or obligations hereunder without the prior written consent of Comverse.

23.3    ATI and Comverse agree that during the term of this Agreement and for a period of twelve (12) months thereafter, neither party shall, directly or indirectly, solicit, induce, attempt to induce any employees of the other to its employ.

23.4    This Agreement shall be governed by, and construed in accordance with, the laws of the state of New York, USA, without reference to the conflict of laws provisions thereof and not including the United Nations Convention on Contracts for the International Sale of Goods.

23.5    If any provision of this Agreement is held to be invalid under any applicable law, such provision shall, to the extent of such invalidity, be deemed to be omitted here from, and all other provisions of this Agreement shall continue in full force and effect.

23.6    In the event that any provision of the Schedules to this Agreement are deemed to be in conflict with the provisions of this Agreement, the provisions of this Agreement shall control.

23.7    Any failure by either party to enforce strict performance by the other party of any provision herein shall not constitute a waiver of the right to subsequently enforce such provision or any other provision of this Agreement.

23.8    Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance with the then prevailing Rules of the American Arbitration Association.  Any such arbitration shall be held in English.  Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems. The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to any award made by the arbitrator(s).  Each party shall bear its own costs, expenses and fees (including attorneys' fees) incurred in connection with this Section 23.8. The

Release 1.5

parties hereby acknowledge that monetary damages may not be a sufficient remedy for breaches of the Non-Disclosure Agreement or Sections 4 and 5 above and that either party, as appropriate, may be entitled to such injunctive or equitable relief for actions or claims arising solely under the Non-Disclosure Agreement or Sections 4 or 5, as may be deemed proper by a court of competent jurisdiction.

23.9    Neither party shall liable to the other party for any failure to perform hereunder due to contingencies beyond its reasonable control, including but not limited to, strikes, riots, wars, fires, Acts of God, or acts required to comply with any governmental regulations.

23.10   This Agreement and the Non-Disclosure Agreement constitute the entire agreement between Comverse and ATI with respect to the subject matter of this Agreement and supercede all statements, representations, and understandings which have been made by either party or their agents or representatives prior to the execution of this Agreement. No modification of this Agreement shall be binding upon either party unless made in writing and executed on behalf of that party by its duly authorized representative.

Release 1.5

IN WITNESS WHEREOF, the parties hereto have set their hands and seals by a duly authorized representative as of the date(s) written below.

COMVERSE, INC.

_____
Signature

  Brian E. Heffernan
_____
Print Name

  Assistant General Counsel
_____
Title

  July 23, 2004
_____
Date

AMERICAN TELECOMMUNICATIONS, INC. CHILE S.A.

_____
Signature

_____
Print Name

_____
Title

  22 / 07 / 04
_____
Date

13

Release 1.5

## SCHEDULE A
Description of Licensed Software, Equipment and Documentation



# SCHEDULE B

## DESIGNATED TERRITORIES

<u>Designated Territories</u>

<u>Exclusive Reseller in</u>:

Chile
Peru
Bolivia
Ecuador
TIM Brazil in Brazil
Telefonica Celular del Paraguay S.A. in Paraguay

Non- Exclusive Reseller in:

Brazil
Paraguay
Uruguay
Colombia
Mexico

<u>Case-by-Case Reseller in</u>:

To be determined



SCHEDULE C

## END-USER SOFTWARE SUBLICENSE AGREEMENT

1.    ATI hereby grants CUSTOMER a non-exclusive, non-transferable sublicense to use the Software and the Documentation for operation only on the Equipment on which or with which they were shipped. CUSTOMER further agrees that it shall not transfer the Equipment, Software and Documentation from its site where the Equipment was originally installed (as indicated on CUSTOMER's purchase order for same) without the prior written consent of ATI.

2.    CUSTOMER agrees not to modify or copy, in whole or in part, the Software and the Documentation, provided however, that CUSTOMER may duplicate the Software for back-up and restore purposes in the event of a System malfunction.

3.    CUSTOMER shall hold the Software and the Documentation in confidence and agrees to take all reasonable steps necessary to insure that the Software and Documentation are not disclosed or duplicated in whole or in part for the use of others, including but not limited to, at a minimum, those steps CUSTOMER would take to protect information, data or other property of its own that it regards as proprietary or confidential. CUSTOMER further agrees to make available the Software and Documentation only to those of its employees who are directly involved with CUSTOMER's use of the Equipment, Software and/or Documentation. CUSTOMER shall not inspect, disassemble or reverse engineer the Software, nor tamper with, bypass or alter the security features of same.

4.    Title to all Software and Documentation furnished to CUSTOMER hereunder, and all rights therein, including all rights in any patents and copyrights, shall remain vested in Comverse Network Systems, Inc. ("Comverse") and its licensors at all times. CUSTOMER agrees that the Software and the Documentation provided hereunder are entitled to protection under the copyright and patent laws, and CUSTOMER shall not remove any copyright, patent or other proprietary notices of Comverse or its licensors from same.

5.    ATI shall have the right to terminate any license or right granted in this Software Sublicense in the event that CUSTOMER fails to pay any applicable license fees or if CUSTOMER fails to comply with the provisions of this Software Sublicense. Upon notice of such termination, CUSTOMER agrees to immediately return or destroy, at ATI's sole discretion, the Software and the Documentation and all portions and copies thereof, if any, and to certify in writing to ATI that it has complied in full with such requirements.

6.    In no event shall Comverse or its licensors be liable to CUSTOMER hereunder for any direct, indirect, incidental or consequential damages arising from the use of the Software and Documentation or from Comverse's licensors' software and related documentation.

7.    CUSTOMER hereby agrees to comply fully with all relevant export laws and regulations of the United States to assure that the Software and Documentation, or any direct product or derivative work of the Software and Documentation, are not exported, directly or indirectly, in violation of any United States law or regulation.

## SCHEDULE D

### ACTIVITY MATRIX AND DESCRIPTION

#### Activity Matrix

| ACTIVITY | ATI | Comverse |
|---|---|---|
| **A. GENERAL LOCALIZATION** | | |
| 1.   Translate documents | P | S |
| 2.   Translate Collateral Material | S | P |
| 3.   Perform customer technical training | S | P |
| 4.   Record prompts | P | S |
| 5.   Manage local standards certification process | P | S |
| | | |
| **B. MARKETING** | | |
| Advertising and Promotion | P | S |
| Trade Show and Events | P | S |
| Customer Seminars | P | S |
| | | |
| **B. SALES PLAN** | | |
| 1.   Account Qualification | | |
| a. Prospecting | P | S |
| b. Perform qualification process: | S | P |
| 2.   Requirements Analysis | | |
| a. Identify system requirements | S | P |
| b. Manage product modification requests | S | P |
| c. Identify interface requirements | S | P |
| d. Examine financing options | S | P |
| 3.   Solution Development/Presentation | | |
| a. Develop system configuration/sizing | S | P |
| b. Develop performance/deployment scenarios | S | P |
| c. Generate discussion papers | S | P |
| d. Conduct demos / site visits | P | S |
| 4.   Proposal Preparation | | |
| a. Perform competitive analysis | P | S |
| b. Influence RFP | P | S |

|  |  |  |
|---|---|---|
| c. Prepare proposal | S | P |
| 5.   Contract Closure | | |
| a. Review / negotiate contract terms | P | P |
| b. Prepare order paperwork | P | S |
| c. Closing | P | S |

P = Primary Responsibility

S = Shared (input of assistance)

NA = not applicable



| ACTIVITY | ATI | Comverse |
|---|---|---|
| **6.** **Finance** | | |
| a. Letter of Credits | P | S |
| b. Performance Bond | S | S |
| c. Collection | P | S |
| d. Financing Capabilities | S | S |
| e. Customs/Duties/Taxes | P | NA |
| | | |
| **7.** **Program Implementation** | | |
| a. Facilitate customer liaison | P | S |
| b. Perform site planning | P | S |
| c. Manage delivery process | S | P |
| d. Perform installation project management | S | P |
| e. Install hardware/software | P | S |
| f. Conduct acceptance test | S | P |
| g. Obtain customer acceptance/sign-off | P | S |
| h. Ensure customer spares stocking | S | P |
| i. Manage technical problem resolution | S | P |
| **8.** **Account Growth** | | |
| a. Install System Upgrades / Add-ons | P | S |
| a. Maintain knowledge base/relationships | S | P |
| b. Develop ongoing sales | P | P |

---

P = Primary Responsibility

S = Shared (input or assistance)

NA = not applicable



## SCHEDULE E

## COMVERSE TRADEMARKS

A.    Comverse's trademarks to be used by ATI are as follows:

1. CO ACCESS®
2. COMVERSE®
3. MEDALIST®
4. ACCESS NP®
5. SERVICEMAX®
6. GHOSTWRITER®
7. PROGENY®
8. TRILOGUE INFINITY™

Note: ® means that the mark is a registered trademark of Comverse in the United States.

B.    Terms and Conditions for Licensing of Trademarks

1.    In the event that ATI elects to use Comverse's trademarks as set forth above, it is agreed that:

a.    ATI will use such designated trademark in good taste and in a manner that preserves the value of same and Comverse's rights in and to same, and in accordance with any other standards provided by Comverse.

b.    ATI will change or discontinue any use of such trademarks immediately upon written notice from Comverse.

c.    ATI has no title or interest in or to such trademarks and is not authorized to use any other trademarks of Comverse.

Comverse may, at any time, modify the above list.



### SCHEDULE F
### SERVICE LEVEL AGREEMENT/SUPPORT SERVICES
### [Currently in negotiation between the parties]



SCHEDULE G
NON-DISCLOSURE AGREEMENT



SCHEDULE H
INSTALLATION HARDWARE FUNCTIONALITY TEST PLAN



# SCHEDULE I
## ATI PRODUCTS TO BE EXCLUDED FROM PROVISIONS OF SECTION 3.1.4

| PRODUCT | DESCRIPTION |
|---|---|
| **ATI EIR** | GSM Network Node. It's main function is to provide the mechanism to block handsets, previously provisioned into the databases of the platform. |
| **REPORT MANAGER** | Data Warehouse platform to provide reports and information about traffic, use and performance of Voice Mail Platform, SMSC among others Value Added platforms. ATI can offer this product in those accounts it represents. For accounts beyond the scope of this Agreement, ATI must first obtain Comverse's prior written consent. |
| **SMS ACCESS** | Mediation device Platform to provide SMS user Profiles, SMS plans and SMS rating functionalities. |
| **BUY & GO** | Micropayment platform. It´s main function is to provide the connection to different platforms in the network (SMSC, prepaid among other) and vending machines, to allow transaction over SMS, dialing or USSD codes. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |
| **ATI USSD GATEWAY** | USSD Gateway is a mediation device platform, interacts between the GSM HLR and external platforms to provide services, transactions, balance queries among other subscribers transactions through USSD codes. |
| **MISSED CALL HUNTER** | Stand Alone Platform to allow the captures of a missing call using IS41, MAP or ISUP SS7 interfaces. Can be integrated to voice mail platforms.<br><br>The use of IS41 or GSM MAP messages implies that the not response call can not be routed to a Missed Call Platform, even can be delivered an announce from de switch while the call is captured.<br><br>The Qty of missed calls, CLI, date and hour are informed through SMS, at the same time the platform can inform to a subscriber when other get in coverage and is available in the network. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |
| **SM GATEWAY** | SMS interconnection platform to allow the interconnection and translation between SMSC protocols, routing SMS and ESMES connection to the messaging network. Competing product that may be sold on a case-by-case basis with Comverse's prior... |

| | written consent. |
|---|---|
| **SMSCONNECTION** | SMSC platform, provide Store & Forward mechanism to dispatch a short message in a conventional wireline networks. |
| **SMS FOR RECHARGE** | Mediation Device between SMSC and prepaid systems to allow recharges, Call histories Queries among other prepaid's subscriber transactions through SMS. |
| **ONE TIME SMS** | Stand Alone Platform to dispatch SM to a Mobile Signaling Network, performing the first attempt of a SM delivery. Can be incorporated as SMSC off loader device, and allows some function as SMS broadcasting, web to sms, among others.<br><br>This platform could be integrated to SMS Gateway Platform and SMS Access Platform. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |

| PRODUCT | DESCRIPTION |
|---|---|
| **MOBILE MANAGER** | This platform allows that each corporative costumer can Administrate a set of mobile prepaid lines and assigns to each line a user profile.<br><br>The administration is done through web interfaces, adding and extracting mobiles lines, adding time for each line, allowing access to value added services (profile), among others. |
| **VIRTUAL HLR** | IS41 Platform, The platform allows the registration of a visitor (roamers) In the network and assigns a temporary prepaid account. |
| **ATI RING BACK TONES** | Stand alone platform to allow the delivery of customized sounds In replace of the traditional busy and wait call tones. Is specially designed for low traffic and allow the provisioning of subscribers and customized tones through web interfaces. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |

| ATI OVER-THE-AIR-FUNCTIONALITIES | CDMA and TDMA network platform, full comply with IS683A standard, to load over the air handset parameters and activate it. |
|---|---|
| DIAL SMS | CDMA/TDMA network platform to emulate USSD functionalities. Allows connectivity of SMS services or VAS activation through code dialing. |



# EXHIBIT B

# M O N T T   y   C I A.   S.   A.

ABOGADOS
www.monttcia.cl

SANTIAGO MONTT VICUÑA
DANIEL IBÁÑEZ GANDOLFO
GERMAN OVALLE MADRID
PATRICIA METZ BAER
JOSE MANUEL JORDAN BARAHONA
MARIA PILAR CHICAFO GARRIDO
FAXON GAIRETON EDWARDS
ALVARO LETELIER PALMA
JUAN MANUEL ROJAS ESPINOZA
CHRISTIAN ARTIAGA FUENTES
ELENA YUSERO GONÇALVES
MARTINA BENNEWITZ MARTINEZ
FRANCISCO MONTT MATTE
DIEGO CORP REYES DE LA GUARDIA
GLORIA PIERELI ORTIZ
MACARENA NOVELLO MATTA
ALFONSO DOMENICO LETELIER
ALEJANDRO GONZÁLEZ DEL RIEGO GARCIA
MARTA SANTA MARIA ROJAS
MARCH A SALAZAR FLORES
DANILO CAÑALES URRA
FELIPE EGAÑA BAZARRIEZA
PABLO ARRIAGADA PEREZ
TOMAS LANGDON GODOY
PAIR SULLIVAN
BEATRIZ LYNCH DEL PERRO
FIDELIA CERDA ARMIJO
EDITH GUERRA SALINAS
CLAUDIO MURGADO ROJAS
RODOLFO BELMAR LARA
PERCY BECKMANN
LILIANA BORDI
DANIELA JORES
MARIA LUZ ROSE AGUILERA
CRISTIAN BAENA ORTIZ
MACARENA MUÑIZ LÓPEZ
CAROLINA RIBEIRO DE SOUSA PINHEIRO
CATALINA NEQUIERA WALSEN
REINALDO VIDAL MERINO
VERONICA RUBIA PINTO
MONICA URRUTIA MONTIEZA
JUAN PABLO FERNÁNDEZ ARENDASIU
EUGENIO VERGARA MARSHALL

OFICINA PRINCIPAL
Edificio Centro Santa Maria
Avda. Los Conquistadores 1700, piso 11
FONO (56-2) - 2338266
FAX (56-2) - 2315493 - 2310944
E- MAIL monttcia@monttcia.cl
SANTIAGO - CHILE

DIVISION JUDICIAL
Antonistegui 277, Ofic. 900
FONO (56-2) 6685037
FAX (56-2) - 6712059
E-MAIL: litiga@monttcia.cl
SANTIAGO - CHILE

DIVISION PENAL
Av Pedro Montt 1771, Ofic. 12
FONO (56-2) - 5318372-5610063-5541531
FAX (56-2) - 5510998
E-MAIL penal@monttcia.cl
SANTIAGO - CHILE

OFICINA VALPARAISO
Blanco 1199, Ofic. 83-A
FONO (56-32) - 220057
FAX (56-32) - 221628
E- MAIL valpo@monttcia.cl
VALPARAISO - CHILE

OFICINA PUERTO MONTT
O'Higgins 167, Ofic. 705
FONOS (56-65) - 263760
FAX (56-65) - 265761
E- MAIL: premonu@monttcia.cl
PUERTO MONTT - CHILE

OFICINA LA SERENA
Cordovez, 588, Ofic. 204
FONO (56-51)- 214983
FAX (56-51) - 211020
E- MAIL serena@monttcia.cl
LA SERENA CHILE

OFICINA CONCEPCION
D. Pedro Aguirre Cerda 1167
FONO (56-41) - 215191
FAX (56-41) - 520969
E- MAIL concepcion@monttcia.cl
CONCEPCION CHILE

March 22, 2007

Dr. David J. A. Cairns, Presiding Arbitrator
B. Cremades y Asociados
Goya, 18 - 2 - 28001 Madrid
Spain

Professor Alejandro M. Garro
Columbia Law School
435 West 116th Street
New York, New York 10027

Dr. Leonel Pereznieto-Castro
Bufete Davalos y Asociados S.A. De C.V.
Insurgentes Sure 1766
Colonia Florida
Delgacion Alvaro Obrego
Esico DF CP 01030
Mexico

Re:     Comverse Inc. v. American Telecommunication. Inc. Chile S.A.
        Case No. 50 494 T 00319 06

Dear Arbitral Tribunal:

I am authorized on behalf of the entities listed in Attachment A hereto to represent that each
entity: (1) agrees to be bound by the arbitration agreement set forth in Section 23.8 of the Value
Added Reseller Agreement between Comverse. Inc. and its subsidiaries, on the one hand, and
American Telecommunication. Inc. Chile S.A., on the other, executed on or about July 22, 2004;
and (2) is subject to the jurisdiction of the Tribunal appointed in the above-referenced
arbitration. Each entity otherwise reserves all its rights. The representations made herein are not
intended in any way to create or accept any joint and several liability on the part of the entities
listed in Attachment A for any award that might be made against the respondent in this
arbitration.

Sincerely yours,

Santiago Montt Vicuna

Attachment A

American Telecommunication Inc. Bolivia S.A.

American Telecommunication do Brasil Ltda.

American Telecommunication Inc. Ecuador ATIECUADOR S.A.

American Telecommunication Peru S.A.

# EXHIBIT C

**American Arbitration Association**
*Dispute Resolution Services Worldwide*

## COMMERCIAL ARBITRATION RULES
### DEMAND FOR ARBITRATION

---

**MEDIATION:** *If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box.* ☐
*There is no additional administrative fee for this service.*

| Name of Respondent<br>American Telecommunication, Inc. Chile S.A. | Name of Representative (if known) | | |
|---|---|---|---|
| Address<br>La Concepcion 177 | Name of Firm (if applicable) | | |
| Providencia | Representative's Address | | |

| City<br>Santiago, Chile | State | Zip Code | City | State | Zip Code |
|---|---|---|---|---|---|

| Phone No.<br>56-2-550-5800 | Fax No.<br>56-2-555-4815 | Phone No. | Fax No. |
|---|---|---|---|

| Email Address:<br>www.amtelusa.com | Email Address: |
|---|---|

The named claimant, a party to an arbitration agreement dated __July 22, 2004__, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

See attached Statement of Claim.
*Includes request for monetary damages, injunctive relief and declaratory judgment.

| Dollar Amount of Claim $18,000,000.00 | Other Relief Sought:  ☐ Attorneys Fees    ☒ Interest<br>☐ Arbitration Costs  ☐ Punitive/ Exemplary  ☒ Other * |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $13,300.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Pursuant to the contract, the arbitrators must be knowledgeable in telecommunications and data processing systems.

Hearing locale __New York, NY__          (check one) ☐ Requested by Claimant   ☒ Locale provision included in the contract

| Estimated time needed for hearings overall:<br><br>_____ hours or  __3__ days | Type of Business: Claimant ___telecommunications systems___<br><br>Respondent __telecommunications systems__ |
|---|---|

Is this a dispute between a business and a consumer? ☐Yes ☒ No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000  ☐ $100,000 - $250,000  ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one)  ☐ Atlanta, GA   ☐ Dallas, TX   ☐ East Providence, RI  ☐ Fresno, CA   ☒ International Centre, NY, with a request that it commence administration of the arbitration.  Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)    Date:<br>*Howard Graff*                              July 26, 2006 | Name of Representative<br>Howard Graff | | |
|---|---|---|---|
| Name of Claimant<br>Comverse, Inc. | Name of Firm (if applicable)<br>Dickstein Shapiro LLP | | |
| Address (to be used in connection with this case)<br>909 Third Avenue | Representative's Address<br>1177 Avenue of the Americas | | |

| City<br>New York | State<br>NY | Zip Code<br>10022- | City<br>New York | State<br>NY | Zip Code<br>10036- |
|---|---|---|---|---|---|

| Phone No.<br>212-652-6600 | Fax No.<br>212-652-6720 | Phone No.<br>212-277-6500 | Fax No.<br>212-277-6501 |
|---|---|---|---|

| Email Address:<br>www.cmvt.com | Email Address:<br>graffh@dicksteinshapiro.com |
|---|---|

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA.  Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online.  AAA Customer Service can be reached at 800-778-7879

AMERICAN ARBITRATION ASSOCIATION
COMMERCIAL ARBITRATION TRIBUNAL
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of the Arbitration Between          :
                                                  :
COMVERSE, INC.,                                   :   STATEMENT
                                                  :   OF CLAIM
         Claimant,                     :
                                                  :   AAA Case No.
  - against –                                  :   _____
                                                  :
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,      :
                                                  :
        Respondent.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Claimant Comverse, Inc., by and through its attorneys, Dickstein Shapiro
LLP, as and for its Statement of Claim in the above-captioned arbitration states as
follows:

The Parties

1.   Claimant Comverse, Inc. ("Comverse") is a leading provider of software
and telecommunications systems.

2.   Respondent American Telecommunication, Inc. Chile S.A. ("ATI") is a
multinational company that has functioned as a distributor of products for the
telecommunications industry.   To date, the bulk of ATI's business has been the
distribution of products designed, produced and/or supplied by Comverse.

The Agreement's Arbitration Provision

3.   By Value Added Reseller Agreement dated July 22, 2004 (the
"Agreement"), Comverse approved ATI as the exclusive reseller of Comverse's
telecommunication Systems (as defined in the Agreement) in certain countries and as a
non-exclusive reseller in certain other countries, granting ATI the rights to market and

distribute Comverse's Systems in these countries.  (A copy of the Agreement is annexed hereto as Exhibit A.)

    4. Section 23.8 of the Agreement provides for arbitration as follows:

> Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance wit the then prevailing Rules of the American Arbitration Association.  Any such arbitration shall be held in English.  Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems.  The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to any award made by the arbitrator(s).

    5. The controversies and claims described and set forth in this Statement of Claim arise out of or are related to the Agreement.  Pursuant to Section 23.8 of the Agreement, these controversies and claims are therefore properly before the American Arbitration Association's New York City Regional office.

Nature of the Claims

    6. The controversies and claims emerge from ATI's illicit scheme to breach their non-disclosure obligations to Comverse, misappropriate Comverse's confidential and proprietary business information; disparage Comverse's Systems and reputation; unfairly compete with Comverse; and systematically engage in pernicious conduct in an effort to harm Comverse's business or otherwise improperly preclude Comverse from competing against ATI.

    7. ATI's illicit scheme surfaced in or about November 2005, when Comverse discovered certain email correspondence between a Comverse account director (for one of its largest customers) and ATI.  That email correspondence reflected that among other things: (a) ATI made improper payments to the Comverse account director in exchange for the account director providing ATI with confidential and proprietary business information; and (b) the account direct was unlawfully induced by ATI to

2

promote the sale of ATI's products to Comverse customers.  Such unlawful conduct not only violated multiple provisions of the Agreement, but also suggested a more egregious purpose – *i.e.*, to use such misappropriated proprietary information to impair Comverse's business and unfairly compete with it.

8.     After ATI's unlawful payments were revealed, Comverse discovered additional improprieties and misconduct by ATI such as the following:

- Disparaging Comverse's Systems and its reputation in ATI's dealings with Comverse's customers

- Submitting competing bids to those of Comverse

- Marketing and/or distributing products of suppliers that were Comverse competitors to Comverse accounts and customers

- Utilizing Comverse technology to develop its own products and marketing such products to non-authorized accounts and customers

- Downsizing its investment in and commitment to its distributorship with Comverse and Comverse's Systems, while making efforts to obtain a new supplier for whom to distribute competing products

- Improperly inducing or seeking to induce customers not enter into contractual arrangements (such as maintenance agreements) directly with Comverse, but to sign instead with ATI

- Unjustifiably delaying its remittance to Comverse of payments ATI received from Comverse customers with respect to Systems purchased and accepted by those Comverse customers

9.     Because of the substantial number and significance of these acts of misconduct, and having uncovered ATI's systematic scheme to misappropriate Comverse's protected business information, steal Comverse's customers and otherwise seek to eliminate Comverse as a viable competitor, pursuant to Section 2.2 of the

3

Agreement, by letter dated April 18, 2006. Comverse notified ATI of its intention to terminate the Agreement effective July 22, 2006.

      10.  In response to Comverse's exercise of its right under the Agreement to terminate ATI as Comverse's distributor, ATI has engaged in additional improper and illegal acts in furtherance of its illegal scheme, including the following:

- Failing and refusing to remit at all (let alone on a delayed basis) monies due and owing to Comverse that Comverse customers paid to ATI for Systems purchased and accepted by those customers

- Acknowledging that it owed the monies, but intentionally withholding such monies in an effort to secure a favorable proposal from Comverse for a future business arrangement

- Concocting bogus complaints and claims concerning Comverse and its Systems in a sham attempt to avoid payment under the Agreement

- Asserting that it would compete against Comverse, despite the existence of a binding non-compete provision in the Agreement

- Threatening to stop Comverse's business, particularly in Latin America, apparently by pilfering prospective and existing customers, illegally using Comverse's confidential and proprietary business information and otherwise precluding Comverse from doing business.

<u>The Agreement</u>

      11.  Pursuant to the Agreement, ATI was responsible for reselling and sublicensing the Systems pursuant to a jointly developed business plan and market analysis. ATI was also obligated to provide support services with respect to the Systems that were sold and installed.

      12.  ATI was and is bound by the covenant not to compete in Section 3.1.4 of the Agreement:

4

ATI agrees that it shall not, directly or indirectly, market, sell, license, lease, distribute and/or otherwise transfer any products similar to, or competitive with, the Systems within the Designated Territories or outside of the Designated Territories during the term of this Agreement and for a period of one year following any termination of this Agreement.

13.  ATI was and is further bound by the confidentiality and non-disclosure obligation set forth in Section 4.1.1 of the Agreement:

ATI shall hold the Software and Documentation [as defined in the Agreement] in confidence and agrees not to modify or copy, in whole or in part, the Software and/or Documentation except as described in Section 4.1.4 below.  ATI further agrees to take all steps necessary to insure that the Software and Documentation, in whole or in part, are not disclosed to or duplicated for, any unauthorized third parties, including but not limited to those steps ATI would take to protect information, data or other property of its own that it regards as proprietary or confidential.

Except as may be otherwise explicitly authorized in writing by Comverse, ATI agrees it shall not inspect, decompile, disassemble or reverse engineer the Software, or tamper with, bypass or alter the security features of same.

14.  In addition, Comverse and ATI entered into a Non-Disclosure/Confidentiality Agreement, dated October 16, 2003 (a copy of which is annexed hereto as Exhibit B), by which ATI agreed to "take all reasonable steps to safeguard" Comverse's "Confidential Information," defined under the Non-Disclosure/Confidentiality Agreement to mean:

all information in any and all medium disclosed by [Comverse] to [ATI] including, without limitation, data, technology, know-how, inventions, discoveries, designs, processes, formulations, models, equipment, algorithms, software programs, documents, specifications, information concerning research, development, experimental work, and/or trade and business secrets. Confidential Information will also include information disclosed by [Comverse] which relates to current, future, planned or proposed products, marketing and business plans, forecasts, projections and analyses, financial information, and sales, merchandising and customer information.

15.  The Non-Disclosure/Confidentiality Agreement further provides:

5

Each receiving party further agrees that it shall not publish, or otherwise disseminate or disclose any of the disclosing party's Confidential Information to any third party.

\* \* \*

The parties' obligations with respect to each other's Confidential Information shall remain in effect for a period of five (5) years from the date of the last disclosure of Confidential information made hereunder.

\* \* \*

Since unauthorized disclosure of Confidential Information will diminish the value of the proprietary interests that are the subject of this Agreement, if the receiving party breaches any of its obligations hereunder, the disclosing party may be entitled to equitable relief to protect its interest therein, including but not limited to injunctive relief, as well as money damages.

16.  Pursuant to Section 19.1 of the Agreement, ATI agreed "to comply with its requirements as set forth in" the Non-Disclosure/Confidentiality Agreement.

17.  Pursuant to Section 7.3 of the Agreement, ATI warranted "that it shall at all times promote the Systems and Comverse's goodwill and reputation, at its own expense, and shall conduct its business in a highly ethical manner and in accordance with its obligations under this Agreement."

### AS AND FOR A FIRST CLAIM
(Breach of Contract – Non-Performance)

18.  Comverse repeats and realleges the allegations set forth in paragraphs 1 through 17 as if set forth fully herein.

19.  ATI failed to perform its obligations under the Agreement and has repudiated its obligations thereunder.  ATI has breached and/or anticipatorily breached the Agreement by engaging in the improprieties and prohibited conduct set forth above.

6

20. Comverse is therefore entitled to damages in an amount to be determined by the arbitral tribunal.

AS AND FOR A SECOND CLAIM
(Breach of Contract – Non-Payment)

21. Comverse repeats and realleges the allegations set forth in paragraphs 1 through 20 as if set forth fully herein.

22. ATI has failed and refused to remit payments to Comverse for Systems ordered by ATI and delivered by Comverse that are due and owing and/or repudiated its obligation to make such payments as well as those payments that will become due in the future.

23. Comverse is therefore entitled to damages in an amount to be determined by the arbitral tribunal, but no less than $18 million.

AS AND FOR A THIRD CLAIM
(Breach of Contract – Unethical Business Practices)

24. Comverse repeats and realleges the allegations set forth in paragraphs 1 through 23 as if set forth fully herein.

25. In addition to holding hostage millions of dollars owed to Comverse, ATI has also engaged in improper and highly unethical business practices, including the payment of kickbacks by ATI in return for certain Confidential Information as well as the improper use of such Confidential Information.

26. Comverse is therefore entitled to damages in an amount to be determined by the arbitral tribunal.

AS AND FOR A FOURTH CLAIM
(Breach of the Covenant of Good Faith and Fair Dealing)

27. Comverse repeats and realleges the allegations set forth in paragraphs 1 through 26 as if set forth fully herein.

7

28.   In pursuing its illicit scheme and engaging in the pernicious conduct described above, ATI acted in bad faith and contrary to the reasonable expectations of the parties.

29.   Comverse is therefore entitled to damages in an amount to be determined by the arbitral tribunal.

<u>AS AND FOR A FIFTH CLAIM</u>
(Tortious Interference with Prospective Economic Advantages)

30.   Comverse repeats and realleges the allegations set forth in paragraphs 1 through 29 as if set forth fully herein.

31.   In pursuing its illicit scheme and engaging in the pernicious conduct described above, including the improper use of misappropriated Comverse proprietary business information, the submission of competing bids and the wrongful solicitation and inducement of Comverse customers, ATI has tortiously interfered with the prospective economic advantages and business relations of Comverse.

32.   Comverse is therefore entitled to damages in an amount to be determined by the arbitral tribunal.

<u>AS AND FOR A SIXTH CLAIM</u>
(Declaratory Judgment)

33.   Comverse repeats and realleges the allegations set forth in paragraphs 1 through 32 as if set forth fully herein.

34.   In furtherance of its illicit scheme, the ultimate purpose of which was to eliminate Comverse as a viable competitor, ATI, among other things, claims to have the right, power or authority to enjoin or prevent Comverse from competing against it.  In so doing, ATI has created a justiciable controversy as to the rights and other legal relations of Comverse and ATI.

8

35.  To protect its rights and its economic interests, Comverse is entitled to a declaratory judgment declaring that ATI has no right, power, authority or other legal predicate to enjoin or prevent Comverse from competing against it.

<u>AS AND FOR A SEVENTH CLAIM</u>
(Injunctive Relief for Breach of Non-Compete § 3.1)

36.  Comverse repeats and realleges the allegations set forth in paragraphs 1 through 35 as if set forth fully herein.

37.  By engaging in misconduct such as the submission of competing bids, inducing customers not to sign contracts with Comverse (but with ATI instead) and seeking to distribute products of a competitor of Comverse, ATI has breached the non-compete provision in Section 3.1.4 of the Agreement.

38.  Upon information and belief, ATI is continuing to engage in acts prohibited by Section 3.1.4 and will continue to do so following the effective date of the termination of the Agreement, contrary to the provision whereby the non-compete binds ATI during the term, and for a period of one year following the termination, of the Agreement.

39.  Comverse is therefore entitled to an injunction directing ATI to fully comply with its obligations under Section 3.1.4 of the Agreement as well as any damages that have been or will be caused by ATI's prohibited conduct.

<u>AS AND FOR AN EIGHTH CLAIM</u>
(Injunctive Relief for Breach of Non-Disclosure/Confidentiality Agreement)

40.  Comverse repeats and realleges the allegations set forth in paragraphs 1 through 39 as if set forth fully herein.

41.  In making illegal payments for Confidential Information and in improperly using such ill-gotten gains, and, upon information and belief, improperly

9

DOCSNY-205346v01

disclosing Confidential Information and propriety information concerning Comverse's Software and Documentation, ATI has breached its obligations under the Non-Disclosure/Confidentiality Agreement.

42. Upon information and belief, to the extent ATI has not yet breached its non-disclosure obligations, it is inevitable that disclosure of Comverse's Confidential Information will occur.

43. Comverse is therefore entitled to an injunction directing ATI to fully comply with its obligations under the Non-Disclosure/Confidentiality Agreement as well as any damages that have been or will be caused by ATI's prohibited conduct.

AS AND FOR A NINTH CLAIM
(Injunctive Relief for Breach of Non-Disclosure Provision § 4.1)

44. Comverse repeats and realleges the allegations set forth in paragraphs 1 through 43 as if set forth fully herein.

45. ATI's pernicious conduct in disclosing Comverse's proprietary information concerning its Software and Documentation also constitutes a breach of Section 4.1 of the Agreement.

46. Upon information and belief, to the extent ATI has not yet breached Section 4.1, it is inevitable that disclosure of Comverse's proprietary information concerning its Software and Documentation will occur.

47. Comverse is therefore entitled to an injunction directing ATI to fully comply with its obligations under Section 4.1 of the Agreement as well as any damages that have been or will be caused by ATI's prohibited conduct.

WHEREFORE, Claimant Converse, Inc. respectfully requests an award providing for the following relief:

DOCSNY-205346v01

(i)     damages under the First, Second, Third, Fourth, Fifth, Seventh, Eighth and Ninth Claims, with interest;

(ii)    injunctive relief under the Seventh Claim for the breach of Section 3.1 of the Agreement;

(iii)   injunctive relief under the Eighth and Ninth Claims for the breach of the Non-Disclosure Agreement and Section 4 of the Agreement;

(iv)    a declaratory judgment declaring that ATI has no right, authority or other legal predicate to enjoin Comverse from competing against ATI in any territory or market; and

(v)     such other and further relief as the arbitral tribunal shall deem just and proper.

Dated:  New York, New York
        July 26, 2006


                              DICKSTEIN SHAPIRO, LLP


                              By:  _____
                                   Howard Graff
                                   1177 Avenue of the Americas
                                   New York, NY  10036
                                   212-277-6500
                                   Attorneys for Claimant
                                   Comverse, Inc.


11

# EXHIBIT D

## AMERICAN ARBITRATION ASSOCIATION

## INTERNATIONAL CENTER FOR DISPUTE RESOLUTION

In the Matter of Arbitration Between

---

COMVERSE, INC.,

              Claimant,

    - and -

AMERICAN TELECOMMUNICATION,
INC. CHILE S.A.,

              Respondent.

Case No. 50 494 T 00319 06

Administrator: Christian Paul Alberti, Esq.

---

### AMENDED STATEMENT OF DEFENSE AND COUNTERCLAIMS

Respondent American Telecommunication, Inc., Chile S.A. ("ATI Chile"), by and

through its attorneys Dorsey & Whitney LLP and Montt y CIA. S.A., respectfully submits the

following Amended Statement of Defense and Counterclaims in response to the Demand for

Arbitration (the "Demand") of Comverse, Inc. ("Comverse"), dated July 26, 2006:

I.     **THE PARTIES**

    1.     Claimant Comverse is a Delaware corporation with its principal place of business

in Wakefield, Massachusetts. Comverse and its Israeli subsidiary are suppliers of certain

telecommunications software, equipment and systems for voice messaging. The Comverse

business was founded by Jacob "Kobi" Alexander in Israel in 1984.

    2.     Respondent ATI Chile (formerly known as North Supply Chile S.A.) is a

corporation organized and existing under the laws of Chile with its principal place of business in

Santiago, Chile. ATI Chile has been in the telecommunications business in Latin America since 1980. ATI Chile's customers include the leading telecommunications companies in Latin America, such as Telefonica. ATI Chile has always worked pro-actively with its customers to identify opportunities for them and to provide solutions. Through this approach, ATI has successfully built long-term relationships, trust and goodwill. ATI Chile has been a distributor of Comverse voice messaging systems since 1992 and a value added reseller since 1994. ATI Chile's exclusive territories for reselling Comverse systems were Chile, Peru, Bolivia, Ecuador, TIM Brazil in Brazil and Telefonica Celular del Paraguay S.A. in Paraguay. ATI Chile's non-exclusive territories were Brazil (except for TIM Brazil), Paraguay (except for Telefonica), Uruguay, Colombia and Mexico. ATI Chile installs, integrates, tests and services the systems (and system upgrades) that it sells or resells to its customers. ATI contracts directly with its customers and assumes the contractual risks of performance vis-à-vis its customers. The time from order intake to preliminary acceptance of a telecommunications system, or system upgrade, by ATI's customer is typically about six to nine months. Besides its role as a value-added reseller of Comverse systems, ATI Chile has also sold its own products and services to Comverse in support of Comverse's customer contracts in non-exclusive territories.

## II.    **NATURE OF THE DISPUTE**

3.    This arbitration concerns certain disputes between ATI Chile, Comverse and Comverse's subsidiaries arising out of and related to their Value Added Reseller Agreement dated July 22, 2004 (the "VAR Agreement"). Comverse also refers to the parties' Non-Disclosure/Confidentiality Agreement, dated October 16, 2003 (the "Non-Disclosure Agreement"). The Non-Disclosure Agreement was entered into for the limited purpose of

certain discussions between the parties regarding Comverse's Remote Support Services RFP. That project and exchange of information ended in March 2005.

4.     In 1992, when ATI Chile first began purchasing and reselling Comverse voice messaging systems, ATI Chile was already an established business in Latin America with its own customers. Comverse, in contrast, had no presence or experience in Latin America and no customer base in that region.  Comverse's focus during that time period was the U.S. market and elsewhere. Comverse was content to let ATI Chile invest its own time and effort to develop and cultivate Latin American customers, which ATI successfully did.

5.     In its Demand, Comverse accuses ATI Chile of trying to steal Comverse's trade secrets, of failing to make certain payments allegedly due, and of violating the covenant not to compete contained in the VAR Agreement.  It is ATI Chile, however, and not Comverse that has been wronged. As set forth below, ATI Chile denies Comverse's allegations and asserts eight counterclaims. Significantly, Comverse's April 18, 2006 termination letter to ATI Comverse does not purport to terminate the parties' VAR Agreement "for cause," but only "for convenience." Indeed, prior to sending its Demand for Arbitration in July 2006, Comverse never sent ATI Chile any notice of default. Meanwhile, Comverse has repeatedly breached its contractual obligations to ATI Chile by, for example, failing to honor and fulfill its express warranty obligations and by failing to fill pending purchase orders ATI timely and properly submitted prior to termination of the VAR Agreement. Comverse's performance of those obligations is necessary for ATI Chile to fulfill its contracts with its telecommunications customers entered into before ATI Chile received Comverse's purported notice of termination in April 2006. Comverse's wrongful actions have put into jeopardy the ability of major telephone companies in Latin America to service their end-user customers.

3

6.      The non-compete provision in the VAR Agreement, which Comverse is attempting to enforce against ATI Chile, is not justified by any legitimate protectable interest of Comverse. The customers in ATI Chile's territories are ATI's own customers, not customers that Comverse found and developed. Comverse did not purchase ATI Chile's customer base. Comverse sold equipment and software to ATI Chile, which ATI then resold to its own customers, after adding ATI's own valuable products and services. There were no trade secrets provided by Comverse to ATI Chile that would warrant enforcement of a covenant not to compete after termination of the VAR Agreement. Yet Comverse now seeks to enforce the non-compete and disrupt ATI's relations with its customers. Comverse is even attempting to enforce the non-compete in countries such as Argentina that are outside the territories included in the VAR Agreement.

7.      By failing to perform its remaining warranty, support and supply obligations to ATI Chile, in violation of the VAR Agreement, by saddling ATI Chile with all the cost and expense of rectifying the material defects in Comverse's systems, by not paying ATI for technology and services ATI has provided to Comverse, and by attempting to hire away ATI employees, Comverse is seeking unfairly and illegally to damage ATI's reputation, to hobble ATI as a competitor in Latin America and, ultimately, to drive ATI out of business. ATI Chile has suffered and continues to suffer substantial damages as a result of Comverse's breaches of its contractual obligations to ATI.

## III.    RESPONSE TO COMVERSE'S DEMAND

8.      Denies the allegations contained in paragraph 1 of the Demand, except admits that Comverse is a provider of certain telecommunications software, equipment and systems.

9.     Denies the allegations contained in paragraph 2 of the Demand, and avers that ATI Chile was and is a Chilean corporation that, among other things, sells, installs, integrates, tests and services telecommunications systems, including software and equipment designed, produced and/or supplied by Comverse and/or its non-U.S. subsidiaries.

10.     Denies the allegations contained in paragraph 3 of the Demand, except admits that ATI Chile entered into the VAR Agreement with Comverse, which Comverse signed on behalf of itself and its subsidiaries, and respectfully refers the Arbitrators to the VAR Agreement for an accurate statement of its contents.

11.     Denies the allegations contained in paragraph 4 of the Demand, except admits that ATI Chile entered into the VAR Agreement and respectfully refers the Arbitrators to the VAR Agreement for an accurate statement of its contents.

12.     Denies the allegations contained in paragraph 5 of the Demand, except admits that Comverse contends that claims asserted in the Demand are within the scope of the arbitration clause of the VAR Agreement.

13.     Denies the allegations contained in paragraph 6 of the Demand.

14.     Denies the allegations contained in paragraph 7 of the Demand.

15.     Denies the allegations contained in paragraph 8 of the Demand.

16.     Denies the allegations contained in paragraph 9 of the Demand, except admits that Comverse sent ATI Chile a letter dated April 18, 2006 purporting to terminate the VAR Agreement on 90 days' notice, as of July 22, 2006, not for cause, but pursuant to the "for convenience" termination provision of the Agreement set forth in Section 2.2 of that agreement, and respectfully refers the Arbitrators to the letter for an accurate statement of its contents. ATI Chile avers that prior to its receipt of the Demand on July 26, 2006, and throughout the entire

two-year term of the VAR Agreement, ATI Chile had never received from Comverse a notice of breach of any provision of the VAR Agreement.

17.    Denies the allegations contained in paragraph 10 of the Demand.

18.    Denies the allegations contained in paragraph 11 of the Demand, except admits that ATI Chile entered into the VAR Agreement and respectfully refers the Arbitrators to the VAR Agreement for an accurate statement of its contents.

19.    Denies the allegations contained in paragraph 12 of the Demand, except admits that ATI Chile entered into the VAR Agreement and respectfully refers the Arbitrators to the Agreement for an accurate statement of its contents.

20.    Denies the allegations contained in paragraph 13 of the Demand, except admits that ATI Chile entered into the VAR Agreement and respectfully refers the Arbitrators to the Agreement for an accurate statement of its contents.

21.    Denies the allegations contained in paragraph 14 of the Demand, except admits that ATI Chile entered into the Non-Disclosure Agreement with Comverse and respectfully refers the Arbitrators to the Non-Disclosure Agreement for an accurate statement of its contents.

22.    Denies the allegations contained in paragraph 15 of the Demand, except admits that ATI Chile entered into the Non-Disclosure Agreement and respectfully refers the Arbitrators to the Non-Disclosure Agreement for an accurate statement of its contents.

23.    Denies the allegations contained in paragraph 16 of the Demand, except admits that ATI Chile entered into the Non-Disclosure Agreement and respectfully refers the Arbitrators to the Non-Disclosure Agreement for an accurate statement of its contents.

24.    Denies the allegations contained in paragraph 17 of the Demand, except admits that ATI Chile entered into the Non-Disclosure Agreement and respectfully refers the Arbitrators to the Non-Disclosure Agreement for an accurate statement of its contents.

## FIRST CLAIM

25.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 17 of the Demand as if set forth fully herein.

26.    Denies the allegations contained in paragraph 19 of the Demand.

27.    Denies the allegations contained in paragraph 20 of the Demand.

## SECOND CLAIM

28.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 20 of the Demand as if set forth fully herein.

29.    Denies the allegations contained in paragraph 22 of the Demand.

30.    Denies the allegations contained in paragraph 23 of the Demand.

## THIRD CLAIM

31.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 23 of the Demand as if set forth fully herein.

32.    Denies the allegations contained in paragraph 25 of the Demand.

33.    Denies the allegations contained in paragraph 26 of the Demand.

## FOURTH CLAIM

34.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 26 of the Demand as if set forth fully herein.

7

35.    Denies the allegations contained in paragraph 28 of the Demand.

36.    Denies the allegations contained in paragraph 29 of the Demand.

## FIFTH CLAIM

37.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 29 of the Demand as if set forth fully herein.

38.    Denies the allegations contained in paragraph 31 of the Demand.

39.    Denies the allegations contained in paragraph 32 of the Demand.

## SIXTH CLAIM

40.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 32 of the Demand as if set forth fully herein.

41.    Denies the allegations contained in paragraph 34 of the Demand.

42.    Denies the allegations contained in paragraph 35 of the Demand.

## SEVENTH CLAIM

43.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 35 of the Demand as if set forth fully herein.

44.    Denies the allegations contained in paragraph 37 of the Demand.

45.    Denies the allegations contained in paragraph 38 of the Demand.

46.    Denies the allegations contained in paragraph 39 of the Demand.

## EIGHTH CLAIM

47.    Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 39 of the Demand as if set forth fully herein.

8

48.   Denies the allegations contained in paragraph 41 of the Demand.

49.   Denies the allegations contained in paragraph 42 of the Demand.

50.   Denies the allegations contained in paragraph 43 of the Demand.

**NINTH CLAIM**

51.   Repeats and realleges its responses to the allegations set forth in paragraphs 1 through 43 of the Demand as if set forth fully herein.

52.   Denies the allegations contained in paragraph 45 of the Demand.

53.   Denies the allegations contained in paragraph 46 of the Demand.

54.   Denies the allegations contained in paragraph 47 of the Demand.

IV.   **ATI CHILE'S DEFENSES**

55.   The Demand fails to state a claim upon which relief can be granted.

56.   Comverse has materially breached its obligations under the VAR Agreement, including its implied covenant of good faith and fair dealing.

57.   ATI Chile is entitled to set-off and recoup monies Comverse owes to ATI.

58.   Comverse has failed to make payments due and owing to ATI for technology and services ATI supplied to Comverse, in an amount in excess of $5.4 million.

59.   The Demand is barred, in whole or in part, by the doctrines of waiver, estoppel laches and unjust enrichment.

60.   The Demand is barred, in whole or in part, by Comverse's unclean hands.

61.   ATI Chile acted at all times in good faith and for a proper business purpose.

62.   The covenant not to compete set forth in Section 3.1.4 of the VAR Agreement is not supported by any legitimate protectable interest of Comverse.

63.    The covenant not to compete set forth in Section 3.1.4 of the VAR Agreement is overbroad, illegal, against public policy, unconscionable, invalid and unenforceable.

64.    Section 11.2 of the VAR Agreement purporting to permit Comverse to terminate the contract, and the parties' 14-year relationship, "for convenience" on only 90-days' notice is unconscionable.

65.    Section 11.2 of the VAR Agreement was never intended to prevent ATI Chile from performing contracts entered into with its customers before ATI Chile received notice of termination of the VAR Agreement.

66.    ATI Chile made no illegal payments to obtain Comverse confidential information or trade secrets, and did not improperly disclose any such information.

67.    There is no inevitable disclosure by ATI Chile of any Comverse confidential information or trade secrets.

68.    The project and exchange of information that were the subject of the Non-Disclosure Agreement ended in March 2005.

69.    The five-year restraint set forth in Section 10 of the Non-Disclosure Agreement is unreasonable and overbroad in view of the nature of the information disclosed to ATI Chile pursuant to that agreement.

## V.    ATI'S COUNTERCLAIMS

### FIRST COUNTERCLAIM
### (Breach of Warranties)

70.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 as if fully set forth herein.

71.    Comverse has given certain express warranties to ATI Chile for the equipment and software purchased pursuant to the VAR Agreement, including those set forth in Section 6 of the VAR Agreement.

72.    Section 6.2 of the VAR Agreement states:

"Comverse warrants that the Equipment delivered hereunder will be free from material defects in workmanship and materials for a period of one (1) year starting forty-five (45) days after the date of initial shipment of the Equipment to ATI (the "Warranty Period"). If any item of Equipment shall require repair or replacement by Comverse in accordance with such warranty, Comverse will effect replacement or repair as soon as possible but not later than thirty (30) days. Comverse also warrants that the repaired or replacement item will be free from material defects in workmanship and materials for the balance of the Warranty Period of the replaced item, or for ninety (90) days, whichever is longer. Comverse warrants all spare parts will be free from material defects in workmanship and materials for a period of ninety (90) days from the date of installation. Any changes to the Warranty Period ATI may negotiate with end-user customers must be approved in advance by Comverse."

73.    In the case of some purchase orders, Comverse expressly agreed to and approved a two-year, rather than a one-year, warranty period. Comverse also expressly agreed and approved that the warranty period would begin upon successful completion of acceptance testing.

74.    The 45-day time period in Section 6.2 of the VAR Agreement was intended by the parties to reflect the time it would take for Comverse's shipment of completed equipment to reach ATI Chile. Actually, Comverse typically took 120 to 180 days, or longer, to deliver systems in completed form, and it took even longer before the systems passed the required acceptance testing.

75.    Section 6.3 of the VAR Agreement states:

"Comverse warrants that during the Warranty Period, all Software licensed hereunder will substantially conform to Comverse's applicable then current published specifications when delivered. ATI must notify

11

Comverse in writing of any defect in the Software, and if the Software is found to be substantially defective, Comverse's sole obligation under this warranty is to correct such defect in a reasonable manner determined by Comverse. Comverse does not warrant that the Software will meet all requirements of ATI or its end-user customers, or that the operation of the Software will be completely error free, or that all Software defects will be corrected. Comverse will correct any and all service affecting Software deficiencies or provide adequate work-around(s) for same."

76.    Section 6.5 of the VAR Agreement states: "If Comverse is unable, after reasonable efforts, to repair or replace the Equipment or to correct the Software, ATI's sole remedy shall be the refund of the purchase price paid by it."

77.    The equipment and software that ATI Chile purchased from Comverse was materially defective when delivered and continues to be materially defective.

78.    ATI timely advised Comverse of the defects in the equipment and software, but Comverse has failed to repair or replace the defective equipment and to correct the defective software or to refund to ATI the purchase price of that defective equipment and software that ATI Chile paid.

79.    Comverse failed to perform its warranty obligations under the VAR Agreement and has repudiated its obligations thereunder.

80.    Comverse has thereby materially breached the VAR Agreement.

81.    ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators, but not less than $24.1 million.

## SECOND COUNTERCLAIM
### (Breach of Contract)

82.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 81 as if fully set forth herein.

83.    By letter dated April 18, 2006, Comverse purported to terminate the VAR Agreement "for convenience" effective July 22, 2006 pursuant to Section 11.2 of the Agreement.

84.    Section 11.3.1 of the VAR Agreement states:  "Comverse shall fill any pending purchase orders from ATI."

85.    Section 11.3.6 of the VAR Agreement states: "Final plans to transition the accounts to another source of distribution and support shall be determined by Comverse *after consultation with ATI. . . .*"  (Emphasis added.)

86.    The following ATI purchase orders were pending in May 2006:  CL 1234/2006, CL 1235/2006, CL 1236/2006, CL 1237/2006, CL 1238/2006, PE 50043/2006, PE 5044/2006, BR 6032/2006, BR 6033/2006, and BO 3024/2006.  Comverse has refused to fill these purchase orders.

87.    Delivery of the equipment and software that is the subject of these purchase orders is necessary for ATI to fulfill its obligations to its customers under contracts ATI entered into with those customers before receiving Comverse's purported notice of termination in April 2006.

88.    Comverse failed to consult with ATI on transitional issues, but instead directly contacted ATI's customers.

89.    By refusing to fill these purchase orders and by failing to consult with ATI, Comverse has materially breached the VAR Agreement.

90.    ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators, but not less than $2.6 million.

## THIRD COUNTERCLAIM
### (Breach of Contract)

91.     Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 90 as if fully set forth herein.

92.     ATI has supplied pursuant to the VAR Agreement certain technology and services to Comverse in support of Comverse's customer contracts.

93.     Comverse has failed to make payments owed to ATI for the supplied technology and services.

94.     Comverse has also failed to pay ATI Chile commissions owed on certain sales.

95.     Comverse has thereby materially breached the VAR Agreement.

96.     ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators, but not less than $5.4 million.

## FOURTH COUNTERCLAIM
### (Breach of Contract – Section 6.6 of VAR Agreement)

97.     Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 96 as if fully set forth herein.

98.     Section 6.6 of the VAR Agreement states:  "Upon the expiration of the Warranty Period for each System, Comverse will provide the support services described in the attached Schedule F so long as the end-user customers have signed the Comverse form support agreement with ATI."

99.     ATI entered into a number of support agreements with its customers in accordance with Section 6.6 of the VAR Agreement prior to receiving Comverse's purported notice of termination in April 2006.

14

100.    Comverse has failed to perform its support obligations in support of ATI's support agreements with its customers, including refusing to supply necessary spare parts, and instead has intentionally interfered with ATI's support agreements.

101.    Comverse has thereby materially breached the VAR Agreement.

102.    ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators.

**FIFTH COUNTERCLAIM**
**(Breach of Contract – Section 3.1 of VAR Agreement)**

103.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 102 as if fully set forth herein.

104.    As provided in Section 3.1 and Schedule B of the VAR Agreement, ATI Chile was appointed Comverse's exclusive reseller of Systems (as defined in Section 1.1 of the VAR Agreement) "[w]ith respect to the accounts located within Chile, Bolivia, Ecuador, and Peru, and for TIM Brazil in Brazil and Telefonica Celular del Paraguay in Paraguay."

105.    However, beginning early in 2005 Comverse began to contact ATI's customers to attempt to make sales of Systems to accounts located within ATI's exclusive territories. Because of Comverse's wrongful interference with ATI's customers, ATI Chile lost substantial sales of Comverse equipment and software.

106.    Comverse has thereby materially breached the VAR Agreement.

107.    ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators, but not less than $3.8 million.

## SIXTH COUNTERCLAIM
### (Breach of Contract – Section 23.3 of VAR Agreement)

108.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 107 as if fully set forth herein.

109.    Section 23.3 of the VAR Agreement states:  "ATI and Comverse agree that during the term of this Agreement and for a period of twelve (12) months thereafter, neither party shall, directly or indirectly, solicit, induce, attempt to induce any employees of the other to its employ."

110.    Upon information and belief, Comverse has directly and/or indirectly solicited, induced and/or attempted to induce ATI employees to its employ.

111.    Converse has thereby materially breached the VAR Agreement.

112.    Upon information and belief, Comverse and its agents are continuing to engage in actions violating Section 23.3 of the VAR Agreement.

113.    ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators, and to an injunction enjoining Comverse and its agents from any further violations of Section 23.3 of the VAR Agreement.


## SEVENTH COUNTERCLAIM
### (Breach of the Covenant of Good Faith and Fair Dealing)

114.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 113 as if fully set forth herein.

115.    Through the foregoing, Comverse has acted in bad faith and contrary to the reasonable expectations of the parties thereby materially breaching the implied covenant of good faith and fair dealing of the VAR Agreement.

116.    Comverse has also acted unfairly and in bad faith by, among other things, (a) seeking to enforce against ATI alleged amendments to the Agreement which ATI Chile never accepted and which were never made in a writing signed by ATI Chile, as expressly required by Section 23.10 of the VAR Agreement.  Comverse has likewise acted unfairly and in bad faith by refusing to repurchase ATI's remaining inventory of Comverse software and equipment that ATI can no longer resell as a result of Comverse's termination of the VAR Agreement and Comverse's repudiation of its remaining support obligations in material breach of the VAR Agreement, and by refusing to compensate ATI for associated expenses ATI reasonably incurred.

117.    ATI Chile is therefore entitled to damages in an amount to be determined by the Arbitrators.

### EIGHTH COUNTERCLAIM
#### (Declaratory Judgment)

118.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 117 as if fully set forth herein.

119.    ATI originated and developed its customer relationships in Latin America solely through its own efforts and expense.  ATI developed and cultivated these customer relationships before it entered into the VAR Agreement in July 2004 and also before it entered into the Non-Disclosure Agreement in October 2003.

120.    The covenant not to compete set forth in Section 3.1.4 of the VAR Agreement is not supported by any legitimate protectable interest of Comverse.

17

121.    Section 3.1.4 of the VAR Agreement unreasonably interferes with ATI Chile's ability to perform contracts it entered into with its customers prior to receiving Comverse's purported notice of termination in April 2006.

122.    Section 3.1.4 of the VAR Agreement is overbroad both temporally and geographically.

123.    Section 3.1.4 of the VAR Agreement is unconscionable to the extent it would prevent ATI from performing contracts that it entered into with its customers prior to receiving Comverse's purported notice of termination in April 2006.

124.    Section 3.1.4 of the VAR Agreement is against public policy to the extent that its enforcement would result in the disruption and/or material degradation of telecommunications services to telephone users in Latin America.

125.    ATI is entitled to a declaratory judgment declaring that Section 3.1.4 of the VAR Agreement is overbroad, illegal, against public policy, unconscionable, invalid and unenforceable.

<b><u>NINTH COUNTERCLAIM</u></b><br>
<b>(Unjust Enrichment)</b>

126.    Repeats and realleges the allegations set forth in paragraphs 1 through 7 and 70 through 125 as if fully set forth herein.

127.    ATI benefited Comverse by purchasing certain equipment (the "Comverse Inventory") from Comverse prior to receiving Comverse's notice of termination of the VAR Agreement on April 18, 2006.

128.    ATI Chile is no longer able to resell the Comverse Inventory as a result of Comverse's termination of the VAR Agreement.

129.    Comverse has refused to repurchase all the Comverse Inventory.

130.    ATI Chile has also benefited Comverse by purchasing Comverse software, equipment and upgrades to fulfill long-term supply and support contracts with ATI's customers. Given the nature of the industry and the Comverse Systems, ATI could not have made these purchases from Comverse without making long-term supply and support commitments to ATI's customers, to whom Comverse knew its Systems and upgrades were being resold. Comverse was aware that ATI Chile was making long-term supply and support commitments to ATI's customers and never objected to ATI Chile. It was also to Comverse's benefit that ATI's customers made long-term commitments to purchase Comverse Systems and upgrades, in reliance on ATI Chile's long-term supply and support commitments.

131.    The terms of some of the long-term supply and support contracts that ATI entered into with its customers extended beyond July 22, 2006. ATI entered into these contracts before receiving Comverse's April 18, 2006 notice of termination of the VAR Agreement.

132.    Comverse has refused to fill purchase orders ATI submitted to Comverse to fulfill the foregoing long-term contracts and has refused to provide certain necessary support, notwithstanding the substantial benefits Comverse previously obtained from ATI Chile as a result of ATI's undertaking those contracts. Comverse has asserted to ATI Chile and ATI's customers that it is not obliged under the terms of the VAR Agreement to fill such purchase orders or to provide the requested support. Comverse has also asserted to ATI and ATI's customers that ATI Chile is not entitled to seek alternative competing sources of supply and support to attempt to fulfill ATI's long-term contracts with ATI's customers. Comverse has thereby unfairly put ATI in potential breach of its contracts with its customers and has damaged ATI's relationships with its customers and the goodwill ATI Chile developed at great expense.

133.    Comverse has therefore unfairly benefited at ATI Chile's expense.

19

134.     Equity and good conscience require that ATI Chile obtain full restitution from Comverse.

135.     ATI Chile is therefore entitled to damages with respect to the Comverse Inventory in an amount to be determined by the Arbitrators, but not less than $3,251,324, and to damages in an amount to be determined by the Arbitrators resulting from Comverse's unjust failure to fill purchase orders and provide support for pre-existing long-term contracts ATI had with its customers, to the extent such damages are not awarded on ATI Chile's Second and/or Fourth Counterclaims.


## VI.    RELIEF SOUGHT

ATI Chile respectfully requests an award against Comverse as follows:

    i.        Denying Comverse's claims and requests for relief in their entirety;

    ii.       Awarding to ATI Chile damages on its First, Second, Third, Fourth, Fifth, Sixth, Seventh and Ninth Counterclaims, plus interest;

    iii.      On its Sixth Counterclaim, also granting an injunction enjoining Comverse and its agents from any further violations of Section 23.3 of the VAR Agreement;

    iv.      On its Eighth Counterclaim, granting to ATI Chile a declaratory judgment declaring that Section 3.1.4 of the VAR Agreement is overbroad, illegal, against public policy, unconscionable, invalid and unenforceable;

    v.        Allocating the costs and expenses of this arbitration entirely to Comverse; and

      vi.        Granting to ATI Chile such other and further relief as the Arbitrators deem appropriate under the circumstances.

## VII.    <u>RESERVATION OF RIGHTS</u>

Respondent ATI Chile reserves the right to provide a more precise calculation of damages, to supplement and modify the defenses set forth herein, to assert further counterclaims, to seek discovery and other information from Comverse, and to submit briefs, exhibits and live testimony during the proceedings herein.

Dated: New York, New York
       January 16, 2007

**DORSEY & WHITNEY LLP**

By: _Neil S. McDonell_

      Neil E. McDonell
      Mario Diaz-Cruz, III
      Brooke Pietrzak

250 Park Avenue
New York, New York  10177
(212) 415-9200

**MONTT Y CIA. S.A.**

By: _____

      Santiago Montt Vicuña
      Beatriz Lynch del Fierro

Los Conquistadores 1700, Piso 11
(Edif. Centro Sta. Maria)
Santiago, Chile
(562) 233-8266

Attorneys for Respondent ATI Chile

vi.    Granting to ATI Chile such other and further relief as the Arbitrators

deem appropriate under the circumstances.

## VII.    RESERVATION OF RIGHTS

Respondent ATI Chile reserves the right to provide a more precise calculation of

damages, to supplement and modify the defenses set forth herein, to assert further counterclaims,

to seek discovery and other information from Comverse, and to submit briefs, exhibits and live

testimony during the proceedings herein.

Dated: New York, New York
      January __ , 2007

**DORSEY & WHITNEY LLP**

By: _____

    Neil E. McDonell
    Mario Diaz-Cruz, III
    Brooke Pietrzak

250 Park Avenue
New York, New York 10177
(212) 415-9200

**MONTT Y CIA. S.A.**

By: _____

    Santiago Montt Vicuña
    Beatriz Lynch del Fierro

Los Conquistadores 1700, Piso 11
(Edif. Centro Sta. Maria)
Santiago, Chile
(562) 233-8266

Attorneys for Respondent ATI Chile

21

TO:

Howard Graff, Esq.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036
Attorneys for Claimant Comverse, Inc.