UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., <br><br> Petitioner, <br><br> -against- <br><br> AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., <br><br> Respondents. | Case No. 07CV11121 <br><br> ECF CASE |

**MEMORANDUM OF LAW IN SUPPORT OF**
**COMVERSE'S PETITION TO CONFIRM ARBITRATION AWARD**

Petitioner Comverse, Inc. ("Comverse" or "Petitioner"), by its attorneys Dickstein Shapiro LLP, respectfully submits this memorandum of law in support of its Petition to confirm the final arbitration award rendered on November 29, 2007 (the "Arbitration Award"), by a duly convened arbitral tribunal of the International Centre For Dispute Resolution of the American Arbitration Association (the "ICDR").

**PRELIMINARY STATEMENT**

The issue before the Court is simple: whether the Arbitration Award rendered in strict accordance with the arbitration clause agreed to by the parties, should be confirmed as a final and binding determination. As discussed below, there are no grounds under either the Federal Arbitration Act or under the "manifest disregard" doctrine to vacate the Arbitration Award rendered in this case, and it should therefore be confirmed in its entirety.

**STATEMENT OF FACTS**

On or about July 22, 2004, Comverse and American Telecommunication, Inc. Chile S.A. ("ATI Chile") entered into a Value Added Reseller Agreement (the "VAR Agreement") whereby Comverse approved ATI Chile as the exclusive reseller of Comverse's telecommunications Systems (as defined in the Agreement) in certain countries and as a non-exclusive reseller in certain other countries, granting ATI Chile the rights to market and distribute Comverse's Systems in these countries. Pet. ¶ 2. (A copy of the VAR Agreement is annexed to the Petition as Exhibit "A.")

> The VAR Agreement contains a broad arbitration clause that provides:
>
> Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance with the then prevailing Rules of the American Arbitration Association. Any such arbitration shall be held in English. Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems. The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to [sic] any award made by the arbitrator(s). Each party shall bear its own costs, expenses and fees (including attorneys' fees) incurred in connection with this Section 23.8.

Pet. Ex. A § 23.8.

The VAR Agreement, on its face, was entered into between Comverse, Inc., on behalf of itself and its named subsidiaries, and ATI Chile. Pet. ¶ 13; *id.* Ex. A. However, during the course of the arbitration hearings, because claims against Comverse were being asserted by both

2

ATI Chile and ATI Chile's sister companies, the issue of the involvement of ATI Chile's sister companies was clarified by ATI's counsel in a letter to the Arbitral Tribunal dated March 22, 2007. Pet. ¶ 13. The letter clarified that "American Telecommunication Inc. Bolivia S.A.[,] American Telecommunication do Brasil Ltda.[,] American Telecommunication Inc. Ecuador ATIECUADOR S.A. [and] American Telecommunication Peru S.A.," all agreed: (1) "to be bound by the arbitration agreement set forth in Section 23.8 of the Value Added Reseller Agreement between Comverse, Inc. and its subsidiaries, on the one hand, and American Telecommunication, Inc. Chile S.A., on the other, executed on or about July 22, 2004"; and (2) to be "subject to the jurisdiction of the Tribunal appointed in the above-referenced arbitration." Pet. ¶ 13. (A copy of the March 22, 2007 letter from ATI's counsel is attached to the Petition as Exhibit "B.") ATI Chile and its four sister companies identified in the March 22, 2007 letter are collectively referred to hereinafter as "ATI."

On July 26, 2006, as a result of ATI's failure to perform its obligations under the Agreement, Comverse filed a Demand for Arbitration and a Statement of Claim with the ICDR (collectively, the "Arbitration Demand"). Pet. ¶ 15. (A copy of the Arbitration Demand (without its exhibits) is attached to the Petition as Exhibit "C.") As described in the Arbitration Demand, Comverse terminated the Agreement and ATI's appointment as a Comverse reseller thereunder, effective July 22, 2006. Pet. ¶ 16; *id.* Ex. C ¶ 9. Two types of post-termination claims were set forth in the Arbitration Demand: (1) a claim concerning Comverse's effort to collect over $20 million that was due and owing from ATI, and (2) the enforcement of ongoing obligations under the Agreement designed to protect Comverse's goodwill and proprietary information (*i.e.*, non-competition and non-disclosure provisions). Pet. ¶ 16; *see generally id.* Ex. C.

On September 7, 2006, ATI submitted a Statement of Defense and Counterclaims, and on January 16, 2007, ATI submitted an Amended Statement of Defense and Counterclaims. Pet. ¶ 17. (A copy of ATI's Amended Statement of Defense and Counterclaims is attached to the Petition as Exhibit "D.") ATI asserted nine counterclaims against Comverse, totaling approximately $75 million in an effort to offset the substantial amounts owed to Comverse, including: (1) breach of warranty obligations; (2) breach of the VAR Agreement by failing to fulfill pending purchase orders or to consult with ATI on termination of the VAR Agreement; (3) breach of the VAR Agreement by failure to pay ATI for supplied technology and services, and certain commissions; (4) breach of the VAR Agreement by failing to provide necessary support services and spare parts to ATI customers; (5) breach of the VAR Agreement by contacting ATI customers within exclusive territories; (6) breach of the VAR Agreement by directly or indirectly inducing or attempting to induce ATI's employees into its employ; (7) breach of the VAR Agreement's implied covenant of good faith and fair dealing; (8) seeking a declaration that the non-competition clause in the VAR Agreement was invalid and unenforceable; and (9) unjust enrichment by Comverse's failure to re-purchase inventory and its refusal to fill certain purchase orders and provide support for long-term support and supply contracts. Pet. ¶ 18; *see generally id.* Ex. D.

The parties agreed to the appointment of a panel of three arbitrators, and on September 11, 2006, October 13, 2006, and October 16, 2006, the three arbitrators were appointed by the ICDR (the "Arbitral Tribunal"). Pet. ¶ 19. The parties engaged in document discovery and submitted fact and expert witness statements, as well as pre-hearing briefs prior to the hearing. *Id.* The hearing was held in New York City on March 19, 20, 21, 22, 23, 26, 27, 28 and 29, 2007 (the "Arbitration Hearing") and was conducted in accordance with the ICDR Procedures, the

procedural orders issued by the Arbitral Tribunal, the joint proposal of the parties regarding the hearing procedure, and the IBA Rules on the Taking of Evidence in International Commercial Arbitration.  *Id.* ¶ 20.  During the Arbitration Hearing, the Arbitral Tribunal heard oral testimony from the witnesses presented by the parties and one additional witness (whose testimony was requested by the Arbitral Tribunal).  *Id.* Following the Arbitration Hearing, the parties submitted post-hearing briefs on May 18, 2007.  *Id.* ¶ 21.  On September 14, 2007, the Arbitral Tribunal requested further briefs from the parties on the issue of damages on one of ATI's counterclaims.  *Id.*  Both parties submitted such briefs on September 29, 2007.  *Id.*

The Arbitration Hearing was declared closed on October 29, 2007, and on November 29, 2007, the Arbitral Tribunal after "having duly heard the proofs and allegations of the Parties" issued the Arbitration Award.  *Id.* ¶ 22.  (A copy of the Arbitration Award is attached to the Petition as Exhibit "E.")  The Arbitration Award is a sixty-five page document that fully analyzes the claims of the parties.  *Id.* ¶ 14.  The Arbitration Award is a "Final Award" pursuant to the ICDR Procedures (Pet. Ex. E at 1) as well as for the purposes of Article 1 of the New York Convention of 1958, on the Recognition and Enforcement of Arbitral Awards (*id.* at 64).

The Arbitral Tribunal awarded Plaintiff-Claimant the following sums:

(i)   US$5,884,799.60 against ATI Chile;

(ii)  US$12,296,346.00 against American Telecommunication do Brasil Ltda;

(iii) US$3,218,714.00 against American Telecommunication Peru S.A.;

(iv)  US$16,438.00 against American Telecommunication Inc. Bolivia S.A.; and

(v)   US$878,978.00 against American Telecommunication Inc. Ecuador ATIECUADOR S.A.

*Id.* at 62.  The Arbitral Tribunal awarded ATI Chile the total sum of US$4,562,193.77 in connection with its third, fifth and sixth counterclaims; for its fourth counterclaim, the Arbitral

Tribunal found in favor of ATI on liability, but held that ATI failed to prove any resulting damages; and dismissed ATI's remaining counterclaims. *Id.* at 62-63. The Arbitral Tribunal awarded simple interest to all parties at the applicable rate for judgments in New York State from the date of the Arbitration Award until the date of payment on all sums. *Id.* at 63. The Arbitral Tribunal further held that all fees and expenses of the arbitration shall be borne equally by Comverse and ATI Chile, and the parties shall bear their own legal costs. *Id.*

DOCSNY-281473v01

**ARGUMENT**

I. **PETITIONER'S MOTION FOR CONFIRMATION OF THE ARBITRATION AWARD AGAINST ATI SHOULD BE GRANTED IN ITS ENTIRETY**

The Arbitration Award was rendered in accordance with the arbitration clause agreed to by the parties as well as the ICDR Procedures, and, accordingly, should be confirmed as a final and binding judgment.

   A. **The Arbitration Award Is Final And Binding, And There Is No Basis For Overturning The Award**

"'Normally, confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" *Vaughn v. Leeds, Morelli & Brown, P.C.*, No. 04 Civ. 8391, 2007 WL 4157275, at *3 (S.D.N.Y. Nov. 19, 2007) (*quoting D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006)). Indeed, "[a] court's review of an award is 'severely limited' so as not unduly to frustrate the goals of arbitration, namely to settle disputes efficiently and avoid long and expensive litigation." *McCarthy Invs., LLC v. Shah*, Nos. 07 Civ. 5617, 07 Civ. 5618, 07 Civ. 5619, 2007 WL 3254418, at *2 (S.D.N.Y. Nov. 1, 2007) (citation omitted).

"The grounds for modifying or vacating an arbitration award are grudgingly narrow." *Companhia de Navegacao Maritima Netumar v. Armada Parcel Serv., Ltd.*, No. 96 Civ. 6441, 2000 WL 60200, at *5 (S.D.N.Y. Jan. 25, 2000) (Leisure, J.). "Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Telenor Mobile Commc'ns AS v. Storm LLC*, No. 07 Civ. 6929, 2007 WL 3274699, at *8 (S.D.N.Y. Nov. 2, 2007) (citation omitted). "Therefore, in almost every instance where a court has been asked to review an arbitration award, the arbitrator's final decision has been left undisturbed. . . . [O]nce parties have elected to go to arbitration, both must live with the consequences." *Companhia de Navegacao*, 2000 WL 60200, at *6 (citation omitted).

Since the VAR Agreement is an agreement affecting commerce, the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.* (2006), governs this dispute.[1]  *See* 9 U.S.C. §§ 1-2; *Citizens Bank v. Alfabco, Inc.*, 539 U.S. 52, 56 (2003) (the reach of the FAA is coextensive with that of the Commerce Clause of the United States Constitution, and applies to disputes that merely "affect commerce," rather than those only "in commerce"); *Shaw Group, Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 120 (2d Cir. 2003).  The grounds enumerated by the FAA for vacating an arbitration award are extremely narrow and "involve corruption, fraud, or some other impropriety on the part of the arbitrators."  *McCarthy Invs.*, 2007 WL 3254418, at *2 (citation omitted); *see generally* 9 U.S.C. §§ 10-11.  *See also Nat'l Bulk Carriers, Inc. v. Princess Mgmt. Co.*, 597 F.2d 819, 825 (2d Cir. 1979) (holding that the criteria under the FAA for vacating an award are "stringent" and only "clear evidence of impropriety" justifies denial of a summary confirmation).  None of the criteria set forth in the FAA for vacating an award is present in this case, and the Arbitration Award should therefore be confirmed in its entirety.

In addition to the statutory authority under the FAA, in the Second Circuit, courts may also vacate an award if it exhibits a "manifest disregard of the law," which is a "doctrine of last resort -- its use is limited only to those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA appl[ies]."  *McCarthy Invs.*, 2007 WL 3254418, at *2 (alteration in original) (internal

---

[1]   The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention") may also apply to this dispute.  "An arbitral award may be enforced under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the 'Convention') if it was pronounced in accordance with foreign law or involve[es] parties domiciled or having their principal place of business outside the enforcing jurisdiction."  *Spector v. Torenberg*, 852 F. Supp. 201, 205 (S.D.N.Y. 1994) (Leisure, J.) (alteration in original) (citation omitted).  "An award fitting this description is enforceable under the Convention even if it is also enforceable under the Federal Arbitration Act (the 'FAA')."  *Id.*  The New York Convention, like the FAA, "sets out narrowly limited bases upon which the Court may decline to recognize and enforce an award," none of which apply in this case.  *See Telenor Mobile*, 2007 WL 3274699, at *8.

quotation marks omitted).  Under the manifest disregard doctrine neither, "erroneous application of rules of law," "the fact that an arbitrator erroneously decided the facts," nor "error or misunderstanding of the law on the part of the arbitrators," is sufficient to vacate an award.  *See Siegel v. Titan Indus. Corp.*, 779 F.2d 891, 892-93 (2d Cir. 1985); *Caja Nacional de Ahorro y Seguros In Liquidation v. Deutsche Ruckversicherung AG*, No. 06 Civ. 5826, 2007 WL 2219421, at *3 (S.D.N.Y. Aug. 1, 2007) (Leisure, J.).  Rather, in order to meet the "manifest disregard" standard, "[t]he governing law alleged to have been ignored by the arbitrators must be well defined, explicit, and clearly applicable."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 934 (2d Cir. 1986).  Courts "are not at liberty to set aside an arbitration panel's award because of an arguable difference regarding the meaning or applicability of laws urged upon it."  *Id.*  There is no evidence here that the Arbitral Panel acted in manifest disregard of the law in rendering the Arbitration Award.  To the contrary, the sixty-five page reasoned Arbitration Award reflects the Arbitral Tribunal's thorough analysis of the facts and governing law with respect to the claims, counterclaims and defenses of the parties.  The Arbitration Award should therefore be confirmed in its entirety.

**CONCLUSION**

For all of the foregoing reasons, Plaintiff-Claimant's Motion For Confirmation Of The Arbitration Award should be granted in its entirety.

Dated: New York, New York
December 7, 2007

                Respectfully submitted,
                DICKSTEIN SHAPIRO LLP

                By: s/Deborah A. Skakel
                    Howard Graff (HG7057)
                    Deborah A. Skakel (DS8599)
                    Lindsay A. Bush (LB0391)
                1177 Avenue of the Americas
                New York, New York 10036
                (212) 277-6500
                Attorneys for Petitioner Comverse, Inc.