Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | **DECLARATION OF**<br>**BROOKE E. PIETRZAK** |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

I, BROOKE E. PIETRZAK, declare as follows:

1.    I am a partner with the law firm of Dorsey & Whitney LLP, attorneys for

respondent American Telecommunication, Inc., Chile S.A. ("ATI Chile") in this action.  I submit

this declaration in support of ATI Chile's Brief In Response To Comverse' Inc.'s Petition To

Confirm Arbitration Award ("Petition to Confirm").

2.      Attached hereto as Exhibit A is a true and correct copy of the Stipulation and Protective Order signed by ATI Chile and Comverse, Inc. ("Comverse") on October 30, 2006 and by David J.A. Cairns, the Chairperson of the Arbitral Tribunal, on November 10, 2006.

3.      Attached hereto as Exhibit B is a true and correct copy of the Value Added Reseller Agreement, without the Schedules thereto, dated July 22, 2004.

4.      Attached hereto as Exhibit C is a true and correct copy of the American Arbitration Association's International Dispute Resolution Procedures, Amended and Effective September 1, 2007.

5.      The Arbitration Award refers to, and is based upon, information that was designated as Confidential during the Arbitration.

6.      ATI Chile has not consented to the public filing of the Arbitration Award.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in New York, New York on January 14, 2008.

/s/ Brooke E. Pietrzak
_____
BROOKE E. PIETRZAK

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of the Arbitration Between    :
                                             :
COMVERSE, INC.,                              :    STIPULATION AND
                                             :    PROTECTIVE ORDER
          Claimant,                          :
                                             :    AAA Case No.
     – and –                                 :    50 494 T 00319 06
                                             :
AMERICAN TELECOMMUNICATION, INC. CHILE S.A., :
                                             :
          Respondent.                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IT IS STIPULATED AND AGREED by and between Claimant Comverse, Inc. ("Comverse") and Respondent American Telecommunication, Inc. Chile S.A. ("ATI"), and is ORDERED by the Arbitration Panel, that the following terms and conditions shall govern the treatment of confidential and proprietary information in this arbitration:

1.    DEFINITIONS: In connection with the information and document exchange in this arbitration, including the production of documents and information that contain confidential, trade secret or other proprietary information, or any other information the disclosure of which would cause competitive harm, embarrassment or oppression to the disclosing individual or entity (hereinafter "Confidential Information"), which a party or nonparty deems to contain Confidential Information, may be designated by such party as "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" pursuant to the terms of this Stipulation and Protective Order. The designation "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" shall apply only to documents or other materials that contain significant competitive or proprietary information, confidential financial or business information, technical information or other trade secrets, which would not be disclosed in the ordinary course

219712.01

of business without an obligation of confidentiality and which if otherwise disclosed would cause the disclosing party competitive harm or could place the receiving party at a competitive advantage.

    2.    DESIGNATION:

    (a)   Production:  Any documents or written information designated to be "CONFIDENTIAL" shall be so designated by the producing party or nonparty at the time of their production by stamping the designated materials with the legend "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY", or if necessary, by separate written statement, or as set forth in Paragraph 3 of this Stipulation and Protective Order.

    (b)   Filing with the American Arbitration Association ("AAA"):  All Confidential Information, properly designated under this Protective Order, that is filed with the AAA during this arbitration, shall be filed under seal in sealed envelopes or other appropriate sealed containers on which shall be labeled with the title of this arbitration, an indication of the nature of the content of such sealed envelope or container, the designation of "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" and a statement substantially as follows:

    FILED UNDER SEAL BY [NAME OF PARTY] PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS ACTION, AND IS TO BE MAINTAINED UNDER SEAL UNTIL FURTHER ORDER OF THE ARBITRATORS

Filing of Confidential Information under seal shall not prevent or limit access in any manner consistent with this Order of that information by the Arbitrators, the AAA or counsel of record for the parties.

    (c)   The designation of any document as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY shall not preclude any party from

2

219712.01



showing such Confidential Information to any person who appears as the author or as an addressee or recipient on the face of the document, or who has been identified by the designating party as having been provided with the document or the information therein by the designating party;

    (d)    Confidential Information shall be used solely for the purposes of this arbitration. However, nothing in this Stipulation and Protective Order is intended to prevent or restrict any party or nonparty from using or disclosing its own Confidential Information in any manner or for any purpose. Neither shall this Order restrict the use or disclosure by a party or nonparty of materials obtained in good faith and independently of discovery in this arbitration or obtained or obtainable from another source or already in the possession or knowledge of a party or nonparty, who is not obligated to maintain such documents in confidence.

    (e)    The terms of this Stipulation and Protective Order shall not prejudice the right of any party to introduce at the arbitration hearing information designated as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY pursuant to this Order.

    3.    REDESIGNATION OF MATERIAL:  A producing party or nonparty may redesignate under Paragraphs 1 through 3 hereof any material that it has previously produced, but did not previously designate as Confidential Information, provided, however, that such "redesignation" shall be effective only as of the date it is received. The redesignating party or nonparty shall notify each other party in writing specifically identifying the documents by production number or otherwise and whether those documents should be redesignated as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY. Upon receipt of such written notice, receiving counsel shall:

3

219712.01

     (a)    immediately take reasonable steps to retrieve any redesignated material in the possession of any person not identified as a "Qualified Person" under Paragraph 6 hereof and notify any person known to have possession of the material of the effect of such designation;

     (b)    if not objecting to the redesignation, affix the appropriate legend on the redesignated material in accordance with Paragraphs 2 and 3 hereof;

     (c)    if objecting to the redesignation, counsel shall treat the materials at issue as designated pending resolution of the objection. Any objections shall be in accordance with Paragraph 5 hereof.

If the materials are redesignated in accordance with the terms of this Stipulation and Protective Order, failure to originally designate those materials as Confidential Material shall not be deemed a waiver of any claims of confidentiality and shall not be used as grounds for a claim of such a waiver.

     4.    PRIVILEGED MATERIAL:  In the event that any privileged materials are inadvertently produced, such production shall not be deemed a waiver of the attorney-client privilege, work-product doctrine or other privilege or immunity.  Upon notification of such inadvertent disclosure, the receiving party shall immediately make every effort to prevent further disclosure of the materials, collect and return any copies of the privileged materials and inform any person(s) having received or reviewed such materials as to the privileged nature of the materials.

     5.    OBJECTIONS:  A party may move the Arbitration Panel for an order that material designated as confidential or privileged information is not, in fact, confidential or privileged.  On such a motion, the party asserting confidentiality or privilege shall have the

4

burden of proving that the information designated CONFIDENTIAL, CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY or PRIVILEGED is Confidential Information as defined in paragraph 1 above or is otherwise entitled to protection. Before such a motion is brought, the parties will attempt to resolve their differences informally. No party shall be obligated to challenge a confidential or privileged designation, and failure to do so shall not preclude a subsequent challenge to such a designation. Designations, challenges to designations, and failures to challenge designations made pursuant to this Order are not an admission or waiver of any party, and are not admissible in evidence on the hearing of any issue in this case, including the issue of whether the information is in fact confidential or privileged.

6.    QUALIFIED PERSONS: Materials designated as Confidential Information may be disclosed or made available by the party or nonparty receiving such information only to a "Qualified Person," as defined below:

(a)    Documents designated as CONFIDENTIAL may be disclosed to:

(i)    the AAA and the Arbitrators;

(ii)    outside counsel of record to the parties to this action, and the members and employees of the law firms of counsel of record, and organizations retained by counsel to provide litigation support services in this action and the employees of those organizations;

(iii)    court reporters, stenographers or translators whose services are used in connection with this action, and other persons working for such reporters, stenographers or translators;

219712.01

(iv)    directors, officers and employees of each party, including in-house counsel, and individuals named as parties, who must see such documents to assist in the prosecution or defense of that party's claims in the lawsuit;

(v)    consultants or experts retained by the parties in connection with this arbitration, and the employees of such experts or consultants who are assisting them in this action. Each consultant or expert must execute the certification set forth as Exhibit B hereto, and the disclosing party shall deliver to all other parties a copy of the executed certification; and

(vi)    such other persons who the parties may designate by written agreement or by Order of the Arbitrators, permitting additional disclosure.

(b)    Documents designated CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY may be disclosed or made available by the party receiving such information only to Qualified Persons as defined in subparagraph 6(a), excluding the parties to this litigation as defined in subparagraph 6(a)(iv);

(c)    Any Qualified Persons under subparagraphs 6(a)(iii), (iv) and (vi), shall – before disclosure or provision of any CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY material - be given a copy of this Order and shall agree in writing in the form attached hereto as Exhibit A, to be bound by the terms of this agreement, and the disclosing party shall promptly deliver to all other parties a copy of the executed agreement;

(d)    Confidential Information may be shown to a Qualified Person as designated in subparagraphs 6(a) (iii), (iv), (v), and (vi), only if the following approval procedure is used:

(i)    the party seeking approval shall provide all other parties (via overnight mail) with:

6

219712.01

        (1)    the name of the designated person;

        (2)    the present employer and title of the designated person; and

        (3)    an executed copy in the form attached hereto as Exhibit A or B, as required, acknowledging that the person will be bound by the terms of this agreement; and

        (ii)    within five (5) days after receipt (as evidenced by the overnight delivery tracking slip) of the information and written acknowledgement described in subparagraph 6(d)(i), any party may object to the person proposed for approval by specifically stating in writing the reasons why that party believes such person should not receive CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY materials. Failure to object within five (5) days shall be deemed as approval of the designated person. No CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials shall be disclosed to a designated person when there is an outstanding objection until such objection is resolved by the Arbitration Panel or the parties, or the fifteen (15) day period set forth in subparagraph 6(d)(iii) has expired without a motion being filed by the objecting party;

        (iii)    if a party objects, the parties shall within seven (7) days from the receipt of the notice of objection (mailed via overnight delivery), confer and attempt to resolve the dispute. If the parties cannot resolve the dispute, then the objecting party may move the Arbitration Panel, within fifteen (15) days from the receipt of the notice of objection, for an order denying access to the designated person of CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials; and

7

(e)  this Order shall be binding on the parties, their agents, successors, heirs, assigns, subsidiaries, employees, and other persons or organizations over which they have control.

7. POST-ARBITRATION: Within forty-five (45) days of the final termination of this action, each party or counsel in possession, custody or control of Confidential Information, or any tabulations, analyses, studies or compilations derived therefrom, shall either destroy or return (at the producing party's option) those materials. Destruction of such materials, including any copies stored electronically, shall be certified in writing by an officer of the receiving party. However, counsel for each party may retain hardcopy abstracts or summaries of discovery materials or copies of materials which contain attorney-work product or which incorporate Confidential Information in documents filed with the AAA or Arbitration Panel.

8. Comverse hereby agrees to indemnify and hold harmless, and to pay or reimburse on demand, ATI, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this agreement and Order by Comverse or by any Qualified Person to whom Comverse has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that ATI disclosed to Comverse.

9. ATI hereby agrees to indemnify and hold harmless, and to pay or reimburse on demand, Comverse, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this agreement and Order by ATI or by any Qualified Person to

8

whom ATI has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS

EYES ONLY materials that Comverse disclosed to ATI.

10. The Arbitration Panel shall retain jurisdiction to enforce the provisions of the Order

and to make such modifications and additions to this Order as the Panel may from time to time

deem appropriate.

Respectfully submitted,

Dated: October 30, 2006

*Deborah A. Skakel*

**DICKSTEIN SHAPIRO LLP**
Howard Graff
Deborah A. Skakel
Lindsay A. Bush
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Claimant Comverse, Inc.

Dated: October 30, 2006

*Brooke E. Pietrzak*

**DORSEY & WHITNEY LLP**
Neil E. McDonell
Brooke Pietrzak
Mario Diaz-Cruz, III
Anthony Rutherford
250 Park Avenue
New York, NY 10177-1500
(212) 415-9200
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

Dated: October ___, 2006

**MONTT Y CIA. S.A.**
Beatriz Lynch
Santiago Montt
Avda. Los Conquistadores 1700, piso 11
Providencia, Santiago
Chile
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

9

219712.01



whom ATI has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that Converse disclosed to ATI.

10.   The Arbitration Panel shall retain jurisdiction to enforce the provisions of the Order and to make such modifications and additions to this Order as the Panel may from time to time deem appropriate.

Respectfully submitted,

Dated:  October ___, 2006

Dated:  October 16, 2006

DICKSTEIN SHAPIRO LLP
Howard Graff
Deborah A. Skakel
Lindsay A. Bush
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Claimant Converse, Inc.

DORSEY & WHITNEY LLP
Neil E. McDonell
Brooke Pietrzak
Mario Diaz-Cruz, III
Anthony Rutherford
250 Park Avenue
New York, NY 10177-1500
(212) 415-9290
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

Dated;  October ___, 2006

MONTT Y CIA. S.A.
Beatriz Lynch
Santiago Montt
Avda. Los Conquistadores 1700, piso 11
Providencia, Santiago
Chile
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

9

21974201

SO ORDERED this 10 day of November, 2006

David J. A. Cairns
Chairperson of Arbitration Panel

219712.01

**EXHIBIT A**

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In the Matter of the Arbitration Between                         :
                                                                 :
COMVERSE, INC.,                                                  :   AAA Case No.
                                                                 :   50 494 T 00319 06
        Claimant,                                      :
                                                                 :
   – and –                                                  :
                                                                 :
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,   :
                                                                 :
        Respondent.                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### NOTICE OF PROTECTIVE ORDER
### AND CONFIDENTIAL UNDERTAKING
### (Non Experts and Consultants)

     I hereby certify my understanding that Confidential and/or Confidential–Attorneys Eyes

Only information will be provided to me by counsel, pursuant to the terms and restrictions of the

Stipulation and Protective Order (the "Order"), entered by the Arbitration Panel, in the

arbitration entitled <u>Comverse, Inc. v. American Telecommunication, Inc. Chile S.A.</u>, Arbitration

No. 50 494 T 00319 06.

     I further certify that my full name and address are: _____

_____ ; my present employer is: _____

_____ ; and the address of my present employment

is: _____ ;

and my present occupation and/or job title or description is: _____.

     I further certify that I have received a copy of the Order and have carefully read and

understand the provisions of the Order, and hereby agree to fully comply with the Order and all

219712.01



of its terms and restrictions as such shall apply to me. I further agree to subject myself to the jurisdiction of the American Arbitration Association International Center for Dispute Resolution for purposes of enforcement of the terms and restrictions of the Order. I further agree that I shall not disclose Confidential or Confidential–Outside Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the termination of this action, or sooner if so requested, I shall return to counsel all Confidential and Confidential–Outside Attorneys Eyes Only material and information in my possession or control, including all copies and excerpts thereof.

I understand that violation of the Order may be punishable by contempt.


Dated: _____, 2006          _____

                                       (Signature)

                                       _____

                                       Print Name


2

219712.01

**EXHIBIT B**

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In the Matter of the Arbitration Between

COMVERSE, INC.,

          Claimant,

  – and –

AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,

          Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AAA Case No.
50 494 T 00319 06

**NOTICE OF PROTECTIVE ORDER**
**AND CONFIDENTIAL UNDERTAKING**
**(Consultants and Experts)**

     I hereby certify that I have been retained as a consultant or expert witness in the action

entitled <u>Comverse, Inc. v. American Telecommunication, Inc. Chile S.A.</u>, Arbitration No. 50 494

T 00319 06. A copy of my *Curriculum Vitae* is attached hereto.

     I further certify my understanding that Confidential and Confidential–Outside Attorneys

Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions

of the Stipulation and Protective Order (the "Order"), entered in this arbitration.

     I further certify that I have been provided a copy of and have read and understand the

Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as

such shall apply to me.    I further agree to subject myself to the jurisdiction of the American

Arbitration Association International Center for Dispute Resolution for purposes of enforcement

of the terms and restrictions of the Order.  I further agree that I shall not disclose Confidential or

219712.01

Confidential–Outside Attorneys Eyes Only information to anyone other than persons permitted

to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the conclusion of my involvement in the litigation, I will return

all Confidential and Confidential–Outside Attorneys Eyes Only material and    information,

summaries, abstracts and indices thereof which come into my possession, and documents or

things which I have prepared relating thereto, to counsel for the party by whom I am employed

or retained.

I understand that violation of the Order may be punishable by contempt.


Dated: _____, 2006          _____

                                         (Signature)

                                         _____

                                         Print Name

2

219712.01

Exhibit B

COMVERSE , INC.
AND
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.

VALUE ADDED RESELLER AGREEMENT





R 000001
CONFIDENTIAL

## Table of Contents

PARTIES AND UNDERSTANDING...................................................................... 1

A. INTRODUCTION

    1.    DEFINITIONS............................................................................... 1

    2.    TERM............................................................................................ 2

    3.    SCOPE OF AGREEMENT............................................................ 2

B. GENERAL OBLIGATIONS OF THE PARTIES

    4.    LICENSES..................................................................................... 3

    5.    TITLE........................................................................................... 5

    6.    COMVERSE'S WARRANTIES.................................................... 5

    7.    ATI'S WARRANTIES.................................................................. 6

    8.    INDEMNIFICATION................................................................... 6

    9.    LIMITATION OF LIABILITY..................................................... 7

    10.    DEFAULT AND OPPORTUNITY TO CURE............................. 7

    11.    TERMINATION.......................................................................... 8

C. SALES

    12.    ORDERS...................................................................................... 9

    13.    ACCEPTANCE OF AND SHIPMENT OF ORDERS................... 9

    14.    CUSTOMER'S CANCELLATION OF A PURCHASE ORDER.... 10

    15.    DELIVERY................................................................................. 10

    16.    ACCEPTANCE OF SYSTEMS.................................................... 10

    17.    PRICE AND PAYMENT TERMS................................................ 10

D. SPECIFIC OBLIGATIONS OF THE PARTIES

    18.    TRAINING AND OTHER COMVERSE OBLIGATIONS............ 13

    19.    OTHER ATI OBLIGATIONS...................................................... 13

    20.    SERVICE LEVEL AGREEMENT/SUPPORT SERVICES............ 13



R 000002
CONFIDENTIAL

E.  PRODUCT MODIFICATIONS

20.    CATEGORIES, COSTS AND OWNERSHIP RIGHTS ...................................................11

F.  LAWS AND REGULATIONS

21.    COUNTRY/INTERNATIONAL ........................................................................11
G.  MISCELLANEOUS

22.    GENERAL PROVISIONS........................................................................................13

## SCHEDULES

| Schedule | Title |
| --- | --- |
| A | Description of the Licensed Software, Equipment and Documentation |
| B | Designated Territories |
| C | End-User Software Sub-License Agreement |
| D | Technical Activity Matrix and Description |
| E | Comverse's Trademarks |
| F | Service Level Agreement/Support Services |
| G | Non-Disclosure Agreement for Distributor's Personnel and Agents |
| H | Installation Hardware Functionality Test Plan |



R 000003
CONFIDENTIAL

## PARTIES AND UNDERSTANDING

This Value Added Reseller Agreement (the "Agreement") is made by and between Comverse, Inc., on behalf of itself and its subsidiaries, with its corporate offices at 100 Quannapowitt Parkway, Wakefield, MA 01880, USA, (hereinafter referred to as "Comverse"), and American Telecommunication, Inc. Chile S.A., with its primary place of business at La Concepción 177, Providencia, Santiago de Chile (hereinafter referred to as "ATI").

WHEREAS, ATI desires to become a Value Added Reseller of Comverse and thereby obtain certain purchasing/licensing and distribution rights to certain of Comverse's enhanced voice messaging and information processing systems; and

WHEREAS, Comverse wishes to grant such rights to ATI upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## A.    INTRODUCTION

1.    DEFINITIONS

1.1    For the purpose of this Agreement, the terms below shall have the following definitions as indicated:

1.1.1    "Effective Date" – the earliest date that a duly authorized officer of both parties sign this Agreement.

1.1.2    "Equipment" – certain enhanced voice messaging and information processing equipment of Comverse as more fully described in Schedule A attached hereto.

1.1.3    "Software" – means the executable (object code) version of Comverse's proprietary computer software as further described in Schedule A attached hereto.

1.1.4    "System(s)" – means collectively the Equipment and Software as those terms are defined above.

1.1.5    "Documentation" – all existing written user manuals, reference manuals, training manuals, release notes and/or other relevant materials as may be further described in Schedule A attached hereto and that are produced by Comverse to assist ATI in instructing the end-user customers on how to use the System, and all such new manuals, release notes and other materials developed during the term of this Agreement by Comverse and/or provided hereunder.

1.1.6    "Collateral Material" – means all marketing documents used to describe the System(s).

1.1.7    "Designated Territories" – unless otherwise specified herein, only those geographic locations as more fully described in Schedule B attached hereto.

1.1.8    "Services" – means the activities for which ATI has primary or support responsibility as described in Schedule D attached hereto.

Release 1.5

R 000004
CONFIDENTIAL

1.1.9   "Non-Disclosure Agreement" -- means the Non-Disclosure Confidentiality Agreement dated October 16, 2003 between the parties and attached hereto as Schedule G.

## 2.   TERM

2.1   The initial term of this Agreement shall commence on the Effective Date and unless otherwise terminated as provided herein, shall continue in full force and effect for two (2) years.

2.2   Upon and after the end of the initial term of this Agreement, this Agreement shall continue in full force and effect, for successive one year terms provided that (a) either party may terminate this Agreement for convenience upon ninety (90) days prior written notice to the other party or (b) this Agreement is not otherwise terminated as provided herein.

## 3.   SCOPE OF AGREEMENT

3.1   Comverse hereby appoints ATI and ATI hereby accepts such appointment, to be a reseller of the Systems, subject to the provisions set forth below.  With respect to the accounts located within Chile, Bolivia, Ecuador, and Peru, and for TIM Brazil in Brazil and Telefonica Celular del Paraguay S.A. in Paraguay, ATI shall be Comverse's exclusive reseller. With respect to the accounts located within Colombia, Uruguay, and Mexico, and for all other accounts located within Brazil and Paraguay, ATI shall be Comverse's non-exclusive reseller. Accounts located within other countries will be handled on a case-by-case basis. In making such appointment, Comverse hereby grants to ATI the rights to market and distribute the Systems in the Designated Territories only, by providing the Services. Comverse agrees to sell and license to ATI, and ATI may purchase and license from Comverse, the System(s) for the purposes of reselling and sublicensing the System(s).

3.1.1   ATI and Comverse shall work together to develop a business plan and market analysis (including sales forecasts) for each account.

3.1.2   ATI and Comverse shall update each business plan and market analysis described above on a yearly basis and one quarter prior to the termination of the current term. Such plan shall include a support implementation plan with respect to each account (including manpower, procedures and processes).  Comverse shall have the right not to pursue any prospective accounts. ATI agrees that the business plan forms the basis for evaluating the success of the business plan developed and agreed upon by the parties.

3.1.3   Comverse shall have the right to distribute Systems in the Designated Territories directly or indirectly to multi-national accounts with facilities in the Designated Territories and to any potential customer who states its refusal to deal directly with ATI  In the event of such distribution by Comverse, compensation for ATI shall be decided on a case by case basis.

3.1.4   ATI agrees that it shall not, directly or indirectly, market, sell, license, lease, distribute and/or otherwise transfer any products similar to, or competitive with, the Systems within the Designated Territories or outside of the Designated Territories during the term of this Agreement and for a period of one year following any termination of this Agreement. The products listed in the attached Schedule I shall be excluded from this non-competition prohibition. The parties agree that this list may change from time to time with any such changes to be put in writing and mutually agreed upon by the parties.

R 000005
CONFIDENTIAL

3.2    In performing its obligations hereunder, ATI shall employ its own personnel and shall be responsible for them and their acts. Comverse shall in no way be liable for ATI, its employees or its agents for any losses, injuries, or damages caused by or attributed to the acts and/or omissions of ATI, its employees, or its agents.

## B.    GENERAL OBLIGATIONS OF THE PARTIES

### 4.    LICENSES

4.1    <u>Software and Documentation</u> – Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, license to distribute and sublicense the Software and the Documentation in the Designated Territories only, for use only on the Equipment on which or with which it was shipped. ATI is granted no rights (a) to the source code version of Software or (b) to translations or derivative works of the Software or the Documentation.

4.1.1    ATI shall hold the Software and Documentation in confidence and agrees not to modify or copy, in whole or in part, the Software and/or Documentation except as described in Section 4.1.4 below. ATI further agrees to take all steps necessary to insure that the Software and Documentation, in whole or in part, are not disclosed to or duplicated for, any unauthorized third parties, including but not limited to those steps ATI would take to protect information, data or other property of its own that it regards as proprietary or confidential.

Except as may be otherwise explicitly authorized in writing by Comverse, ATI agrees it shall not inspect, decompile, disassemble or reverse engineer the Software, or tamper with, bypass or alter the security features of same.

4.1.2    ATI may sublicense the Software in object code form only and the Documentation in the Designated Territories only, without any right of further distribution or sublicensing.

4.1.3    Sublicenses to Software shall be granted by ATI to each end-user customer only pursuant to written sublicense agreements with provisions that substantially conform to the end-user software sublicense set forth in Schedule C attached hereto. All copies of the Software licensed by ATI shall have reproduced on them all copyright and other proprietary notices specified by Comverse. ATI agrees to enforce all such sublicense agreements.

4.1.4    Comverse grants ATI the right to produce copies of translated Documentation and Collateral Material only to the extent required to market to and support the accounts.

4.2    <u>Trademarks</u> -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, non-transferable license to use, in the distribution of the Systems, certain designated trademarks of Comverse as set forth in Schedule E attached hereto.

4.2.1    Except as may be otherwise explicitly authorized in writing by Comverse, ATI shall not remove or alter, nor permit the removal or alteration of, any designated Comverse trademarks, tags, labels or other identifying markings placed by Comverse on any Systems products, packages or containers provided hereunder without the prior written consent of Comverse. In no event shall ATI have the right to market, sell, lease, license or otherwise distribute, directly or indirectly, the Systems under the name of any third party.

R 000006
CONFIDENTIAL

4.2.2    Converse may, at any time, unilaterally add to or delete from the list of trademarks set forth in Schedule E.

5.    **TITLE**

5.1    Title to all risks of loss or of damage to the Equipment shall be transferred from Converse to ATI upon shipment of the Equipment to ATI.

5.2    Title to all Software and Documentation furnished to ATI hereunder, and all intellectual property rights therein, including without limitation all rights in any patents and copyrights, shall remain vested in Converse and its licensors at all times. ATI agrees that the Software, Documentation and any related materials provided hereunder are entitled to protection under the patent and copyright laws of the United States and the Designated Territories, and ATI shall not remove any patent, copyright or other proprietary notices of Comverse or its licensors from same.

6.    **COMVERSE'S WARRANTIES**

6.1    Comverse hereby represents and warrants that it has full right, interest and authority to enter into and perform its obligations under this Agreement.

6.2    Comverse warrants that the Equipment delivered hereunder will be free from material defects in workmanship and materials for a period of one (1) year starting forty-five (45) days after the date of initial shipment of the Equipment to ATI (the "Warranty Period"). If any item of Equipment shall require repair or replacement by Comverse in accordance with such warranty, Comverse will effect replacement or repair as soon as possible but not later than thirty (30) days. Comverse also warrants that the repaired or replacement item will be free from material defects in workmanship and materials for the balance of the Warranty Period of the replaced item, or for ninety (90) days, whichever is longer. Comverse warrants all spare parts will be free from material defects in workmanship and materials for a period of ninety (90) days from the date of installation. Any changes to the Warranty Period ATI may negotiate with end-user customers must be approved in advance by Comverse.

6.3    Comverse warrants that during the Warranty Period, all Software licensed hereunder will substantially conform to Comverse's applicable then current published specifications when delivered. ATI must notify Comverse in writing of any defect in the Software, and if the Software is found to be substantially defective, Comverse's sole obligation under this warranty is to correct such defect in a reasonable manner determined by Comverse. Comverse does not warrant the Software will meet all requirements of ATI or its end-user customers, or that the operation of the Software will be completely error free, or that all Software defects will be corrected. Comverse will correct any and all service affecting Software deficiencies or provide an adequate work-around(s) for same.

6.4    The foregoing warranties above are contingent upon proper use and maintenance of the System by ATI and/or its end-user customers, and are Comverse's sole responsibility hereunder. In addition, however, the foregoing warranties shall not apply to defects or failures in the System due, without limitation, to the following: (i) accident, neglect or misuse; (ii) failure or defect of electrical power, electrical static discharges, external electrical circuitry, air-conditioning or humidity control; (iii) the use of items not provided by Comverse; (iv) unusual stress; or (v) any party other than Comverse or a customer representative trained and certified by Comverse or ATI modifying, adjusting, repairing, servicing or installing the System.

6.5    If Comverse is unable, after reasonable efforts, to repair or replace the Equipment or to correct the Software, ATI's sole remedy shall be the refund of the purchase price paid by it.

R 000007
CONFIDENTIAL

6.6    Upon the expiration of the Warranty Period for each System, Comverse will provide the support services described in the attached Schedule F so long as the end-user customers have signed the Comverse form of support agreement with ATI.

6.7    SUBJECT TO THE FOREGOING WARRANTIES, COMVERSE MAKES NO OTHER WARRANTIES HEREUNDER, WHETHER EXPRESS, IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 7.    ATI'S WARRANTIES

7.1    ATI represents and warrants that it has the full power and authority to enter this Agreement, has obtained all applicable government approvals to enter and to perform this Agreement, will keep such approvals in force, and shall obtain such additional government approvals as may from time to time be required.

7.2    ATI warrants that all ATI personnel and agents who provide services on behalf of ATI hereunder will be fully qualified to provide such services under the laws of the country where such services are provided and trained and approved by Comverse.

7.3    ATI warrants that it shall at all times promote the Systems and Comverse's goodwill and reputation, at its own expense, and shall conduct its business in a highly ethical manner and in accordance with its obligations under this Agreement.

7.4    ATI warrants that, at the request of Comverse, ATI's personnel and agents shall sign non-disclosure agreements with Comverse in the form attached hereto as Exhibit G.

## 8.0    INDEMNIFICATION

8.1    Comverse agrees to defend, indemnify and hold ATI harmless from and against any and all loss, damage, liability or expense (including reasonable attorneys' fees) assessed against ATI or incurred by ATI, arising out of any claim, suit or proceeding brought against ATI asserting or alleging that the System in the form furnished hereunder constitutes an infringement of any United States patent, trademark or copyright, provided ATI notifies Comverse promptly in writing of any such claim, suit or proceeding and gives full and complete authority, information, and assistance to Comverse in the defense of such claim, suit or proceeding, and provided further that Comverse shall have sole control of the defense of any such claim, suit or proceeding and of all negotiations for its settlement or compromise.

8.2    If the System is held to be infringing and its use is enjoined, Comverse shall be discharged from its prospective liabilities if, at its own expense and election, it does one of the following: (1) procure for ATI the right to continue using the System; (2) modify the System so it becomes non-infringing; or (3) remove the System and refund the purchase price paid by ATI for such infringing System(s) the use of which is prevented using an amortization schedule of three (3) years. Comverse shall not have any liability to ATI under this Agreement if any allegation of infringement is based upon the interconnection and/or modification and/or use of the System in combination with other devices not furnished by Comverse where the System would not by itself be infringing, or upon any use of the System for which the System was not designed, or if the infringement arises out of compliance with ATI's specifications or designs or out of modifications made to the System unless such modifications are made by Comverse.

8.3    The foregoing states Comverse's entire liability with respect to infringement of patents, trademarks or copyrights by the System hereunder.



8.4    ATI agrees to defend, indemnify and hold Comverse harmless from and against any and all loss, damage, liability or expenses (including reasonable attorneys' fees) assessed against Comverse or incurred by Comverse, arising out of any claim, suit or proceeding brought against Comverse relating to or arising from (a) ATI's breach of warranties as set forth in Section 7. above and (b) any personal injury (including without limitation death) or property damage caused by or attributed to the acts and/or omissions of ATI, its employees or its agents.



R 000009
CONFIDENTIAL

9.    **LIMITATION OF LIABILITY**

9.1    IN NO EVENT SHALL COMVERSE BE LIABLE HEREUNDER FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF COMVERSE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.2    IN NO EVENT SHALL COMVERSE'S LIABILITY HEREUNDER EXCEED THE AMOUNT RECEIVED FROM ATI BY COMVERSE FOR THE PURCHASE ORDER TO WHICH THE LIABILITY PERTAINS.

10.    **DEFAULT AND OPPORTUNITY TO CURE**

10.1    Subject to the provisions of Section 11.1 below, neither party shall be deemed to be in default under the terms of this Agreement unless the party alleging the default sends a written notice setting forth the nature of the alleged default, and the defaulting party shall fail to substantially cure such default within thirty (30) days following the receipt of such notice.

11.    **TERMINATION**

11.1    <u>For Cause</u> – This Agreement may be terminated by either party upon the failure of the other party to cure any material default following the notice and opportunity to cure set forth in Section 10. above, provided, however, that:

11.1.1    Only twenty (20) days prior written notice by Comverse shall be required and this Agreement shall terminate after said twenty (20) day period if ATI fails to make any payments due hereunder and ATI fails to cure said violation to Comverse's satisfaction within said twenty (20) day period; and

11.1.2    Either Comverse or ATI will have the right to terminate this Agreement immediately without notice to the other party if the other party intentionally or negligently violates any of its obligations under the Non-Disclosure Agreement or Sections 4. or 7 above or in the event that any of ATI's personnel or agents violate any of their obligations set forth in their non-disclosure agreements with Comverse; and

11.1.3    Sixty (60) days prior written notice shall be required and this Agreement shall terminate after said sixty (60) day period if any of the following remain uncured: (i) if the other party becomes insolvent or unable to pay its debts in the ordinary course of its business; (ii) if a voluntary or involuntary petition under applicable bankruptcy laws is filed by or against the other party; (iii) if a receiver is appointed for the business affairs of the other party or the other party makes an assignment for the benefit of creditors; (iv) if the other party liquidates or ceases doing business as a going concern; or (v) if there is a change in the control or majority ownership of ATI not otherwise expressly assented to by Comverse.

11.1.4    Comverse shall have the right to terminate this Agreement immediately in the event that ATI is acquired by a competitor of Comverse.

11.2    <u>For Convenience</u> – This Agreement may be terminated by either party with the appropriate prior written notice pursuant to the provisions of Section 2.2 herein.



R 000010
CONFIDENTIAL

11.3   Remedies — In the event this Agreement is not renewed by ATI or Comverse pursuant to Section 11.2 above or is terminated by Comverse pursuant to Section 11.1 above, then the following shall occur:

11.3.1   Comverse shall fill any pending purchase orders from ATI;

11.3.2   the licenses provided to ATI hereunder shall terminate on the effective date of termination;

11.3.3   all sublicenses granted to the Registered Accounts prior to the effective date of termination shall continue in full force and effect;

11.3.4   any purchase orders received by ATI prior to the effective date of termination must be delivered to Comverse. No commissions will be payable to ATI after termination;

11.3.5   ATI shall notify promptly its accounts in writing that it is no longer an authorized Comverse ATI;

11.3.6   Final plans to transition the accounts to another source of distribution and support shall be determined by Comverse after consultation with ATI; and

11.3.7   Comverse shall have no liability to ATI for damages of any kind, including incidental or consequential damages, on account of such termination or expiration of this Agreement. Without limiting the generality of the foregoing, Comverse shall not be liable to ATI on account of such termination or expiration for reimbursement or damages for the loss of goodwill, prospective profits or anticipated sales, or on account of any expenditures, investment, leases or commitments made by ATI or for any reason whatsoever based upon or growing out of such termination or expiration.

12.   **ORDERS**

12.1   Unless otherwise agreed, the prices for the Systems on all orders placed by ATI hereunder must be stated in U.S. dollars.

12.2   ATI may purchase and license each System for accounts by submitting purchase orders for same by hard copy or facsimile, provided however, that all such orders are subject to acceptance by Comverse's corporate office. Under no circumstances will Comverse accept, or be obligated to accept, purchase orders hereunder directly from any of accounts without the prior written consent of Comverse.

12.3   Except as otherwise provided, ATI will place firm purchase orders for Systems, meaning an end-user customer has issued a purchase order to ATI such that Comverse has at least sixty (60) days lead time before any scheduled shipment of Systems is required. At the time of its placement of an order with Comverse, ATI shall provide Comverse with a letter certifying its receipt of a firm purchase order from an end-user customer. All shipments are subject to availability. Comverse will use reasonable efforts to fill orders with shorter shipping date schedules, provided that Comverse may charge ATI, after consultation, its then current expedite charge for filling such an order as requested. Unless Comverse expressly agrees in writing, no additional or different provisions appearing anywhere on ATI's purchase order shall become part of such order.

13.   **ACCEPTANCE AND SHIPMENT OF ORDERS**



Release 1.5

R 000011
CONFIDENTIAL

13.1 Comverse agrees to notify ATI promptly regarding a) whether Comverse accepts or rejects each of ATI's purchase orders, b) shipping details associated with each order, and c) any subsequent changes in Comverse's delivery schedule and/or shipping plans.

15. **DELIVERY**

15.1 Comverse shall deliver each System to ATI F.O.B, Comverse's principal plant of manufacture. In the absence of specific shipping instructions from ATI, Comverse will select a common and/or freight forwarder carrier, but shall not thereby assume any liability in connection with the shipment of any System delivered hereunder.

15.2 Insurance coverage for in-transit goods, beyond such coverage provided by the common carrier/freight forwarder, is the sole responsibility of the ATI.

16. **ACCEPTANCE OF SYSTEMS**

16.1 Upon delivery to ATI of each System, ATI and Comverse shall work jointly to obtain acceptance from the customer in accordance with mutually agreed upon Acceptance Test Procedures ("ATP"). After complete delivery of a System to the end-user customer, acceptance of a System shall occur on completion of ATP or commercial deployment, whichever occurs first.

17. **PRICE AND PAYMENT TERMS**

17.1 Comverse and ATI will discuss and agree upon the margins, and delivery schedules for each purchase hereunder. ATI agrees that the terms it provides to an end-user customer will be consistent with the terms agreed upon with Comverse.

17.2 Comverse may modify the prices presented to ATI upon sixty (60) days prior written notice to ATI. No such modification shall apply to any items for which Comverse has accepted a purchase order prior to the effective date of such modification.

17.3 All products sold to ATI will be invoiced upon shipment by Comverse. All payments to Comverse shall be made in U.S. dollars. In the event of any default in payment by ATI, Comverse may decline to make further shipments.

17.4 Prices do not include any customs, duties, value added tax, income tax or any other tax or assessment which may be levied by local authorities. Any such amounts levied, whether withheld at source or otherwise, will be added to the prices.

17.5 Without first obtaining Comverse's approval, ATI shall have no right of offset with respect to any payment owed to Comverse due to issues ATI is experiencing with an end-user customer paying ATI in accordance with the agreed upon payment terms between ATI and such end-user customer.

D. **SPECIFIC OBLIGATIONS OF THE PARTIES**

18. **TRAINING AND OTHER COMVERSE OBLIGATIONS**

18.1 Comverse agrees to comply with its requirements as set forth in Schedules D and F including without limitation, the requirements to provide to ATI certain technical training, certification and re-certification services, and to perform certain general localization and sales planning activities.

R 000012
CONFIDENTIAL

19. **OTHER ATI OBLIGATIONS**

19.1 ATI agrees to comply with its requirements as set forth in the attached Schedules D, F and G.

20. **SERVICE LEVEL AGREEMENT/SUPPORT SERVICES**

20.1 The parties agree to comply with each of its respective requirements under the terms of the Service Level Agreement and consistent with the description of support services provided in Schedule F attached hereto.

E. **PRODUCT MODIFICATIONS**

21. **CATEGORIES, COST AND OWNERSHIP RIGHTS**

21.1 The parties agree that from time to time during the term of this Agreement, Comverse may change the System(s) offered hereunder in the form of product modifications and that Comverse may charge ATI for such modifications.

F. **LAWS AND REGULATIONS**

22. **COUNTRY/INTERNATIONAL**

22.1 ATI shall at all times cooperate promptly with Comverse to enable Comverse to comply with the provisions of any United States Export Administration Act, War Powers Act, and any other law or Executive Order relating to control of exports or transfer of technology, and the regulations of the United States Departments of State, Commerce and Defense relating thereto (in present form or as amended in the future) as they may apply to ATI's activities. ATI shall also comply with the requirements of the United States Foreign Corrupt Practices Act and United States Anti-Boycott Regulations (in present form or as amended in the future) as they may apply to ATI's activities hereunder. In particular, with respect to the United States Foreign Corrupt Practices Act, ATI agrees that it and its owners, officers, directors, employees, or agents thereof have not and will not pay, offer, promise, or authorize the payment, directly or indirectly, of any monies or anything of value to any government official or employee, or any political party or candidate for political office for the purpose of influencing such official's acts or decisions to obtain or retain business as contemplated under this Agreement.

22.2 This Agreement and ATI's performance hereunder is specifically made subject to any and all laws, regulations, orders or other restrictions on the export from the United States of America of computer software, hardware, telecommunications equipment and technical knowledge or know-how relating thereto, which may be imposed from time to time by the Government of the United States of America. ATI agrees that Systems purchased/licensed hereunder will not be exported or otherwise transferred, directly or indirectly, in whole or in part, without ATI first obtaining Comverse's written consent and a license from the U.S. Department of Commerce and/or any other appropriate agency of the U.S. Government, as required. ATI further agrees that it will obtain the written assurance of each of its Registered Accounts to which each System is distributed such that each Registered Account will comply with said export control laws, regulations, orders and restrictions.

22.3   ATI shall immediately advise Comverse of any new import or export law, regulation, order or other restriction in the Designated Territories which might affect the implementation of this Agreement and ATI agrees to comply with all each law, regulation, order or restriction.

## G.   MISCELLANEOUS

### 23.   GENERAL PROVISIONS

23.1   All notices required to be given hereunder shall be in writing and shall be deemed given if delivered personally, or if sent by facsimile (whereby the receiving party shall acknowledge receipt of same by facsimile within two (2) business days from receipt of the initial facsimile) with a copy of such notice sent by air mail, to the person identified below at the address as set forth at the beginning of this Agreement, or such other person or address as may be specified in a written notice delivered in accordance with this Section 23.1:

If to COMVERSE:                    Attention:
                                   Legal Department
                                   100 Quannapowitt Parkway
                                   Wakefield, MA  01880

If to ATI:               Attention:
                         _____

23.2   ATI may not assign its rights or obligations hereunder without the prior written consent of Comverse.

23.3   ATI and Comverse agree that during the term of this Agreement and for a period of twelve (12) months thereafter, neither party shall, directly or indirectly, solicit, induce, attempt to induce any employees of the other to its employ.

23.4   This Agreement shall be governed by, and construed in accordance with, the laws of the state of New York, USA, without reference to the conflict of laws provisions thereof and not including the United Nations Convention on Contracts for the International Sale of Goods.

23.5   If any provision of this Agreement is held to be invalid under any applicable law, such provision shall, to the extent of such invalidity, be deemed to be omitted here from, and all other provisions of this Agreement shall continue in full force and effect.

23.6   In the event that any provision of the Schedules to this Agreement are deemed to be in conflict with the provisions of this Agreement, the provisions of this Agreement shall control.

23.7   Any failure by either party to enforce strict performance by the other party of any provision herein shall not constitute a waiver of the right to subsequently enforce such provision or any other provision of this Agreement.

23.8   Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance with the then prevailing Rules of the American Arbitration Association. Any such arbitration shall be held in English. Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems. The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to any award made by the arbitrator(s). Each party shall bear its own cost expenses and fees (including attorneys' fees) incurred in connection with this Section 23.8. The

R 000014
CONFIDENTIAL

parties hereby acknowledge that monetary damages may not be a sufficient remedy for breaches of the Non-Disclosure Agreement or Sections 4 and 5 above and that either party, as appropriate, may be entitled to such injunctive or equitable relief for actions or claims arising solely under the Non-Disclosure Agreement or Sections 4 or 5, as may be deemed proper by a court of competent jurisdiction.

23.9    Neither party shall liable to the other party for any failure to perform hereunder due to contingencies beyond its reasonable control, including but not limited to, strikes, riots, wars, fires, Acts of God, or acts required to comply with any governmental regulations.

23.10    This Agreement and the Non-Disclosure Agreement constitute the entire agreement between Comverse and ATI with respect to the subject matter of this Agreement and supercede all statements, representations, and understandings which have been made by either party or their agents or representatives prior to the execution of this Agreement. No modification of this Agreement shall be binding upon either party unless made in writing and executed on behalf of that party by its duly authorized representative.



R 000015
CONFIDENTIAL

IN WITNESS WHEREOF, the parties hereto have set their hands and seals by a duly authorized representative as of the date(s) written below.

COMVERSE, INC.

_____
Signature

  Brian E. Heffernan
Print Name

  Assistant General Counsel
Title

  July 23, 2004
Date

AMERICAN TELECOMMUNICATIONS, INC. CHILE S.A.

_____
Signature

_____
Print Name

  CEO
Title

  22 / 07 / 04
Date

R 000016
CONFIDENTIAL

Exhibit C

**American Arbitration Association**

*Dispute Resolution Services Worldwide*

International Dispute Resolution PROCEDURES
(Including Mediation and Arbitration Rules)
Amended and Effective September 1, 2007
Summary of Changes

TABLE OF CONTENTS

INTERNATIONAL DISPUTE RESOLUTION PROCEDURES

INTRODUCTION
International Mediation
International Arbitration

INTERNATIONAL MEDIATION RULES
M-1. Agreement of Parties
M-2. Initiation of Mediation
M-3. Representation
M-4. Appointment of the Mediator
M-5. Mediator's Impartiality and Duty to Disclose
M-6. Vacancies
M-7. Date and Responsiblities of the Mediator
M-8. Responsibilities of the Parties
M-9. Privacy
M-10. Confidentiality
M-11. No Stenographic Record
M-12. Termination of Mediation
M-13. Exclusion of Liability
M-14. Interpretation and Application of Procedures
M-15. Deposits
M-16. Expenses

M-17. Cost of Mediation
M-18 Language

INTERNATIONAL ARBITRATION RULES

R-1. Commencing the Arbitration
Notice of Arbitration and Statement of Claim
Statement of Defense and Counterclaim
Amendments to Claims


R-2. The Tribunal
Number of Arbitrators
Appointment of Arbitrators
Impartiality and Independence of Arbitrators
Challenge of Arbitrators

Replacement of an Arbitrator

R-3. General Conditions
Representation
Place of Arbitration
Language
Pleas as to Jurisdiction
Conduct of the Arbitration
Further Written Statements
Notices
Evidence
Hearings
Interim Measures of Protection
Experts
Default
Closure of Hearing
Waiver of Rules
Awards, Decisions and Rulings
Form and Effect of the Award
Applicable Laws and Remedies
Settlement or Other Reasons for Termination
Interpretation or Correction of the Award
Costs
Compensation of Arbitrators
Deposit of Costs
Confidentiality
Exclusion of Liability
Interpretation of Rules
Emergency Measures of Protection


ADMINISTRATIVE FEES
Fees
Refund Schedule
Suspension for Nonpayment
Hearing Room Rental

INTRODUCTION

The international business community uses arbitration to resolve commercial disputes arising in the global marketplace. Supportive laws are in place. The New York Convention of 1958 has been widely adopted, providing a favorable legislative climate that enables the enforcement of arbitration clauses. International commercial arbitration awards are recognized by national courts in most parts of the world, even more than foreign court judgments. A key component to the successful resolution of an international commercial dispute is the role played by the administrative institution. The International Centre for Dispute Resolution ® (ICDR) is the international division of the American Arbitration Association (AAA) charged with the exclusive administration of all of the AAA's international matters. The ICDR's experience, international expertise and multilingual staff forms an integral part of the dispute resolution process. The ICDR's international system is premised on its ability to move the matter forward, facilitate communications, ensure that qualified arbitrators and mediators are appointed, control costs, understand cultural sensitivities, resolve procedural impasses and properly interpret and apply its International Arbitration and Mediation Rules. Additionally, the ICDR has many cooperative agreements with arbitral institutions around the world for facilitating the administration of its international cases.

The parties might wish to submit their dispute to an international mediation prior to arbitration. In mediation, an impartial and independent mediator assists the parties in reaching a settlement but does not have the authority to make a binding decision or award. International Mediation is administered by the ICDR in accordance with its International Mediation Rules. There is no additional administrative fee where parties to a pending arbitration attempt to mediate their dispute under the ICDR's auspices.

If the parties want to adopt mediation as a part of their contractual dispute settlement procedure, they can insert the following mediation clause into their contract in conjunction with a standard arbitration provision:

> *If a dispute arises out of or relates to this contract, or the breach thereof, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation in accordance with the International Mediation Rules of the International Centre for Dispute Resolution before resorting to arbitration, litigation, or some other dispute resolution procedure.*

If the parties want to use a mediator to resolve an existing dispute, they can enter into the following submission:

> *The parties hereby submit the following dispute to mediation administered by the International Centre for Dispute Resolution in accordance with its International Mediation Rules. (The clause may also provide for the qualifications of the mediator(s), method of payment, locale of meetings, and any other item of concern to the parties.)*

The ICDR can schedule the mediation anywhere in the world and will propose a list of specialized international mediators.

International Arbitration

As the ICDR is a division of the AAA, parties can arbitrate future disputes under these rules by inserting either of the following clauses into their contracts:

> *"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules."*

> or

> *"Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be determined by arbitration administered by the American Arbitration Association in accordance with its International Arbitration Rules."*

> The parties may wish to consider adding:

> (a) "The number of arbitrators shall be (one or three)";

> (b) "The place of arbitration shall be (city and/or country)"; or

> (c) "The language(s) of the arbitration shall be _____."

Parties are encouraged, when writing their contracts or when a dispute arises, to request a conference, in person or by telephone, with the ICDR, to discuss an appropriate method for selection of arbitrators or any other matter that might facilitate efficient arbitration of the dispute. Under these rules, the parties are free to adopt any mutually agreeable procedure for appointing arbitrators, or may designate arbitrators upon whom they agree.

Parties can reach agreements concerning appointing arbitrators either when writing their contracts or after a dispute has arisen. This flexible procedure permits parties to utilize whatever method they consider best suits their needs. For example, parties may choose to have a sole arbitrator or a tribunal of three or more. They may agree that arbitrators shall be appointed by the ICDR, or that each side shall designate one arbitrator and those two shall name a third, with the ICDR making appointments if the tribunal is not promptly formed by that procedure. Parties may mutually request the ICDR to submit to them a list of arbitrators from which each can delete names not acceptable to it, or the parties may instruct the ICDR to appoint arbitrators without the submission of lists, or may leave that matter to the sole discretion of the ICDR. Parties also may agree on a variety of other methods for establishing the tribunal. In any event, if parties are unable to agree on a procedure for appointing arbitrators or on the designation of arbitrators, the ICDR, after inviting consultation by the parties, will appoint the arbitrators. The rules thus provide for the fullest exercise of party autonomy, while assuring that the ICDR is available to act if the parties cannot reach mutual agreement. By providing for arbitration under these rules, parties can avoid the uncertainty of having to petition a local court to resolve procedural impasses. These rules, as administered by the IDCR, are intended to provide prompt, effective and economical arbitration services to the global business community.

Whenever a singular term is used in the rules, such as "party," "claimant" or "arbitrator," that term shall include the plural if there is more than one such entity.

Parties filing an international case with the International Centre for Dispute Resolution, or the AAA, may do so by directly contacting the ICDR in New York or the Dublin, Ireland office, or by contacting any one of the AAA's regional offices.

Further information about these rules can be secured by contacting the International Centre for Dispute Resolution at 888-855-9575 or by visiting the ICDR's Web site at www.icdr.org.

INTERNATIONAL MEDIATION RULES

M-1. Agreement of Parties

Whenever parties have agreed in writing to mediate disputes under these International Mediation Rules, or have provided for mediation or conciliation of existing or future international disputes under the auspices of the International Centre for Dispute Resolution, the international division of the American Arbitration Association, or the American Arbitration Association without designating particular rules, they shall be deemed to have made these rules, as amended and in effect as of the date of the submission of the dispute, a part of their agreement.

The parties by mutual agreement may vary any part of these procedures including, but not limited to, agreeing to conduct the mediation via telephone or other electronic or technical means.

M-2. Initiation of Mediation

Any party or parties to a dispute may initiate mediation under the ICDR's auspices by making a request for mediation to any of the ICDR's regional offices or case management centers via telephone, email, regular mail or fax. Requests for mediation may also be filed online via AAA WebFile at www.adr.org.

The party initiating the mediation shall simultaneously notify the other party or parties of the request. The initiating party shall provide the following information to the ICDR and the other party or parties as applicable:

    i.   A copy of the mediation provision of the parties' contract or the parties' stipulation to mediate.
    ii.   The names, regular mail addresses, email addresses, and telephone numbers of all parties to the dispute and representatives, if any, in the mediation.
    iii.   A brief statement of the nature of the dispute and the relief requested.
    iv.   Any specific qualifications the mediator should possess.

Where there is no preexisting stipulation or contract by which the parties have provided for mediation of existing or future disputes under the auspices of the ICDR a party may request the ICDR to invite another party to participate in "mediation by voluntary submission". Upon receipt of such a request, the ICDR will contact the other party or parties involved in the dispute and attempt to obtain a submission to mediation.

## M-3. Representation

Subject to any applicable law, any party may be represented by persons of the party's choice. The names and addresses of such persons shall be communicated in writing to all parties and to the ICDR

## M-4. Appointment of the Mediator

Parties may search the online profiles of the ICDR's Panel of Mediators at www.aaamediation.com in an effort to agree on a mediator. If the parties have not agreed to the appointment of a mediator and have not provided any other method of appointment, the mediator shall be appointed in the following manner:

  i.  Upon receipt of a request for mediation, the ICDR will send to each party a list of mediators from the ICDR's Panel of Mediators. The parties are encouraged to agree to a mediator from the submitted list and to advise the ICDR of their agreement.
 ii.  If the parties are unable to agree upon a mediator, each party shall strike unacceptable names from the list, number the remaining names in order of preference, and return the list to the ICDR If a party does not return the list within the time specified, all mediators on the list shall be deemed acceptable. From among the mediators who have been mutually approved by the parties, and in accordance with the designated order of mutual preference, the ICDR shall invite a mediator to serve.
 iii. If the parties fail to agree on any of the mediators listed, or if acceptable mediators are unable to serve, or if for any other reason the appointment cannot be made from the submitted list, the ICDR shall have the authority to make the appointment from among other members of the Panel of Mediators without the submission of additional lists.

## M-5. Mediator's Impartiality and Duty to Disclose

ICDR mediators are required to abide by the *Model Standards of Conduct for Mediators* in effect at the time a mediator is appointed to a case. Where there is a conflict between the *Model Standards* and any provision of these Mediation Procedures, these Mediation Procedures shall govern. The *Standards* require mediators to (i) decline a mediation if the mediator cannot conduct it in an impartial manner, and (ii) disclose, as soon as practicable, all actual and potential conflicts of interest that are reasonably known to the mediator and could reasonably be seen as raising a question about the mediator's impartiality.

Prior to accepting an appointment, ICDR mediators are required to make a reasonable inquiry to determine whether there are any facts that a reasonable individual would consider likely to create a potential or actual conflict of interest for the mediator. ICDR mediators are required to disclose any circumstance likely to create a presumption of bias or prevent a resolution of the parties' dispute within the time-frame desired by the parties. Upon receipt of such disclosures, the ICDR shall immediately communicate the disclosures to the parties for their comments.

The parties may, upon receiving disclosure of actual or potential conflicts of interest of the mediator, waive such conflicts and proceed with the mediation. In the event that a party disagrees as to whether the mediator shall serve, or in the event that the mediator's conflict of interest might reasonably be viewed as undermining the integrity of the mediation, the mediator shall be replaced.

## M-6. Vacancies

If any mediator shall become unwilling or unable to serve, the ICDR will appoint another mediator, unless the parties agree otherwise, in accordance with section M-4.

## M-7. Duties and Responsibilities of the Mediator

  i.  The mediator shall conduct the mediation based on the principle of party self-determination. Self-determination is the act of coming to a voluntary, uncoerced decision in which each party makes free and informed choices as to process and outcome.
 ii.  The mediator is authorized to conduct separate or ex parte meetings and other communications with the parties and/or their representatives, before, during, and after any scheduled mediation conference. Such communications may be conducted via telephone, in writing, via email,

online, in person or otherwise.

   iii.  The parties are encouraged to exchange all documents pertinent to the relief requested. The mediator may request the exchange of memoranda on issues, including the underlying interests and the history of the parties' negotiations. Information that a party wishes to keep confidential may be sent to the mediator, as necessary, in a separate communication with the mediator.

   iv.  The mediator does not have the authority to impose a settlement on the parties but will attempt to help them reach a satisfactory resolution of their dispute. Subject to the discretion of the mediator, the mediator may make oral or written recommendations for settlement to a party privately or, if the parties agree, to all parties jointly.

   v.  In the event a complete settlement of all or some issues in dispute is not achieved within the scheduled mediation session(s), the mediator may continue to communicate with the parties, for a period of time, in an ongoing effort to facilitate a complete settlement.

   vi.  The mediator is not a legal representative of any party and has no fiduciary duty to any party.

## M-8. Responsibilities of the Parties

The parties shall ensure that appropriate representatives of each party, having authority to consummate a settlement, attend the mediation conference.

Prior to and during the scheduled mediation conference session(s) the parties and their representatives shall, as appropriate to each party's circumstances, exercise their best efforts to prepare for and engage in a meaningful and productive mediation.

## M-9. Privacy

Mediation sessions and related mediation communications are private proceedings. The parties and their representatives may attend mediation sessions. Other persons may attend only with the permission of the parties and with the consent of the mediator.

## M-10. Confidentiality

Subject to applicable law or the parties' agreement, confidential information disclosed to a mediator by the parties or by other participants (witnesses) in the course of the mediation shall not be divulged by the mediator. The mediator shall maintain the confidentiality of all information obtained in the mediation, and all records, reports, or other documents received by a mediator while serving in that capacity shall be confidential.

The mediator shall not be compelled to divulge such records or to testify in regard to the mediation in any adversary proceeding or judicial forum.

The parties shall maintain the confidentiality of the mediation and shall not rely on, or introduce as evidence in any arbitral, judicial, or other proceeding the following, unless agreed to by the parties or required by applicable law:

   i.  Views expressed or suggestions made by a party or other participant with respect to a possible settlement of the dispute;

   ii.  Admissions made by a party or other participant in the course of the mediation proceedings;

   iii.  Proposals made or views expressed by the mediator; or

   iv.  The fact that a party had or had not indicated willingness to accept a proposal for settlement made by the mediator.

## M-11. No Stenographic Record

There shall be no stenographic record of the mediation process.

## M-12. Termination of Mediation

The mediation shall be terminated:

   i.  By the execution of a settlement agreement by the parties; or

   ii.  By a written or verbal declaration of the mediator to the effect that further efforts at mediation would not contribute to a resolution of the parties' dispute; or

   iii.  By a written or verbal declaration of all parties to the effect that the mediation proceedings are terminated; or

   iv.  When there has been no communication between the mediator and any party or party's representative for 21 days following the conclusion of the mediation conference.

M-13. Exclusion of Liability

Neither the ICDR nor any mediator is a necessary party in judicial proceedings relating to the mediation. Neither the ICDR nor any mediator shall be liable to any party for any error, act or omission in connection with any mediation conducted under these procedures.

M-14. Interpretation and Application of Procedures

The mediator shall interpret and apply these procedures insofar as they relate to the mediator's duties and responsibilities. All other procedures shall be interpreted and applied by the ICDR.

M-15. Deposits

Unless otherwise directed by the mediator, the ICDR will require the parties to deposit in advance of the mediation conference such sums of money as it, in consultation with the mediator, deems necessary to cover the costs and expenses of the mediation and shall render an accounting to the parties and return any unexpended balance at the conclusion of the mediation.

M-16. Expenses

All expenses of the mediation, including required traveling and other expenses or charges of the mediator, shall be borne equally by the parties unless they agree otherwise. The expenses of participants for either side shall be paid by the party requesting the attendance of such participants.

M-17. Cost of the Mediation

There is no filing fee to initiate a mediation or a fee to request the ICDR to invite parties to mediate.

The cost of mediation is based on the hourly mediation rate published on the mediator's ICDR profile. This rate covers both mediator compensation and an allocated portion for the ICDR's services. There is a four-hour minimum charge for a mediation conference. Expenses referenced in Section M-16 may also apply. \If a matter submitted for mediation is withdrawn or cancelled or results in a settlement after the agreement to mediate is filed but prior to the mediation conference the cost is $250 plus any mediator time and charges incurred.

The parties will be billed equally for all costs unless they agree otherwise.

If you have question about mediation costs or services visit our website at www.icdr.org or contact us at +01.888.855.9575.

M-18 Language

If the parties have not agreed otherwise, the language(s) of the mediation shall be that of the documents containing the mediation agreement.

Conference Room Rental

The costs described above do not include the use of ICDR conference rooms. Conference rooms are available on a rental basis. Please contact your local ICDR office for availability and rates.

INTERNATIONAL ARBITRATION RULES

Article 1

1. Where parties have agreed in writing to arbitrate disputes under these International Arbitration Rules or have provided for arbitration of an international dispute by the International Centre for Dispute Resolution or the American Arbitration Association without designating particular rules, the arbitration shall take place in accordance with these rules, as in effect at the date of commencement of the arbitration, subject to whatever modifications the parties may adopt in writing.
2. These rules govern the arbitration, except that, where any such rule is in conflict with any provision of the law applicable to the arbitration from which the parties cannot derogate, that provision shall prevail.
3. These rules specify the duties and responsibilities of the administrator, the International Centre for Dispute Resolution, a division of the American Arbitration Association. The administrator may provide services through its Centre, located in New York, or through the facilities of arbitral institutions with which it has agreements of cooperation.

R-1. Commencing the Arbitration Notice of Arbitration and Statement of Claim

Article 2

1. The party initiating arbitration ("claimant") shall give written notice of arbitration to the administrator and at the same time to the party against whom a claim is being made ("respondent").

2. Arbitral proceedings shall be deemed to commence on the date on which the administrator receives the notice of arbitration.

3. The notice of arbitration shall contain a statement of claim including the following:

   (a) a demand that the dispute be referred to arbitration;

   (b) the names, addresses and telephone numbers of the parties;

   (c) a reference to the arbitration clause or agreement that is invoked;

   (d) a reference to any contract out of or in relation to which the dispute arises;

   (e) a description of the claim and an indication of the facts supporting it;

   (f) the relief or remedy sought and the amount claimed; and

   (g) may include proposals as to the means of designating and the number of arbitrators, the place of arbitration and the language(s) of the arbitration.

4. Upon receipt of the notice of arbitration, the administrator shall communicate with all parties with respect to the arbitration and shall acknowledge the commencement of the arbitration.

Statement of Defense and Counterclaim

Article 3

1. Within 30 days after the commencement of the arbitration, a respondent shall submit a written statement of defense, responding to the issues raised in the notice of arbitration, to the claimant and any other parties, and to the administrator.

2. At the time a respondent submits its statement of defense, a respondent may make counterclaims or assert setoffs as to any claim covered by the agreement to arbitrate, as to which the claimant shall within 30 days submit a written statement of defense to the respondent and any other parties and to the administrator.

3. A respondent shall respond to the administrator, the claimant and other parties within 30 days after the commencement of the arbitration as to any proposals the claimant may have made as to the number of arbitrators, the place of the arbitration or the language(s) of the arbitration, except to the extent that the parties have previously agreed as to these matters.

4. The arbitral tribunal, or the administrator if the arbitral tribunal has not yet been formed, may extend any of the time limits established in this article if it considers such an extension justified.

## Amendments to Claims

## Article 4

During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances. A party may not amend or supplement a claim or counterclaim if the amendment or supplement would fall outside the scope of the agreement to arbitrate.

## R-2. The Tribunal

## Number of Arbitrators

## Article 5

If the parties have not agreed on the number of arbitrators, one arbitrator shall be appointed unless the administrator determines in its discretion that three arbitrators are appropriate because of the large size, complexity or other circumstances of the case.

## Appointment of Arbitrators

## Article 6

1. The parties may mutually agree upon any procedure for appointing arbitrators and shall inform the administrator as to such procedure.

2. The parties may mutually designate arbitrators, with or without the assistance of the administrator. When such designations are made, the parties shall notify the administrator so that notice of the appointment can be communicated to the arbitrators, together with a copy of these rules.

3. If within 45 days after the commencement of the arbitration, all of the parties have not mutually agreed on a procedure for appointing the arbitrator(s) or have not mutually agreed on the designation of the arbitrator(s), the administrator shall, at the written request of any party, appoint the arbitrator(s) and designate the presiding arbitrator. If all of the parties have mutually agreed upon a procedure for appointing the arbitrator(s), but all appointments have not been made within the time limits provided in that procedure, the administrator shall, at the written request of any party, perform all functions provided for in that procedure that remain to be performed.

4. In making such appointments, the administrator, after inviting consultation with the parties, shall endeavor to select suitable arbitrators. At the request of any party or on its own initiative, the administrator may appoint nationals of a country other than that of any of the parties.

5. Unless the parties have agreed otherwise no later than 45 days after the commencement of the arbitration, if the notice of arbitration names two or more claimants or two or more respondents, the administrator shall appoint all the arbitrators.

## Impartiality and Independence of Arbitrators

## Article 7

1. Arbitrators acting under these rules shall be impartial and independent. Prior to accepting appointment, a prospective arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts as to the arbitrator's impartiality or independence. If, at any stage during the arbitration, new circumstances arise that may give rise to such doubts, an arbitrator shall promptly disclose such circumstances to the parties and to the administrator. Upon receipt of such information from an arbitrator or a party, the administrator shall communicate it to the other parties and to the tribunal.

2. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any arbitrator, or with any candidate for appointment as party-appointed arbitrator except to advise the candidate of the general nature of the controversy and of the anticipated proceedings and to discuss the candidate's qualifications, availability or independence in relation to the parties, or to discuss the suitability of candidates for selection as a third arbitrator where the parties or party designated arbitrators are to participate in that selection. No party or anyone acting on its behalf shall have any ex parte communication relating to the case with any candidate for presiding arbitrator.

Challenge of Arbitrators

Article 8

1. A party may challenge any arbitrator whenever circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or independence. A party wishing to challenge an arbitrator shall send notice of the challenge to the administrator within 15 days after being notified of the appointment of the arbitrator or within 15 days after the circumstances giving rise to the challenge become known to that party.

2. The challenge shall state in writing the reasons for the challenge.

3. Upon receipt of such a challenge, the administrator shall notify the other parties of the challenge. When an arbitrator has been challenged by one party, the other party or parties may agree to the acceptance of the challenge and, if there is agreement, the arbitrator shall withdraw. The challenged arbitrator may also withdraw from office in the absence of such agreement. In neither case does withdrawal imply acceptance of the validity of the grounds for the challenge.

Article 9

If the other party or parties do not agree to the challenge or the challenged arbitrator does not withdraw, the administrator in its sole discretion shall make the decision on the challenge.

Replacement of an Arbitrator

Article 10

If an arbitrator withdraws after a challenge, or the administrator sustains the challenge, or the administrator determines that there are sufficient reasons to accept the resignation of an arbitrator, or an arbitrator dies, a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

Article 11

1. If an arbitrator on a three-person tribunal fails to participate in the arbitration for reasons other than those identified in Article 10, the two other arbitrators shall have the power in their sole discretion to continue the arbitration and to make any decision, ruling or award, notwithstanding the failure of the third arbitrator to participate. In determining whether to continue the arbitration or to render any decision, ruling or award without the participation of an arbitrator, the two other arbitrators shall take into account the stage of the

arbitration, the reason, if any, expressed by the third arbitrator for such nonparticipation, and such other matters as they consider appropriate in the circumstances of the case. In the event that the two other arbitrators determine not to continue the arbitration without the participation of the third arbitrator, the administrator on proof satisfactory to it shall declare the office vacant, and a substitute arbitrator shall be appointed pursuant to the provisions of Article 6, unless the parties otherwise agree.

2. If a substitute arbitrator is appointed under either Article 10 or Article 11, the tribunal shall determine at its sole discretion whether all or part of any prior hearings shall be repeated.

R-3. General Conditions

Representation

Article 12

Any party may be represented in the arbitration. The names, addresses and telephone numbers of representatives shall be communicated in writing to the other parties and to the administrator. Once the tribunal has been established, the parties or their representatives may communicate in writing directly with the tribunal.

Place of Arbitration

Article 13

1. If the parties disagree as to the place of arbitration, the administrator may initially determine the place of arbitration, subject to the power of the tribunal to determine finally the place of arbitration within 60 days after its constitution. All such determinations shall be made having regard for the contentions of the parties and the circumstances of the arbitration.

2. The tribunal may hold conferences or hear witnesses or inspect property or documents at any place it deems appropriate. The parties shall be given sufficient written notice to enable them to be present at any such proceedings.

Language

Article 14

If the parties have not agreed otherwise, the language(s) of the arbitration shall be that of the documents containing the arbitration agreement, subject to the power of the tribunal to determine otherwise based upon the contentions of the parties and the circumstances of the arbitration. The tribunal may order that any documents delivered in another language shall be accompanied by a translation into the language(s) of the arbitration.

Pleas as to Jurisdiction

Article 15

1. The tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

2. The tribunal shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the tribunal that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

3. A party must object to the jurisdiction of the tribunal or to the arbitrability of a claim or counterclaim no later than the filing of the statement of defense, as provided in Article 3, to the claim or counterclaim that gives rise to the objection. The tribunal may rule on such objections as a preliminary matter or as part of the final award.

## Conduct of the Arbitration

### Article 16

1. Subject to these rules, the tribunal may conduct the arbitration in whatever manner it considers appropriate, provided that the parties are treated with equality and that each party has the right to be heard and is given a fair opportunity to present its case.

2. The tribunal, exercising its discretion, shall conduct the proceedings with a view to expediting the resolution of the dispute. It may conduct a preparatory conference with the parties for the purpose of organizing, scheduling and agreeing to procedures to expedite the subsequent proceedings.

3. The tribunal may in its discretion direct the order of proof, bifurcate proceedings, exclude cumulative or irrelevant testimony or other evidence, and direct the parties to focus their presentations on issues the decision of which could dispose of all or part of the case.

4. Documents or information supplied to the tribunal by one party shall at the same time be communicated by that party to the other party or parties.

## Further Written Statements

### Article 17

1. The tribunal may decide whether the parties shall present any written statements in addition to statements of claims and counterclaims and statements of defense, and it shall fix the periods of time for submitting any such statements.

2. The periods of time fixed by the tribunal for the communication of such written statements should not exceed 45 days. However, the tribunal may extend such time limits if it considers such an extension justified.

## Notices

### Article 18

1. Unless otherwise agreed by the parties or ordered by the tribunal, all notices, statements and written communications may be served on a party by air mail, air courier, facsimile transmission, telex, telegram or other written forms of electronic communication addressed to the party or its representative at its last known address or by personal service.

2. For the purpose of calculating a period of time under these rules, such period shall begin to run on the day following the day when a notice, statement or written communication is received. If the last day of such period is an official holiday at the place received, the period is extended until the first business day which follows. Official holidays occurring during the running of the period of time are included in calculating the period.

## Evidence

### Article 19

1. Each party shall have the burden of proving the facts relied on to support its claim or defense.

2. The tribunal may order a party to deliver to the tribunal and to the other parties a summary of the documents and other evidence which that party intends to present in support of its claim, counterclaim or defense.

3. At any time during the proceedings, the tribunal may order parties to produce other documents, exhibits or other evidence it deems necessary or appropriate.

Hearings

Article 20

1. The tribunal shall give the parties at least 30 days advance notice of the date, time and place of the initial oral hearing. The tribunal shall give reasonable notice of subsequent hearings.

2. At least 15 days before the hearings, each party shall give the tribunal and the other parties the names and addresses of any witnesses it intends to present, the subject of their testimony and the languages in which such witnesses will give their testimony.

3. At the request of the tribunal or pursuant to mutual agreement of the parties, the administrator shall make arrangements for the interpretation of oral testimony or for a record of the hearing.

4. Hearings are private unless the parties agree otherwise or the law provides to the contrary. The tribunal may require any witness or witnesses to retire during the testimony of other witnesses. The tribunal may determine the manner in which witnesses are examined.

5. Evidence of witnesses may also be presented in the form of written statements signed by them.

6. The tribunal shall determine the admissibility, relevance, materiality and weight of the evidence offered by any party. The tribunal shall take into account applicable principles of legal privilege, such as those involving the confidentiality of communications between a lawyer and client.

Interim Measures of Protection

Article 21

1. At the request of any party, the tribunal may take whatever interim measures it deems necessary, including injunctive relief and measures for the protection or conservation of property.

2. Such interim measures may take the form of an interim award, and the tribunal may require security for the costs of such measures.

3. A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with the agreement to arbitrate or a waiver of the right to arbitrate.

4. The tribunal may in its discretion apportion costs associated with applications for interim relief in any interim award or in the final award.

Experts

Article 22

1. The tribunal may appoint one or more independent experts to report to it, in writing, on specific issues

designated by the tribunal and communicated to the parties.

2. The parties shall provide such an expert with any relevant information or produce for inspection any relevant documents or goods that the expert may require. Any dispute between a party and the expert as to the relevance of the requested information or goods shall be referred to the tribunal for decision.

3. Upon receipt of an expert's report, the tribunal shall send a copy of the report to all parties and shall give the parties an opportunity to express, in writing, their opinion on the report. A party may examine any document on which the expert has relied in such a report.

4. At the request of any party, the tribunal shall give the parties an opportunity to question the expert at a hearing. At this hearing, parties may present expert witnesses to testify on the points at issue.

Default

Article 23

1. If a party fails to file a statement of defense within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

2. If a party, duly notified under these rules, fails to appear at a hearing without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may proceed with the arbitration.

3. If a party, duly invited to produce evidence or take any other steps in the proceedings, fails to do so within the time established by the tribunal without showing sufficient cause for such failure, as determined by the tribunal, the tribunal may make the award on the evidence before it.

Closure of Hearing

Article 24

1. After asking the parties if they have any further testimony or evidentiary submissions and upon receiving negative replies or if satisfied that the record is complete, the tribunal may declare the hearings closed.

2. The tribunal in its discretion, on its own motion or upon application of a party, may reopen the hearings at any time before the award is made.

Waiver of Rules

Article 25

A party who knows that any provision of the rules or requirement under the rules has not been complied with, but proceeds with the arbitration without promptly stating an objection in writing thereto, shall be deemed to have waived the right to object.

Awards, Decisions and Rulings

Article 26

1. When there is more than one arbitrator, any award, decision or ruling of the arbitral tribunal shall be made by a majority of the arbitrators. If any arbitrator fails to sign the award, it shall be accompanied by a statement of the reason for the absence of such signature.

2. When the parties or the tribunal so authorize, the presiding arbitrator may make decisions or rulings on questions of procedure, subject to revision by the tribunal.

## Form and Effect of the Award

### Article 27

1. Awards shall be made in writing, promptly by the tribunal, and shall be final and binding on the parties. The parties undertake to carry out any such award without delay.

2. The tribunal shall state the reasons upon which the award is based, unless the parties have agreed that no reasons need be given.

3. The award shall contain the date and the place where the award was made, which shall be the place designated pursuant to Article 13.

4. An award may be made public only with the consent of all parties or as required by law.

5. Copies of the award shall be communicated to the parties by the administrator.

6. If the arbitration law of the country where the award is made requires the award to be filed or registered, the tribunal shall comply with such requirement.

7. In addition to making a final award, the tribunal may make interim, interlocutory or partial orders and awards.

8. Unless otherwise agreed by the parties, the administrator may publish or otherwise make publicly available selected awards, decisions and rulings that have been edited to conceal the names of the parties and other identifying details or that have been made publicly available in the course of enforcement or otherwise.

## Applicable Laws and Remedies

### Article 28

1. The tribunal shall apply the substantive law(s) or rules of law designated by the parties as applicable to the dispute. Failing such a designation by the parties, the tribunal shall apply such law(s) or rules of law as it determines to be appropriate.

2. In arbitrations involving the application of contracts, the tribunal shall decide in accordance with the terms of the contract and shall take into account usages of the trade applicable to the contract.

3. The tribunal shall not decide as amiable compositeur or ex aequo et bono unless the parties have expressly authorized it to do so.

4. A monetary award shall be in the currency or currencies of the contract unless the tribunal considers another currency more appropriate, and the tribunal may award such pre-award and post-award interest, simple or compound, as it considers appropriate, taking into consideration the contract and applicable law.

5. Unless the parties agree otherwise, the parties expressly waive and forego any right to punitive, exemplary or similar damages unless a statute requires that compensatory damages be increased in a specified manner. This provision shall not apply to any award of arbitration costs to a party to compensate for dilatory or bad faith conduct in the arbitration.

Settlement or Other Reasons for Termination

Article 29

1. If the parties settle the dispute before an award is made, the tribunal shall terminate the arbitration and, if requested by all parties, may record the settlement in the form of an award on agreed terms. The tribunal is not obliged to give reasons for such an award.

2. If the continuation of the proceedings becomes unnecessary or impossible for any other reason, the tribunal shall inform the parties of its intention to terminate the proceedings. The tribunal shall thereafter issue an order terminating the arbitration, unless a party raises justifiable grounds for objection.

Interpretation or Correction of the Award

Article 30

1. Within 30 days after the receipt of an award, any party, with notice to the other parties, may request the tribunal to interpret the award or correct any clerical, typographical or computation errors or make an additional award as to claims presented but omitted from the award.

2. If the tribunal considers such a request justified, after considering the contentions of the parties, it shall comply with such a request within 30 days after the request.

Costs

Article 31

The tribunal shall fix the costs of arbitration in its award. The tribunal may apportion such costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case.

Such costs may include:

    (a) the fees and expenses of the arbitrators;

    (b) the costs of assistance required by the tribunal, including its experts;

    (c) the fees and expenses of the administrator;

    (d) the reasonable costs for legal representation of a successful party; and

    (e) any such costs incurred in connection with an application for interim or emergency relief pursuant to Article 21.

Compensation of Arbitrators

Article 32

Arbitrators shall be compensated based upon their amount of service, taking into account their stated rate of compensation and the size and complexity of the case. The administrator shall arrange an appropriate daily or hourly rate, based on such considerations, with the parties and with each of the arbitrators as soon as practicable after the commencement of the arbitration. If the parties fail to agree on the terms of compensation, the administrator shall establish an appropriate rate and communicate it in writing to the parties.

Case 1:07-cv-11121-PKL-HBP     Document 18-4     Filed 01/14/2008     Page 18 of 21
Deposit of Costs

## Article 33

1. When a party files claims, the administrator may request the filing party to deposit appropriate amounts as an advance for the costs referred to in Article 31, paragraphs (a), (b) and (c).

2. During the course of the arbitral proceedings, the tribunal may request supplementary deposits from the parties.

3. If the deposits requested are not paid in full within 30 days after the receipt of the request, the administrator shall so inform the parties, in order that one or the other of them may make the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings.

4. After the award has been made, the administrator shall render an accounting to the parties of the deposits received and return any unexpended balance to the parties.

Confidentiality

## Article 34

Confidential information disclosed during the proceedings by the parties or by witnesses shall not be divulged by an arbitrator or by the administrator. Except as provided in Article 27, unless otherwise agreed by the parties, or required by applicable law, the members of the tribunal and the administrator shall keep confidential all matters relating to the arbitration or the award.

Exclusion of Liability

## Article 35

The members of the tribunal and the administrator shall not be liable to any party for any act or omission in connection with any arbitration conducted under these rules, except that they may be liable for the consequences of conscious and deliberate wrongdoing.

Interpretation of Rules

## Article 36

The tribunal shall interpret and apply these rules insofar as they relate to its powers and duties. The administrator shall interpret and apply all other rules.

Emergency Measures of Protection

## Article 37

1. Unless the parties agree otherwise, the provisions of this Article 37 shall apply to arbitrations conducted under arbitration clauses or agreements entered on or after May 1, 2006.
2. A party in need of emergency relief prior to the constitution of the tribunal shall notify the administrator and all other parties in writing of the nature of the relief sought and the reasons why such relief is required on an emergency basis. The application shall also set forth the reasons why the party is entitled to such relief. Such notice may be given by e-mail, facsimile transmission, or other reliable means, but must include a statement certifying that all other parties have been notified or an explanation of the steps taken in good faith to notify other parties.
3. Within one business day of receipt of notice as provided in paragraph 2, the administrator shall appoint a single emergency arbitrator from a special panel of emergency arbitrators designated to rule on emergency applications. Prior to accepting appointment, a prospective emergency arbitrator shall disclose to the administrator any circumstance likely to give rise to justifiable doubts to the arbitrator's impartiality or independence. Any challenge to the appointment of the emergency arbitrator must be made within one business day of the communication by the administrator to the parties of the appointment of the emergency arbitrator and the circumstances disclosed.

4.  The emergency arbitrator shall as soon as possible, but in any event within two business days of appointment, establish a schedule for consideration of the application for emergency relief. Such schedule shall provide a reasonable opportunity to all parties to be heard, but may provide for proceedings by telephone conference or on written submissions as alternatives to a formal hearing. The emergency arbitrator shall have the authority vested in the tribunal under Article 15, including the authority to rule on her/his own jurisdiction, and shall resolve any disputes over the applicability of this Article 37.

5.  The emergency arbitrator shall have the power to order or award any interim or conservancy measure the emergency arbitrator deems necessary, including injunctive relief and measures for the protection or conservation of property. Any such measure may take the form of an interim award or of an order. The emergency arbitrator shall give reasons in either case. The emergency arbitrator may modify or vacate the interim award or order for good cause shown.

6.  The emergency arbitrator shall have no further power to act after the tribunal is constituted. Once the tribunal has been constituted, the tribunal may reconsider, modify or vacate the interim award or order of emergency relief issued by the emergency arbitrator. The emergency arbitrator may not serve as a member of the tribunal unless the parties agree otherwise.

7.  Any interim award or order of emergency relief may be conditioned on provision by the party seeking such relief of appropriate security.

8.  A request for interim measures addressed by a party to a judicial authority shall not be deemed incompatible with this Article 37 or with the agreement to arbitrate or a waiver of the right to arbitrate. If the administrator is directed by a judicial authority to nominate a special master to consider and report on an application for emergency relief, the administrator shall proceed as in Paragraph 2 of this article and the references to the emergency arbitrator shall be read to mean the special master, except that the special master shall issue a report rather than an interim award.

9.  The costs associated with applications for emergency relief shall initially be apportioned by the emergency arbitrator or special master, subject to the power of the tribunal to determine finally the apportionment of such costs.

## ADMINISTRATIVE FEES

The administrative fees of the ICDR are based on the amount of the claim or counterclaim. Arbitrator compensation is not included in this schedule. Unless the parties agree otherwise, arbitrator compensation and administrative fees are subject to allocation by the arbitrator in the award.

Fees

An initial filing fee is payable in full by a filing party when a claim, counterclaim or additional claim is filed. A case service fee will be incurred for all cases that proceed to their first hearing. This fee will be payable in advance at the time that the first hearing is scheduled. This fee will be refunded at the conclusion of the case if no hearings have occurred.

However, if the administrator is not notified at least 24 hours before the time of the scheduled hearing, the case service fee will remain due and will not be refunded.

These fees will be billed in accordance with the following schedule:

| Amount of Claim | Initial Filing Fee | Case Service Fee |
|---|---|---|
| Above $0 to $10,000 | $750 | $200 |
| Above $10,000 to $75,000 | $950 | $300 |
| Above $75,000 to $150,000 | $1,800 | $750 |
| Above $150,000 to $300,000 | $2,750 | $1,250 |
| Above $300,000 to $500,000 | $4,250 | $1,750 |
| Above $500,000 to $1,000,000 | $6,000 | $2,500 |
| Above $1,000,000 to $5,000,000 | $8,000 | $3,250 |
| Above $5,000,000 to $10,000,000 | $10,000 | $4,000 |
| Above $10,000,000 * | | |
| Nonmonetary Claims** | $3,250 | $1,250 |

Fee Schedule for Claims in Excess of $10 Million .

The following is the fee schedule for use in disputes involving claims in excess of $10 million. If you have any questions, please consult your local AAA office or case management center.

| Claim Size | Fee | Case Service Fee |
|---|---|---|
| $10 million and above | Base fee of $ 12,500 plus .01% of the amount of claim above $ 10 million. | $6,000 |
| | Filing fees capped at $65,000 | |

** This fee is applicable only when a claim or counterclaim is not for a monetary amount. Where a monetary claim amount is not known, parties will be required to state a range of claims or be subject to the highest possible filing fee.

Fees are subject to increase if the amount of a claim or counterclaim is modified after the initial filing date. Fees are subject to decrease if the amount of a claim or counterclaim is modified before the first hearing.

The minimum fees for any case having three or more arbitrators are $2,750 for the filing fee, plus a $1,250 case service fee.

Parties on cases held in abeyance for one year by agreement, will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the other party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be closed.

Refund Schedule

The ICDR offers a refund schedule on filing fees. For cases with claims up to $75,000, a minimum filing fee of $300 will not be refunded. For all other cases, a minimum fee of $500 will not be refunded. Subject to the minimum fee requirements, refunds will be calculated as follows:

' 100% of the filing fee, above the minimum fee, will be refunded if the case is settled or withdrawn within five calendar days of filing.

' 50% of the filing fee will be refunded if the case is settled or withdrawn between six and 30 calendar days of filing.

' 25% of the filing fee will be refunded if the case is settled or withdrawn between 31 and 60 calendar days of filing. No refund will be made once an arbitrator has been appointed (this includes one arbitrator on a three-arbitrator panel). No refunds will be granted on awarded cases.

Note: the date of receipt of the demand for arbitration with the ICDR will be used to calculate refunds of filing fees for both claims and counterclaims.

Suspension for Nonpayment

If arbitrator compensation or administrative charges have not been paid in full, the administrator may so inform the parties in order that one of them may advance the required payment. If such payments are not made, the tribunal may order the suspension or termination of the proceedings. If no arbitrator has yet been appointed, the ICDR may suspend the proceedings.

Hearing Room Rental

The fees described above do not cover the rental of hearing rooms, which are available on a rental basis. Check with the ICDR for availability and rates.

Case 1:07-cv-11121-PKL-HBP    Document 18-4    Filed 01/14/2008    Page 21 of 21

© 2007 American Arbitration Association, Inc. All rights reserved. These Rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these Rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.

AAA175

- AAA MISSION & PRINCIPLES
- PRIVACY POLICY
- TERMS OF USE
- TECHNICAL RECOMMENDATIONS
- ©2007 AMERICAN ARBITRATION ASSOCIATION. ALL RIGHTS RESERVED