**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| COMVERSE, INC.,<br><br>Petitioner,<br><br>-v-<br><br>AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A.,<br><br>Respondents. | Case No. 07-cv-11121-PKL<br><br>ECF CASE<br><br>**DECLARATION OF DEBORAH A. SKAKEL IN SUPPORT OF PETITIONER'S APPLICATION TO COMPEL RESPONDENT AMERICAN TELECOMMUNICATION, INC. CHILE S.A. TO RESPOND TO INFORMATION SUBPOENAS** |

Deborah A. Skakel states as follows:

1.      I am a member of Dickstein Shapiro LLP, attorneys for Petitioner Comverse, Inc. ("Comverse"), and respectfully submit this Declaration in support of Comverse's motion seeking an Order of this Court, pursuant to Rule 37(a) of the Federal Rules of Civil Procedure: (i) compelling Respondent American Telecommunication, Inc. Chile S.A. ("ATI Chile" or "Respondent"), to respond in full to the Information Subpoena served upon it pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, in connection with the enforcement of the Judgment entered against it in this action; (ii) compelling ATI Chile to respond in full to the Information Subpoenas served upon it pursuant to Rule 69(a) of the Federal Rules of Civil Procedure, in connection with the enforcement of the Default Judgment entered against American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A. and American

Telecommunication Peru S.A. (collectively, "ATI's Sister Companies") in this action; and (iii) granting Petitioner its attorneys' fees and costs incurred in connection with this application.

2.    Comverse, ATI Chile, and ATI's Sister Companies participated in a binding arbitration in New York (the "Arbitration"). The Arbitral Tribunal, after "having duly heard the proofs and allegations of the Parties," issued the Arbitration Award. The Arbitration Award awarded Comverse a total of US$22,295,275.60 – allocated among ATI Chile and each of its Sister Companies. The Arbitration Award awarded ATI Chile the total sum of US$4,562,193.77 for the counterclaims it asserted in the Arbitration. ATI Chile and ATI's Sister Companies were all represented by Dorsey & Whitney LLP ("Dorsey & Whitney") and Chilean counsel throughout the course of the Arbitration, through the submission of the final post-hearing briefs to the Arbitral Panel in September 2007 and until (at least) the issuance of the Arbitration Award in late November 2007.

3.    The Arbitration Agreement (signed by ATI Chile) expressly states that "[t]he parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to [sic] any award made by the arbitrator(s)." Value Added Reseller Agreement ("VAR Agreement") § 23.8, a true and correct copy of which is annexed hereto as Exhibit A.

4.    Further, during the course of the Arbitration, ATI's counsel made an express representation on March 22, 2007, that ATI's Sister Companies agreed to be bound by that same clause, thus evidencing ATI's Sister Companies' consent to the jurisdiction of the New York Courts in connection with the Arbitration Award. A true and correct copy of the March 22, 2007 letter from ATI's counsel is annexed hereto as Exhibit B.

5.    Notwithstanding ATI Chile's and ATI's Sister Companies' express consent to the jurisdiction of this Court in connection with the Arbitration Award, and Dorsey & Whitney's continued representation of the ATI entities, on December 12, 2007, Neil McDonell of Dorsey &

2

Whitney refused to accept service of Comverse's Petition To Confirm The Arbitration Award

(the "Petition") on behalf of ATI Chile or ATI's Sister Companies and stated:

> I am simply not authorized to accept service of the petition on behalf of any of the ATI companies. As you know, Dorsey & Whitney LLP represented the ATI respondents in the arbitration proceedings, but that does not give us authority to accept service of the petition on their behalf.

A true and correct copy of Mr. McDonell's December 12, 2007 email is annexed hereto as

Exhibit C.

      6.     As a result of this ploy, Comverse was forced to spend time and money making an

application to this Court for an Order For Alternative Method of Service of Process pursuant to

Rule 4(h)(2) of the Federal Rules of Civil Procedure (see docket entries 5-7).[1]  Comverse's

application was granted on December 13, 2007, and this Court directed service upon ATI Chile

and ATI's Sister Companies by, inter alia, service upon Dorsey & Whitney (see docket number

3).

      7.     On December 7, 2007, Comverse filed its Petition To Confirm The Arbitration

Award (see docket entry 1).  On January 3, 2008, Mr. McDonell of Dorsey & Whitney sent an

email stating:

> I did not advise you on December 12, 2007, or at any other time, that we represent the ATI entities in connection with Comverse's SDNY proceeding to confirm the arbitration award. To the contrary, I made clear that we represented those entities only in connection with the arbitration. . . .
>
> ***We have subsequently been retained by American Telecommunication, Inc. Chile S.A. ("ATI Chile"), alone, to respond on its behalf to Comverse's petition to confirm the arbitration award, which -- as you know -- includes an award in ATI Chile's favor against Comverse. We have not been retained***

---

[1]     Notably, in a related action in this Court, Comverse v. American Telecommunication, Inc. Chile S.A., 06 Civ. 6825 (PKL), Comverse made an identical request for an alternative method of service in connection with its application for injunctive relief in aid of arbitration, which was granted by this Court.

DOCSNY-299537

> *to appear in the SDNY proceeding on behalf of any of the other*
> *ATI entities that participated in the arbitration, and thus we will*
> *be appearing in the SDNY proceeding solely for ATI Chile.*

(Emphasis added).  A true and correct copy of Mr. McDonell's January 3, 2008 email is annexed

hereto as Exhibit D.

8.      On January 14, 2008, ATI Chile filed a Brief In Response To Comverse, Inc.'s

Petition To Confirm Arbitration Award, in which ATI Chile sought to confirm the Arbitral

Award in its entirety for the purpose of having the amount awarded to ATI Chile for its

counterclaims offset against the amount awarded to Comverse against ATI Chile (see docket

entry 16).  Not surprisingly, ATI's Sister Companies failed to respond to Comverse's Petition.

9.      On February 4, 2008, this Court granted Comverse's Petition and confirmed the

Arbitration Award in its entirety.  A true and correct copy of this Court's Order, dated February

4, 2008, is annexed hereto as Exhibit E.  On that same date, this Court entered a Judgment

against ATI Chile in the amount of US$1,342,312.47, and a Default Judgment against ATI's

Sister Companies in the following amounts:  US$12,499,488.37 against American

Telecommunication do Brasil Ltda.; US$3,271,888.92 against American Telecommunication

Peru S.A.; US$16,709.56 against American Telecommunication Inc. Bolivia S.A.; and

US$893,499.20 against American Telecommunication Inc. Ecuador ATIECUADOR S.A.  True

and correct copies of the Judgment and Default Judgment are annexed hereto as Exhibits F and

G, respectively.

10.     After the issuance of the Judgments against ATI Chile and ATI's Sister

Companies, none of the ATI entities made any effort whatsoever to satisfy the Judgments.

Indeed, counsel for Comverse began requesting assurances from Dorsey & Whitney regarding

payment as far back as December 2007:

> In light of your continuing representation of the ATI entities, as
> well as Comverse's continuing concerns as to ATI's intention and

4

ability to pay the significant amounts under the Award (concerns that are heightened by your apparent "lack of authority" to accept service on behalf of any of the ATI entities), are you authorized to provide any assurances as to whether the ATI entities are ready, willing and able to pay the sums due under the Award?

Ex. C.

11.     Not surprisingly, counsel for ATI did not respond to the request for assurances posed by counsel for Comverse.  Again on February 13, 2008, counsel for Comverse sought information from Dorsey & Whitney regarding "whether and when any amount of either or both judgments will be paid."  A true and correct copy of my February 13, 2008 letter, with enclosures, is annexed hereto as Exhibit H.  On that same date, counsel for Comverse served Dorsey & Whitney with a courtesy copy of the Restraining Notice and Information Subpoena directed to ATI Chile that Comverse indicated it would serve after expiration of the ten-day mandatory stay set forth in Rule 62(a) of the Federal Rules of Civil Procedure.  Ex. H.

12.     Once again, counsel for Comverse received no response from Dorsey & Whitney regarding its second request for assurances.  Accordingly, on February 19, 2008, Comverse formally served Dorsey & Whitney, by hand, with a copy of the Restraining Notice and Information Subpoena with Restraining Notice regarding Judgment Debtor ATI Chile as well as Information Subpoenas regarding ATI Chile's knowledge of its Sister Companies' assets and other information that would assist Comverse in collecting the judgment against ATI's Sister Companies.  See Affidavit of Service, sworn to March 3, 2008, a true and correct copy of which is annexed hereto as Exhibit I.  Comverse also served Restraining Notices on ATI's Sister Companies at their business addresses.

13.     On February 22, 2008 (four days before ATI Chile's responses to the Information Subpoenas were due), Dorsey & Whitney contacted counsel for Comverse seeking a three-week extension until March 18, 2008 to respond to the Information Subpoenas "because it is the

summer holiday in Chile right now and we therefore have not been able to discuss the requests with" ATI Chile. A true and correct copy of Dorsey & Whitney's February 22 and 26, 2008 emails is annexed hereto as Exhibit J. On that same date, Dorsey & Whitney stated that "[b]efore any information is provided, please be advised that the parties will need to execute a Confidentiality Order. I will prepare a draft, along the lines of the Confidentiality Order Comverse previously agreed to [i.e., during the arbitration], . . . ." Id.

14.    The draft Confidentiality Order provided by counsel for ATI Chile was nothing more than a sham to further delay ATI Chile from having to provide meaningful responses to the Information Subpoenas. Specifically, according to the proposed Confidentiality Order, a true and correct copy of which, along with Dorsey & Whitney's February 29, 2008 transmittal email, is annexed hereto as Exhibit K:

> The designation "CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY" shall apply only to documents or other materials that contain significant competitive or proprietary information, **confidential financial or business information**, technical information or other trade secrets, which would not be disclosed in the ordinary course of business without an obligation of confidentiality and/or which if otherwise disclosed would cause the disclosing party competitive harm or could place the receiving party at a competitive disadvantage.

Ex. K at 1-2 (emphasis added).

15.    A letter writing exchange between counsel for both parties ensued. See Exs. L-N, hereto, which are true and correct copies of letters dated March 4, 2008, March 10, 2008 and March 13, 2008, respectively. In its letters, Comverse challenged ATI's assertion that it had any right to request Attorneys' Eyes Only or confidential treatment of information Comverse needs to use – and share with third parties – in order to attempt to satisfy the Judgment that ATI Chile refuses to pay. See Exs. L, N. In an effort to satisfy ATI Chile's purported concerns about the potential misuse of its financial information, Comverse offered to: (1) "[u]se the information ATI

Chile provides in response to the Information Subpoena solely for the purpose of judgment enforcement"; and (2) "[u]se the provisions of CPLR Article 52 in enforcing the judgments in a manner consistent with CPLR 5420 – i.e., refrain from unreasonable annoyance and abuse in the use of the CPLR enforcement procedures." Ex. N.

16.    Wanting more than that to which it is entitled, and consistent with its strategy of avoidance and delay, ATI Chile rejected Comverse's offer.  Instead, in its Objections and Responses to the Information Subpoenas (the "Responses"), a true and correct copy of which is annexed hereto as Exhibit O, ATI Chile provides no information regarding the key categories of information relating to ATI Chile's assets (i.e., bank account information, financial statements and payments to creditors) because a "suitable protective order" had not been entered into between the parties. Ex. O at 2, Resps. to Req. Nos. 10, 18, 28.  In its Responses concerning the ATI Sister Companies, true and correct copies of which are annexed hereto as Exhibit P, ATI Chile also disclaimed basic knowledge regarding the financial condition of ATI's Sister Companies – at least one of whom is owned almost entirely by ATI Chile.  See Ex. P Resps. to Req. Nos. 16-17.

17.    ATI Chile also refuses to be forthcoming with respect to the Information Subpoenas served in connection with its Sister Companies' assets.  Throughout the course of the Arbitration Hearings, ATI Chile's executives testified regarding the affairs of ATI Chile and its Sister Companies, providing detailed information concerning the operations of its Sister Companies in connection with their counterclaims against Comverse..  As far back as the first hearing in this case in this Court (in connection with Comverse's preliminary injunction application in aid of arbitration), it became apparent that Luis Nuñez, ATI's CEO, was the "legal representative" of and had knowledge regarding ATI's Sister Companies.  As Victor Acuña, a member of ATI Chile's board of directors, testified:

> Q:    With whom would you suggest I speak in order to determine whether any of the ATI sister companies have pending bids in Latin America?
>
> A:    I would say the legal representative, this Mr. Nuñez.
>
> Q:    The gentleman that you referred to as the CEO.
>
> A:    Right

See Transcript of September 13, 2006 Hearing in Comverse v. American Telecommunication, Inc. Chile S.A., 06 Civ. 6825 (PKL), at 63 (relevant excerpts of the Transcript are annexed hereto as Exhibit Q).

18.    According to official records obtained by Comverse's counsel in Brazil, ATI Chile owns approximately 98% of the shares of American Telecommunication do Brasil Ltda. Yet ATI Chile stated the following in its response to a question in one of the Information Subpoenas:

> Request No. 16:
>
> Has the debtor [ATI Brasil] given you a statement of his [sic] financial condition?
>
> Response to Request No. 16:
>
> No.

Ex. P (Resps. to Reqs. Re:  American Telecommunication do Brasil Ltda.).

19.    Following receipt of ATI Chile's Responses, counsel for the parties engaged in additional email correspondence.  See Exhibits R-T, hereto, which are true and correct copies of emails (with attachments) dated March 21, 2008, March 24, 2008 and March 25, 2008, respectively.

20.    Despite Dorsey & Whitney's communications and the purported legal authority in support of their demand for a confidential-attorneys' eyes only protective order, and as I noted to Brooke Pietrzak of Dorsey & Whitney:  (a) ATI Chile has not provided any controlling legal

authority to support its position regarding confidentiality; and (b) the official records regarding ATI Brasil indicate that ATI Chile owns approximately 98% of ATI Brasil.

21.     I hereby certify that, as reflected in the letters and emails referenced above, I have in good faith conferred with ATI's counsel in an effort to obtain the requested disclosure without court action.

22.     Today at approximately 2:05 p.m., I emailed Ms. Pietrzak to inform her that we were going to Court this afternoon to make this application.

23.     No previous application for the relief requested herein has been made in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        March 25, 2008

_____
        Deborah A. Skakel (DS8599)

9

# EXHIBIT A

COMVERSE , INC.
AND
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.

VALUE ADDED RESELLER AGREEMENT



## Table of Contents

PARTIES AND UNDERSTANDING......................................................................................1

A.  INTRODUCTION

   1.     DEFINITIONS.....................................................................................1

   2.     TERM ................................................................................................2

   3.     SCOPE OF AGREEMENT..................................................................2

B.  GENERAL OBLIGATIONS OF THE PARTIES

   4.     LICENSES..........................................................................................3

   5.     TITLE ................................................................................................5

   6.     COMVERSE'S WARRANTIES............................................................5

   7.     ATI'S WARRANTIES ........................................................................6

   8.     INDEMNIFICATION .........................................................................6

   9.     LIMITATION OF LIABILITY.............................................................7

   10.    DEFAULT AND OPPORTUNITY TO CURE.......................................7

   11.    TERMINATION .................................................................................8

C.  SALES

   12.    ORDERS............................................................................................9

   13.    ACCEPTANCE OF AND SHIPMENT OF ORDERS .............................9

   14.    CUSTOMER'S CANCELLATION OF A PURCHASE ORDER ...............10

   15.    DELIVERY ........................................................................................10

   16.    ACCEPTANCE OF SYSTEMS ...........................................................10

   17.    PRICE AND PAYMENT TERMS........................................................10

D.  SPECIFIC OBLIGATIONS OF THE PARTIES

   18.    TRAINING AND OTHER COMVERSE OBLIGATIONS.......................13

   19.    OTHER ATI OBLIGATIONS .............................................................13

   20.    SERVICE LEVEL AGREEMENT/SUPPORT SERVICES........................13



**E. PRODUCT MODIFICATIONS**

20.    CATEGORIES, COSTS AND OWNERSHIP RIGHTS ..................................................11

**F. LAWS AND REGULATIONS**

21.    COUNTRY/INTERNATIONAL ..................................................................................11

**G. MISCELLANEOUS**

22.    GENERAL PROVISIONS ........................................................................................13

## SCHEDULES

| Schedule | Title |
|---|---|
| A | Description of the Licensed Software, Equipment and Documentation |
| B | Designated Territories |
| C | End-User Software Sub-License Agreement |
| D | Technical Activity Matrix and Description |
| E | Comverse's Trademarks |
| F | Service Level Agreement/Support Services |
| G | Non-Disclosure Agreement for Distributor's Personnel and Agents |
| H | Installation Hardware Functionality Test Plan |



## PARTIES AND UNDERSTANDING

This Value Added Reseller Agreement (the "Agreement") is made by and between Comverse, Inc., on behalf of itself and its subsidiaries, with its corporate offices at 100 Quannapowitt Parkway, Wakefield, MA 01880, USA, (hereinafter referred to as "Comverse"), and American Telecommunication, Inc. Chile S.A., with its primary place of business at La Concepción 177, Providencia, Santiago de Chile (hereinafter referred to as "ATI").

**WHEREAS,** ATI desires to become a Value Added Reseller of Comverse and thereby obtain certain purchasing/licensing and distribution rights to certain of Comverse's enhanced voice messaging and information processing systems; and

**WHEREAS,** Comverse wishes to grant such rights to ATI upon the terms and conditions set forth herein.

**NOW, THEREFORE,** in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## A.　INTRODUCTION

**1.　DEFINITIONS**

1.1　For the purpose of this Agreement, the terms below shall have the following definitions as indicated:

1.1.1　"Effective Date" -- the earliest date that a duly authorized officer of both parties sign this Agreement.

1.1.2　"Equipment" -- certain enhanced voice messaging and information processing equipment of Comverse as more fully described in Schedule A attached hereto.

1.1.3　"Software" - means the executable (object code) version of Comverse's proprietary computer software as further described in Schedule A attached hereto.

1.1.4　"System(s)" -- means collectively the Equipment and Software as those terms are defined above.

1.1.5　"Documentation" -- all existing written user manuals, reference manuals, training manuals, release notes and/or other relevant materials as may be further described in Schedule A attached hereto and that are produced by Comverse to assist ATI in instructing the end-user customers on how to use the System, and all such new manuals, release notes and other materials developed during the term of this Agreement by Comverse and/or provided hereunder.

1.1.6　"Collateral Material" -- means all marketing documents used to describe the System(s).

1.1.7　"Designated Territories" -- unless otherwise specified herein, only those geographic locations as more fully described in Schedule B attached hereto.

1.1.8　"Services" -- means the activities for which ATI has primary or support responsibility as described in Schedule D attached hereto.

Release 1.5

1.1.9   "Non-Disclosure Agreement" -- means the Non-Disclosure Confidentiality Agreement dated October 16, 2003 between the parties and attached hereto as Schedule G.

## 2.   TERM

2.1   The initial term of this Agreement shall commence on the Effective Date and unless otherwise terminated as provided herein, shall continue in full force and effect for two (2) years.

2.2   Upon and after the end of the initial term of this Agreement, this Agreement shall continue in full force and effect, for successive one year terms provided that (a) either party may terminate this Agreement for convenience upon ninety (90) days prior written notice to the other party or (b) this Agreement is not otherwise terminated as provided herein.

## 3.   SCOPE OF AGREEMENT

3.1   Comverse hereby appoints ATI and ATI hereby accepts such appointment, to be a reseller of the Systems, subject to the provisions set forth below.  With respect to the accounts located within Chile, Bolivia, Ecuador, and Peru, and for TIM Brazil in Brazil and Telefonica Celular del Paraguay S.A. in Paraguay, ATI shall be Comverse's exclusive reseller. With respect to accounts located within Colombia, Uruguay, and Mexico, and for all other accounts located within Brazil and Paraguay, ATI shall be Comverse's non-exclusive reseller. Accounts located within other countries will be handled on a case-by-case basis.  In making such appointment, Comverse hereby grants to ATI the rights to market and distribute the Systems in the Designated Territories only, by providing the Services.  Comverse agrees to sell and license to ATI, and ATI may purchase and license from Comverse, the System(s) for the purposes of reselling and sublicensing the System(s).

3.1.1   ATI and Comverse shall work together to develop a business plan and market analysis (including sales forecasts) for each account.

3.1.2   ATI and Comverse shall update each business plan and market analysis described above on a yearly basis and one quarter prior to the termination of the current term. Such plan shall include a support implementation plan with respect to each account (including manpower, procedures and processes).  Comverse shall have the right not to pursue any prospective accounts.  ATI agrees that the business plan forms the basis for evaluating the success of the business plan developed and agreed upon by the parties.

3.1.3   Comverse shall have the right to distribute Systems in the Designated Territories directly or indirectly to multi-national accounts with facilities in the Designated Territories and to any potential customer who states its refusal to deal directly with ATI.  In the event of such distribution by Comverse, compensation for ATI shall be decided on a case by case basis.

3.1.4   ATI agrees that it shall not, directly or indirectly, market, sell, license, lease, distribute and/or otherwise transfer any products similar to, or competitive with, the Systems within the Designated Territories or outside of the Designated Territories during the term of this Agreement and for a period of one year following any termination of this Agreement. The products listed in the attached Schedule I shall be excluded from this non-competition prohibition. The parties agree that this list may change from time to time with any such changes to be put in writing and mutually agreed upon by the parties.

3.2    In performing its obligations hereunder, ATI shall employ its own personnel and shall be responsible for them and their acts. Comverse shall in no way be liable for ATI, its employees or its agents for any losses, injuries, or damages caused by or attributed to the acts and/or omissions of ATI, its employees, or its agents.

## B.    GENERAL OBLIGATIONS OF THE PARTIES

## 4.    LICENSES

4.1    <u>Software and Documentation</u> -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, license to distribute and sublicense the Software and the Documentation in the Designated Territories only, for use only on the Equipment on which or with which it was shipped. ATI is granted no rights (a) to the source code version of Software or (b) to translations or derivative works of the Software or the Documentation.

4.1.1    ATI shall hold the Software and Documentation in confidence and agrees not to modify or copy, in whole or in part, the Software and/or Documentation except as described in Section 4.1.4 below.  ATI further agrees to take all steps necessary to insure that the Software and Documentation, in whole or in part, are not disclosed to or duplicated for, any unauthorized third parties, including but not limited to those steps ATI would take to protect information, data or other property of its own that it regards as proprietary or confidential.

Except as may be otherwise explicitly authorized in writing by Comverse, ATI agrees it shall not inspect, decompile, disassemble or reverse engineer the Software, or tamper with, bypass or alter the security features of same.

4.1.2    ATI may sublicense the Software in object code form only and the Documentation in the Designated Territories only, without any right of further distribution or sublicensing.

4.1.3    Sublicenses to Software shall be granted by ATI to each end-user customer only pursuant to written sublicense agreements with provisions that substantially conform to the end-user software sublicense set forth in Schedule C attached hereto. All copies of the Software licensed by ATI shall have reproduced on them all copyright and other proprietary notices specified by Comverse. ATI agrees to enforce all such sublicense agreements.

4.1.4    Comverse grants ATI the right to produce copies of translated Documentation and Collateral Material only to the extent required to market to and support the accounts.

4.2    <u>Trademarks</u> -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, non-transferable license to use, in the distribution of the Systems, certain designated trademarks of Comverse as set forth in Schedule E attached hereto.

4.2.1    Except as may be otherwise explicitly authorized in writing by Comverse, ATI shall not remove or alter, nor permit the removal or alteration of, any designated Comverse trademarks, tags, labels or other identifying markings placed by Comverse on any Systems products, packages or containers provided hereunder without the prior written consent of Comverse. In no event shall ATI have the right to market, sell, lease, license or otherwise distribute, directly or indirectly, the Systems under the name of any third party.

a

Release 1.5

4.2.2    Comverse may, at any time, unilaterally add to or delete from the list of trademarks set forth in Schedule E.

## 5.    TITLE

5.1    Title to and all risks of loss or of damage to the Equipment shall be transferred from Comverse to ATI upon shipment of the Equipment to ATI.

5.2    Title to all Software and Documentation furnished to ATI hereunder, and all intellectual property rights therein, including without limitation all rights in any patents and copyrights, shall remain vested in Comverse and its licensors at all times. ATI agrees that the Software, Documentation and any related materials provided hereunder are entitled to protection under the patent and copyright laws of the United States and the Designated Territories, and ATI shall not remove any patent, copyright or other proprietary notices of Comverse or its licensors from same.

## 6.    COMVERSE'S WARRANTIES

6.1    Comverse hereby represents and warrants that it has full right, interest and authority to enter into and perform its obligations under this Agreement.

6.2    Comverse warrants that the Equipment delivered hereunder will be free from material defects in workmanship and materials for a period of one (1) year starting forty-five (45) days after the date of initial shipment of the Equipment to ATI (the "Warranty Period"). If any item of Equipment shall require repair or replacement by Comverse in accordance with such warranty, Comverse will effect replacement or repair as soon as possible but not later than thirty (30) days. Comverse also warrants that the repaired or replacement item will be free from material defects in workmanship and materials for the balance of the Warranty Period of the replaced item, or for ninety (90) days, whichever is longer. Comverse warrants all spare parts will be free from material defects in workmanship and materials for a period of ninety (90) days from the date of installation. Any changes to the Warranty Period ATI may negotiate with end-user customers must be approved in advance by Comverse.

6.3    Comverse warrants that during the Warranty Period, all Software licensed hereunder will substantially conform to Comverse's applicable then current published specifications when delivered. ATI must notify Comverse in writing of any defect in the Software, and if the Software is found to be substantially defective, Comverse's sole obligation under this warranty is to correct such defect in a reasonable manner determined by Comverse. Comverse does not warrant that the Software will meet all requirements of ATI or its end-user customers, or that the operation of the Software will be completely error free, or that all Software defects will be corrected. Comverse will correct any and all service affecting Software deficiencies or provide an adequate work-around(s) for same.

6.4    The foregoing warranties above are contingent upon proper use and maintenance of the System by ATI and/or its end-user customers, and are Comverse's sole responsibility hereunder. In addition, however, the foregoing warranties shall not apply to defects or failures in the System due, without limitation, to the following: (i) accident, neglect or misuse; (ii) failure or defect of electrical power, electrical static discharges, external electrical circuitry, air-conditioning or humidity control; (iii) the use of items not provided by Comverse; (iv) unusual stress; or (v) any party other than Comverse or a customer representative trained and certified by Comverse or ATI modifying, adjusting, repairing, servicing or installing the System.

6.5    If Comverse is unable, after reasonable efforts, to repair or replace the Equipment or to correct the Software, ATI's sole remedy shall be the refund of the purchase price paid by it.

FISCALIA
AMERICAN TELECOMMUNICATION, INC.

Release 1.5

6.6    Upon the expiration of the Warranty Period for each System, Comverse will provide the support services described in the attached Schedule F so long as the end-user customers have signed the Comverse form of support agreement with ATI.

6.7    SUBJECT TO THE FOREGOING WARRANTIES, COMVERSE MAKES NO OTHER WARRANTIES HEREUNDER, WHETHER EXPRESS, IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

## 7.    ATI'S WARRANTIES

7.1    ATI represents and warrants that it has the full power and authority to enter this Agreement, has obtained all applicable government approvals to enter and to perform this Agreement, will keep such approvals in force, and shall obtain such additional government approvals as may from time to time be required.

7.2    ATI warrants that all ATI personnel and agents who provide services on behalf of ATI hereunder will be fully qualified to provide such services under the laws of the country where such services are provided and trained and approved by Comverse.

7.3    ATI warrants that it shall at all times promote the Systems and Comverse's goodwill and reputation, at its own expense, and shall conduct its business in a highly ethical manner and in accordance with its obligations under this Agreement.

7.4    ATI warrants that, at the request of Comverse, ATI's personnel and agents shall sign non-disclosure agreements with Comverse in the form attached hereto as Exhibit G.

## 8.0    INDEMNIFICATION

8.1    Comverse agrees to defend, indemnify and hold ATI harmless from and against any and all loss, damage, liability or expense (including reasonable attorneys' fees) assessed against ATI or incurred by ATI, arising out of any claim, suit or proceeding brought against ATI asserting or alleging that the System in the form furnished hereunder constitutes an infringement of any United States patent, trademark or copyright, provided ATI notifies Comverse promptly in writing of any such claim, suit or proceeding and gives full and complete authority, information, and assistance to Comverse in the defense of such claim, suit or proceeding, and provided further that Comverse shall have sole control of the defense of any such claim, suit or proceeding and of all negotiations for its settlement or compromise.

8.2    If the System is held to be infringing and its use is enjoined, Comverse shall be discharged from its prospective liabilities if, at its own expense and election, it does one of the following: (1) procure for ATI the right to continue using the System; (2) modify the System so it becomes non-infringing; or (3) remove the System and refund the purchase price paid by ATI for such infringing System(s) the use of which is prevented using an amortization schedule of three (3) years. Comverse shall not have any liability to ATI under this Agreement if any allegation of infringement is based upon the interconnection and/or modification and/or use of the System in combination with other devices not furnished by Comverse where the System would not by itself be infringing, or upon any use of the System for which the System was not designed, or if the infringement arises out of compliance with ATI's specifications or designs or out of modifications made to the System unless such modifications are made by Comverse.

8.3    The foregoing states Comverse's entire liability with respect to infringement of patents, trademarks or copyrights by the System hereunder.

8.4    ATI agrees to defend, indemnify and hold Comverse harmless from and against any and all loss, damage, liability or expenses (including reasonable attorneys' fees) assessed against Comverse or incurred by Comverse, arising out of any claim, suit or proceeding brought against Comverse relating to or arising from (a) ATI's breach of warranties as set forth in Section 7. above and (b) any personal injury (including without limitation death) or property damage caused by or attributed to the acts and/or omissions of ATI, its employees or its agents.

9.  **LIMITATION OF LIABILITY**

9.1  IN NO EVENT SHALL COMVERSE BE LIABLE HEREUNDER FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF COMVERSE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.2  IN NO EVENT SHALL COMVERSE'S LIABILITY HEREUNDER EXCEED THE AMOUNT RECEIVED FROM ATI BY COMVERSE FOR THE PURCHASE ORDER TO WHICH THE LIABILITY PERTAINS.

10.  **DEFAULT AND OPPORTUNITY TO CURE**

10.1  Subject to the provisions of Section 11.1 below, neither party shall be deemed to be in default under the terms of this Agreement unless the party alleging the default sends a written notice setting forth the nature of the alleged default, and the defaulting party shall fail to substantially cure such default within thirty (30) days following the receipt of such notice.

11.  **TERMINATION**

11.1  <u>For Cause</u> – This Agreement may be terminated by either party upon the failure of the other party to cure any material default following the notice and opportunity to cure set forth in Section 10, above, provided, however, that:

11.1.1  Only twenty (20) days prior written notice by Comverse shall be required and this Agreement shall terminate after said twenty (20) day period if ATI fails to make any payments due hereunder and ATI fails to cure said violation to Comverse's satisfaction within said twenty (20) day period; and

11.1.2  Either Comverse or ATI will have the right to terminate this Agreement immediately without notice to the other party if the other party intentionally or negligently violates any of its obligations under the Non-Disclosure Agreement or Sections 4, or 7 above or in the event that any of ATI's personnel or agents violate any of their obligations set forth in their non-disclosure agreements with Comverse; and

11.1.3  Sixty (60) days prior written notice shall be required and this Agreement shall terminate after said sixty (60) day period if any of the following remain uncured: (i) if the other party becomes insolvent or unable to pay its debts in the ordinary course of its business; (ii) if a voluntary or involuntary petition under applicable bankruptcy laws is filed by or against the other party; (iii) if a receiver is appointed for the business affairs of the other party or the other party makes an assignment for the benefit of creditors; (iv) if the other party liquidates or ceases doing business as a going concern; or (v) if there is a change in the control or majority ownership of ATI not otherwise expressly assented to by Comverse.

11.1.4  Comverse shall have the right to terminate this Agreement immediately in the event that ATI is acquired by a competitor of Comverse.

11.2  <u>For Convenience</u> -- This Agreement may be terminated by either party with the appropriate prior written notice pursuant to the provisions of Section 2.2 herein.



7

Release 1.5

11.3    Remedies — In the event this Agreement is not renewed by ATI or Comverse pursuant to Section 11.2 above or is terminated by Comverse pursuant to Section 11.1 above, then the following shall occur:

11.3.1    Comverse shall fill any pending purchase orders from ATI;

11.3.2    the licenses provided to ATI hereunder shall terminate on the effective date of termination;

11.3.3    all sublicenses granted to the Registered Accounts prior to the effective date of termination shall continue in full force and effect;

11.3.4    any purchase orders received by ATI prior to the effective date of termination must be delivered to Comverse. No commissions will be payable to ATI after termination;

11.3.5    ATI shall notify promptly its accounts in writing that it is no longer an authorized Comverse ATI;

11.3.6    Final plans to transition the accounts to another source of distribution and support shall be determined by Comverse after consultation with ATI; and

11.3.7    Comverse shall have no liability to ATI for damages of any kind, including incidental or consequential damages, on account of such termination or expiration of this Agreement. Without limiting the generality of the foregoing, Comverse shall not be liable to ATI on account of such termination or expiration for reimbursement or damages for the loss of goodwill, prospective profits or anticipated sales, or on account of any expenditures, investment, leases or commitments made by ATI or for any reason whatsoever based upon or growing out of such termination or expiration.

## 12.    ORDERS

12.1    Unless otherwise agreed, the prices for the Systems on all orders placed by ATI hereunder must be stated in U.S. dollars.

12.2    ATI may purchase and license each System for accounts by submitting purchase orders for same by hard copy or facsimile, provided however, that all such orders are subject to acceptance by Comverse's corporate office. Under no circumstances will Comverse accept, or be obligated to accept, purchase orders hereunder directly from any of accounts without the prior written consent of Comverse.

12.3    Except as otherwise provided, ATI will place firm purchase orders for Systems, meaning an end-user customer has issued a purchase order to ATI such that Comverse has at least sixty (60) days lead time before any scheduled shipment of Systems is required. At the time of its placement of an order with Comverse, ATI shall provide Comverse with a letter certifying its receipt of a firm purchase order from an end-user customer. All shipments are subject to availability. Comverse will use reasonable efforts to fill orders with shorter shipping date schedules, provided that Comverse may charge ATI, after consultation, its then current expedite charge for filling such an order as requested. Unless Comverse expressly agrees in writing, no additional or different provisions appearing anywhere on ATI's purchase order shall become part of such order.

## 13.    ACCEPTANCE AND SHIPMENT OF ORDERS



Release 1.5

8

13.1   Comverse agrees to notify ATI promptly regarding a) whether Comverse accepts or rejects each of ATI's purchase orders, b) shipping details associated with each order, and c) any subsequent changes in Comverse's delivery schedule and/or shipping plans.

## 15.   DELIVERY

15.1   Comverse shall deliver each System to ATI F.O.B. Comverse's principal plant of manufacture. In the absence of specific shipping instructions from ATI, Comverse will select a common and/or freight forwarder carrier, but shall not thereby assume any liability in connection with the shipment of any System delivered hereunder.

15.2   Insurance coverage for in-transit goods, beyond such coverage provided by the common carrier/freight forwarder, is the sole responsibility of the ATI.

## 16.   ACCEPTANCE OF SYSTEMS

16.1   Upon delivery to ATI of each System, ATI and Comverse shall work jointly to obtain acceptance from the customer in accordance with mutually agreed upon Acceptance Test Procedures ("ATP").    After complete delivery of a System to the end-user customer, acceptance of a System shall occur on completion of ATP or commercial deployment, whichever occurs first.

## 17.   PRICE AND PAYMENT TERMS

17.1    Comverse and ATI will discuss and agree upon the margins, and delivery schedules for each purchase hereunder.  ATI agrees that the terms it provides to an end-user customer will be consistent with the terms agreed upon with Comverse.

17.2   Comverse may modify the prices presented to ATI upon sixty (60) days prior written notice to ATI.  No such modification shall apply to any items for which Comverse has accepted a purchase order prior to the effective date of such modification.

17.3   All products sold to ATI will be invoiced upon shipment by Comverse.  All payments to Comverse shall be made in U.S. dollars.   In the event of any default in payment by ATI, Comverse may decline to make further shipments.

17.4   Prices do not include any customs, duties, value added tax, income tax or any other tax or assessment which may be levied by local authorities.  Any such amounts levied, whether withheld at source or otherwise, will be added to the prices.

17.5   Without first obtaining Comverse's approval, ATI shall have no right of offset with respect to any payment owed to Comverse due to issues ATI is experiencing with an end-user customer paying ATI in accordance with the agreed upon payment terms between ATI and such end-user customer.

## D.   SPECIFIC OBLIGATIONS OF THE PARTIES

## 18.   TRAINING AND OTHER COMVERSE OBLIGATIONS

18.1   Comverse agrees to comply with its requirements as set forth in Schedules D and F including without limitation, the requirements to provide to ATI certain technical training, certification and re-certification services, and to perform certain general localization and sales placement activities.

19.    **OTHER ATI OBLIGATIONS**

19.1    ATI agrees to comply with its requirements as set forth in the attached Schedules D, F and G.

20.    **SERVICE LEVEL AGREEMENT/SUPPORT SERVICES**

20.1    The parties agree to comply with each of its respective requirements under the terms of the Service Level Agreement and consistent with the description of support services provided in Schedule F attached hereto.

E.    **PRODUCT MODIFICATIONS**

21.    **CATEGORIES, COST AND OWNERSHIP RIGHTS**

21.1    The parties agree that from time to time during the term of this Agreement, Comverse may change the System(s) offered hereunder in the form of product modifications and that Comverse may charge ATI for such modifications.

F.    **LAWS AND REGULATIONS**

22.    **COUNTRY/INTERNATIONAL**

22.1    ATI shall at all times cooperate promptly with Comverse to enable Comverse to comply with the provisions of any United States Export Administration Act, War Powers Act, and any other law or Executive Order relating to control of exports or transfer of technology, and the regulations of the United States Departments of State, Commerce and Defense relating thereto (in present form or as amended in the future) as they may apply to ATI's activities. ATI shall also comply with the requirements of the United States Foreign Corrupt Practices Act and United States Anti-Boycott Regulations (in present form or as amended in the future) as they may apply to ATI's activities hereunder.  In particular, with respect to the United States Foreign Corrupt Practices Act, ATI agrees that it and its owners, officers, directors, employees, or agents thereof have not and will not pay, offer, promise, or authorize the payment, directly or indirectly, of any monies or anything of value to any government official or employee, or any political party or candidate for political office for the purpose of influencing such official's acts or decisions to obtain or retain business as contemplated under this Agreement.

22.2    This Agreement and ATI's performance hereunder is specifically made subject to any and all laws, regulations, orders or other restrictions on the export from the United States of America of computer software, hardware, telecommunications equipment and technical knowledge or know-how relating thereto, which may be imposed from time to time by the Government of the United States of America. ATI agrees that Systems purchased/licensed hereunder will not be exported or otherwise transferred, directly or indirectly, in whole or in part, without ATI first obtaining Comverse's written consent and a license from the U.S. Department of Commerce and/or any other appropriate agency of the U.S. Government, as required.  ATI further agrees that it will obtain the written assurance of each of its Registered Accounts to which each System is distributed such that each Registered Account will comply with said export control laws, regulations, orders and restrictions.

10    Release 1.5

22.3   ATI shall immediately advise Comverse of any new import or export law, regulation, order or other restriction in the Designated Territories which might affect the implementation of this Agreement and ATI agrees to comply with all each law, regulation, order or restriction.

## G.   MISCELLANEOUS

### 23.   GENERAL PROVISIONS

23.1   All notices required to be given hereunder shall be in writing and shall be deemed given if delivered personally, or if sent by facsimile (whereby the receiving party shall acknowledge receipt of same by facsimile within two (2) business days from receipt of the initial facsimile) with a copy of such notice sent by air mail, to the person identified below at the address as set forth at the beginning of this Agreement, or such other person or address as may be specified in a written notice delivered in accordance with this Section 23.1:

If to COMVERSE:               Attention:
                              Legal Department
                              100 Quannapowitt Parkway
                              Wakefield, MA  01880

If to ATI:           Attention: _____
                                _____

23.2   ATI may not assign its rights or obligations hereunder without the prior written consent of Comverse.

23.3 ATI and Comverse agree that during the term of this Agreement and for a period of twelve (12) months thereafter, neither party shall, directly or indirectly, solicit, induce, attempt to induce any employees of the other to its employ.

23.4   This Agreement shall be governed by, and construed in accordance with, the laws of the state of New York, USA, without reference to the conflict of laws provisions thereof and not including the United Nations Convention on Contracts for the International Sale of Goods.

23.5   If any provision of this Agreement is held to be invalid under any applicable law, such provision shall, to the extent of such invalidity, be deemed to be omitted here from, and all other provisions of this Agreement shall continue in full force and effect.

23.6   In the event that any provision of the Schedules to this Agreement are deemed to be in conflict with the provisions of this Agreement, the provisions of this Agreement shall control.

23.7   Any failure by either party to enforce strict performance by the other party of any provision herein shall not constitute a waiver of the right to subsequently enforce such provision or any other provision of this Agreement.

23.8   Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance with the then prevailing Rules of the American Arbitration Association.  Any such arbitration shall be held in English.  Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems. The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to any award made by the arbitrator(s).  Each party shall bear its own costs, expenses and fees (including attorneys' fees) incurred in connection with this Section 23.8.  The

parties hereby acknowledge that monetary damages may not be a sufficient remedy for breaches of the Non-Disclosure Agreement or Sections 4 and 5 above and that either party, as appropriate, may be entitled to such injunctive or equitable relief for actions or claims arising solely under the Non-Disclosure Agreement or Sections 4 or 5, as may be deemed proper by a court of competent jurisdiction.

23.9   Neither party shall liable to the other party for any failure to perform hereunder due to contingencies beyond its reasonable control, including but not limited to, strikes, riots, wars, fires, Acts of God, or acts required to comply with any governmental regulations.

23.10  This Agreement and the Non-Disclosure Agreement constitute the entire agreement between Comverse and ATI with respect to the subject matter of this Agreement and supercede all statements, representations, and understandings which have been made by either party or their agents or representatives prior to the execution of this Agreement. No modification of this Agreement shall be binding upon either party unless made in writing and executed on behalf of that party by its duly authorized representative.

Release 1.5

IN WITNESS WHEREOF, the parties hereto have set their hands and seals by a duly authorized representative as of the date(s) written below.

COMVERSE, INC.

Signature

Brian E. Heffernan
Print Name

Assistant General Counsel
Title

July 23, 2004
Date

AMERICAN TELECOMMUNICATIONS, INC. CHILE S.A.

Signature

Luis A. Werner
Print Name

CEO
Title

22 / 07 / 04
Date

13

Release 1.5



**SCHEDULE A**
Description of Licensed Software, Equipment and Documentation



# SCHEDULE B

## DESIGNATED TERRITORIES

<u>Designated Territories</u>

<u>Exclusive Reseller in</u>:

Chile
Peru
Bolivia
Ecuador
TIM Brazil in Brazil
Telefonica Celular del Paraguay S.A. in Paraguay

Non- Exclusive Reseller in:

Brazil
Paraguay
Uruguay
Colombia
Mexico

<u>Case-by-Case Reseller in</u>:

To be determined



# SCHEDULE C

## END-USER SOFTWARE SUBLICENSE AGREEMENT

1.     ATI hereby grants CUSTOMER a non-exclusive, non-transferable sublicense to use the Software and the Documentation for operation only on the Equipment on which or with which they were shipped.  CUSTOMER further agrees that it shall not transfer the Equipment, Software and Documentation from its site where the Equipment was originally installed (as indicated on CUSTOMER's purchase order for same) without the prior written consent of ATI.

2.     CUSTOMER agrees not to modify or copy, in whole or in part, the Software and the Documentation, provided however, that CUSTOMER may duplicate the Software for back-up and restore purposes in the event of a System malfunction.

3.     CUSTOMER shall hold the Software and the Documentation in confidence and agrees to take all reasonable steps necessary to insure that the Software and Documentation are not disclosed or duplicated in whole or in part for the use of others, including but not limited to, at a minimum, those steps CUSTOMER would take to protect information, data or other property of its own that it regards as proprietary or confidential. CUSTOMER further agrees to make available the Software and Documentation only to those of its employees who are directly involved with CUSTOMER's use of the Equipment, Software and/or Documentation.   CUSTOMER shall not inspect, disassemble or reverse engineer the Software, nor tamper with, bypass or alter the security features of same.

4.     Title to all Software and Documentation furnished to CUSTOMER hereunder, and all rights therein, including all rights in any patents and copyrights, shall remain vested in Comverse Network Systems, Inc. ("Comverse") and its licensors at all times. CUSTOMER agrees that the Software and the Documentation provided hereunder are entitled to protection under the copyright and patent laws, and CUSTOMER shall not remove any copyright, patent or other proprietary notices of Comverse or its licensors from same.

5.     ATI shall have the right to terminate any license or right granted in this Software Sublicense in the event that CUSTOMER fails to pay any applicable license fees or if CUSTOMER fails to comply with the provisions of this Software Sublicense.  Upon notice of such termination, CUSTOMER agrees to immediately return or destroy, at ATI's sole discretion, the Software and the Documentation and all portions and copies thereof, if any, and to certify in writing to ATI that it has complied in full with such requirements.

6.     In no event shall Comverse or its licensors be liable to CUSTOMER hereunder for any direct, indirect, incidental or consequential damages arising from the use of the Software and Documentation or from Comverse's licensors' software and related documentation.

7.     CUSTOMER hereby agrees to comply fully with all relevant export laws and regulations of the United States to assure that the Software and Documentation, or any direct product or derivative work of the Software and Documentation, are not exported, directly or indirectly, in violation of any United States law or regulation.

**SCHEDULE D**

ACTIVITY MATRIX AND DESCRIPTION

<u>Activity Matrix</u>

| ACTIVITY | ATI | Comverse |
|---|---|---|
| **A. GENERAL LOCALIZATION** | | |
| 1.    Translate documents | P | S |
| 2.    Translate Collateral Material | S | P |
| 3.    Perform customer technical training | S | P |
| 4.    Record prompts | P | S |
| 5.    Manage local standards certification process | P | S |
| | | |
| **B.  MARKETING** | | |
| Advertising and Promotion | P | S |
| Trade Show and Events | P | S |
| Customer Seminars | P | S |
| | | |
| **B. SALES PLAN** | | |
| 1.    <u>Account Qualification</u> | | |
| a. Prospecting | P | S |
| b. Perform qualification process: | S | P |
| 2.    <u>Requirements Analysis</u> | | |
| a. Identify system requirements | S | P |
| b. Manage product modification requests | S | P |
| c. Identify interface requirements | S | P |
| d. Examine financing options | S | P |
| 3.    <u>Solution Development/Presentation</u> | | |
| a. Develop system configuration/sizing | S | P |
| b. Develop performance/deployment scenarios | S | P |
| c. Generate discussion papers | S | P |
| d. Conduct demos / site visits | P | S |
| 4.    <u>Proposal Preparation</u> | | |
| a. Perform competitive analysis | P | S |
| b. Influence RFP | P | S |

|   |   |   |
|---|---|---|
| c. Prepare proposal | S | P |
| 5. Contract Closure | | |
| a. Review / negotiate contract terms | P | P |
| b. Prepare order paperwork | P | S |
| c. Closing | P | S |

P = Primary Responsibility

S = Shared (input of assistance)

NA = not applicable



| ACTIVITY | ATI | Comverse |
|---|---|---|

**6.  Finance**

| | ATI | Comverse |
|---|---|---|
| a.   Letter of Credits | P | S |
| b.   Performance Bond | S | S |
| c.   Collection | P | S |
| d.   Financing Capabilities | S | S |
| e.   Customs/Duties/Taxes | P | NA |

**7.  Program Implementation**

| | ATI | Comverse |
|---|---|---|
| a. Facilitate customer liaison | P | S |
| b. Perform site planning | P | S |
| c. Manage delivery process | S | P |
| d. Perform installation project management | S | P |
| e. Install hardware/software | P | S |
| f. Conduct acceptance test | S | P |
| g. Obtain customer acceptance/sign-off | P | S |
| h. Ensure customer spares stocking | S | P |
| i. Manage technical problem resolution | S | P |

**8.  Account Growth**

| | ATI | Comverse |
|---|---|---|
| a. Install System Upgrades / Add-ons | P | S |
| a. Maintain knowledge base/relationships | S | P |
| b. Develop ongoing sales | P | P |

---

P = Primary Responsibility

S = Shared (input or assistance)

NA = not applicable



**SCHEDULE E**

**COMVERSE TRADEMARKS**

A.    Comverse's trademarks to be used by ATI are as follows:

1.  CO ACCESS®
2.  COMVERSE®
3.  MEDALIST®
4.  ACCESS NP®
5.  SERVICEMAX®
6.  GHOSTWRITER®
7.  PROGENY®
8.  TRILOGUE INFINITY™

Note: ® means that the mark is a registered trademark of Comverse in the United States.

B.    Terms and Conditions for Licensing of Trademarks

1.    In the event that ATI elects to use Comverse's trademarks as set forth above, it is agreed that:

a.  ATI will use such designated trademark in good taste and in a manner that preserves the value of same and Comverse's rights in and to same, and in accordance with any other standards provided by Comverse.

b.  ATI will change or discontinue any use of such trademarks immediately upon written notice from Comverse.

c.  ATI has no title or interest in or to such trademarks and is not authorized to use any other trademarks of Comverse.

Comverse may, at any time, modify the above list.



### SCHEDULE F
### SERVICE LEVEL AGREEMENT/SUPPORT SERVICES
#### [Currently in negotiation between the parties]



**SCHEDULE G**
**NON-DISCLOSURE AGREEMENT**



SCHEDULE H
INSTALLATION HARDWARE FUNCTIONALITY TEST PLAN



## SCHEDULE I

### ATI PRODUCTS TO BE EXCLUDED FROM PROVISIONS OF SECTION 3.1.4

| PRODUCT | DESCRIPTION |
|---|---|
| **ATI EIR** | GSM Network Node. It's main function is to provide the mechanism to block handsets, previously provisioned into the databases of the platform. |
| **REPORT MANAGER** | Data Warehouse platform to provide reports and information about traffic, use and performance of Voice Mail Platform, SMSC among others Value Added platforms. ATI can offer this product in those accounts it represents. For accounts beyond the scope of this Agreement, ATI must first obtain Comverse's prior written consent. |
| **SMS ACCESS** | Mediation device Platform to provide SMS user Profiles, SMS plans and SMS rating functionalities. |
| **BUY & GO** | Micropayment platform. It´s main function is to provide the connection to different platforms in the network (SMSC, prepaid among other) and vending machines, to allow transaction over SMS, dialing or USSD codes. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |
| **ATI USSD GATEWAY** | USSD Gateway is a mediation device platform, interacts between the GSM HLR and external platforms to provide services, transactions, balance queries among other subscribers transactions through USSD codes. |
| **MISSED CALL HUNTER** | Stand Alone Platform to allow the captures of a missing call using IS41, MAP or ISUP SS7 interfaces. Can be integrated to voice mail platforms.<br><br>The use of IS41 or GSM MAP messages implies that the not response call can not be routed to a Missed Call Platform, even can be delivered an announce from de switch while the call is captured.<br><br>The Qty of missed calls, CLI, date and hour are informed through SMS, at the same time the platform can inform to a subscriber when other get in coverage and is available in the network. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |
| **SM GATEWAY** | SMS Interconnection platform to allow the interconnection and translation between SMSC protocols, routing SMS and ESMES connection to the messaging network. Competing product that may be sold on a case-by-case basis with Comverse's |

| | written consent. |
|---|---|
| **SMSCONNECTION** | SMSC platform, provide Store & Forward mechanism to dispatch a short message in a conventional wireline networks. |
| **SMS FOR RECHARGE** | Mediation Device between SMSC and prepaid systems to allow recharges, Call histories Queries among other prepaid's subscriber transactions through SMS. |
| **ONE TIME SMS** | Stand Alone Platform to dispatch SM to a Mobile Signaling Network, performing the first attempt of a SM delivery. Can be incorporated as SMSC off loader device, and allows some function as SMS broadcasting, web to sms, among others.<br><br>This platform could be integrated to SMS Gateway Platform and SMS Access Platform. Competing product that may be sold on a case-by-case basis with Comverse's prior written consent. |

| PRODUCT | DESCRIPTION |
|---|---|
| **MOBILE MANAGER** | This platform allows that each corporative costumer can Administrate a set of mobile prepaid lines and assigns to each line a user profile.<br><br>The administration is done through web interfaces, adding and extracting mobiles lines, adding time for each line, allowing access to value added services (profile), among others. |
| **VIRTUAL HLR** | IS41 Platform, The platform allows the registration of a visitor (roamers) in the network and assigns a temporary prepaid account. |
| **ATI RING BACK TONES** | Stand alone platform to allow the delivery of customized sounds in replace of the traditional busy and wait call tones. Is specially designed for low traffic and allow the provisioning of subscribers and customized tones through web interfaces. Competing product that may be sold on a case-by-case basis with Comverses prior written consent. |

| ATI OVER-THE-AIR-FUNCTIONALITIES | CDMA and TDMA network platform, full comply with IS683A standard, to load over the air handset parameters and activate it. |
|---|---|
| DIAL SMS | CDMA/TDMA network platform to emulate USSD functionalities. Allows connectivity of SMS services or VAS activation through code dialing. |



# EXHIBIT B

# M O N T T  y  C I A.  S. A.

ABOGADOS
www.monttcia.cl

SANTIAGO MONTT VICUÑA
DANIEL IBAÑEZ CAMACHO
GERMÁN OVALLE MADRID
PATRICIA BAEZ RAFF
JOSÉ MANUEL JORDAN BARAHONA
MARÍA PILAR CHICANO GARRIDO
PAXON GARRETON EDWARDS
ALVARO LETELIER PALMA
JUAN MANUEL ROJAS ESPINOZA
CHRISTIAN ARICIAGA PUENTES
ELENA TOLEDO GONZALVES
MARTINA BONVENTE MARTÍNEZ
FRANCISCO MONTT MATTE
GREGORIO REYES DE LA GUARDIA
GLORIA PERRIET ORTIZ
MACARENA MONTALT MATTA
ALEJANDRO DIDRIKSON LETELIER
ALEJANDRO GONZALEZ DEL ERIZO GARCIA
MARTA SANTA MARÍA ROJAS
MARTA A SALAZAR PUÑRES
DANILO CAÑALES UBDA
FELIPE OCHAGAVIA CARRAZZA
PABLO ARRIAGADA PEREZ
TOMAS LANDDON GUZOY
PAUL SOLLATAN
BEATRIZ CANTUERA PEDRAZO
SONIA OCHOA ARAUJO
EDITH GUERRA SALINAS
CLAUDIO HURTADO ROJAS
RODOLFO DELMAR LARA
PERCY HICKMANN
LILIANA BURCH
DANIELA JONES
MARÍA LUZ RÍOS ACEVEDO
CRISTIAN BALLAS INTZE
MACARENA HERRERA LOPEZ
CAROLINA HIDALGO DE ROSA PINHEIRO
PATALOVA KHOURIRA WALKEN
ROLANDO VIDAL MORENO
VERONICA RUBIA PONTI
MONICA UREBTA MONTERA
ROBERTO PEPE FERNANDEZ AVENDAÑO
ALBERTO VERGARA MARSHALL

OFICINA PRINCIPAL
Edificio Centro Santa María
Avda. Los Conquistadores 1700, piso 11
FONO (56-2) - 2338264
FAX (56-2) - 2335093 - 2310944
E- MAIL montcia@monttcia.cl
SANTIAGO - CHILE

DIVISIÓN JUDICIAL
Amunátegui 277, Ofic. 900
FONO (56-2)-6883037
FAX (56-2) - 6712039
E-MAIL: licia@monttcia.cl
SANTIAGO - CHILE

DIVISIÓN PENAL
Av. Pedro Montt 1771, Ofic. 12
FONO (56-2) 5518372-5510068-5541531
FAX (56-2)- 5510098
E-MAIL: penal@monttcia.cl
SANTIAGO - CHILE

OFICINA VALPARAISO
Blanco 1199, Ofic. 33-A
FONO (56-32) - 230057
FAX (56-32) - 221628
E- MAIL: valpo@monttcia.cl
VALPARAISO - CHILE

OFICINA PUERTO MONTT
O'Higgins 167, Ofic. 705
FONOS (56-65) - 263760
FAX (56-65) - 285761
E- MAIL: pucriato@monttcia.cl
PUERTO MONTT - CHILE

OFICINA LA SERENA
Cordovez, 588, Ofic. 204
FONO (56-51) - 214981
FAX (56-51) - 211010
E- MAIL: serena@monttcia.cl
LA SERENA - CHILE

OFICINA CONCEPCIÓN
D. Pedro Aguirre Cerda 1167
FONO (56-41) - 215191
FAX (56-41) - 520960
E- MAIL: concepcion@monttcia.cl
CONCEPCIÓN - CHILE

March 22, 2007

Dr. David J. A. Cairns, Presiding Arbitrator
B. Cremades y Asociados
Goya, 18 - 2 – 28001 Madrid
Spain

Professor Alejandro M. Garro
Columbia Law School
435 West 116th Street
New York, New York 10027

Dr. Leonel Pereznieto-Castro
Bufete Davalos y Asociados S.A. De C.V.
Insurgentes Sure 1766
Colonia Florida
Delgacion Alvaro Obrego
Esico DF CP 01030
Mexico

Re:  *Comverse Inc. v. American Telecommunication, Inc. Chile S.A.*
     Case No. 50 494 T 00319 06

Dear Arbitral Tribunal:

I am authorized on behalf of the entities listed in Attachment A hereto to represent that each entity: (1) agrees to be bound by the arbitration agreement set forth in Section 23.8 of the Value Added Reseller Agreement between Comverse, Inc. and its subsidiaries, on the one hand, and American Telecomunication, Inc. Chile S.A., on the other, executed on or about July 22, 2004; and (2) is subject to the jurisdiction of the Tribunal appointed in the above-referenced arbitration. Each entity otherwise reserves all its rights. The representations made herein are not intended in any way to create or accept any joint and several liability on the part of the entities listed in Attachment A for any award that might be made against the respondent in this arbitration.

Sincerely yours,

Santiago Montt Vicuña

Attachment A

American Telecommunication Inc. Bolivia S.A.

American Telecommunication do Brasil Ltda.

American Telecommunication Inc. Ecuador ATIECUADOR S.A.

American Telecommunication Peru S.A.

# EXHIBIT C

## Bush, Lindsay

| | |
|---|---|
| **From:** | Skakel, Deborah |
| **Sent:** | Wednesday, December 12, 2007 11:47 AM |
| **To:** | 'McDonell, Neil'; Bush, Lindsay |
| **Cc:** | Pietrzak, Brooke; Graff, Howard; Scher, Elizabeth |
| **Subject:** | RE: Comverse v. ATI: petition to confirm arbitration award |

Neil--
In light of your continuing representation of the ATI entities, as well as Comverse's continuing concerns as to ATI's intention and ability to pay the significant amounts under the Award (concerns that are heightened by your apparent "lack of authority" to accept service on behalf of any of the ATI entities), are you authorized to provide any assurances as to whether the ATI entities are ready, willing and able to pay the sums due under the Award?

With respect to the seal issue, we have stated our position, which is consistent with the governing law. To the extent you are representing the ATI entities in connection with the Petition to Confirm and disagree with our position, please advise us promptly as to whether you intend to make an application to have the Award filed under seal. The temporary filing under seal is just that, and it is your burden to establish the prerequisites for the maintenance of a filing under seal.

--Debbie

---

**From:** McDonell, Neil [mailto:mcdonell.neil@dorsey.com]
**Sent:** Wednesday, December 12, 2007 10:32 AM
**To:** Bush, Lindsay
**Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
**Subject:** RE: Comverse v. ATI: petition to confirm arbitration award
**Importance:** High

Lindsay,

As I previously advised you, I am simply not authorized to accept service of the petition on behalf of any of the ATI companies. As you know, Dorsey & Whitney LLP represented the ATI respondents in the arbitration proceedings, but that does not give us authority to accept service of the petition on their behalf.

Article 27(4) of the AAA's International Dispute Resolution Procedures is incorporated into the arbitration agreement and, thus, represents a contractual obligation of Comverse, Inc. The Stipulated Protective Order also imposes obligations on Comverse, which it cannot disregard. Comverse is not relieved of its obligations by your unfounded suggestion that nothing in the award is "so highly confidential." Article 27(4) of the IDRP, and the obligations it imposes on Comverse, are not conditioned on any such assessment, and information designated confidential under the Stipulated Protective Order remains protected until the arbitral tribunal rules otherwise. As you know, the tribunal retains jurisdiction to enforce the terms of their order.

It is therefore Comverse's own obligation to have the award (and any document revealing details of the award) filed under seal, since it is petitioning to have the award confirmed. It is also Comverse's obligation to bring these considerations and confidentiality obligations to the attention of the Court, in order to fulfill its own obligations. Normally courts respect the confidentiality of arbitration proceedings and permit the award (and any document revealing details of the award) to be filed under seal, in connection with a petition to confirm an award. Thus, public disclosure of the award is not "required by law." Of course, if a judgment is entered on an award, the judgment would reveal the amounts awarded, but not normally the other details of the award.

It is evident now that Comverse breached its arbitration agreement (and violated the Stipulated Protective Order) by originally filing the award in the public record and not under seal. To the extent the petition reveals details of the award (particularly details beyond than the amounts awarded), its filing in the public record also breaches

Comverse's arbitration agreement.  In fact, the petition does evidently reveal details not previously made public in Comverse's prior, unsuccessful injunction applications.

I urge Comverse to comply with its obligations and to immediately rectify all prior breaches.

Sincerely,
Neil


**Neil E. McDonell**
Partner
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y   &   W H I T N E Y   LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.415.9344  **F:** 212.953.7201  **C:** 914.907.6772
*USA CANADA EUROPE ASIA*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached material.  Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted  the e-mail, all attachments and any copies thereof. Thank you.*


-----Original Message-----
**From:** Bush, Lindsay [mailto:BushL@dicksteinshapiro.com]
**Sent:** Tuesday, December 11, 2007 6:46 PM
**To:** McDonell, Neil
**Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
**Subject:** RE: Comverse v. ATI: petition to confirm arbitration award

Neil,

Based on the assumption that you still represent ATI (and since we have not heard otherwise in response to our prior email), and in the interest of time, please be advised of the following.

We will inform the Court in our application for alternative method of service that you have refused to accept service on behalf of the ATI entities, despite your continuing representation of such entities.

Comverse's petition was not filed under seal in its entirety.  While we do not believe that any part of the petition meets the legal criteria for filing under seal, we have had the award (exhibit E to the petition) temporarily filed under seal, pending the resolution of this issue.  As you know, Comverse's statement of claim, ATI's statement of defense and the VAR Agreement have all been previously publicly filed and filing them under seal at this point is unnecessary and inappropriate.  There is nothing confidential in either the March 22, 2007 letter from Santiago Montt Vicuna to the arbitrators (which was not marked as "Confidential") or the petition itself.

We note that ICDR Article 27 applies only to awards, not the petition or the other documents attached thereto.  We further note that an award may be made public as required by law.  Since Comverse now has to convert the arbitration award into a judgment, it is required to file the award with the Court in order to do so.  As you may know, the law in this Court is that judicial documents are presumptively available to the public unless countervailing considerations overcome that presumption.  Should the ATI entities wish to file a motion to seal based upon such "countervailing considerations," they are free to do so.  It is Comverse's position that nothing in the award is so "highly confidential" (particularly given the prior injunction

applications and the public documents filed in connection therewith) so as to require filing the award under seal.

Regards,
Lindsay

Lindsay A. Bush
Associate, Business Litigation Group
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel: 212.277.6676 | Fax: 917.591.1303
bushl@dicksteinshapiro.com

---

**From:** McDonell, Neil [mailto:mcdonell.neil@dorsey.com]
**Sent:** Tuesday, December 11, 2007 1:23 PM
**To:** Bush, Lindsay
**Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
**Subject:** RE: Comverse v. ATI: petition to confirm arbitration award
**Importance:** High

Lindsay,

I am not authorized to accept service on behalf of any of the ATI entities.

Was Comverse's petition and exhibits filed with the Court under seal?  I note that Article 27(4) of the AAA's International Dispute Resolution Procedures provides that "[a]n award may be made public only with the consent of all parties or as required by law."  I also refer to the Stipulated Protective Order issued in the arbitration and Comverse's obligations thereunder.

Sincerely,
Neil

**Neil E. McDonell**
Partner
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y  &  W H I T N E Y  LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.415.9344  **F:** 212.953.7201  **C:** 914.907.6772
*USA CANADA EUROPE ASIA*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
E-mails from this firm normally contain confidential and privileged material. and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items.  Please delete the e-mail and all attachments. including any copies thereof, and inform the sender that you have deleted  the e-mail, all attachments and any copies thereof.

Thank you.

          -----Original Message-----
          **From:** Bush, Lindsay [mailto:BushL@dicksteinshapiro.com]
          **Sent:** Tuesday, December 11, 2007 12:08 PM
          **To:** McDonell, Neil
          **Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
          **Subject:** Comverse v. ATI: petition to confirm arbitration award

Neil,

Attached please find a courtesy copy of the petition to confirm the arbitration award (with exhibits) that was filed with the court on Friday.  Please note that we have filed this as a related case to the case presently pending before Judge Leisure, so no judge has been assigned to date.  Please let us know whether you will accept service on behalf of the various ATI entities.

Regards,
Lindsay

Lindsay A. Bush
Associate, Business Litigation Group
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel: 212.277.6676 | Fax: 917.591.1303
bushl@dicksteinshapiro.com

-----------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
=====================================================================================

-----------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete

the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
==============================================================================

# EXHIBIT D

## Bush, Lindsay

| | |
|---|---|
| **From:** | McDonell, Neil [mcdonell.neil@dorsey.com] |
| **Sent:** | Thursday, January 03, 2008 10:37 AM |
| **To:** | Skakel, Deborah |
| **Cc:** | Bush, Lindsay; Pietrzak, Brooke; Epstein, Eric |
| **Subject:** | RE: Comverse v. ATI --SDNY proceeding |

Debbie,

I did not advise you on December 12, 2007, or at any other time, that we represent the ATI entities in connection with Comverse's SDNY proceeding to confirm the arbitration award. To the contrary, I made clear that we represented those entities only in connection with the arbitration. In that regard, I reminded you of Comverse's confidentiality obligations under the governing ICDR arbitration rules and the Tribunal's stipulated protective order.

We have subsequently been retained by American Telecommunication, Inc. Chile S.A. ("ATI Chile"), alone, to respond on its behalf to Comverse's petition to confirm the arbitration award, which -- as you know -- includes an award in ATI Chile's favor against Comverse. We have not been retained to appear in the SDNY proceeding on behalf of any of the other ATI entities that participated in the arbitration, and thus we will be appearing in the SDNY proceeding solely for ATI Chile.

In response to your question, ATI Chile intends to request that the arbitration award remain filed permanently under seal. Indeed, Comverse is obliged to join in ATI Chile's request, pursuant to its own confidentiality obligations. Accordingly, the arbitration award should remain under seal until the Court resolves this issue.

Please copy my partner Brooke Pietrzak and my associate Eric Epstein on any future emails on this matter.

Sincerely,
Neil

**Neil E. McDonell**
Partner
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y & W H I T N E Y  LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.415.9344  **F:** 212.953.7201  **C:** 914.907.6772
*USA CANADA EUROPE ASIA*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.*

-----Original Message-----
**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Wednesday, January 02, 2008 10:42 PM
**To:** McDonell, Neil
**Cc:** Bush, Lindsay
**Subject:** Comverse v. ATI --SDNY proceeding

Neil--

You previously advised us, on December 12, 2007, that you continue to represent the ATI entities in connection with Comverse's SDNY proceeding to confirm the arbitration award against those ATI entities (the "Award"). We have not been informed to the contrary in the interim. Since your December 12th e-mail, however, we have not heard anything further from you regarding whether you intend to make an application, on behalf of the ATI entities, to permanently seal the Award. We advised you of our position -- that the Award had been filed *temporarily* under seal, but did not meet the legal criteria for filing under seal permanently -- and invited you, on December 12th, to advise us promptly as to whether you intended to make an application to have the Award filed under seal permanently. To date, you have not responded to our e-mail. Accordingly, please let us know by noon on January 4, 2008, whether you intend to make such an application; otherwise we will advise the Court to unseal the temporarily sealed Award.
--Debbie Skakel

--------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
=========================================================================

# EXHIBIT E

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| COMVERSE, INC., | ) | Case No. 07-cv-11121-PKL |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -v- | ) | ~~PROPOSED~~ ORDER |
| | ) | GRANTING PETITION TO |
| AMERICAN TELECOMMUNICATION, INC. | ) | CONFIRM ARBITRATION |
| CHILE S.A., AMERICAN | ) | AWARD |
| TELECOMMUNICATION INC. BOLIVIA S.A., | ) | |
| AMERICAN TELECOMMUNICATION DO | ) | |
| BRASIL LTDA., AMERICAN | ) | |
| TELECOMMUNICATION INC. ECUADOR | ) | |
| ATIECUADOR S.A., and AMERICAN | ) | |
| TELECOMMUNICATION PERU S.A., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

This matter having come before this Court on Petitioner Comverse, Inc.'s Petition to Confirm Arbitration Award, and the Court having considered all matters of record in this case, it is hereby

ORDERED, that the Petition to Confirm Arbitration Award is granted and the final Arbitration Award rendered on November 29, 2007, by a duly convened Arbitral Tribunal of the International Centre For Dispute Resolution of the American Arbitration Association, is hereby confirmed in its entirety; and

IT IS FURTHER ORDERED, that judgment will issue against the Respondents in the following amounts:

1.  US$1,320,497.13 against American Telecommunication, Inc. Chile S.A.;

2.  US$12,296,346.00 against American Telecommunication do Brasil Ltda;

3.  US$3,218,714.00 against American Telecommunication Peru S.A.;

4.  US$16,438.00 against American Telecommunication Inc. Bolivia S.A.; and

DOCSNY-289788v01

1

5.    US$878,978.00 against American Telecommunication Inc. Ecuador
      ATIECUADOR S.A.; and

IT IS FURTHER ORDERED, that simple interest is awarded to Petitioner on the

foregoing amounts at the applicable rate for judgments in New York State from the date of the

Arbitration Award until the date of payment of all sums.

SO ORDERED:


Dated: Feb    4    , 2008


                                        _____
                                        PETER K. LEISURE
                                        United States District Judge


2

# EXHIBIT F

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/4/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMVERSE, INC., | ) | Case No. 07-cv-11121-PKL |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -v- | ) | ~~[PROPOSED]~~ JUDGMENT |
| | ) | |
| AMERICAN TELECOMMUNICATION, INC. | ) | |
| CHILE S.A., AMERICAN | ) | |
| TELECOMMUNICATION INC. BOLIVIA S.A., | ) | |
| AMERICAN TELECOMMUNICATION DO | ) | |
| BRASIL LTDA., AMERICAN | ) | |
| TELECOMMUNICATION INC. ECUADOR | ) | |
| ATIECUADOR S.A., and AMERICAN | ) | |
| TELECOMMUNICATION PERU S.A., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

This matter having come before this Court on Petitioner Comverse, Inc.'s Petition to Confirm Arbitration Award, and the matter coming before the Honorable Peter K. Leisure, United States District Judge, and the Court having rendered its Order Granting Petition to Confirm Arbitration Award, it is hereby

ORDERED, ADJUDGED AND DECREED, that the final Arbitration Award rendered on November 29, 2007, by a duly convened Arbitral Tribunal of the International Centre For Dispute Resolution of the American Arbitration Association, is hereby confirmed in its entirety; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner have judgment against Respondent American Telecommunication, Inc. Chile S.A. in the amount of US$1,320,497.13, with interest at 9% from November 29, 2007, amounting to

DOCSNY-289821v01

$ _21,815.34_ , amounting in all to $ _1,342,312.49_ .

Dated: New York, New York
      _Feb 4_ , 2008

_____
PETER K. LEISURE
United States District Judge


This document was entered on the docket on

_____.

DOCSNY-289821v01

# EXHIBIT G

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | ) |
| Petitioner, | ) |
| -v- | ) |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | ) |
| Respondents. | ) |

Case No. 07-cv-11121-PKL

ECF CASE

[~~PROPOSED~~] DEFAULT JUDGMENT

This action having been commenced on December 7, 2007, by the filing of the Summons and Petition to Confirm Arbitration Award, and a copy of the Summons and Petition to Confirm Arbitration Award having been served on the Respondents American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A., and American Telecommunication Peru S.A., by Federal Express International Priority Service on December 13, 2007 and by sending same to: (a) the Respondents' counsel in New York, Neil E. McDonell, Esq., Dorsey & Whitney LLP, 250 Park Avenue, New York, New York 10177-1500, by hand delivery on December 13, 2007; and (b) the Respondents' counsel in Chile, Santiago Montt Vicuña, Esq., Montt y Cía S.A., Avda. Los Conquistadores 1700, piso 11, Santiago, Chile, by Federal Express International Priority Service on December 13, 2007 and by email on December 14, 2007, such service having been made pursuant to the Order of the Honorable Denise Cote, United States District Judge, dated December 13, 2007; and proof of service having been filed on December 17, 2007; and the

DOCSNY-289825v01

Respondents not having answered the Petitioner to Confirm Arbitration Award, and the time for answering the Petition to Confirm Arbitration Award having expired, it is

ORDERED, ADJUDGED AND DECREED:  That the Petitioner, Comverse, Inc., have judgment against the Respondents as follows:

1.    As against Respondent American Telecommunication do Brasil Ltda in the liquidated amount of US$12,296,346.00 with interest at 9% from November 29, 2007 amounting to $ _203,142.37_ plus costs and disbursements of this action, ~~in the amount of $_____;~~ to be submitted in *PhL* ~~amounting in all to $_____;~~ a separate order.

2.    As against Respondent American Telecommunication Peru S.A. in the liquidated amount of US$3,218,714.00 with interest at 9% from November 29, 2007 amounting to $ _53,174.92_ plus costs and disbursements of this action, ~~in the amount of $____~~ to be submitted in *PhL* ~~amounting in all to $____~~ a separate order.

3.    As against Respondent American Telecommunication Inc. Bolivia S.A. in the liquidated amount of US$16,438.00 with interest at 9% from November 29, 2007 amounting to $ _271.56_ plus costs and disbursements of this action, ~~in the amount of $____~~ to be submitted in *PhL* ~~amounting in all to $____~~ a separate order; and

4.    As against Respondent American Telecommunication Inc. Ecuador ATIECUADOR S.A. in the liquidated amount of US$878,978.00 with interest at 9% from November 29, 2007 amounting to $ _14,521.20_ plus costs and disbursements of this action, ~~in~~

2

DOCSNY-289825v01

to be submitted in a separate order. *PKL*

~~the amount of $_____ amounting in all to $_____.~~

Dated: New York, New York
        Feb 4        , 2008


                                    _____
                                    PETER K. LEISURE
                                    United States District Judge

                        This document was entered on the docket on
                        _____.

3

# EXHIBIT H

# DICKSTEINSHAPIROLLP

1177 Avenue of the Americas | New York, NY 10036-2714
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

*Writer's Direct Dial: (212) 277-6585*
*Writer's Direct Fax: (917) 591-7897*
*E-Mail Address: SkakelD@dicksteinshapiro.com*

February 13, 2008

## BY EMAIL AND FAX

Neil E. McDonell, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, New York 10177-1500

Brooke E. Pietrzak, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, New York 10177-1500

Re:   Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.
      Case No. 07-cv-11121-PKL (U.S.D.C. S.D.N.Y.)

Dear Neil and Brooke:

Enclosed please find copies of the Judgment entered against American Telecommunication Inc. Chile S.A. ("ATI Chile") and the Default Judgment entered against American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A., and American Telecommunication Peru S.A.

Please advise as whether and when any amount of either or both judgments will be paid.

Furthermore, please note that upon the expiration of the ten day stay set forth in Rule 62(a) of the Federal Rules of Civil Procedure, we intend to immediately take all steps necessary to enforce the Judgments and obtain payment in full, including the service of Restraining Notices and Information Subpoenas. A courtesy copy of the Restraining Notice and Information Subpoena directed to ATI Chile is enclosed.

Very truly yours,

Deborah A. Skakel

DAS/eis
encs.

Washington, DC | New York, NY | Los Angeles, CA

DOCSNY.291753

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/4/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMVERSE, INC., | ) | Case No. 07-cv-11121-PKL |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -v- | ) | ~~PROPOSED~~ JUDGMENT |
| | ) | |
| AMERICAN TELECOMMUNICATION, INC. | ) | |
| CHILE S.A., AMERICAN | ) | |
| TELECOMMUNICATION INC. BOLIVIA S.A., | ) | |
| AMERICAN TELECOMMUNICATION DO | ) | |
| BRASIL LTDA., AMERICAN | ) | |
| TELECOMMUNICATION INC. ECUADOR | ) | |
| ATIECUADOR S.A., and AMERICAN | ) | |
| TELECOMMUNICATION PERU S.A., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

This matter having come before this Court on Petitioner Comverse, Inc.'s Petition to Confirm Arbitration Award, and the matter coming before the Honorable Peter K. Leisure, United States District Judge, and the Court having rendered its Order Granting Petition to Confirm Arbitration Award, it is hereby

ORDERED, ADJUDGED AND DECREED, that the final Arbitration Award rendered on November 29, 2007, by a duly convened Arbitral Tribunal of the International Centre For Dispute Resolution of the American Arbitration Association, is hereby confirmed in its entirety; and

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Petitioner have judgment against Respondent American Telecommunication, Inc. Chile S.A. in the amount of US$1,320,497.13, with interest at 9% from November 29, 2007, amounting to

DOCSNY-289821v01

$ _21,815.34_ , amounting in all to $ _1,342,312.49_ .

Dated: New York, New York
        _Feb 4_____, 2008

_Peter K. Leisure_
PETER K. LEISURE
United States District Judge

This document was entered on the docket on
_____.

2

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

Date:

In Re:

-v-

Case #:                    (          )

Dear Litigant,

Enclosed is a copy of the judgment entered in your case.

Your attention is directed to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, which requires that if you wish to appeal the judgment in your case, you must file a notice of appeal within 30 days of the date of entry of the judgment (60 days if the United States or an officer or agency of the United States is a party).

If you wish to appeal the judgment but for any reason you are unable to file your notice of appeal within the required time, you may make a motion for an extension of time in accordance with the provision of Fed. R. App. P. 4(a)(5). That rule requires you to show "excusable neglect" or "good cause" for your failure to file your notice of appeal within the time allowed. Any such motion must first be served upon the other parties and then filed with the Pro Se Office no later than 60 days from the date of entry of the judgment (90 days if the United States or an officer or agency of the United States is a party).

The enclosed Forms 1, 2 and 3 cover some common situations, and you may choose to use one of them if appropriate to your circumstances.

The Filing fee for a notice of appeal is $5.00 and the appellate docketing fee is $250.00 $450.00 payable to the "Clerk of the Court, USDC, SDNY" by certified check, money order or cash. **No personal checks are accepted.**

J. Michael McMahon, Clerk of Court

by: _____

_____, Deputy Clerk

APPEAL FORMS
Docket Support Unit                              Revised: March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

-------------------------------------------X

                                           |          **NOTICE OF APPEAL**

              -V-                          |

                                           |          civ.          (    )

-------------------------------------------X

Notice is hereby given that _____
                                                           (party)
hereby appeals to the United States Court of Appeals for the Second Circuit from the Judgment [describe it]




entered in this action on the _____ day of _____ , _____ .
                                    (day)            (month)        (year)


                                        _____
                                                   (Signature)

                                        _____
                                                   (Address)

                                        _____
                                              (City, State and Zip Code)

Date: _____        (     ) _____-_____
                                              (Telephone Number)


**Note:** You may use this form to take an appeal provided that it is received by the office of the Clerk of the
District Court within 30 days of the date on which the judgment was entered (60 days if the United States or
an officer or agency of the United States is a party).


FORM 1


APPEAL FORMS
Docket Support Unit                                    Revised: March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

-------------------------------------------X
                                           |
                                           |        **MOTION FOR EXTENSION OF TIME**
                                           |        **TO FILE A NOTICE OF APPEAL**
          -v-                              |
                                           |            civ.          (    )
                                           |
-------------------------------------------X

Pursuant to Fed. R. App. P. 4(a)(5), _____ respectfully
                                                                              (party)
requests leave to file the within notice of appeal out of time; _____
                                                                                              (party)
desires to appeal the judgment in this action entered on _____ but failed to file a
                                                                      (day)
notice of appeal within the required number of days because: _____

[Explain here the "excusable neglect" or "good cause" which led to your failure to file a notice of appeal within the
required number of days.]

_____
            (Signature)

_____
            (Address)

_____
        (City, State and Zip Code)

Date: _____        (        ) _____-_____
                                               (Telephone Number)

**Note:** You may use this form, together with a copy of Form 1, if you are seeking to appeal a judgment and
did not file a copy of Form 1 within the required time. If you follow this procedure, these forms must be
received in the office of the Clerk of the District Court no later than 60 days of the date which the judgment
was entered (90 days if the United States or an officer or agency of the United States is a party).

FORM 2

APPEAL FORMS
Docket Support Unit                                           Revised: March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

---------------------------------------X
                                       |
                                       |          **NOTICE OF APPEAL**
                                       |               **AND**
        -v-                            |     **MOTION FOR EXTENSION OF TIME**
                                       |
                                       |          civ.        (   )
                                       |
---------------------------------------X

1.    Notice is hereby given that _____ hereby appeals to
                                                    (party)
the United States Court of Appeals for the Second Circuit from the judgment entered on _____.
                      [Give a description of the judgment]


2.    In the event that this form was not received in the Clerk's office within the required time

_____ respectfully requests the court to grant an extension of time in
                 (party)
accordance with Fed. R. App. P. 4(a)(5).

        a.    In support of this request, _____ states that
                                                         (party)
this Court's judgment was received on _____ and that this form was mailed to the
                                            (date)
court on _____ .
                 (date)

                                    _____
                                                    (Signature)

                                    _____
                                                    (Address)

                                    _____
                                            (City, State and Zip Code)

Date: _____        (   ) ___ - _____
                                           (Telephone Number)

**Note:** You may use this form if you are mailing your notice of appeal and are not sure the Clerk of the
District Court will <u>receive</u> it within the 30 days of the date on which the judgment was entered (60 days if
the United States or an officer or agency of the United States is a party).

FORM 3

APPEAL FORMS
Docket Support Unit                                            Revised:  March 4, 2003

**United States District Court**
**Southern District of New York**
Office of the Clerk
U.S. Courthouse
500 Pearl Street, New York, N.Y. 10007-1213

```
-------------------------------------X
                                     |
                                     |       AFFIRMATION OF SERVICE
                                     |
         -V-                         |
                                     |       civ.          (    )
                                     |
-------------------------------------X
```

I, _____, declare under penalty of perjury that I have

served a copy of the attached _____

_____

upon _____

_____

whose address is: _____

_____

Date: _____
        New York, New York

                                        _____
                                                  (Signature)

                                        _____
                                                  (Address)

                                        _____
                                             (City, State and Zip Code)

FORM 4

APPEAL FORMS
Docket Support Unit                              Revised:  March 4, 2003

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/4/08

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| COMVERSE, INC., | ) | Case No. 07-cv-11121-PKL |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -v- | ) | ~~PROPOSED~~ DEFAULT |
| | ) | JUDGMENT |
| AMERICAN TELECOMMUNICATION, INC. | ) | |
| CHILE S.A., AMERICAN | ) | |
| TELECOMMUNICATION INC. BOLIVIA S.A., | ) | |
| AMERICAN TELECOMMUNICATION DO | ) | |
| BRASIL LTDA., AMERICAN | ) | |
| TELECOMMUNICATION INC. ECUADOR | ) | |
| ATIECUADOR S.A., and AMERICAN | ) | |
| TELECOMMUNICATION PERU S.A., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

This action having been commenced on December 7, 2007, by the filing of the Summons and Petition to Confirm Arbitration Award, and a copy of the Summons and Petition to Confirm Arbitration Award having been served on the Respondents American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A., and American Telecommunication Peru S.A., by Federal Express International Priority Service on December 13, 2007 and by sending same to: (a) the Respondents' counsel in New York, Neil E. McDonell, Esq., Dorsey & Whitney LLP, 250 Park Avenue, New York, New York 10177-1500, by hand delivery on December 13, 2007; and (b) the Respondents' counsel in Chile, Santiago Montt Vicuña, Esq., Montt y Cía S.A., Avda. Los Conquistadores 1700, piso 11, Santiago, Chile, by Federal Express International Priority Service on December 13, 2007 and by email on December 14, 2007, such service having been made pursuant to the Order of the Honorable Denise Cote, United States District Judge, dated December 13, 2007; and proof of service having been filed on December 17, 2007; and the

DOCSNY-289825v01

Respondents not having answered the Petitioner to Confirm Arbitration Award, and the time for answering the Petition to Confirm Arbitration Award having expired, it is

ORDERED, ADJUDGED AND DECREED:  That the Petitioner, Comverse, Inc., have judgment against the Respondents as follows:

1.     As against Respondent American Telecommunication do Brasil Ltda in the liquidated amount of US$12,296,346.00 with interest at 9% from November 29, 2007 amounting to $ _203,142.37_ plus costs and disbursements of this action, ~~in the amount of $_____; amounting in all to $_____~~; to be submitted in a separate order.   *PkL*

2.     As against Respondent American Telecommunication Peru S.A. in the liquidated amount of US$3,218,714.00 with interest at 9% from November 29, 2007 amounting to $ _53,174.92_ plus costs and disbursements of this action, ~~in the amount of $_____; amounting in all to $~~ a separate order.   *PkL*

3.     As against Respondent American Telecommunication Inc. Bolivia S.A. in the liquidated amount of US$16,438.00 with interest at 9% from November 29, 2007 amounting to $ _271.56_     plus costs and disbursements of this action, ~~in the amount of $~~ submitted in a separate order   *PkL* ~~amounting in all to $~~ ; and

4.     As against Respondent American Telecommunication Inc. Ecuador ATIECUADOR S.A. in the liquidated amount of US$878,978.00 with interest at 9% from November 29, 2007 amounting to $ _14,521.20_ plus costs and disbursements of this action, ~~in~~

2

to be submitted in a separate order. PKL

~~the amount of $_____ amounting in all to $_____.~~

Dated: New York, New York
     Feb 4     , 2008

_____
PETER K. LEISURE
United States District Judge

This document was entered on the docket on
_____.

3

DOCSNY-289825v01

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC.,<br><br>              Petitioner,<br><br>       -v-<br><br>AMERICAN TELECOMMUNICATION, INC.<br>CHILE S.A., AMERICAN<br>TELECOMMUNICATION INC. BOLIVIA S.A.,<br>AMERICAN TELECOMMUNICATION DO<br>BRASIL LTDA., AMERICAN<br>TELECOMMUNICATION INC. ECUADOR<br>ATIECUADOR S.A., and AMERICAN<br>TELECOMMUNICATION PERU S.A.,<br><br>             Respondents. | Case No. 07-cv-11121-PKL<br><br>ECF CASE<br><br>INFORMATION SUBPOENA<br><u>WITH RESTRAINING NOTICE</u><br><br>Re: American Telecommunication, Inc.<br>    Chile S.A., Judgment Debtor<br>    Address: La Concepcion 177,<br>    Providencia, Santiago, Chile |

## THE PEOPLE OF THE STATE OF NEW YORK

**TO:**   American Telecommunication, Inc. Chile S.A.               GREETING
Address: La Concepcion 177, Providencia, Santiago, Chile

     **WHEREAS,** in an action in the United States District Court for the Southern District of New York between Comverse, Inc. as petitioner and American Telecommunication, Inc. Chile S.A., American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A., and American Telecommunication Peru S.A. as respondents who are all the parties in said action, a judgment was entered on February 4, 2008 in favor of Comverse, Inc., judgment creditor and against American Telecommunication, Inc. Chile S.A., judgment debtor in the amount of US$1,342,312.47 of which US$1,342,312.47 together with interest thereon from February 4, 2008 remains due and unpaid;

     **NOW, THEREFORE WE COMMAND YOU,** that you answer in writing under oath, separately and fully, each question in the questionnaire accompanying the subpoena, each answer referring to the question to which it responds; and that you return the answers together with the original of the questions within 7 days after your receipt of the questions and this subpoena.

     **TAKE NOTICE** that false swearing or failure to comply with this subpoena is punishable as contempt of court.

     **I HEREBY CERTIFY** that this information subpoena complies with Rule 5224 of the Civil Practice Law and Rules and that I have a reasonable belief that the party receiving this

subpoena has in their possession information about the Debtor that will assist the Creditor in collecting the Judgment.

## RESTRAINING NOTICE

**WHEREAS,** it appears that you owe a debt to the judgment debtor or are in possession of property in which the judgment debtor has an interest;

**TAKE NOTICE** that pursuant to subdivision (b) of Section 5222 of the Civil Practice Law and Rules, which is set forth in full herein, you are hereby forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property or pay over or otherwise dispose of any such debt except as therein provided.

**TAKE FURTHER NOTICE** that this notice also covers all property in which the judgment debtor has an interest hereafter coming into your possession or custody, and all debts hereafter coming due form you to the judgment debtor.

## CIVIL PRACTICE LAW AND RULES

Section 5222(b) Effect of restraint; prohibition of transfer; duration. A judgment debtor served with a restraining notice is forbidden to make or suffer any sale, assignment, transfer or interference with any property in which he has an interest, except upon direction of the sheriff or pursuant to an order of the court, until the judgment is satisfied or vacated. A restraining notice served upon a person other than the judgment debtor is effective only if, at the time of service, he owes a debt to the judgment debtor or he is in the possession or custody of property in which he knows or has reason to believe the judgment debtor has an interest, or if the judgment creditor has stated in the notice that a specified debt is owed by the person served to the judgment debtor has an interest in specified property in the possession or custody of the person served. All property in which the judgment debtor is known or believed to have an interest then in and thereafter coming into possession or custody of such a person, including any specified in the notice, then due and thereafter coming due to the judgment debtor, shall be subject to the notice. Such person is forbidden to make or suffer any sale, assignment or transfer of, or any interference with, any such property, or pay over or otherwise dispose of any such debt, to any person other than the sheriff, except upon direction of the sheriff or pursuant to an order of the court, until the expiration of one year after the notice is served upon him, or until the judgment is satisfied or vacated, whichever event first occurs. A judgment creditor who has specified personal property or debt in a restraining notice shall be liable to the owner of the property or the person to whom the debt is owed, if other than the judgment debtor, for any damages sustained by reason of the restraint. If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor in an amount equal to twice the amount due on the judgment, the restraining notice is not effective as to other property or money.

2

**TAKE FURTHER NOTICE** that disobedience of this Restraining Notice is punishable as contempt of court.

Dated: New York, New York
      February 14, 2008

DICKSTEIN SHAPIRO LLP

By: *Deborah A. Skakel*

Howard Graff (HG7057)
Deborah A. Skakel (DS8599)
Lindsay A. Bush (LB0391)
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Judgment Creditor
Comverse, Inc.

TO:    American Telecommunication, Inc. Chile S.A., Judgment Debtor
        c/o DORSEY & WHITNEY LLP
        250 Park Avenue
        New York, New York 10177-1500
        (212) 415-9200
        Attorneys for Judgment Debtor

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMVERSE, INC., | ) | Case No. 07-cv-11121-PKL |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -v- | ) | QUESTIONS AND ANSWERS IN |
| | ) | CONNECTION WITH INFORMATION |
| AMERICAN TELECOMMUNICATION, INC. | ) | SUBPOENA |
| CHILE S.A., AMERICAN | ) | |
| TELECOMMUNICATION INC. BOLIVIA S.A., | ) | |
| AMERICAN TELECOMMUNICATION DO | ) | |
| BRASIL LTDA., AMERICAN | ) | |
| TELECOMMUNICATION INC. ECUADOR | ) | |
| ATIECUADOR S.A., and AMERICAN | ) | |
| TELECOMMUNICATION PERU S.A., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Re:  American Telecommunication, Inc. Chile S.A., Judgment Debtor

STATE OF_____, COUNTY OF _____ ss.:


_____being sworn deposes and says; that deponent is the[*]
_____ of _____ recipient of an information
subpoena herein and of the original and a copy of questions accompanying said subpoena. The
answers set forth are made from information obtained from records of the recipient.

    1.    Q.    What is your full name and address?

            A.

    2.    Q.    What office or position do you hold with the debtor?

            A.

    3.    Q.    What are the names and addresses of the other corporate officers?

---

[*]    Excerpt from CPLR section 5224 (a) 3. " . . . . . Answers shall be made in writing under oath by the person upon whom served if an individual, or  by an officer director, agent or employee having information if a corporation, partnership or sole proprietorship.  Each question shall be answered separately and fully and each answer shall refer to the question to which it responds.  Answers shall be returned together  with the original of the questions within seven days after receipt."

A.

4.    Q.    What are the names and addresses of the shareholders and directors?

A.

5.    Q.    When was the business of the debtor commenced?

A.

6.    Q.    What is the nature of the business?

A.

7.    Q.    What books of account does the judgment debtor maintain?

A.

8.    Q.    By whom or under whose supervision have the books of account been kept?

A.

9.    Q.    In whose possession are the books and records?

A.

10.    Q.    What bank accounts has the debtor maintained during the past 2 years?

A.

11.    Q.    Has debtor closed any bank account since the summons in this action was served?

A.

2

12. Q. If so, give name and address of bank.

    A.


13. Q. How much was on deposit at time the account was closed?

    A.


14. Q. Give date, name and address of payee of the last check drawn?

    A.


15. Q. What was the amount of said check and the consideration therefor?

    A.


16. Q. What safe deposit boxes or other depositories has the judgment debtor kept or used for the past 2 years?

    A.


17. Q. When was the last inventory of the debtor's property taken, by whom, and what was the total dollar value?

    A.


18. Q. Has the debtor issued any financial statements within the past two years and if so to whom issued, including mercantile and trade agencies?

    A.


19. Q. At what addresses does the debtor conduct its business?

    A.

3

20. Q. Which of these premises are under a written lease and which are owned by the debtor?

A.

21. Q. What are the rents paid?

A.

22. Q. Does the landlord hold any security?

A.

23. Q. How much security?

A.

24. Q. What assets does the debtor have at the present time?

A.

25. Q. Where are these assets located?

A.

26. Q. Are there any mortgages or other liens on the debtor's property?

A.

27. Q. What repayments of loans has the debtor made within the past four months and to whom repaid?

A.

DOCSNY-292399

28.    Q.    What payments over $100. have been made to any other creditor within the past 4 months?

A.

29.    Q.    What property has the debtor transferred or otherwise disposed of during the past year other than in the usual course of business?

A.

30.    Q.    Has the debtor assigned any of its accounts receivable and if so, to whom?

A.

31.    Q.    Has any execution or attachment been levied against the debtor's property within the past four months and if so, give particulars including property seized and at whose suit?

A.

32.    Q.    Where did the debtor file its Federal and State or other required income tax returns for the past 2 years?

A.

33.    Q.    What personal withdrawals from the debtor have been made by each officer, director or managing executive of the debtor, during the past year?

A.

34.    Q.    Does the debtor pay the premiums of any life insurance or annuities policies for any stockholder, officer, director or key employee or a member of the family of any such person?

A.

DOCSNY-292399

35.   Q.   If so, what are the names of the companies and the numbers and amounts of each policy?

           A.

36.   Q.   Who are the beneficiaries in each policy?

           A.

37.   Q.   What is the present cash value of each such policy?

           A.

38.   Q.   Does the debtor own an auto, truck, trailer, tractor, airplane or boat?

           A.

39.   Q.   Is it covered by a chattel mortgage, conditional sale or other security agreement?

           A.

40.   Q.   Was it bought on the installment plan?

           A.

41.   Q.   Where is it kept?

           A.

42.   Q.   Does debtor own any real estate?

           A.

6

DOCSNY-292399

43.   Q.   Does debtor have shares or a proprietary lease in a cooperative or condominium?

    A.


44.   Q.   Does debtor own any chattel or real estate mortgages?

    A.


45.   Q.   Does debtor hold any participating interest in any real estate or chattel mortgage?

    A.


46.   Q.   Does debtor lease any other property?

    A.


47.   Q.   Does debtor own any stocks, bonds, defense bonds or other securities?

    A.


48.   Q.   Describe each item.

    A.


49.   Q.   Does debtor receive royalties from any patent, copyright or invention?

    A.


50.   Q.   Does debtor own a seat in any stock, cotton, produce, commercial or other exchange?

    A.

DOCSNY-292399

51.    Q.    Is the debtor a trustee or executor under any will or testament, insurance policy or trust agreement?

A.


52.    Q.    Did debtor ever borrow money and pledge or deposit as collateral security any property, real or personal?

A.


53.    Q.    If so, state names and addresses of persons with whom such security was deposited.

A.


54.    Q.    Does debtor have an interest in any mortgage, mechanic's lien or other lien on real property?

A.


55.    Q.    Are there any judgments in debtor's favor?

A.


56.    Q.    If so, state details and amounts.

A.


57.    Q.    Does anybody owe debtor money?

A.


58.    Q.    If so, give details.

A.


8

59.    Q.    Are there any judgments against debtor?

        A.

60.    Q.    If so, state details and amounts.

        A.

61.    Q.    Has debtor ever before been examined by a judgment creditor?

        A.

62.    Q.    Has debtor any right or interest in any action now pending in any court?

        A.

63.    Q.    Is debtor a party to any action now pending in any court?

        A.

64.    Q.    Does anyone hold any property or money in trust for debtor?

        A.

65.    Q.    Has debtor borrowed money from any bank or other lending institution within the past 2 years?

        A.

66.    Q.    What deposits has debtor with any utility company?

        A.

67.    Q.    Does debtor have an interest in insurance or other claims now pending?

9

A.

68. Q. If so, give details.

A.

_____

Signature – print or type name beneath

Sworn to before me this

_____ day of _____, 2008.


_____

Notary Public

10

# EXHIBIT I

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| COMVERSE, INC., | ) | Case No. 07-cv-11121-PKL |
| | ) | |
| Petitioner, | ) | ECF CASE |
| | ) | |
| -v- | ) | AFFIDAVIT OF |
| | ) | SERVICE |
| | ) | |
| AMERICAN TELECOMMUNICATION, INC. | ) | |
| CHILE S.A., AMERICAN | ) | |
| TELECOMMUNICATION INC. BOLIVIA S.A., | ) | |
| AMERICAN TELECOMMUNICATION DO | ) | |
| BRASIL LTDA., AMERICAN | ) | |
| TELECOMMUNICATION INC. ECUADOR | ) | |
| ATIECUADOR S.A., and AMERICAN | ) | |
| TELECOMMUNICATION PERU S.A., | ) | |
| | ) | |
| Respondents. | ) | |

STATE OF NEW YORK    )
                     )ss.:
COUNTY OF NEW YORK   )


Olivera Perin being duly sworn, deposes and states:


1.          I am not a party to this action, am over 18 years of age, and reside in Queens, NY.


2.          On the 19th day of February, 2008, I served five copies of Information Subpoenas

with Restraining Notices, and Questions and Answers in connection with Information Subpoenas

Re : American Telecommunication, Inc. Chile S.A.; American Telecommunication Inc. Bolivia

S.A., American Telecommunication do Brasil Ltda., American Telecommunication, Inc. Peru

S.A; American Telecommunication Inc Ecuador ATIECUADOR, and one copy of a Notice to

Judgment Debtor American Telecommunication, Inc. Chile S.A., upon:

> Sam Lippitt, Managing Clerk
> Dorsey & Whitney LLP
> 250 Park Avenue
> New York, New York 10177

by personally delivering to and leaving true copies of the aforementioned

documents at said law offices.

_____
Olivera Perin

Sworn to before me this
3rd day of March, 2008

SHIRLEY O. SAED
Notary Public, State of New York
No. 01SA5072143
Qualified in New York County
Certificate Filed in New York County
Commission Expires January 27 _____

2

# EXHIBIT J

## Bush, Lindsay

| | |
|---|---|
| **From:** | Pietrzak, Brooke [pietrzak.brooke@dorsey.com] |
| **Sent:** | Tuesday, February 26, 2008 9:43 AM |
| **To:** | Skakel, Deborah |
| **Cc:** | Bush, Lindsay; Scher, Elizabeth; McDonell, Neil |
| **Subject:** | RE: Information Subpoenas |

Hi Debbie:

As I indicated during our telephone call yesterday, we requested a three week extension on ATI Chile's time to respond to the Information Subpoenas (until March 18, 2008) because it is the summer holiday in Chile right now and we therefore have not been able to discuss the requests with our client. Until we have had a chance to discuss the Information Subpoenas with ATI Chile, we cannot know how much information the responses may contain and whether it is able to provide information regarding its sister companies. As you know, we are only representing ATI Chile, and not its sister companies, with respect to this proceeding. Before any information is provided, please be advised that the parties will need to execute a Confidentiality Order. I will prepare a draft, along the lines of the Confidentiality Order Comverse previously agreed to, and will forward it to you this week.

Regards,

Brooke

---

**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Monday, February 25, 2008 6:37 PM
**To:** Pietrzak, Brooke
**Cc:** Bush, Lindsay; Scher, Elizabeth
**Subject:** RE: Information Subpoenas

Brooke--
This will confirm that, on or before March 18, 2008, ATI Chile will provide us with substantive responses to each of the five Information Subpoenas that were served on February 19, 2008.
--Debbie

---

**From:** Pietrzak, Brooke [mailto:pietrzak.brooke@dorsey.com]
**Sent:** Friday, February 22, 2008 8:47 PM
**To:** Skakel, Deborah
**Subject:** Information Subpoenas

Hi Debbie:

I hoped to contact you sooner today, but it's been a "challenging" day of air travel for me to say the least.  Are you free to speak on Monday regarding the Information Subpoenas and the timing of a response thereto?  I'm available all day and can give you a call at your convenience.

Have a good weekend,
Brooke

--------------------------------------------------------
This e-mail message and any attached files are confidential

and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
==============================================================================

# EXHIBIT K

**Bush, Lindsay**

| | |
|---|---|
| **From:** | Pietrzak, Brooke [pietrzak.brooke@dorsey.com] |
| **Sent:** | Friday, February 29, 2008 4:59 PM |
| **To:** | Skakel, Deborah |
| **Cc:** | Bush, Lindsay; Scher, Elizabeth; McDonell, Neil; Epstein, Eric |
| **Subject:** | Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 |
| **Attachments:** | SDNY Protective Order.doc |



SDNY Protective
Order.doc (55 ...          <<SDNY Protective Order.doc>>

Hi Debbie:

Please find attached a draft Stipulation and Protective Order for use in
the SDNY proceeding. It is based upon the one Comverse agreed to in the
Comverse/ATI AAA arbitration. If you have any questions or comments,
please let me know.

Have a good weekend,
Brooke

Brooke E. Pietrzak
Partner

. . . . . . . . . . . . . . . . . . . . . . . . . . .
D O R S E Y  &  W H I T N E Y   LLP
250 Park Avenue
New York, NY 10177-1500
P: 212.735.0781  F: 212.953.7201
. . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
E-mails from this firm normally contain confidential and privileged
material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be
a violation of law. If you believe that you received
this e-mail in error, please do not read this e-mail or any attached
items. Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have
deleted the e-mail, all attachments and any copies thereof.
Thank you.


CONFIDENTIAL COMMUNICATION: E-mails from Dorsey & Whitney LLP normally
contain confidential and privileged material, and are for the sole use
of the intended recipient. Use or distribution by an unintended
recipient is prohibited, and may be a violation of law. If you believe
that you received this e-mail in error, please do not read this e-mail
or any attached items. Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have
deleted the e-mail, all attachments and any copies thereof. Thank you.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC.,<br><br>Petitioner,<br><br>-against-<br><br>AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A.,<br><br>Respondents. | Case No. 07 CV 11121 (PKL)<br><br>ECF CASE<br><br>**STIPULATION AND PROTECTIVE ORDER** |

IT IS STIPULATED AND AGREED by and between Petitioner Comverse, Inc. ("Comverse") and Respondent ATI Telecommunication, Inc. Chile S.A. ("ATI Chile"), and is hereby ORDERED by the Court, that the following terms and conditions shall govern the treatment of confidential and proprietary information in this proceeding:

1.    DEFINITIONS:    In connection with the information and document exchange in this proceeding, including the production of documents and information that contain confidential, trade secret or other proprietary information, or any other information the disclosure of which would cause competitive harm, embarrassment, oppression to the disclosing individual or entity (hereinafter "Confidential Information"), which a party or nonparty deems to contain Confidential Information, may be designated by such party as "CONFIDENTIAL" or "CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY" pursuant to the terms of this Stipulation and Protective Order. The designation "CONFIDENTIAL-OUTSIDE ATTORNEYS

1

EYES ONLY" shall apply only to documents or other materials that contain significant

competitive or proprietary information, confidential financial or business information, technical

information or other trade secrets, which would not be disclosed in the ordinary course of

business without an obligation of confidentiality and/or which if otherwise disclosed would

cause the disclosing party competitive harm or could place the receiving party at a competitive

advantage.

    2.    DESIGNATION:

    (a)    <u>Production</u>:    Any documents or written information designated to be

"CONFIDENTIAL," shall be so designated by the producing party or nonparty at the time of

their production by stamping the designated materials with the legend "CONFIDENTIAL" or

"CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY," or if necessary, by separate

written statement, or as set forth in Paragraph 3 of this Stipulation and Protective Order.

    (b)    <u>Filing with the Court</u>: All Confidential Information, properly designated

under this Protective Order, that is filed with the Court during this proceeding, shall be filed

under seal in sealed envelopes or other appropriate sealed containers on which shall be labeled

with the title of this proceeding, an indication of the nature of the content of such sealed

envelope or container, the designation of "CONFIDENTIAL" or "CONFIDENTIAL-OUTSIDE

ATTORNEYS EYES ONLY" and a statement substantially as follows:

> FILED UNDER SEAL BY [NAME OF PARTY] PURSUANT TO THE
> PROTECTIVE ORDER ENTERED IN THIS PROCEEDING, AND IS
> TO BE MAINTAINED UNDER SEAL UNTIL FURTHER ORDER OF
> THE COURT

Filing of Confidential Information under seal shall not prevent or limit access in any

manner consistent with this Order of that information by the Court or counsel of record for the

parties.

(c)     The designation of any document as CONFIDENTIAL or

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY shall not preclude any party from

showing such Confidential Information to any person who appears as the author or as an

addressee or recipient on the face of the document, or who has been identified by the designating

party as having been provided with the document or the information therein by the designating

party;

(d)     Confidential Information shall be used solely for the purposes of this

proceeding. However, nothing in this Stipulation and Protective Order is intended to prevent or

restrict any party or nonparty from using or disclosing its own Confidential Information in any

manner or for any purpose. Neither shall this Order restrict the use or disclosure by a party or

nonparty of materials obtained in good faith and independently of discovery in this proceeding or

obtained or obtainable from another source or already in the possession or knowledge of a party

or nonparty, who is not obligated to maintain such documents in confidence.

3.     REDESIGNATION OF MATERIAL:     A producing party or nonparty may

redesignate under Paragraphs 1 through 3 hereof any material that it has previously produced,

but did not previously designate as Confidential Information, provided, however, that such

"redesignation" shall be effective only as of the date it is received. The redesignating party or

nonparty shall notify each other party in writing specifically identifying the documents by

production number or otherwise and whether those documents should be redesignated as

CONFIDENTIAL or CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY. Upon receipt

of such written notice, receiving counsel shall:

3

       (a)     immediately take reasonable steps to retrieve any redesignated material in the possession of any person not identified as a "Qualified Person" under Paragraph 6 hereof and notify any person known to have possession of the material of the effect of such designation;

       (b)     if not objecting to the redesignation, affix the appropriate legend on the redesignated material in accordance with Paragraphs 2 and 3 hereof;

       (c)     if objecting to the redesignation, counsel shall treat the materials at issue as designated pending resolution of the objection.  Any objections shall be in accordance with Paragraph 5 hereof.

If the materials are redesignated in accordance with the terms of this Stipulation and Protective Order, failure to originally designate those materials as Confidential Material shall not be deemed a waiver of any claims of confidentiality and shall not be used as grounds for a claim of such a waiver.

4.     PRIVILEGED MATERIAL:  In the event that any privileged materials are inadvertently produced, such production shall not be deemed a waiver of the attorney-client privilege, work-product doctrine or other privilege or immunity.  Upon notification of such inadvertent disclosure, the receiving party shall immediately make every effort to prevent further disclosure of the materials, collect and return any copies of the privileged materials and inform any person(s) having received or reviewed such materials as to the privileged nature of the materials.

5.     OBJECTIONS:     A party may move the Court for an order that material designated as confidential or privileged information is not, in fact, confidential or privileged.  On such a motion, the party asserting confidentiality or privilege shall have the burden of proving that the information designated CONFIDENTIAL, CONFIDENTIAL-OUTSIDE ATTORNEYS

4

EYES ONLY or PRIVILEGED is Confidential Information as defined in Paragraph 1 above or is otherwise entitled to protection. Before such a motion is brought, the parties will attempt to resolve their differences informally. No party shall be obligated to challenge a confidential or privileged designation, and failure to do so shall not preclude a subsequent challenge to such a designation. Designations, challenges to designations, and failures to challenge designations made pursuant to this Order are not an admission or waiver of any party, and are not admissible in evidence on the hearing of any issue in this proceeding, including the issue of whether the information is in fact confidential or privileged.

6.     QUALIFIED PERSONS:     Materials designated as Confidential Information may be disclosed or made available by the party or nonparty receiving such information only to a "Qualified Person," as defined below:

(a)     Documents designated as CONFIDENTIAL may be disclosed to:

(i)     the Court and court personnel;

(ii)     outside counsel of record to the parties to this proceeding, and the members and employees of the law firms of counsel of record, and organizations retained by counsel to provide litigation support services in this proceeding and the employees of those organizations;

(iii)     court reporters, stenographers or translators whose services are used in connection with this proceeding, and other persons working for such reporters, stenographers or translators;

(iv)     directors, officers and employees of each party, including in-house counsel, and individuals named as parties, who must see such documents to assist in this proceeding; and

(v)    such other persons who the parties may designate by written agreement or by Order of the Court, permitting additional disclosure.

(b)    Documents designated CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY may be disclosed or made available by the party receiving such information only to Qualified Persons as defined in subparagraph 6(a), excluding the parties to this proceeding as defined in subparagraph 6(a)(iv);

(c)    Any Qualified Persons under subparagraphs 6(a)(iii), (iv) and (v), shall – before disclosure or provision of any CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY material - be given a copy of this Order and shall agree in writing in the form attached hereto as Exhibit A, to be bound by the terms of this agreement, and the disclosing party shall promptly deliver to all other parties a copy of the executed agreement;

(d)    Confidential Information may be shown to a Qualified Person as designated in subparagraphs 6(a) (iii), (iv), and (v), only if the following approval procedure is used:

(i)    the party seeking approval shall provide all other parties (via overnight mail) with:

(1)    the name of the designated person;

(2)    the present employer and title of the designated person; and

(3)    an executed copy in the form attached hereto as Exhibit A or B, as required, acknowledging that the person will be bound by the terms of this agreement; and

(ii)    within seven (7) days after receipt (as evidenced by the overnight delivery tracking slip) of the information and written acknowledgement described in

6

subparagraph 6(d)(i), any party may object to the person proposed for approval by specifically

stating in writing the reasons why that party believes such person should not receive

CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials.

Failure to object within seven (7) days shall be deemed as approval of the designated person.  No

CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials

shall be disclosed to a designated person when there is an outstanding objection until such

objection is resolved by the Court or the parties, or the fifteen (15) day period set forth in

subparagraph 6(d)(iii) has expired without a motion being filed by the objecting party;

    (iii) if a party objects, the parties shall within seven (7) days from the

receipt of the notice of objection (mailed via overnight delivery), confer and attempt to resolve

the dispute.  If the parties cannot resolve the dispute, then the objecting party may move the

Court, within fifteen (15) days from the receipt of the notice of objection, for an order denying

access to the designated person of CONFIDENTIAL or CONFIDENTIAL—OUTSIDE

ATTORNEYS EYES ONLY materials; and

    (e) this Order shall be binding on the parties, their agents, successors,

heirs, assigns, subsidiaries, employees, and other persons or organizations over which they have

control.

  7. RETURN OR DESTRUCTION OF CONFIDENTIAL AND CONFIDENTIAL-

OUTSIDE ATTORNEYS EYES ONLY MATERIAL: Within forty-five (45) days of the

final disposition of the proceeding, each party or counsel in possession, custody or control of

Confidential Information, or any tabulations, analyses, studies or compilations derived

therefrom, shall either destroy or return (at the producing party's option) those materials.

Destruction of such materials, including any copies stored electronically, shall be certified in

writing by an officer of the receiving party. However, counsel for each party may retain

hardcopy abstracts or summaries of discovery materials or copies of materials which contain

attorney-work product or which incorporate Confidential Information in documents filed with

the Court.

8.      Comverse hereby agrees to indemnify and hold harmless, and to pay or reimburse

on demand, ATI Chile, its subsidiaries and its affiliates, and all their officers, directors,

employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions,

proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses)

arising directly or indirectly out of any breach of this Stipulation and Protective Order by

Comverse or by any Qualified Person to whom Comverse has disclosed CONFIDENTIAL or

CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that ATI Chile disclosed

to Comverse.

9.      The Court shall retain jurisdiction to enforce the provisions of the Order and to

make such modifications and additions to this Order as the Court may from time to time deem

appropriate.

Respectfully submitted,

Dated: March __, 2008                    Dated March __, 2008


_____          _____
DICKSTEIN SHAPIRO LLP                    DORSEY & WHITNEY LLP
Howard Graff                             Neil E. McDonell
Deborah A. Skakel                        Brooke E. Pietrzak
Lindsay A. Bush                          Eric Epstein
1177 Avenue of the Americas              250 Park Avenue
New York, New York                       New York, New York
(212) 277-6500                           (212) 415-9200
Attorneys for Petitioner Comverse, Inc.  Attorneys for Respondent American
                                         Telecommunication, Inc. Chile S.A.


SO ORDERED this ___ day of _____ 2008



_____
Honorable Peter K. Leisure

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

**NOTICE OF PROTECTIVE ORDER
AND CONFIDENTIAL UNDERTAKING
(Non Experts and Consultants)**

I hereby certify my understanding that Confidential and/or Confidential—Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Stipulation and Protective Order (the "Order"), entered by the Court in the proceeding entitled Comverse. Inc. v. American Telecommunication. Inc. Chile SA., et al.; Case No. 07 CV 11121 (PKL).

I further certify that my full name and address are: _____

_____; my present employer is:_____

_____; and the address of my present employment is:_____

_____;    and    my

present occupation and/or job title or description is:_____

I further certify that I have received a copy of the Order and have carefully read and understand the provisions of the Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as such shall apply to me. I further agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the terms and restrictions of the Order. I further agree that I shall not disclose Confidential or Confidential—Outside Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the termination of this proceeding, or sooner if so requested, I shall return to counsel all Confidential and Confidential—Outside Attorneys Eyes Only material and information in my possession or control, including all copies and excerpts thereof.

I understand that violation of the Order may be punishable by contempt.

Dated:_____, 2008          _____

                                        (Signature)


                                        _____

                                        Print Name

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

EXHIBIT B

## NOTICE OF PROTECTIVE ORDER
## AND CONFIDENTIAL UNDERTAKING
### (Consultants and Experts)

I hereby certify that I have been retained as a consultant or expert witness in the proceeding entitled Comverse. Inc. v. American Telecommunication. Inc. Chile SA., et al.; Case No. 07 CV 11121 (PKL). A copy of my Curriculum Vitae is attached hereto.

I further certify my understanding that Confidential and Confidential—Outside Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Stipulation and Protective Order (the "Order"), entered in this proceeding.

I further certify that I have been provided a copy of and have read and understand the Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as such shall apply to me. I further agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the terms

and restrictions of the Order.  I further agree that I shill not disclose Confidential or

Confidential—Outside Attorneys Eyes Only information to anyone other than persons permitted

to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the conclusion of my involvement in the litigation, I will return all

Confidential and Confidential—Outside Attorneys Eyes Only material and information,

summaries, abstracts and indices thereof which come into my possession, and documents or

things which I have prepared relating thereto, to counsel for the party by whom I am employed

or retained.

I understand that violation of the Order may be punishable by contempt.


Dated:_____, 2006          _____

                                      (Signature)


                                      _____

                                      Print Name

# EXHIBIT L

**DICKSTEIN**SHAPIRO LLP

1177 Avenue of the Americas  |  New York, NY 10036-2714
TEL (212) 277-6500  |  FAX (212) 277-6501  |  dicksteinshapiro.com
*Writer's Direct Dial: (212) 277-6585*
*Writer's Direct Fax: (917) 591-7897*
*E-Mail Address: SkakelD@dicksteinshapiro.com*

March 4, 2008

**VIA E-MAIL**

Brooke Pietrzak, Esq.
Dorsey & Whitney
250 Park Avenue
New York, New York 10177

  Re: Information Subpoenas With Restraining Notice, dated
    <u>February 14, 2008, directed to ATI Chile ("Information Subpoenas")</u>

Dear Brooke:

   This is in response to your February 26th email regarding ATI Chile's responses to the five above-referenced Information Subpoenas and your February 29th email attaching a draft Stipulation and Protective Order, which you contend is a prerequisite to ATI Chile providing "any information" in response to the Information Subpoenas.

   As you know, I agreed to a three week extension of ATI Chile's time to respond to the Information Subpoenas, indicating that I expected "substantive responses" rather than objections or further delay from ATI Chile. Because, as I stated when I agreed to the extension as a professional courtesy, it has already been several years since ATI Chile and its four affiliates have failed to pay significant sums due to Comverse, Comverse is certainly not keen on further avoidance mechanisms by ATI Chile and its four affiliates – all of whom are now judgment debtors, not simply respondents in an arbitration.

   As such, your warning that you "cannot know how much information the responses [to the Information Subpoenas] may contain and whether [ATI Chile] is able to provide information regarding its sister companies" is disingenuous in light of facts such as the following:

    &#9670; ATI Chile owns approximately 98% of the shares of ATI Telecommunication do Brasil Ltda. ("ATI Brasil"), one of ATI Chile's "sisters." For ATI Chile to profess ignorance about financial information relating to ATI Brasil – when it owns virtually all of ATI Brasil – is ludicrous.

    &#9670; Luiz Nunez and Alvaro Garcia, while officers of ATI Chile, had no difficulty testifying about all five of the ATI "sisters." For either or

296460.01

**DICKSTEIN** SHAPIRO LLP

Brooke Pietrzak, Esq.
March 4, 2008
Page 2

both of them to now disclaim any knowledge of financial information responsive to the Information Subpoenas would be highly suspect.

Furthermore, your attempt to throw up a protective order – especially one with an Attorneys' Eyes Only provision – as yet another obstacle to Comverse obtaining payment of the Judgments is inappropriate.  Please advise of any controlling authority for your contention that ATI Chile – a judgment debtor – may refuse to respond to the Information Subpoenas unless Comverse – the judgment creditor –  agrees to an Attorneys' Eyes Only protective order.  Such a protocol in the context of the enforcement of judgments is certainly not in keeping with the practice in the Southern District Court of New York.

Very truly yours,

Deborah A. Skakel

cc:  (via email)    Neil McDonell, Esq.
Eric Epstein, Esq.
Howard Graff, Esq.
Lindsay A. Bush, Esq.
Elizabeth I. Scher

# EXHIBIT M



**BROOKE E. PIETRZAK**
(212) 735-0781
pietrzak.brooke@dorsey.com

March 10, 2008

**VIA ELECTRONIC MAIL AND POSTAL
SERVICE**

Deborah A. Skakel, Esq.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, New York 10036

Re:    Comverse, Inc. v. American Telecommunication, Inc. Chile S.A. et al.;
         Case No. 07 CV 11121 (PKL)

Dear Debbie:

        We write in response to your letter of March 4, 2008 regarding, among other items, the draft Stipulation and Protective Order (the "Post-Judgment Protective Order") that we forwarded to you on February 29, 2008. Contrary to your assertions, a protective order, including one with an attorneys' eyes only designation, is proper in the post-judgment context.

        CPLR 5240 provides that with regard to the judgment enforcement procedures of CPLR Article 52, "[t]he Court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." "Section 5240 was clearly intended to be the equivalent, in CPLR article 52, of CPLR 3103 (subd.[a]), which empowers the courts to make protective orders with regard to disclosure devised under CPLR article 31." *Cook v. H.R.H. Const. Corp.,* 302 N.Y.S.2d 364, 365 (2d Dept. 1969); *see also Davis-Delaney-Arrow, Inc. v. Gerson-Ogden, Inc.,* 427 N.Y.S.2d 559, 560-1 (Sup. Ct. N.Y. Co. 1980). Moreover, "[t]he protective order power of CPLR 5240 may be sought at any time during the enforcement process." *See* David D. Siegel, "Practice Commentaries," McKinney's Consolidated Laws of New York Ann., C5240.

        As you recall, prior to the production of documents in the underlying arbitration, Comverse, Inc. ("Comverse") and American Telecommunication, Inc. Chile S.A. ("ATI Chile") entered into a Stipulation and Protective Order that was so ordered by the Arbitral Tribunal on November 10, 2006 (the "Pre-Judgment Protective Order"). The Pre-Judgment Protective Order, upon which the Post-Judgment Protective Order is modeled, provided for confidential and proprietary information to be designated into one of two tiers - "Confidential" and "Confidential-Outside Attorneys Eyes Only" - depending upon whether certain criteria were met. Given that Section 5240 is intended to be the Article 52 equivalent of CPLR 3103, an attorneys' eyes only provision should be as appropriate in the Post-Judgment Protective Order as it was in the Pre-Judgment Protective Order.

        The designation "Confidential-Outside Attorneys Eyes Only" in the Pre-Judgment Protective Order applied to documents that contained "significant competitive or proprietary

DORSEY & WHITNEY LLP • WWW.DORSEY.COM • **T** 212.415.9200 • **F** 212.953.7201
250 PARK AVENUE • NEW YORK, NEW YORK 10177-1500

USA   CANADA   EUROPE   ASIA



Deborah A. Skakel, Esq.
March 10, 2008
Page 2

information, *confidential financial or business information,* technical information or other trade secrets ...". *See* Pre-Judgment Protective Order, ¶ 1 (emphasis added). The Information Subpoenas that were served on ATI Chile on February 19, 2008 clearly seek numerous types of confidential financial or business information. During the arbitration, any materials reflecting such highly sensitive competitive information would have been designated as "Confidential-Outside Attorneys Eyes Only" before their production. The fact these materials may now be disclosed in the post-judgment time frame does not somehow minimize the harm that ATI Chile could experience as a result. Comverse did not object to the inclusion of two tiers of protection in the Pre-Judgment Protective Order and it should not be permitted to do so in the post-judgment context.

Sincerely,

Brooke E. Pietrzak

# EXHIBIT N

**DICKSTEIN**SHAPIRO LLP

1177 Avenue of the Americas  |  New York, NY 10036-2714
TEL (212) 277-6500  |  FAX (212) 277-6501  |  dicksteinshapiro.com

*Writer's Direct Dial: (212) 277-6585*
*Writer's Direct Fax: (917) 591-7897*
*E-Mail Address: SkakelD@dicksteinshapiro.com*

March 13, 2008

**VIA E-MAIL**

Brooke Pietrzak, Esq.
Dorsey & Whitney
250 Park Avenue
New York, New York 10177

Re:   Information Subpoenas With Restraining Notice, dated
      <u>February 14, 2008, directed to ATI Chile ("Information Subpoenas")</u>

Dear Brooke:

The content of your March 10, 2008 letter did not respond to the request in my March 4, 2008 letter – <u>i.e.</u>, "[p]lease advise of any controlling authority for your contention that ATI Chile – a judgment debtor – may refuse to respond to the Information Subpoenas unless Comverse – the judgment creditor – agrees to an Attorneys' Eyes Only ("AEO") protective order."

Neither CPLR 5420 nor the two cases you cite supports your position that an AEO confidentiality stipulation is appropriate in connection with a judgment debtor's response to an information subpoena.  The Information Subpoenas directed to ATI Chile are wholly proper, and Comverse is using that enforcement procedure properly.  (Indeed, you have not contended otherwise.)  Thus, CPLR 5420 – the purpose of which is to prevent abuse in the use of the enforcement mechanisms under CPLR Article 52 (and analogous to CPLR 3103, whose purpose is to prevent abuse in the use of the disclosure devices under CPLR Article 31) – is inapplicable here.

While we therefore will not agree to an AEO confidentiality stipulation and protective order such as you proposed on February 29, 2008, we – on behalf of Dickstein Shapiro and Comverse – will agree to do the following:

    1.    Use the information ATI Chile provides in response to the Information Subpoenas solely for the purpose of judgment enforcement.

    2.    Use the provisions of CPLR Article 52 in enforcing the judgments in a manner consistent with CPLR 5420 – <u>i.e.</u>, refrain from unreasonable annoyance and abuse in the use of the CPLR enforcement procedures.

Washington, DC  |  New York, NY  |  Los Angeles, CA

298142.01

**DICKSTEIN**SHAPIRO LLP
Brooke Pietrzak, Esq.
March 13, 2008
Page 2

ATI Chile is entitled to no further protections.  Accordingly, we expect full and compete responses to the Information Subpoenas on or before March 18, 2008.  If you intend to persist in holding the responses hostage to your demand for an AEO confidentiality stipulation, please advise me by noon tomorrow, so that we may prepare the necessary motion to compel papers for Judge Leisure – motion papers that will seek our costs and expenses.

Very truly yours,

Deborah A. Skakel

cc:  (via email)     Neil McDonell, Esq.
                     Eric Epstein, Esq.
                     Howard Graff, Esq.
                     Lindsay A. Bush, Esq.
                     Elizabeth I. Scher

298142.01

# EXHIBIT O

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

               Petitioner,

    -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

               Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION, INC. CHILE S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American

Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the

information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice

regarding ATI Chile (the "Requests").

**General Objections and Responses**

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.   ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.   ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.   ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.   ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.   ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.   ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.   ATI Chile objects to the Requests to the extent that they seek the disclosure of sensitive business and financial information and/or information that is confidential or proprietary or constitutes trade secrets, and no such information will be disclosed without a suitable protective order.

8.   ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

9.      These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

**Specific Objections and Responses**

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

What is your full name and address?

Response to Request No. 1

Rafael Alfaro Macherone. La Concepción 177, Providencia, Santiago, Chile.

Request No. 2

What office or position do you hold with the debtor?

Response to Request No. 2

Chairman of the Board of ATI Chile.

Request No. 3

What are the names and addresses of the other corporate officers?

Response to Request No. 3

Luis Alberto Núñez, CEO and Sergio Proboste Paz, VP International Sales, both at La Concepción 177, Providencia, Santiago, Chile.

Request No. 4

What are the names and addresses of the shareholders and directors?

Response to Request No. 4

Shareholders: American Telecommunication Holdings S.A. and Rafael Alfaro Macherone, both at La Concepción 177, Providencia, Santiago, Chile.

Directors: Rafael Alfaro Macherone, Víctor Acuña Ascuí, Luis Alberto Núñez Asecio, Julio Carrasola Roselott and Javier Acuña Larraín, all at La Concepción 177, Providencia, Santiago, Chile.

Request No. 5

When was the business of the debtor commenced?

<u>Response to Request No. 5</u>

ATI Chile objects to this Request on the basis that it is vague and ambiguous, particularly in referring to "the business of the debtor." Subject to and without waiving the foregoing general and specific objections, ATI Chile was incorporated on March 25, 1980.

<u>Request No. 6</u>

What is the nature of the business?

<u>Response to Request No. 6</u>

ATI Chile objects to this Request on the basis that it is vague and ambiguous, particularly in referring to "the nature of the business." Subject to and without waiving the foregoing general and specific objections, ATI Chile is a value added reseller of telecommunication products and services.

<u>Request No. 7</u>

What books of account does the judgment debtor maintain?

<u>Response to Request No. 7</u>

ATI Chile maintains complete accounting books, as required by Chilean law.

<u>Request No. 8</u>

By whom or under whose supervision have the books of account been kept?

<u>Response to Request No. 8</u>

The books of account for ATI Chile are kept by the CEO.

<u>Request No. 9</u>

In whose possession are the books and records?

<u>Response to Request No. 9</u>

The books of account for ATI Chile are kept in the CEO's possession.

Request No. 10

What bank accounts has the debtor maintained during the past 2 years?

Response to Request No. 10

ATI Chile objects to this Request on the ground that it seeks the disclosure of sensitive business and financial information without a suitable protective order having been entered.   ATI Chile will answer this Request upon the entry of a suitable protective order.

Request No. 11

Has debtor closed any bank account since the summons in this action was served?

Response to Request No. 11

No.

Request No. 12

If so, give name and address of bank.

Response to Request No. 12

N/A.

Request No. 13

How much was on deposit at time the account was closed?

Response to Request No. 13

N/A.

Request No. 14

Give date, name and address of payee of the last check drawn?

Response to Request No. 14

N/A.

Request No. 15

What was the amount of said check and the consideration therefor?

Response to Request No. 15

N/A.

Request No. 16

What safe deposit boxes or other depositories has the judgment debtor kept or used for the past 2 years?

Response to Request No. 16

None.

Request No. 17

When was the last inventory of the debtor's property taken, by whom, and what was the total dollar value?

Response to Request No. 17

ATI Chile objects to this request as vague and ambiguous, particularly in referring to the debtor's "property."  Subject to and without waiving the foregoing general and specific objections, ATI Chile's inventory is kept as a running total by an automated system managed by ATI Chile's CEO, and the most recent inventory dollar value as set forth in the balance sheet of December 31, 2007, is US$5,666,408.67.

Request No. 18

Has the debtor issued any financial statements within the past two years and if so to whom issued, including mercantile and trade agencies?

Response to Request No. 18

ATI Chile objects to this Request on the basis that it seeks the disclosure of sensitive business

7

and financial information without a suitable protective order having been entered.   ATI Chile also objects to this Requests on the basis that it is vague and ambiguous, particularly in referring to "financial statements."   Subject to and without waiving the foregoing general and specific objections, each year ATI Chile issues financial statements to the Servicio de Impuestos Internos (the Chilean Tax Bureau).   ATI Chile will further answer this Request upon the entry of a suitable protective order.

Request No. 19

At what addresses does the debtor conduct its business?

Response to Request No. 19

ATI Chile conducts its business at Puerto Madero 9710, Sector Bodega No. 6A, Pudahuel, Santiago, Chile.

Request No. 20

Which of these premises are under a written lease and which are owned by the debtor?

Response to Request No. 20

The premises at Puerto Madero 9710 are under a written lease.

Request No. 21

What are the rents paid?

Response to Request No. 21

The monthly rent for the premises at Puerto Madero 9710, as of December 31, 2007, is UF 101,50 plus IVA tax per month.   This amount is equal to approximately $2,370,122.90 Chilean pesos, or approximately US $4,791.60 per month.

Request No. 22

Does the landlord hold any security?

Response to Request No. 22

ATI Chile objects to this request as vague and ambiguous, particularly in referring to "security," and in the lack of specificity as to which landlord is referred to in the request. Subject to and without waiving the foregoing general and specific objections, the landlord of the Puerto Madero 9710 premises holds an amount on deposit from ATI Chile.

Request No. 23

How much security?

Response to Request No. 23

ATI Chile objects to this request as vague and ambiguous, particularly in referring to "security," and in the lack of specificity as to which landlord is referred to in the request. Subject to and without waiving the foregoing general and specific objections, the landlord of the premises at Puerto Madero 9710 holds the equivalent of one month's rent for said premises, or approximately US$4,791.60.

Request No. 24

What assets does the debtor have at the present time?

Response to Request No. 24

ATI Chile objects to this request as vague and ambiguous, particularly in the lack of specificity as to what information is requested regarding ATI Chile's assets. Subject to and without waiving the foregoing general and specific objections, ATI Chile has assets consisting of inventory, accounts receivable, fixed assets and other items.

Request No. 25

Where are these assets located?

Response to Request No. 25

The assets of ATI Chile are located at Puerto Madero 9710, Sector Bodega No. 6A, Pudahuel, Santiago, Chile.

Request No. 26

Are there any mortgages or other liens on the debtor's property?

Response to Request No. 26

No.

Request No. 27

What repayments of loans has the debtor made within the past four months and to whom repaid?

Response to Request No. 27

None.

Request No. 28

What payments over $100 have been made to any other creditor within the past 4 months?

Response to Request No. 28

ATI Chile objects to this Request on the ground that it seeks the disclosure of sensitive business and financial information without a suitable protective order having been entered. ATI Chile will answer this Request upon the entry of a suitable protective order.

Request No. 29

What property has the debtor transferred or otherwise disposed of during the past year other than in the usual course of business?

Response to Request No. 29

None.

Request No. 30

Has the debtor assigned any of its accounts receivable and if so, to whom?

Response to Request No. 30

ATI Chile objects to this request on the basis that it overly broad and unduly burdensome insofar as, on its face, it is not limited in terms of time, and ATI Chile was incorporated 28 years ago, in 1980. Subject to and without waiving the foregoing general and specific objections, ATI Chile has not assigned any of its accounts receivable during the last year.

Request No. 31

Has any execution or attachment been levied against the debtor's property within the past four months and if so, give particulars including property seized and at whose suit?

Response to Request No. 31

No.

Request No. 32

Where did the debtor file its Federal and State or other required income tax returns for the past 2 years?

Response to Request No. 32

ATI Chile files its income tax returns at the Santiago Poniente Office of Servicio de Impuestos Internos (the Chilean Tax Bureau).

Request No. 33

What personal withdrawals from the debtor have been made by each officer, director or managing executive of the debtor, during the past year?

Response to Request No. 33

None.

Request No. 34

Does the debtor pay the premiums of any life insurance or annuities policies for any stockholder, officer, director or key employee or a member of the family of any such person?

Response to Request No. 34

No.

Request No. 35

If so, what are the names of the companies and the numbers and amounts of each policy?

Response to Request No. 35

N/A.

Request No. 36

Who are the beneficiaries in each policy?

Response to Request No. 36

N/A.

Request No. 37

What is the present cash value of each such policy?

Response to Request No. 37

N/A.

Request No. 38

Does the debtor own an auto, truck, trailer, tractor, airplane or boat?

Response to Request No. 38

No.

Request No. 39

Is it covered by a chattel mortgage, conditional sale or other security agreement?

Response to Request No. 39

N/A.

Request No. 40

Was it bought on the installment plan?

Response to Request No. 40

N/A.

Request No. 41

Where is it kept?

Response to Request No. 41

N/A.

Request No. 42

Does debtor own any real estate?

Response to Request No. 42

No.

Request No. 43

Does debtor have shares or a proprietary lease in a cooperative or condominium?

Response to Request No. 43

No.

Request No. 44

Does debtor own any chattel or real estate mortgages?

Response to Request No. 44

No.

Request No. 45

Does debtor hold any participating interest in any real estate or chattel mortgage?

Response to Request No. 45

No.

Request No. 46

Does debtor lease any other property?

Response to Request No. 46

No.

<u>Request No. 47</u>

Does debtor own any stocks, bonds, defense bonds or other securities?

<u>Response to Request No. 47</u>

No.

<u>Request No. 48</u>

Describe each item.

<u>Response to Request No. 48</u>

N/A.

<u>Request No. 49</u>

Does debtor receive royalties from any patent, copyright or invention?

<u>Response to Request No. 49</u>

No.

<u>Request No. 50</u>

Does debtor own a seat in any stock, cotton, produce, commercial or other exchange?

<u>Response to Request No. 50</u>

No.

<u>Request No. 51</u>

Is the debtor a trustee or executor under any will or testament, insurance policy or trust

agreement?

<u>Response to Request No. 51</u>

No.

Request No. 52

Did debtor ever borrow money and pledge or deposit as collateral security any property, real or personal?

Response to Request No. 52

ATI Chile objects to this request on the basis that it overly broad and unduly burdensome insofar as, on its face, it is not limited in terms of time, and ATI Chile was incorporated 28 years ago, in 1980. Subject to and without waiving the foregoing general and specific objections, ATI Chile has not borrowed money and pledged or deposited as collateral security any property, real or person, in the past four months.

Request No. 53

If so, state names and addresses of persons with whom such security was deposited.

Response to Request No. 53

N/A.

Request No. 54

Does debtor have an interest in any mortgage, mechanic's lien or other lien on real property?

Response to Request No. 54

No.

Request No. 55

Are there any judgments in debtor's favor?

Response to Request No. 55

No.

Request No. 56

If so, state details and amounts.

15

<u>Response to Request No. 56</u>

N/A.

<u>Request No. 57</u>

Does anybody owe debtor money?

<u>Response to Request No. 57</u>

Yes.

<u>Request No. 58</u>

If so, give details.

<u>Response to Request No. 58</u>

Víctor Acuña Ascuí – US$3,157.85
Administradora de Fondos de Cesantía – US$7,825.89
Tecnología Digital S.A. – US$12,790,90

<u>Request No. 59</u>

Are there any judgments against debtor?

<u>Response to Request No. 59</u>

Apart from the judgment against ATI Chile in the instant proceeding, no.

<u>Request No. 60</u>

If so, state details and amounts.

<u>Response to Request No. 60</u>

<u>See</u> Response to Request No. 59.

<u>Request No. 61</u>

Has debtor ever before been examined by a judgment creditor?

<u>Response to Request No. 61</u>

No.

Request No. 62

Has debtor any right or interest in any action now pending in any court?

Response to Request No. 62

Apart from the instant proceeding, no.

Request No. 63

Is debtor a party to any action now pending in any court?

Response to Request No. 63

Yes.

Request No. 64

Does anyone hold any property or money in trust for debtor?

Response to Request No. 64

No.

Request No. 65

Has debtor borrowed money from any bank or other lending institution within the past 2 years?

Response to Request No. 65

Yes.

Request No. 66

What deposits has debtor with any utility company?

Response to Request No. 66

None.

Request No. 67

Does debtor have an interest in insurance or other claims now pending?

Response to Request No. 67

No.

<u>Request No. 68</u>

If so, give details.

<u>Response to Request No. 68</u>

N/A.

American Telecommunication, Inc. Chile S.A.

By: _____

Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.



18

# EXHIBIT P

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

> Petitioner,

-against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

> Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American

Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the

information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice

regarding American Telecommunication Inc. Bolivia S.A. (the "Requests").

## General Objections and Responses

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.    ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.    ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.    ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.    ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.    ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.    ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.    ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.    These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

<u>**Specific Objections and Responses**</u>

      Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

<u>Request No. 1</u>

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

<u>Response to Request No. 1</u>

No.

<u>Request No. 2</u>

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

<u>Response to Request No. 2</u>

N/A.

<u>Request No. 3</u>

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

<u>Response to Request No. 3</u>

No.

<u>Request No. 4</u>

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

<u>Response to Request No. 4</u>

N/A.

Request No. 5

Do you hold collateral in which the debtor has or may have an interest?

Response to Request No. 5

No.

Request No. 6

What is the description and value of each item of collateral?

Response to Request No. 6

N/A.

Request No. 7

What interest does the debtor appear to have in each item of collateral?

Response to Request No. 7

N/A.

Request No. 8

Is the judgment debtor indebted to you?

Response to Request No. 8

No.

Request No. 9

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

Response to Request No. 9

N/A.

Request No. 10

Do you hold any lien, mortgage or otherwise, against property of the debtor?

<u>Response to Request No. 10</u>

No.

<u>Request No. 11</u>

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

<u>Response to Request No. 11</u>

N/A.

<u>Request No. 12</u>

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

<u>Response to Request No. 12</u>

N/A, as no assets of ATI Bolivia are in the possession of ATI Chile.

<u>Request No. 13</u>

What are the full details of the same in regard to each asset?

<u>Response to Request No. 13</u>

N/A.

<u>Request No. 14</u>

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

<u>Response to Request No. 14</u>

No.

<u>Request No. 15</u>

What are the full details of each such transaction?

<u>Response to Request No. 15</u>

N/A.

Request No. 16

Has the debtor given you a statement of his financial condition?

Response to Request No. 16

No.

Request No. 17

What assets are disclosed therein (or in the alternative supply a copy thereof)?

Response to Request No. 17

N/A.

Request No. 18

What is debtor's social security number and last place of employment?

Response to Request No. 18

ATI Chile does not possess this information regarding ATI Bolivia.

American Telecommunication, Inc. Chile S.A.

By: _____
Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.

_____

6

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                   Petitioner,

    -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                   Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

### AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH RESTRAINING NOTICE REGARDING JUDGMENT DEBTOR AMERICAN TELECOMMUNICATION DO BRASIL LTDA.

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice regarding American Telecommunication do Brasil Ltda. (the "Requests").

**General Objections and Responses**

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.      ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.      ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.      ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.      ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.      ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.      ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.      ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.      These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

## Specific Objections and Responses

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

N/A.

<u>Request No. 5</u>

Do you hold collateral in which the debtor has or may have an interest?

<u>Response to Request No. 5</u>

No.

<u>Request No. 6</u>

What is the description and value of each item of collateral?

<u>Response to Request No. 6</u>

N/A.

<u>Request No. 7</u>

What interest does the debtor appear to have in each item of collateral?

<u>Response to Request No. 7</u>

N/A.

<u>Request No. 8</u>

Is the judgment debtor indebted to you?

<u>Response to Request No. 8</u>

No.

<u>Request No. 9</u>

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

<u>Response to Request No. 9</u>

N/A.

<u>Request No. 10</u>

Do you hold any lien, mortgage or otherwise, against property of the debtor?

<u>Response to Request No. 10</u>

No.

<u>Request No. 11</u>

What is the nature of each such lien, the full description of the property affected by the lien, the

location and identity of the office of the filing or recording and full indexing information?

<u>Response to Request No. 11</u>

N/A.

<u>Request No. 12</u>

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or

other encumbrances?

<u>Response to Request No. 12</u>

N/A, as no assets of ATI Brasil are in the possession of ATI Chile.

<u>Request No. 13</u>

What are the full details of the same in regard to each asset?

<u>Response to Request No. 13</u>

N/A.

<u>Request No. 14</u>

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the

debtor may now have, or may in the future become entitled to, money or credit?

<u>Response to Request No. 14</u>

No.

<u>Request No. 15</u>

What are the full details of each such transaction?

<u>Response to Request No. 15</u>

5

N/A.

<u>Request No. 16</u>

Has the debtor given you a statement of his financial condition?

<u>Response to Request No. 16</u>

No.

<u>Request No. 17</u>

What assets are disclosed therein (or in the alternative supply a copy thereof)?

<u>Response to Request No. 17</u>

N/A.

<u>Request No. 18</u>

What is debtor's social security number and last place of employment?

<u>Response to Request No. 18</u>

ATI Chile does not possess this information regarding ATI Brasil.

American Telecommunication, Inc. Chile S.A.

By: _____

Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.

6

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                    Petitioner,

    -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                    Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

### AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A.

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice regarding American Telecommunication Inc. Ecuador ATIECUADOR S.A. (the "Requests").

**General Objections and Responses**

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.      ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.      ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.      ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.      ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.      ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.      ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.      ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.      These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

## Specific Objections and Responses

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

3

N/A.

Request No. 5

Do you hold collateral in which the debtor has or may have an interest?

Response to Request No. 5

No.

Request No. 6

What is the description and value of each item of collateral?

Response to Request No. 6

N/A.

Request No. 7

What interest does the debtor appear to have in each item of collateral?

Response to Request No. 7

N/A.

Request No. 8

Is the judgment debtor indebted to you?

Response to Request No. 8

No.

Request No. 9

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

Response to Request No. 9

N/A.

Request No. 10

Do you hold any lien, mortgage or otherwise, against property of the debtor?

<u>Response to Request No. 10</u>

No.

<u>Request No. 11</u>

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

<u>Response to Request No. 11</u>

N/A.

<u>Request No. 12</u>

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

<u>Response to Request No. 12</u>

N/A, as no assets of ATI Ecuador are in the possession of ATI Chile.

<u>Request No. 13</u>

What are the full details of the same in regard to each asset?

<u>Response to Request No. 13</u>

N/A.

<u>Request No. 14</u>

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

<u>Response to Request No. 14</u>

No.

<u>Request No. 15</u>

What are the full details of each such transaction?

<u>Response to Request No. 15</u>

N/A.

Request No. 16

Has the debtor given you a statement of his financial condition?

Response to Request No. 16

No.

Request No. 17

What assets are disclosed therein (or in the alternative supply a copy thereof)?

Response to Request No. 17

N/A.

Request No. 18

What is debtor's social security number and last place of employment?

Response to Request No. 18

ATI Chile does not possess this information regarding ATI Ecuador.

American Telecommunication, Inc. Chile S.A.

By: _____
Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.

6

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                Petitioner,

     -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION PERU S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American
Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the
information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice
regarding American Telecommunication Peru S.A. (the "Requests").

**General Objections and Responses**

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.    ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.    ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.    ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.    ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.    ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.    ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.    ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.    These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

2

## Specific Objections and Responses

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

3

N/A.

Request No. 5

Do you hold collateral in which the debtor has or may have an interest?

Response to Request No. 5

No.

Request No. 6

What is the description and value of each item of collateral?

Response to Request No. 6

N/A.

Request No. 7

What interest does the debtor appear to have in each item of collateral?

Response to Request No. 7

N/A.

Request No. 8

Is the judgment debtor indebted to you?

Response to Request No. 8

No.

Request No. 9

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

Response to Request No. 9

N/A.

Request No. 10

Do you hold any lien, mortgage or otherwise, against property of the debtor?

Response to Request No. 10

No.

Request No. 11

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

Response to Request No. 11

N/A.

Request No. 12

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

Response to Request No. 12

N/A, as no assets of ATI Peru are in the possession of ATI Chile.

Request No. 13

What are the full details of the same in regard to each asset?

Response to Request No. 13

N/A.

Request No. 14

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

Response to Request No. 14

No.

Request No. 15

What are the full details of each such transaction?

Response to Request No. 15

5

N/A.

Request No. 16

Has the debtor given you a statement of his financial condition?

Response to Request No. 16

No.

Request No. 17

What assets are disclosed therein (or in the alternative supply a copy thereof)?

Response to Request No. 17

N/A.

Request No. 18

What is debtor's social security number and last place of employment?

Response to Request No. 18

ATI Chile does not possess this information regarding ATI Peru.

American Telecommunication, Inc. Chile S.A.

By: _____
Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.

_____
Notary Public

6

# EXHIBIT Q

69d2comH

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     COMVERSE, INC.,

 3              Plaintiff,              New York, N.Y.

 4          v.                         06 Civ. 6825(PKL)

 5   AMERICAN TELECOMMUNICATION,

 6   INC. CHILE S.A.,

 7              Defendant.
     ------------------------------x

 8

 9                                     September 13, 2006
                                       2:10 p.m.
10

11

12   Before:

13                  HON. PETER K. LEISURE,

14                                     District Judge

15

16                  APPEARANCES

17   DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, LLP
          Attorneys for Plaintiff
18   BY:  DEBORAH A. SKAKEL
          HOWARD GRAFF
19        LINDSAY A. BUSH

20   DORSEY & WHITNEY, LLP
          Attorneys for Defendant
21   BY:  NEIL E. McDONELL
          BROOKE E. PIETRZAK
22        ANTONY N. RUTHERFORD
          MARIO DIAZ-CRUZ III
23

     MONTT Y CIA, S.A.
24        Attorneys for Defendant
     BY:  BEATRIZ LYNCH DEL FIERRO
25
```

69d2comH                          Jimenez - Cross

1              (Witness excused)

2              THE COURT:  Now, the plaintiff is still in her case.

3              MR. McDONELL:  Sure.

4              THE COURT:  Is there something more to add?

5              MS. SKAKEL:  If Mr. McDonnell is going to call

6     Mr. Acuna, your Honor, I don't mind him taking direct, and I

7     will go at it that way.

8              THE COURT:  He will be called out of order.  Is that

9     agreeable to the defendant?

10             MR. McDONELL:  I think it may be more efficient if

11    they plead their presentation and then we can move to

12    defendant's presentation and testimony.

13             THE COURT:  All right.  We will proceed that way.  It

14    is plaintiff's burden.

15             MS. SKAKEL:  All right, your Honor.  Then I would call

16    Mr. Acuna, please.

17     VICTOR ACUNA,

18         called as a witness by the plaintiff,

19         having been duly sworn, testified as follows:

20    DIRECT EXAMINATION

21    BY MS. SKAKEL:

22    Q.  Good afternoon, Mr. Acuna.

23    A.  Good afternoon.

24    Q.  Mr. Acuna, I believe that there are still documents that

25    should be on the witness stand that were left from

69d2comH                          Acuna - Direct

1    A.  Unfortunately, I am not in the operational part of ATI.

2    Q.  I'm sorry, sir.  I didn't mean to interrupt you.

3    A.  I am not in the operational part.  I am just a member of

4    the board.

5    Q.  With whom would you suggest I speak in order to determine

6    whether any of the ATI sister companies have pending bids in

7    Latin America?

8    A.  I would say the legal representative, this Mr. Nuñez.

9    Q.  The gentleman that you referred to as the CEO.

10   A.  Right.

11   Q.  Very good.

12          So unfortunately, as you sit here today, you are not

13   in a position to tell me yes or no as to whether or not ATI

14   sister companies have any pending bids in Latin America.

15   A.  Well, maybe our counsel will request more what we do in

16   ATI, but I may have to add something.  We sell products from

17   Comverse.  We develop systems that are related to Comverse that

18   are in that list that you saw in an annex I, I think.

19   Q.  Yes, schedule I.

20   A.  And we have other products.  We even have one product that

21   we brought to the market or we intended to bring to the market

22   back in 2000 that is related with content that has an MMS

23   platform in itself that was presented to Comverse twice in

24   Boston, that was even commented to Kobi Alexander, the chairman

25   of Comverse, and we are working on that.

1                              INDEX OF EXAMINATION

2     Examination of:                                Page

3

4     JAVIER JIMENEZ

5     Direct By Ms. Skakel . . . . . . . . . . .      10

6     Cross By Mr. McDonell  . . . . . . . . . .      52

7

8     VICTOR ACUNA

9     Direct By Ms. Skakel . . . . . . . . . . .      64

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT R

## Scher, Elizabeth

| | |
|---|---|
| **From:** | Pietrzak, Brooke [pietrzak.brooke@dorsey.com] |
| **Sent:** | Monday, March 24, 2008 11:27 AM |
| **To:** | Skakel, Deborah |
| **Cc:** | McDonell, Neil; Epstein, Eric; Graff, Howard; Bush, Lindsay; Scher, Elizabeth |
| **Subject:** | RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL) |

Debbie:

As you are no doubt aware, your email communication below was sent to us on Good Friday just prior to the Easter weekend. As my out of office message indicated, I was not in the office until this morning and, due to the Easter holiday, I have not had an opportunity to speak to my client, yet, regarding the issues that you have raised. In any event, we do not see a basis for Comverse to act on an expedited basis regarding what amounts to a discovery dispute, and we request that you attach this email communication to your application should you continue to seek relief on such a shortened timeframe. We also ask that you provide us with sufficient time (at least an hour) if you do go to Judge Leisure's chambers, as we object to any attempt by Comverse to have ex parte communications with the Court.

--Brooke

---

**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Friday, March 21, 2008 4:30 PM
**To:** Pietrzak, Brooke
**Cc:** McDonell, Neil; Epstein, Eric; Graff, Howard; Bush, Lindsay; Scher, Elizabeth
**Subject:** RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL)

Brooke--
ATI Chile's Response to Request No. 16 for each of the Information Subpoenas regarding the four affiliate-judgment debtors indicates that ATI Chile has not received a statement of the financial condition with respect to any of those four affiliate-judgment debtors. Please confirm that this response is true and correct. In light of, among other things, ATI Chile's ownership of approximately 98% of the shares of affiliate-judgment debtor ATI Telecommunication do Brasil Ltda.("ATI Brasil") and ATI Chile's consolidated financial statements (at least for prior years) that include the affiliate-judgment debtors (including ATI Brasil), we want to make sure that ATI Chile understood and responded truthfully and in good faith to Request No. 16. In this regard, it would be neither truthful nor in good faith for ATI Chile to respond "no" to this Request, if such a response was based on the failure of its affiliates-judgment debtors to provide ATI Chile with a document literally entitled "statement of financial condition."
As indicated in my March 13, 2008 letter to you, because ATI Chile has persisted in holding many of its Responses (e.g., Responses to Request Nos. 10 (bank account information), 18 (financial statements) and 28 (payments to creditors)) hostage to an outside attorneys' eyes only confidentiality stipulation, we intend to bring on by order to show cause a motion to compel in which we will seek the fees and expenses relating to the motion. I will inform you on Monday when we are heading down to Judge Leisure's chambers.
--Debbie

---

**From:** Pietrzak, Brooke [mailto:pietrzak.brooke@dorsey.com]
**Sent:** Tuesday, March 18, 2008 5:15 PM
**To:** Skakel, Deborah

**Cc:** McDonell, Neil; Epstein, Eric; Santiago Montt V
**Subject:** Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121
(PKL)


Debbie:


Please see the attached documents.


Regards,
Brooke

**Brooke E. Pietrzak**
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y & W H I T N E Y LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.735.0781  **F:** 212.953.7201
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received
this e-mail in error, please do not read this e-mail or any attached items.  Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have deleted  the e-mail, all attachments and any copies thereof.*

*Thank you.*


<<ATI Chile.pdf>> <<ATI Peru.pdf>> <<ATI Ecuador.pdf>> <<ATI Bolivia.pdf>> <<ATI Brasil.pdf>>

--------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
========================================================================


3/25/2008

# EXHIBIT S

## Skakel, Deborah

| | |
|---|---|
| **From:** | Pietrzak, Brooke [pietrzak.brooke@dorsey.com] |
| **Sent:** | Monday, March 24, 2008 5:28 PM |
| **To:** | Skakel, Deborah |
| **Subject:** | RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL) |
| **Attachments:** | Joint Status Report.PDF |

Debbie:

Please be advised that ATI Chile will stand by its position that its sensitive business and financial information is entitled to the same level of protection post-judgment as the parties previously agreed to provide this information during the arbitration.   What you have offered on behalf of Comverse in your letter of March 13 and again today does not protect the confidentiality of the information and is far less than what Comverse agreed to in the Stipulation and Protective Order that was so ordered by the Arbitral Tribunal on November 10, 2006.

On prior occasions, you have requested authority for ATI Chile's position that it is entitled to the protections contained in the Proposed Stipulation and Protective Order forwarded to you on February 29, 2008.  In addition to the legal authorities that were cited in my prior correspondence to you on March 10, 2008, and again during our telephone conversation on March 14, 2008, please see the attached Joint Status Report On Coordinating Enforcement Of The Final Judgments submitted in *United States of America v. Microsoft Corp.*, Civil Action No. 98-1232 (CKK) in the United States District Court for the District of Columbia.  The Report and the exhibits thereto clearly show that protection of confidential information is contemplated in the judgment enforcement context.

--Brooke

---

**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Monday, March 24, 2008 1:39 PM
**To:** Pietrzak, Brooke
**Cc:** Bush, Lindsay; Scher, Elizabeth; Graff, Howard
**Subject:** RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL)

Brooke--
I will respond to the first paragraph of your email in a separate email, once I have reviewed the information we have obtained regarding the ownership structure of ATI Chile/ATI Brasil (with which your statement in your email is at odds).
As stated clearly in my letter of March 13th, Comverse and Dickstein agreed to use the information provided in the responses to the Information Subpoenas solely for the purpose of judgment enforcement. That protection is consistent with what "confidential" treatment under your proposed confidentiality stipulation would provide. That is the degree of confidentiality to which ATI Chile is entitled, and that is therefore the degree of confidentiality to which Comverse agrees.
--Debbie

---

**From:** Pietrzak, Brooke [mailto:pietrzak.brooke@dorsey.com]
**Sent:** Monday, March 24, 2008 1:19 PM
**To:** Skakel, Deborah
**Subject:** Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121

(PKL)

Debbie:

I have received your voicemail of this morning and am now uncertain on what basis Comverse intends to seek expedited relief.

Your email of late Friday afternoon inquired as to ATI Chile's Response to Request No. 16 for each of the Information Subpoenas regarding ATI Ecuador, ATI Brasil, ATI Peru and ATI Bolivia.  As I indicated earlier this morning, I was not able to reach ATI Chile until this morning regarding your Friday question due to the Easter holiday.  I have since had an opportunity to do so.  I am advised that ATI Chile has never had a controlling interest in ATI Peru, ATI Bolivia or ATI Ecuador and therefore had no reason to receive statements from them.  I am also advised that American Telecommunication Holdings S.A. ("ATI Holdings") is the owner of more of the 90% of the shares of those companies.  With respect to ATI Brasil, I am advised that ATI Chile held a controlling interest only until December 26, 2005 (i.e. more than two years ago).  At that time, ATI Holdings became the controlling shareholder of ATI Brasil.

On the proposed protective order, when we spoke on Friday March 14, I asked whether Comverse would at least agree to provide "Confidential" protection for designated information, if not the "Outside Attorneys' Eyes Only" protection Comverse agreed to during the arbitration.  ATI Chile's request for confidentiality involved its responses to only 3 of Comverse's 68 Information Requests.  I understood from your response on March 14 that Comverse would not agree to provide even the lower level of protection.  Your subsequent email of this past Friday (March 21) references only ATI Chile's original request for Outside Attorney's Eyes Only protection.  Is Comverse still refusing to agree to any level of confidentiality?

--Brooke

---------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
=========================================================================

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>MICROSOFT CORPORATION,<br><br>    Defendant. | Civil Action No. 98-1232 (CKK)<br><br>Next Court Deadline: Status Conference<br>April 22, 2003 |

## JOINT STATUS REPORT ON COORDINATING
## ENFORCEMENT OF THE FINAL JUDGMENTS

The United States of America, Plaintiff in *United States v. Microsoft*, CA No. 98-1232

(CKK), and Plaintiffs in *New York, et. al. v. Microsoft*, CA No. 98-1233 (CKK), the States of

New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and

Wisconsin (the "New York Group"), and the States of California, Connecticut, Florida, Iowa,

Kansas, Massachusetts, Minnesota, Utah, West Virginia, and the District of Columbia (the

"California Group") (collectively, "Plaintiffs"),[1] together with Defendant Microsoft Corporation

("Microsoft"), hereby file a Joint Status Report on Coordinating Enforcement of the Final

Judgments in *United States v. Microsoft*, CA No. 98-1232 (CKK), and *New York, et. al. v.

Microsoft*, CA No. 98-1233 (CKK).

---

[1]For purposes of this Joint Status Report, the California Group does not contain the States of
Massachusetts and West Virginia.

## I.    Introduction

On November 1, 2002 and November 12, 2002, the Court entered separate Final

Judgments in the above matters.  The Final Judgments entered for the United States and the New

York Group differ from the Final Judgment entered for the California Group, particularly with

regard to compliance and enforcement mechanisms.  Plaintiffs and Microsoft share the goal of

maximizing the effectiveness and efficiency of Plaintiffs' compliance and enforcement activities

in connection with the Final Judgments in order to minimize the burden on Plaintiffs, Microsoft,

the Court, and non-parties.  Coordinating enforcement activities among the United States, the

New York Group, and the California Group, where possible, will assist in achieving this goal.

To date, Plaintiffs and Microsoft have taken the following steps in this coordination.

## II.    Information Sharing Agreement Between Plaintiffs

Plaintiffs have agreed to participate in an Information Sharing Agreement (the

"Agreement").  The Agreement provides a general framework whereby information relating to

Plaintiffs' (the "participating groups") compliance and enforcement activities in connection with

the Final Judgments can be shared among the participating groups.  By establishing an efficient

means by which to share information, the Agreement is intended to limit, where possible, the

burden on non-parties, to avoid redundant investigations by the participating groups, and to

provide for more useful status reports to the Court.  A copy of the Agreement is attached as

Exhibit A.

To minimize the burden on Microsoft and non-parties who produce information to a

participating group and to expedite the review of this information, the Agreement establishes that

each participating group may share with other participating groups information it receives from

2

Microsoft and non-parties. This information may be shared only after the participating group

who receives the information obtains an appropriate consent from Microsoft or the non-party.

This consent, discussed further below, addresses the confidentiality obligations each participating

group must follow in sharing the information.

The Agreement recognizes that the participating groups' compliance and enforcement

activities are generally nonpublic, involving materials and information that are subject to statutes,

rules, and policies governing when and how they may be disclosed. Thus, the Agreement

broadly defines "Confidential Information" to include all information obtained by any

participating group in the course of its compliance and enforcement activities, including, but not

limited to, all information disclosed by a non-party, Microsoft, or another participating group.

The Agreement requires that each participating group protect the Confidential Information from

improper disclosure, specifically establishing certain procedures a participating group must

follow after it receives Confidential Information from another participating group.

To assist in the participating groups' compliance and enforcement activities, the

Agreement further allows for certain information generated by a participating group to be shared

with other participating groups, such as oral analyses of non-party complaints, communications

made by a participating group to Microsoft or a non-party, or recommendations concerning

potential violations of the Final Judgments received from the Technical Committee by the United

States or the New York Group or from the Microsoft Compliance Officer by the California

Group. The Agreement does not, however, require that such information be disclosed if doing so

would interfere with the enforcement of any Final Judgment. Furthermore, as this information is

generated by another participating group, the Agreement explicitly prohibits a participating group

who receives this information from using such information in any type of enforcement action against any party.

In addition to establishing means by which information may be shared among the participating groups, the Agreement sets requirements and provides recommendations for coordinating compliance and enforcement activities. This includes identifying contact points for each participating group's respective enforcement teams, convening regular conference calls to discuss ongoing enforcement efforts, and conducting joint interviews with the witness' consent. The Agreement seeks to ensure as much coordination as possible in enforcement actions by requiring that each participating group provide the other participating groups with notice of its intention to take an enforcement action prior to taking such an action. The Agreement explicitly clarifies that the participating groups are not required to coordinate in working with consultants and experts, nor will the California Group have access to the Technical Committee (absent the consent of the United States and the New York Group).

## III.     Exchange of Information Received From Microsoft Among Plaintiffs

The Final Judgments entered in the United States' case and on behalf of the New York Group preclude the disclosure of information received from Microsoft to the California Group. Similarly, the Final Judgment entered for the California Group does not permit it to disclose Microsoft information that it obtains to the United States and the New York Group. Microsoft has agreed to permit such exchanges of information by executing limited waivers of the applicable confidentiality provisions of the Final Judgments and the applicable state or federal statutes. Copies of these waiver letters are attached as Exhibit B.

4

**IV.    Exchange of Information Received from Non-Parties Among Plaintiffs**

Before a participating group may share information it receives from a non-party with another participating group, it must obtain the non-party's consent through a limited waiver of confidentiality.  Non-parties will be asked to waive the confidentiality provisions under the applicable confidentiality provisions of the Final Judgments and the applicable state or federal statutes solely for the purpose of allowing information to be shared among the participating groups in their compliance and enforcement activities.  The non-party is under no obligation to provide this consent or waiver.  The sharing of information among the Plaintiffs is not, of course, intended to reduce, as to persons other than the Plaintiffs, the confidentiality protections applicable to materials received from non-parties.  An example of a non-party waiver is Exhibit 1 of the Coordination Agreement, which is attached hereto as Exhibit A.

**V.    Orders Relating to Confidentiality of Information Submitted to Plaintiffs**

Plaintiffs have taken and will take all the necessary precautions to ensure that any information received regarding Microsoft's compliance with the Final Judgments will be given the highest degree of confidentiality protection available under the Final Judgments, relevant statutes, and enforcement agency rules and policies.

Plaintiffs have also prepared a proposed order -- referred to as "Implementation Order No. 1" or "I.O.No.1" -- which is designed to facilitate judgment enforcement, and enforcement coordination among the Plaintiffs themselves, in various respects.  A copy of proposed I.O.No.1 is attached as Exhibit C.

By way of summary, I.O.No.1 will, among other things, ensure that documents and other information provided to Plaintiffs from non-parties will be afforded a level of confidentiality at

5

least equal to that provided under the Freedom of Information Act ("FOIA"), 5 U.S.C. §§ 552 *et seq.*, and the Antitrust Civil Process Act (the "ACPA"), 15 U.S.C. §§ 1311 *et seq.* This confidentiality protection is appropriate because public disclosure of materials provided by non-parties might be detrimental to their legitimate commercial interests and to Plaintiffs' enforcement activity generally. I.O.No.1 is also necessary so that the confidentiality of materials, as well as the anonymity of non-party complainants, can be maintained regardless of whether a complainant contacts the Antitrust Division or state antitrust officials whose local statutes or regulations might otherwise be construed to afford a lesser (or simply different) level of protection from disclosure than does FOIA or the ACPA. In addition, to facilitate investigation activity, I.O.No.1 will afford the New York Group and the California Group a form of compulsory process analogous to that available under the ACPA in connection with their enforcement and compliance activities under the Final Judgments.

## VI.    Proposed Schedule and Format for Subsequent Status Reports Submitted to the Court

The Court has requested that the Parties submit periodic status reports on compliance and enforcement activities. Since the Revised Proposed Final Judgment was stipulated to on November 6, 2001, Plaintiff United States and the New York Group have assembled their respective teams of attorneys and economists to monitor compliance with the proposed Final Judgments and the Final Judgments that were entered on November 12, 2002. These teams have reviewed and analyzed industry complaints and conferred with the complainants and Microsoft, when necessary, to discuss the substance of these complaints. In addition, these teams actively monitor Microsoft's continued compliance with the Final Judgments and communicate regularly

with Microsoft regarding these issues. The Technical Committee established under the Final

Judgments entered for the United States and the New York Group is setting up operations and

has begun to assist the United States and the New York Group in their enforcement activities.

Since entry of the California Group's Final Judgment on November 1, 2002, the

California Group has also assembled its team of attorneys and economists to enforce compliance.

The California Group is also currently reviewing and analyzing industry complaints and

discussing coordination with Plaintiff United States and the New York Group.

Since entry of the United States and the New York Group Final Judgment on November

12, 2002, and the California Group Final Judgment on November 1, 2002, Microsoft has: (1)

established an Antitrust Compliance Committee of the Board of Directors; (2) appointed a

Compliance Officer under the California Group Final Judgment (the Compliance Officer for the

United States and New York Group Final Judgment was appointed prior to entry of the

November 12, 2002 decree); (3) distributed the required informational materials to officers and

directors and received the appropriate certifications from these persons; (4) provided the required

annual antitrust training for officers; (5) participated in the establishment of the Technical

Committee; and (6) established a website for third party complaints.  In addition, Microsoft has

established a standing committee of senior executives and in-house lawyers to manage the

company's compliance efforts.

The Microsoft legal department has implemented an extensive training program intended

to ensure that Microsoft employees are aware of the company's obligations under the Final

Judgments.  Twenty one small group compliance training sessions were conducted for

Microsoft's approximately 400 worldwide in-house legal employees, who are continually

7

engaged in training various business and sales groups across the company and around the world.
As of today, Microsoft has conducted approximately 200 training sessions, covering
approximately 10,000 employees worldwide.  On a going forward basis, Microsoft is developing
plans for sustained training, annual reviews (concerning the decree and antitrust generally) with
key product groups, and online training tools.  Microsoft has also developed various procedures
to ensure accountability for complying with the Final Judgments.

The parties understand that the Court asked for suggestions on the format of subsequent
status reports.  Plaintiffs and Microsoft have given consideration to this matter, particularly
concerning the frequency and the level of detail for the reports.  While the reports should provide
the Court with information regarding the status of enforcement and compliance efforts, the
reports must not disclose publicly either Microsoft or non-party confidential information.  In
addition, Plaintiffs should not disclose matters that might be subject to governmental
deliberations or other privileges, or, perhaps equally important, prematurely disclose specific
enforcement efforts prior to any recommendations or decisions being made within the
appropriate enforcement agency.  For these reasons, Plaintiffs and Microsoft suggest that
compliance status reports be made to the Court once every six months, and that they contain (1) a
general description of Microsoft's compliance efforts, (2) a general description by each Plaintiff
or Plaintiff group of its efforts to monitor Microsoft's compliance with the Final Judgments, and
(3) a general description of the type of complaints received by Microsoft, Plaintiffs, and any
enforcement bodies such as the Technical Committee in the prior six months.  Plaintiffs and
Microsoft believe that periodic conferences with the Court are also appropriate and, if the Court
agrees, urge the Court to schedule such conferences.

April 17, 2003

Respectfully submitted,

FOR THE STATES OF NEW YORK,
OHIO, ILLINOIS, KENTUCKY,
LOUISIANA, MARYLAND, MICHIGAN,
NORTH CAROLINA, AND WISCONSIN

FOR THE UNITED STATES
DEPARTMENT OF JUSTICE'S
ANTITRUST DIVISION

_____

JAY L. HIMES
*Chief, Antitrust Bureau*
*Assistant Attorney General, State of New York*
120 Broadway
New York, New York 10271
212/416-8282

_____

PHILLIP R. MALONE
RENATA B. HESSE
PAULA L. BLIZZARD
PATRICIA A. BRINK
JOAN V. FARRAGHER
AARON D. HOAG
JEFFREY D. NEGRETTE
BARBARA J. NELSON
JEFFREY J. VANHOOREWEGHE
*Trial Attorneys*
*U.S. Department of Justice*
*Antitrust Division*
600 E Street, N.W.
Suite 9500
Washington, D.C. 20530
202/514-8276

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MINNESOTA, UTAH,
AND THE DISTRICT OF COLUMBIA

_____

Kathleen Foote
*Acting Senior Assistant Attorney General*
*Office of the Attorney General of California*
455 Golden Gate Avenue
Suite 11000
San Francisco, California   94102-3664
415/703-5555

9

FOR DEFENDANT
MICROSOFT CORPORATION


_____

CHARLES F. RULE
Fried, Frank, Harris, Shriver & Jacobson
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004
(202) 639-7300



# Department of Justice

---

AGREEMENT FOR INFORMATION SHARING IN JUDGMENT ENFORCEMENT AND
COMPLIANCE ACTIVITIES IN *U.S. v. MICROSOFT CORP.* AND *NEW YORK, ET AL. v.*
*MICROSOFT CORP.* BETWEEN THE DEPARTMENT OF JUSTICE, ANTITRUST
DIVISION, AND THE STATE ATTORNEYS GENERAL OF THE STATES OF NEW YORK,
OHIO, ILLINOIS, KENTUCKY, LOUISIANA, MARYLAND, NORTH CAROLINA,
WISCONSIN, MICHIGAN, CALIFORNIA, CONNECTICUT, IOWA, KANSAS, FLORIDA,
MINNESOTA, UTAH, AND THE DISTRICT OF COLUMBIA

On May 18, 1998, the United States filed a civil antitrust Complaint again Microsoft,
alleging that Microsoft restrained competition in violation of Sections 1 and 2 of the Sherman
Act, 15 U.S.C. §§ 1-2 (*United States v. Microsoft Corp.*, Case No. 98-1232).  On that same day,
20 States and the District of Columbia (one State later withdrew and another later reached a
separate settlement) filed a similar, although not identical, Complaint (*New York, et al. v.*
*Microsoft Corp.*, Case No. 98-1233). The District Court consolidated the cases at Microsoft's
request.

On October 19, 1998, the District Court began a 78-day trial that ended on June 24, 1999.
On April 3, 2000, the District Court entered its Conclusions of Law, *United States v. Microsoft*
*Corp.*, 87 F. Supp.2d 30 (D.D.C. 2000), holding Microsoft liable for certain violations of the
Sherman Act and analogous state laws.  On June  7, 2000, the District Court issued its Final
Judgment, which imposed a remedy that included a break-up of Microsoft into separate operating
system and applications businesses, along with interim conduct provisions.  *United States v.*
*Microsoft Corp.*, 97 F. Supp. 2d 59 (D.D.C. 2000).  Microsoft appealed the District Court's
decision.  On June 28, 2001, the Court of Appeals, sitting *en banc*, unanimously affirmed in part,
reversed in part, and remanded in part the District Court liability judgment.  *United States v.*
*Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001).  After remand to the District Court, the parties in
both cases engaged in extensive court-ordered settlement negotiations.

On November 6, 2001, the United States, nine of the Plaintiff States (New York, Ohio,
Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin (the "New
York Group")), and Microsoft were able to reach agreement upon a Proposed Final Judgment.
The remaining States (California, Connecticut, Iowa, Kansas, Florida, Minnesota, Massachusetts,
West Virginia, Utah, and the District of Columbia) proceeded to a trial on remedy issues.  On
November 1, 2002, the District Court entered a Final Judgment in *New York, et al. v. Microsoft*
*Corp.*, as to the States that elected to proceed to trial ("California Group Judgment").  On

November 12, 2002, the District Court entered identical Final Judgments in both *United States v. Microsoft Corp.* and *New York, et al. v. Microsoft Corp.* as to the United States and the New York Group (collectively, the "Consent Judgment"). The California Group Judgment differs from the Consent Judgment, particularly with respect to the compliance and enforcement mechanisms. The States of Massachusetts and West Virginia have elected to appeal the District Court's entry of the California Group Judgment.

The United States Department of Justice's Antitrust Division (the "Department"), the New York Group, and the States that have elected not to appeal the California Group Judgment share the goal of maximizing the efficiency and effectiveness of their compliance and enforcement activities in connection with their respective Final Judgments so as to achieve coordination of these activities where possible in order to minimize the burden on the parties and third parties. This Agreement is intended to set forth a general framework for the sharing of information relating to judgment compliance and enforcement activities in the *United States v. Microsoft Corp.* and *New York, et al. v. Microsoft Corp.* cases in order to achieve this goal. The groups participating in this Agreement are the Department, the New York Group, and the States of California, Connecticut, Iowa, Kansas, Florida, Minnesota, Utah, and the District of Columbia (the "California Group").[1]

I.    <u>CONFIDENTIALITY</u>

A.    These coordinated judgment enforcement and compliance activities are generally nonpublic in nature and will routinely involve materials and information that are subject to statutes, rules, and policies governing when and how they may be disclosed. For purposes of this Agreement, "Confidential Information" shall include all information gathered by any participating group in the course of their compliance and enforcement activities relating to the Consent Judgment and the California Group Judgment, including:

　　　1.    all information and documents provided to any participating group by Microsoft, whether pursuant to the access provisions in the California Group Judgment or the Consent Judgment or obtained through compulsory process or voluntary request;

　　　2.    all information and documents provided to any participating group by any third party, whether obtained through compulsory process or voluntary request; and

　　　3.    all information and documents generated by any participating group or groups, including as described in Section III below.

---

[1] For purposes of this Agreement, the California Group does not include the States of Massachusetts and West Virginia. This Agreement may be amended at a later date to include these states.

2

Participants are required to protect Confidential Information and materials from improper disclosure. Confidentiality obligations continue even if a receiving participating group subsequently decides to pursue an enforcement avenue different from that chosen by one or more of the other participating groups.

B.   Participating groups receiving Confidential Information from another participating group ("the originating participant") will agree to take all appropriate steps to maintain its confidentiality, including:

1.   timely notification to the originating participant of any request for Confidential Information, including requests pursuant to discovery requests, subpoenas or other compulsory process or public access requests under federal or state statutes;

2.   a vigorous assertion of all applicable privileges or exemptions from disclosure claimed by the originating participant;

3.   moving for intervention in legal proceedings, or providing assistance to the originating participant in intervening in legal proceedings, if necessary, to assert such privileges or exemptions; and

4.   complying with any conditions imposed by an originating participant.

Any participating group or individual participant of such group that becomes aware that Confidential Information has been disclosed or used in contravention of this Agreement will promptly advise all other participating groups of the disclosure so that its significance and implications for further information-sharing can be assessed. Disclosure or use of Confidential Information in contravention of this Agreement may lead to termination of this Agreement.

II.   PROCEDURES INVOLVING INFORMATION
      OBTAINED FROM THIRD PARTIES AND MICROSOFT

Microsoft and other third parties (individually, a "producing party") may produce documents or other information to the Department pursuant to a voluntary request, access provisions of the Consent Judgment, Civil Investigative Demands, or other compulsory process, and to State Attorneys General pursuant to voluntary request, access provisions of the California Group Judgment or the Consent Judgment, subpoena, or other compulsory process (such requests shall hereinafter collectively be referred to as "Investigatory Requests"). In addition, each participating group may receive complaints concerning Microsoft's compliance with one or more of the Final Judgments from third parties. To minimize the burden on a producing party or a complainant and to expedite review of the documents or other information, a producing party may wish to facilitate coordination between the participating groups.

3

Disclosure within each participating group of materials obtained pursuant to this paragraph shall be limited solely to those persons working on Microsoft judgment compliance and enforcement activities and any consultants or experts retained by any such group. Each participating group may also use such materials for any other valid law enforcement purpose.

A.    Each participating group will, with the consent of a producing party, agree that certain otherwise Confidential Information may be provided to the other participating groups. The producing party must:

   1.    identify each participating group with whom it agrees the Confidential Information may be shared; and

   2.    submit a letter to each participating group that waives the confidentiality provisions under applicable statutes and regulations or other agreements or orders to allow communications between the participating groups.[2]

B.    A producing party may provide Confidential Information produced pursuant to an Investigatory Request directly to each participating group as to which these requirements have been satisfied. In addition, each participating group agrees to provide to the other participating groups who have been authorized by the producing party to have access copies of the Investigatory Request from which the production results. All information shared between participating groups need only be provided to a single point of contact in the other participating group or groups.

C.    Complaints received by any participating group relating to Microsoft's compliance with any of the Final Judgments may also be shared with another participating group, provided that the complainant consents to disclosure of the complaint to that participating group. In order to expedite the sharing of complaints among the participating groups, each participating group agrees to:

   1.    within three business days of receipt of the complaint, contact the complainant to inquire whether the complainant will consent to disclosure to the other participating groups. The recipient of the complaint shall not be required to contact the complainant pursuant to this subparagraph where it is apparent from the contents of the complaint that the complainant has already disclosed the complaint to all of the other participating groups. In addition, if the complainant does not include correct contact information, the participating party receiving the complaint will use best efforts to contact the complainant to obtain consent to disclose the complaint;

---

[2] Examples of such a letter are annexed as Exhibit 1.

4

2.    maintain a log of communications with complainants relating to consent that records (a) whether consent was obtained orally or in writing; (b) the dates that consent was requested and either obtained or declined; (c) if consent is sought orally, the identity of the person who provided or declined to provide consent; and (d) if consent is obtained, the identity of the participating group or groups covered by the consent; and

3.    disclose the complaint as authorized by the complainant within two business days of receipt of such authorization.

D.    In order to facilitate the expeditious sharing of complaints, each participating group may require complainants to submit with their complaints a form that identifies the participating groups as to which the complainant authorizes disclosure of its complaint. Where a participating group uses such a form, the portion of the form relating to consent to disclosure shall be in the following form:

[Complainant] consents to disclosure of this complaint to (check each applicable box):

[ ] the United States Department of Justice's Antitrust Division

[ ] the States of California, Connecticut, Iowa, Kansas, Florida, Minnesota, Utah and the District of Columbia

[ ] the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina, and Wisconsin

[ ] all of the above.

Where such a form is used by a participating group and completed by a complainant, the participating group need take no other action relating to obtaining consent and agrees to disclose the complaint as authorized by the complainant within two days of receipt of the complaint and the applicable authorization.

E.    The participating parties acknowledge that it may be necessary to modify the process described in this section for obtaining third party consent and sharing complaints and agree to do so.

III.    PROCEDURES INVOLVING INFORMATION
        GENERATED BY A PARTICIPATING GROUP OR GROUPS

A.    Subject to the terms of this Agreement, the following types of Confidential Information
      generated by a participating group or groups may be shared:

      1.    Recommendations received from the Technical Committee by the Department and
            the New York Group or from the Microsoft Compliance Officer, as that term is
            defined in the California Group Judgment, by the California Group concerning
            potential violations by Microsoft of any applicable Final Judgment.

      2.    Oral analyses of complaints received by the Department, the New York Group
            and/or the California Group.

      3.    Investigatory Requests from any participating group to Microsoft and requests
            from any participating group to Microsoft that Microsoft undertake a particular
            action in connection with its compliance with the Consent Judgment or the
            California Group Judgment.

      4.    Investigatory Requests from any participating group to a third party.

B.    No participating group shall be obligated to share information under this paragraph if
      such sharing interferes with the effective or efficient enforcement of either the Consent
      Judgment or the California Group Judgment. No information provided pursuant to this
      paragraph may be used by any participating group other than the group generating the
      information in connection with any enforcement action, whether formal or informal,
      against Microsoft or any other person.


IV.    CONDUCT OF JUDGMENT ENFORCEMENT AND COMPLIANCE ACTIVITIES

            The following is intended to set forth suggested guidelines that may be followed to
      coordinate judgment enforcement and compliance activities by State Attorneys General and the
      Department. All applicable investigatory, work product, or other privileges shall apply to any
      material exchanged and the exchange of any material shall not be deemed a waiver of any such
      privilege, including the provisions of any statutes, rules, and policies governing when and how
      Confidential Information may be disclosed.

A.    COORDINATION OF JUDGMENT ENFORCEMENT
      AND COMPLIANCE ACTIVITIES

            Coordination between participating groups may include:

1.   identifying lawyers and other legal and economic team members working on the case, and identification of contact points for each participating group, through which all coordination issues shall be raised and all Confidential Information sharing shall occur;

2.   scheduling and conducting joint interviews, with the consent of the person to be interviewed, *provided that* the Department, the New York Group and the California Group each agree to limit the number of persons conducting the interview (although there shall be no limit on the number of participants);

3.   providing documents and other information as described in Sections II and III above;

4.   contact points for each participating group shall participate in a conference call approximately once every other week (or more frequently, as circumstances require) to discuss ongoing enforcement and compliance activities, including receipt of complaints, coordinating the scheduling of interviews, and, if appropriate, discussions with Microsoft.

B.   ENFORCEMENT ACTIONS

1.   Each participating group agrees that it will take no enforcement action under its respective Final Judgment without providing each other participating group 15 calendar days' written notice of its intention to take such action. Such written notice shall include a detailed explanation of the contemplated enforcement action and the basis or bases for it. The time for providing notice pursuant to this paragraph shall not commence until the relevant participating group has received authorization from its decision makers to proceed with such an enforcement action.

2.   Each participating group shall be permitted to take an action relating to its respective Final Judgment with less than 15 calendar days' written notice, where providing such notice interferes with a valid law enforcement purpose. Where a participating group determines that the provision of 15 calendar days' written notice pursuant to this paragraph interferes with a valid law enforcement purpose, such participating group shall in any event immediately notify each other participating group of the necessary action and describe the nature of the action and the valid law enforcement purpose that requires departure from this subsection.

C.    CONSULTANTS AND EXPERTS

Each participating group shall be responsible for hiring and working with its own external consultants and experts. No participating group shall be required to disclose the identity of any such consultant or expert or to share the work of any such consultant or expert with any other participating group. Participating groups may consider, on a case-by-case basis, whether to share the costs and responsibilities associated with hiring and working with external consultants or experts.

D.    TECHNICAL COMMITTEE AND MICROSOFT COMPLIANCE OFFICER

Absent the consent of the Department and the New York Group, the California Group shall have no direct access to the Technical Committee, as that term is defined in the Consent Judgment. The participating groups may develop a mechanism through which the Technical Committee and the Microsoft Compliance Officer, as that term is defined in the California Group Judgment, are informed of each other's general activities.

V.    STATEMENTS TO THE PRESS

The participating groups plan on coordinating the release of information to the news media. The participating groups will reach an understanding regarding the timing of and procedures for notifying the other participating groups prior to the release of any information to the press.

FOR THE STATES OF NEW YORK,
OHIO, ILLINOIS, KENTUCKY,
LOUISIANA, MARYLAND, MICHIGAN,
NORTH CAROLINA, AND WISCONSIN

FOR THE UNITED STATES
DEPARTMENT OF JUSTICE'S
ANTITRUST DIVISION

JAY L. HIMES
*Chief, Antitrust Bureau*
*Assistant Attorney General, State of New York*
120 Broadway
New York, New York 10271
212/ 416-8282

RENATA B. HESSE
*Chief, Networks and Technology Section*
*U.S. Department of Justice,*
*Antitrust Division*
600 E Street, N.W.
Suite 9500
Washington, D.C. 20530
202/514-8276

8

FOR THE STATES OF CALIFORNIA,
CONNECTICUT, IOWA, KANSAS,
FLORIDA, MINNESOTA, UTAH,
AND THE DISTRICT OF COLUMBIA


_____

Kathleen Foote
*Acting Senior Assistant Attorney General*
*Office of the Attorney General of California*
455 Golden Gate Avenue
Suite 11000
San Francisco, California   94102-3664
415/703-5555

9

Exhibit 1

## AUTHORIZATION TO EXCHANGE DOCUMENTS AND OTHER INFORMATION

*United States v. Microsoft Corp.*, Civil Action No. 98-1232 (CKK) (D.D.C.)
*New York v. Microsoft Corp.*, Civil Action No. 98-1233 (CKK) (D.D.C.)

**Re:** _____

**Dated:** _____

**To:** _____

**Issued by:** _____
                     (the "Confidential Request")

This confirms that, with respect to the undersigned's response to this Confidential Request, as well as to any communications relating to this Request, the undersigned waives any applicable confidentiality provision in the Antitrust Civil Process Act, 15 U.S.C. §§ 1311 *et seq.*, or in any Relevant State Statutes,[1] and any other applicable confidentiality provisions to the extent necessary to allow the Antitrust Division of the United States Department of Justice and each and all of the Attorneys General of the Plaintiff States[2] to share between and among each other, as well as with, any documents, information, or analyses provided.

So agreed:

_____          _____
Name:                                                                        Date
Title:
Company:

_____

[1] The term "Relevant State Statutes" means each and every statute set forth in the schedule attached to this letter, and all rules or regulations promulgated under any such statute relating to the confidentiality of documents or information, in whatever form.

[2] The "Plaintiff States" consist of New York, Ohio, Kentucky, Illinois, Louisiana, Maryland, North Carolina, Wisconsin, Michigan, California, Connecticut, Iowa, Kansas, Florida, Minnesota, Utah, and the District of Columbia.

### Relevant State Statutes

Cal. Gov't Code §§ 6250 *et seq.* (California Public Records Act), and § 11180; Cal. Bus. &
    Prof. Code §§ 16700 *et seq.*;

Conn. Gen. Stat. §§ 1-200 *et seq.*, §§ 35-24 *et seq.*, and § 35-42;

D.C. Code Ann. §§ 2-531 *et seq.* (Freedom of Information), §§ 28-4501 *et seq.*, and § 28-
    4505;

Fla. Stat. §§ 501.2065 and 542.28;

5 Ill. Comp. Stat. 140; 740 Ill. Comp. Stat. 10/1 *et seq.* ;

Iowa Code §§ 553.1 *et seq.*, and §553.9;

Kan. Stat. Ann. §§ 45-215 *et seq.*, and §§ 50-623 *et seq.*;

Ky. Rev. Stat. Ann. § 61.878(1)(c), §§ 367.170 *et seq.*, and § 367.240;

La. Rev. Stat. Ann. §§ 51:122 *et seq.*, and § 51:143;

Md. Code Ann., Com. Law §§ 11-201 *et seq.*, § 11-205, and § 11-208; Md. State Gov't
    Code Ann.§§ 10-611 *et seq.*;

Mich. Comp. Laws §§ 445.771 *et seq.*, and § 445.776;

Minn. Stat. §§ 8.31, 13.03, 13.37, 13.39, 13.393 and 13.65, and §§ 325D.49 *et seq.*;

N.Y. Gen. Bus. Law §§ 340 *et seq.*; N.Y. Pub Officers L. §§ 84-87;

N.C. Gen. Stat. §§ 75-1 *et seq.*, and § 132-1.2;

Ohio Rev. Code Ann. §§ 149 *et seq.*, §§ 1331.01 *et seq.*, and § 1331.16;

Utah Code Ann. §§ 76-10-911 *et seq.*, § 76-10-916, and § 76-10-917;

Wis. Stat. §§ 19.35, 19.36, 19.39, §§ 133.01 *et seq.*, and § 165.065.



**U.S. Department of Justice**

Antitrust Division

---

*Bicentennial Building*
*600 E Street, NW*
*Washington, DC 20530*

March 28, 2003

RECEIVED

MAR 3 1 200⁓

MICROSOFT LITIGATION

**Via Fax (425/936-7329) & U.S. Mail**

David Heiner, Esquire (LCA)
Microsoft Corporation
One Microsoft Way
Redmond, Washington   98052-6399

Re:  U.S. v. Microsoft:  Confidentiality Provisions Agreement

Dear Dave:

        It is my understanding, and by this countersigned letter you confirm, that Microsoft
hereby waives the confidentiality protections under the Final Judgments entered on November 1,
2002 and  November 12, 2002 in *United States v. Microsoft*, Case No. 98-1232, and in *New York
v. Microsoft*, Case No. 98-1233, any applicable confidentiality provisions in the Antitrust Civil
Process Act, 15 U.S.C. §§ 1311 *et seq.* or in any Relevant State Statutes,[1] and any other
applicable confidentiality provisions to the extent necessary to allow the Antitrust Division of the
United States Department of Justice and the Attorneys General of the States of New York, Ohio,
Kentucky, Illinois, Louisiana, Maryland, North Carolina, Wisconsin, Michigan, California,
Connecticut, Iowa, Kansas, Florida, Minnesota, Utah, and the District of Columbia (the "States")
to share between them documents, information, and analyses (collectively, "information")
relating to Microsoft's compliance with the Final Judgments.  Microsoft agrees to this limited
confidentiality waiver on the condition that the U.S. Department of Justice shall first have
obtained from any State receiving such information an agreement to treat the information as if it
were obtained directly from Microsoft pursuant to the Final Judgment.  In addition, Microsoft's
agreement is made on the condition that any of the States or the U.S. Department of Justice
receiving information shared pursuant to this confidentiality waiver shall be entitled to use such
information only to the extent that such State or the U.S. Department of Justice would be entitled
to use the information if that information had been obtained directly from Microsoft pursuant to
the Final Judgments.  This letter does not constitute a waiver by Microsoft of its rights with
respect to the protection against direct or indirect disclosure of information to any third party

---

        [1]  The term "Relevant State Statutes" *means* each and every statute set forth in the schedule
attached to this letter, and all rules or regulations promulgated under any such statute relating to the
confidentiality of documents or information, in whatever form.

other than the States.  Please evidence your agreement to the foregoing by signing a copy of this letter and returning it to me.

     Thank you for your cooperation.

Sincerely,

Patty Brink
Attorney

So agreed

David Heiner     3/31/03

cc:   Jay Himes
       Howard Wettan
       Chris Meyers
       Rick Rule
       James Rhilinger
       Steve Holley

By
Received on 4/3/03
J. Bailie
U.S. Department of Justice
Antitrust Division
Networks & Technology Section



### Relevant State Statutes

Cal. Gov't Code §§ 6250 *et seq.* (California Public Records Act), and § 11180; Cal. Bus. & Prof. Code §§ 16700 *et seq.*;

Conn. Gen. Stat. §§ 1-200 *et seq.*, §§ 35-24 *et seq.*, and § 35-42;

D.C. Code Ann. §§ 2-531 *et seq.* (Freedom of Information), §§ 28-4501 *et seq.*, and § 28-4505;

Fla. Stat. §§ 501.2065 and 542.28;

5 Ill. Comp. Stat. 140; 740 Ill. Comp. Stat. 10/1 *et seq.* ;

Iowa Code §§ 553.1 *et seq.,* and §553.9;

Kan. Stat. Ann. §§ 45-215 *et seq.*, and §§ 50-623 *et seq.*;

Ky. Rev. Stat. Ann. § 61.878(1)(c), §§ 367.170 *et seq.*, and § 367.240;

La. Rev. Stat. Ann. §§ 51:122 *et seq.*, and § 51:143;

Md. Code Ann., Com. Law §§ 11-201 *et seq.*, § 11-205, and § 11-208; Md. State Gov't Code Ann.§§ 10-611 *et seq.*;

Mich. Comp. Laws §§ 445.771 *et seq.*, and § 445.776;

Minn. Stat. §§ 8.31, 13.03, 13.37, 13.39, 13.393 and 13.65, and §§ 325D.49 *et seq.*;

N.Y. Gen. Bus. Law §§ 340 *et seq.*;  N.Y. Pub Officers L. §§ 84-87;

N.C. Gen. Stat. §§ 75-1 *et seq.*, and § 132-1.2;

Ohio Rev. Code Ann. §§ 149 *et seq.*, §§ 1331.01 *et seq.*, and § 1331.16;

Utah Code Ann.  §§ 76-10-911 *et seq.*, § 76-10-916, and  § 76-10-917;

Wis. Stat. §§ 19.35, 19.36, 19.39,  §§ 133.01 *et seq.*, and § 165.065.



RECEIVED

APR 0 2 2003

MICROSOFT LITIGATION

### STATE OF NEW YORK
### OFFICE OF THE ATTORNEY GENERAL
120 BROADWAY
SUITE 2601
NEW YORK, NEW YORK 10271

ELIOT SPITZER
Attorney General

JAY L. HIMES
CHIEF, ANTITRUST BUREAU
Tel: 212-416-8282
Fax: 212-416-6015
EMail: Jay.Himes@oag.state.ny.us

April 1, 2003

**Via Fax (425/936-7329) & Overnight Mail**

David Heiner, Esquire (LCA)
Microsoft Corporation
One Microsoft Way
Redmond, Washington 98052-6399

### New York v. Microsoft: Confidentiality Provisions Agreement

Dear Dave:

It is my understanding, and by this countersigned letter you confirm, that Microsoft hereby waives the confidentiality protections under each and all of the Final Judgments – entered in *United States v. Microsoft*, Case No. 98-1232, on November 12, 2002, and in *New York v. Microsoft Corp.*, Case No. 98-1233, on November 1 and November 12, 2002 – any applicable confidentiality provisions in the Antitrust Civil Process Act, 15 U.S.C. §§ 1311 *et seq.*, or in any Relevant State Statutes,[1] and any other applicable confidentiality provisions to the extent necessary to allow each and all of the Attorneys General of the States of New York, Ohio, Kentucky, Illinois, Louisiana, Maryland, North Carolina, Wisconsin, Michigan, California, Connecticut, Iowa, Kansas, Florida, Minnesota, Utah, and the District of Columbia (the "States") to share between them, as well as with the Antitrust Division of the United States Department of Justice, documents, information, and analyses (collectively, "information") relating to Microsoft's compliance with the Final Judgments. Microsoft agrees to this limited confidentiality waiver on the condition that the signatory State shall first have obtained from the U.S. Department of Justice or any State receiving such information an agreement to treat the information as if it were obtained directly from Microsoft pursuant to the Final Judgments. In addition, Microsoft's agreement is made on the condition that any of the States or the

---

[1] The term "Relevant State Statutes" means each and every statute set forth in the schedule attached to this letter, and all rules or regulations promulgated under any such statute relating to the confidentiality of documents or information, in whatever form.

U.S. Department of Justice receiving information shared pursuant to this confidentiality waiver shall be entitled to use such information only to the extent that such State or the U.S. Department of Justice would be entitled to use the information if that information had been obtained directly from Microsoft pursuant to the Final Judgments. This letter does not constitute a waiver by Microsoft of its rights with respect to the protection against direct or indirect disclosure of information to any third party other than the U.S. Department of Justice. Please evidence your agreement to the foregoing by signing a copy of this letter and returning it to me.

Thank you for your cooperation.

Sincerely,

Jay L. Himes
On behalf of the Signatory States

So agreed

David Heiner
4/2/03

cc:     Chris Meyers
        Rick Rule
        James Rhilinger
        Steve Holley
        Renata Hesse
        Patricia Brink
        Paula Blizzard
        Kathleen Foote

### Relevant State Statutes

Cal. Gov't Code §§ 6250 *et seq.* (California Public Records Act), and § 11180; Cal. Bus. & Prof. Code §§ 16700 *et seq.*;

Conn. Gen. Stat. §§ 1-200 *et seq.*, §§ 35-24 *et seq.*, and § 35-42;

D.C. Code Ann. §§ 2-531 *et seq.* (Freedom of Information), §§ 28-4501 *et seq.*, and § 28-4505;

Fla. Stat. §§ 501.2065 and 542.28;

5 Ill. Comp. Stat. 140; 740 Ill. Comp. Stat. 10/1 *et seq.* ;

Iowa Code §§ 553.1 *et seq.,* and §553.9;

Kan. Stat. Ann. §§ 45-215 *et seq.*, and §§ 50-623 *et seq.*;

Ky. Rev. Stat. Ann. § 61.878(1)(c),  §§ 367.170 *et seq.*, and § 367.240;

La. Rev. Stat. Ann. §§ 51:122 *et seq.*, and § 51:143;

Md. Code Ann., Com. Law §§ 11-201 *et seq.*, § 11-205, and § 11-208; Md. State Gov't Code Ann.§§ 10-611 *et seq.*;

Mich. Comp. Laws §§ 445.771 *et seq.*, and § 445.776;

Minn. Stat. §§ 8.31, 13.03, 13.37, 13.39, 13.393 and 13.65, and §§ 325D.49 *et seq.*;

N.Y. Gen. Bus. Law §§ 340 *et seq.*;  N.Y. Pub Officers L. §§ 84-87;

N.C. Gen. Stat. §§ 75-1 *et seq.*, and § 132-1.2;

Ohio Rev. Code Ann. §§ 149 *et seq.*, §§ 1331.01 *et seq.*, and § 1331.16;

Utah Code Ann.  §§ 76-10-911 *et seq.*, § 76-10-916, and  § 76-10-917;

Wis. Stat. §§ 19.35, 19.36, 19.39,  §§ 133.01 *et seq.*, and § 165.065.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 98-1232 (CKK) |
| ) | |
| MICROSOFT CORPORATION, ) | |
| ) | |
| Defendant. ) | |

FINAL JUDGMENT IMPLEMENTATION ORDER NO. 1 ("I.O. No. 1")

The United States of America, plaintiff in Civil Action No. 98-1232, and the States of New York, Ohio, Illinois, Kentucky, Louisiana, Maryland, Michigan, North Carolina and Wisconsin (the "New York Group"), plaintiffs in Civil Action No. 98-1233, and Microsoft Corporation ("Microsoft"), the defendant in both actions, by their respective attorneys, negotiated a proposed consent decree, which formed the basis for the Final Judgments entered on consent in each of the actions.

The States of California, Connecticut, Florida, Iowa, Kansas, Minnesota, Utah and the District of Columbia (the "California Group"), also plaintiffs in Civil Action No. 98-1233, obtained a final judgment following trial against Microsoft.

All plaintiffs in these two actions ("Plaintiffs") and Microsoft desire to cooperate in the enforcement of their respective judgments and to avoid possible confusion, inconvenience and diversion of resources arising from such activity.

The Plaintiffs in both actions have received and will receive information and documents related to enforcement of their respective judgments from non-parties during the period of

2

enforcement of their respective Final Judgments   ("Enforcement Investigation Materials").
Enforcement Investigation Materials may include items that are produced voluntarily or by
compelled lawful process, and that are identified by the person providing such Materials (the
"Providing Person") or by any Plaintiff as being related to enforcement of the Final Judgments in
these actions.

All parties desire that these Enforcement Investigation Materials be protected from
unauthorized disclosure, which might be detrimental to the legitimate commercial interests of the
Providing Person, and to Plaintiffs' enforcement activity generally.

This Order is intended to afford all Providing Persons that level of protection from
unauthorized disclosure of Enforcement Investigation Materials at least equivalent to that provided:
(a) pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. §§552 et seq., and applicable
federal regulations promulgated pursuant to FOIA, including but not limited to 28 C.F.R. §16.8, with
regard to voluntarily produced materials; and (b) pursuant to the Antitrust Civil Process Act (the
"ACPA"), 15 U.S.C. §§1311 et seq. with regard to materials produced by compelled process. The
protection thus afforded is intended to apply regardless of whether or not Enforcement Investigation
Materials are provided to a State with statutes or regulations that may afford a lesser level of
protection from disclosure.

ACCORDINGLY, IT IS HEREBY ORDERED AS FOLLOWS:

1. All Enforcement Investigation Materials shall be used for the purposes of enforcement
of the Final Judgments in these actions or for other valid law enforcement purposes.

2. Enforcement Investigation Materials provided to any Plaintiff may be disclosed by that
Plaintiff (the "Receiving Plaintiff") only as authorized by this I.O. No. 1, to the extent required by

3

law,[1] or by agreement between the Providing Person and the Receiving Plaintiff. Unless otherwise

authorized by the preceding sentence, Enforcement Investigation Materials may be disclosed only

to persons participating in either enforcing the Final Judgments in these actions or other law

enforcement purposes as to which the Enforcement Investigation Materials are relevant.

3.  (a) The United States, the New York Group and the California Group shall treat all

Enforcement Investigation Materials in accordance with the provisions of FOIA, as well as the

provisions regarding disclosure of information set forth in 28 C.F.R. §16.8.  Nothing in this

subparagraph shall be construed, however, to affect the rights or obligations of the United States

under any section of FOIA or under any regulations promulgated pursuant to FOIA.

(b) The California Group and the New York Group may treat any Enforcement Investigation

Materials in accordance with the Relevant State Statutes (defined below) and shall honor all statutory

obligations to protect the confidentiality of all such information obtained voluntarily or by means

of compulsory process, so long as application of the Relevant State Statutes does not provide a lower

level of protection against disclosure for Enforcement Investigation Materials than that provided by

this I.O. No. 1.  For purposes of this I.O. No. 1, "Relevant State Statutes" shall mean each of the

following:

Cal. Gov't Code §§ 6250 *et seq.* (California Public Records Act), and § 11180; Cal. Bus. &
Prof. Code §§ 16700 *et seq.*;

---

[1]  To comport entirely with this language, it is understood that the State of Florida will not
take receipt of any material directly from non-parties unless that material is received pursuant to the
confidentiality provisions of Section 542.28, Fla. Stat. Florida intends to otherwise access such non-
party materials by obtaining them from the United States, the New York Group, or the California
Group and will protect the confidentiality of said materials under Sec. 501.2065, Fla. Stat.

4

Conn. Gen. Stat. §§ 1-200 *et seq.*, §§ 35-24 *et seq.*, and § 35-42;

D.C. Code Ann. §§ 2-531 *et seq.* (Freedom of Information), §§ 28-4501 *et seq.*, and § 28-4505;

Fla. Stat. §§ 501.2065 and 542.28;

5 Ill. Comp. Stat. 140; 740 Ill. Comp. Stat. 10/1 *et seq.* ;

Iowa Code §§ 553.1 *et seq.*, and §553.9;

Kan. Stat. Ann. §§ 45-215 *et seq.*, and §§ 50-623 *et seq.*;

Ky. Rev. Stat. Ann. § 61.878(1)(c), §§ 367.170 *et seq.*, and § 367.240;

La. Rev. Stat. Ann. §§ 51:122 *et seq.*, and § 51:143;

Md. Code Ann., Com. Law §§ 11-201 *et seq.*, § 11-205, and § 11-208; Md. State Gov't Code Ann.§§ 10-611 *et seq.*;

Mich. Comp. Laws §§ 445.771 *et seq.*, and § 445.776;

Minn. Stat. §§ 8.31, 13.03, 13.37, 13.39, 13.393 and 13.65, and §§ 325D.49 *et seq.*;

N.Y. Gen. Bus. Law §§ 340 *et seq.*; N.Y. Pub Officers L. §§ 84-87;

N.C. Gen. Stat. §§ 75-1 *et seq.*, and § 132-1.2;

Ohio Rev. Code Ann. §§ 149 *et seq.*, §§ 1331.01 *et seq.*, and § 1331.16;

Utah Code Ann. §§ 76-10-911 *et seq.*, § 76-10-916, and § 76-10-917;

Wis. Stat. §§ 19.35, 19.36, 19.39, §§ 133.01 *et seq.*, and § 165.065.

4.  A Receiving Plaintiff may disclose Enforcement Investigation Materials that it receives from any Providing Person to any other Plaintiff that requests it, so long as the Providing Person has consented.

5.  (a) If any Plaintiff who has received Enforcement Investigation Materials is served with

5

a document request, subpoena or other compulsory process ("Process"), or receives a request under

FOIA or under an analogous State statute (a "Request"), seeking the production or other disclosures

of such Enforcement Investigation Materials, that Plaintiff (the "Served Plaintiff") shall give timely

notification to the Providing Person and all other Plaintiffs.

(b) The Served Plaintiff: (i) shall not produce any Enforcement Investigation Materials in

response to Process without the prior written consent of the Providing Person and all other Plaintiffs

unless in response to an Order of a court of competent jurisdiction; and (ii) shall assert all

exemptions from or other objections to disclosure in response to a Request, which may in good faith

be asserted pursuant to this I.O. No. 1 or applicable law unless the Providing Person and all other

Plaintiffs consent to refrain from asserting such exemptions or other objections.

(c) The Providing Person and all other Plaintiffs shall provide assistance to the Served

Plaintiff to maintain the confidentiality of Enforcement Investigation Materials, which may include

moving for intervention in legal proceedings, or providing assistance to the Served Plaintiff in

intervening in legal proceedings, if necessary, to assert applicable privileges or exemptions from

disclosure.

6. For purposes of monitoring, investigating or enforcing compliance by Microsoft with their

respective Final Judgments, each Plaintiff in Civil Action No. 98-1233 (a "State Plaintiff") may issue

subpoenas to non-parties to obtain Enforcement Investigation Materials in accordance with the

following provisions:

a. Any such subpoena shall be subject to the procedures and confidentiality provisions of the

ACPA.

b. The following terms used in the ACPA shall be deemed to mean the following: (1) the

6

terms "Department of Justice" and "Attorney General" shall refer to each and every State Plaintiff's

Attorney General; and (2) the term "Assistant Attorney General in charge of the Antitrust Division

of the Department of Justice" shall refer to the Chief of the Antitrust Bureau of each State Plaintiff,

or equivalent position.

    c.  The subpoena shall expressly refer to this Order, and a copy of this Order shall be

appended to the subpoena.

    d.   The provisions for obtaining Enforcement Investigative Materials pursuant to the

preceding parts of paragraph 6 shall be in addition to, and not in lieu of, the provisions available

under any state statute affording compulsory process for law enforcement or investigative purposes;

provided that use of such a state statute does not provide a lower level of protection against

disclosure for Enforcement Investigation Materials than that provided by this I.O. No. 1.

    7.  The provisions of this I.O. No. 1 shall govern any part of any Final Judgment in either

action that relates to the use or disclosure of information or documents defined as Enforcement

Investigation Materials under this Order.

    8.  Nothing in this I.O. No. 1 shall be construed to authorize any disclosure not otherwise

permitted by law.

Dated: _____2003
      Washington, D.C.


_____
     Hon. Colleen Kollar-Kotelly

# EXHIBIT T

## Skakel, Deborah

| | |
|---|---|
| **From:** | Pietrzak, Brooke [pietrzak.brooke@dorsey.com] |
| **Sent:** | Tuesday, March 25, 2008 10:29 AM |
| **To:** | Skakel, Deborah |
| **Cc:** | Graff, Howard; Bush, Lindsay; Scher, Elizabeth |
| **Subject:** | RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL) |

**Attachments:** OHM.PDF

Debbie:

Please be advised that as we have been continuing our research on the protective order issue, we have found additional authority that supports our position.  Please see the attached case where the court upholds an attorneys' eyes only provision in a protective order post-judgment.  We will promptly bring any further legal authority to your attention.

--Brooke

**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Tuesday, March 25, 2008 8:53 AM
**To:** Pietrzak, Brooke
**Cc:** Graff, Howard; Bush, Lindsay; Scher, Elizabeth
**Subject:** RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL)

Brooke--
Your citation to the the Joint Status Report in the Microsoft matter is as horribly off the mark as the citations in your March 10th letter.
Your statements as to the ownership relationship between ATI Chile and ATI Brasil are inconsistent with the official records currently on file in Brazil.
If, in the future, you would please "reply to all" when responding to my emails, I would be most appreciative.
I will advise you before I leave for Court later today.
--Debbie

**From:** Pietrzak, Brooke [mailto:pietrzak.brooke@dorsey.com]
**Sent:** Monday, March 24, 2008 5:28 PM
**To:** Skakel, Deborah
**Subject:** RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL)

Debbie:

Please be advised that ATI Chile will stand by its position that its sensitive business and financial information is entitled to the same level of protection post-judgment as the parties previously agreed to provide this information during the arbitration.   What you have offered on behalf of Comverse in your letter of March 13 and again today does not protect the confidentiality of the information and is far less than what Comverse agreed to in the Stipulation and Protective Order that was so ordered by the Arbitral Tribunal on November 10, 2006.

On prior occasions, you have requested authority for ATI Chile's position that it is entitled to the protections contained in the Proposed Stipulation and Protective Order forwarded to you on February 29, 2008.  In addition to the legal authorities that were cited in my prior correspondence to you on March 10, 2008, and again during our telephone conversation on March 14, 2008, please see the attached Joint Status Report On Coordinating Enforcement Of The Final Judgments submitted in *United States of America v. Microsoft Corp.*, Civil Action No. 98-1232 (CKK) in the United States District Court for the District of Columbia.  The Report and the exhibits thereto clearly show that protection of confidential information is contemplated in the judgment enforcement context.

--Brooke

3/25/2008

**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Monday, March 24, 2008 1:39 PM
**To:** Pietrzak, Brooke
**Cc:** Bush, Lindsay; Scher, Elizabeth; Graff, Howard
**Subject:** RE: Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL)

Brooke--
I will respond to the first paragraph of your email in a separate email, once I have reviewed the information we have obtained regarding the ownership structure of ATI Chile/ATI Brasil (with which your statement in your email is at odds).
As stated clearly in my letter of March 13th, Comverse and Dickstein agreed to use the information provided in the responses to the Information Subpoenas solely for the purpose of judgment enforcement. That protection is consistent with what "confidential" treatment under your proposed confidentiality stipulation would provide. That is the degree of confidentiality to which ATI Chile is entitled, and that is therefore the degree of confidentiality to which Comverse agrees.
--Debbie

**From:** Pietrzak, Brooke [mailto:pietrzak.brooke@dorsey.com]
**Sent:** Monday, March 24, 2008 1:19 PM
**To:** Skakel, Deborah
**Subject:** Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 (PKL)

Debbie:

I have received your voicemail of this morning and am now uncertain on what basis Comverse intends to seek expedited relief.

Your email of late Friday afternoon inquired as to ATI Chile's Response to Request No. 16 for each of the Information Subpoenas regarding ATI Ecuador, ATI Brasil, ATI Peru and ATI Bolivia. As I indicated earlier this morning, I was not able to reach ATI Chile until this morning regarding your Friday question due to the Easter holiday. I have since had an opportunity to do so. I am advised that ATI Chile has never had a controlling interest in ATI Peru, ATI Bolivia or ATI Ecuador and therefore had no reason to receive statements from them. I am also advised that American Telecommunication Holdings S.A. ("ATI Holdings") is the owner of more of the 90% of the shares of those companies. With respect to ATI Brasil, I am advised that ATI Chile held a controlling interest only until December 26, 2005 (i.e. more than two years ago). At that time, ATI Holdings became the controlling shareholder of ATI Brasil.

On the proposed protective order, when we spoke on Friday March 14, I asked whether Comverse would at least agree to provide "Confidential" protection for designated information, if not the "Outside Attorneys' Eyes Only" protection Comverse agreed to during the arbitration. ATI Chile's request for confidentiality involved its responses to only 3 of Comverse's 68 Information Requests. I understood from your response on March 14 that Comverse would not agree to provide even the lower level of protection. Your subsequent email of this past Friday (March 21) references only ATI Chile's original request for Outside Attorney's Eyes Only protection. Is Comverse still refusing to agree to any level of confidentiality?

--Brooke

-------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its

network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
================================================================

    --------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
================================================================

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 146234 (N.D.Ind.)
(Cite as: Not Reported in F.Supp.)

COHM Resource Recovery Corp. v. Industrial Fuels & Resources, Inc.
N.D.Ind.,1991.
Only the Westlaw citation is currently available.
United States District Court, N.D. Indiana, South Bend Division.
OHM RESOURCE RECOVERY CORP., f/k/a Solidtek Systems, Inc., Plaintiff,
v.
INDUSTRIAL FUELS & RESOURCES, INC., Defendant.
No. S90-511.

July 24, 1991.

Connie A. Crim of Wesp & Osterkamp, Columbus, Ohio, for plaintiff.
Richard W. Morgan and Gerald F. Lutkus of Barnes & Thornburg, South Bend, Ind., for defendant.

MEMORANDUM AND ORDER

ROBIN D. PIERCE, United States Magistrate Judge.
*1 On May 1, 1991, plaintiff, OHM Resource Recovery Corp. ("OHM"), obtained a judgment against defendant, Industrial Fuels & Resources, Inc. ("IFR"). Soon thereafter, OHM commenced post-judgment discovery in accordance with Rule 69(a) of the Federal Rules of Civil Procedure, by serving IFR with notice of a Rule 30(b)(6) deposition scheduled for May 20, 1991. The notice indicated that OHM intended to examine IFR regarding its identity, organizational structure, and any related or affiliated entities; the identity and organizational structure of an entity known as Chemical Services Corporation; and the identity and location of IFR's financial records and assets. The deposition notice was accompanied by a "rider" which specified six categories of documents to be produced at the deposition, including documents relating to the structure and organization of IFR and its affiliates, together with documents relating to IFR's assets and financial condition.

In a letter dated May 16, 1991, IFR's counsel advised the attorneys for OHM that it had a number of objections to the scope of examination during the upcoming deposition, as well as the scope of the document request. The letter further advised OHM's counsel as follows:

Your Request for Production of Documents encompasses a great deal of proprietary and **confidential** information to which Ohm, as a competitor of IFR, should not have access. Consequently, with regard to all documents produced, IFR will require that you sign a **protective order** which limits access to these documents and the deposition transcript to outside counsel's eyes only ... Furthermore, as to specific documents you have requested which reveal customer and generator names, we will insist upon the right to redact the identities of those customers prior to production of the documents. (This last requirement will not of course apply to the accounts receivable to which you obviously have full right of access.)

The deposition went forward as scheduled on May 20, 1991, with IFR producing its Vice President, James Wilson, as its representative. At the time, IFR produced some of the documents which OHM had requested, but withheld others pursuant to its objections. Counsel for the parties agreed that for purposes of proceeding with the deposition, the documents which IFR had produced would be subject to "outside attorneys' eyes only." Subsequent to the deposition, OHM's counsel advised the attorney for IFR that she could not agree to a **protective order** which would preclude disclosure of the contents of the deposition and document production to her client.

On May 28, 1991, IFR filed a motion for **protective order** setting-forth its objections to various categories of information sought by OHM, including information concerning IFR's relationship with other "related" companies, "organizational" documents for IFR and any related companies, IFR's financial records for 1989 and 1990, and its tax returns for 1988 to 1990. IFR's motion also seeks an order restricting access to information regarding its "balance sheets, client lists, financial documents and the like" to OHM's outside counsel and prohibiting release of the information to OHM and its principals. On June 5, 1991, OHM filed a motion to compel the unrestricted production of the requested documents.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

IFR's motion for **protective order** and OHM's motion to compel are now before the court for determination.

*Discussion*

**\*2** In this case, OHM is seeking to conduct discovery in aid of its federal judgment, pursuant to Rule 69(a) which provides, in pertinent part, as follows:

In aid of the judgment of execution, the judgment creditor or a successor in interest when that interest appears of record, may obtain **discovery from any person, including the judgment debtor, in the manner provided** in these rules or in the manner provided by the practice of the state in which the district court is held.

Under this Rule, a judgment creditor such as OHM has a choice of whether to utilize the federal discovery rules or whether to proceed in accordance with the post-judgment discovery practice of the forum state. *Evans v. Chicago Football Franchise Ltd.*, 127 F.R.D. 492, 493 (N.D.Ill.1989); *Strick Corp. v. Thai Teak Products Co.*, 493 F.Supp. 1210, 1211 (E.D.Pa.1980); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3014 (1973); 7 J. MOORE, J. LUCAS & K. SINCLAIR, MOORE'S FEDERAL PRACTICE ¶ 69.05[1] (2d ed. 1991). OHM has apparently elected to proceed in accordance with federal discovery practice, and is thus free to utilize any of the discovery devices provided in Rules 26 through 37 of the Federal Rules of Civil Procedure.

The scope of post-judgment discovery under the Federal Rules is broad, permitting a judgment creditor to obtain discovery not only of the debtor's current assets, but also information relating to past financial transactions which could reasonably lead to the discovery of concealed or fraudulently transferred assets. *First Fidelity Bank N.A. v. Nissenbaum*, No. 89-2248 (E.D. Pa. Mar. 28, 1991) (1991 WL 46456, LEXIS, Genfed library, Dist. file); *Dering v. Pitassi*, No. 88-2278 (E.D. Pa. Oct. 26, 1988) (1988 WL 115806, LEXIS, Genfed library, Dist. file); *Securities and Exchange Commission v. Tome*, No. 81 Civ. 1836(MP) (S.D.N.Y. Apr. 3, 1987) (1987 WL 9415, LEXIS, Genfed library, Dist. file); *Magnaleasing, Inc. v. Staton Island Mall*, 76 F.R.D. 559, 561 (S.D.N.Y.1977); *Caisson Corp. v. County West*

*Building Corp.*, 62 F.R.D. 331, 334 (E.D.Pa.1974); *Monticello Tobacco Co. v. American Tobacco Co.*, 12 F.R.D. 344, 345 (S.D.N.Y.1952), aff'd on other grounds, 197 F.2d 629 (2nd Cir.), cert. denied, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 678 (1952); C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3014 (1973); 7 J. MOORE, J. LUCAS & K. SINCLAIR, MOORE'S FEDERAL PRACTICE ¶ 69.05[1] (2d ed. 1991).

Viewed against this background, IFR's objections to the disclosure of past financial records for the years 1989 and 1990 are unpersuasive. OHM is clearly entitled to inquire into past financial records and transactions in order to determine the existence of concealed or fraudulently transferred assets. It is not, as IFR maintains, required to come forward with evidence of fraudulent conveyances as a precondition to conducting such an inquiry, nor is it required to demonstrate an inability to execute on its judgment before pursuing discovery under Rule 69(a).[FN1] OHM's request for IFR's financial records for the years 1989 and 1990 is reasonable in terms of both relevancy and scope.

**\*3** IFR has also objected to OHM's request for information regarding companies or entities which are "related" to IFR, as well as "organizational" documents for IFR and the related companies. According to IFR, "OHM's judgment is against IFR and not these related companies, nor against the companies' common owners. Consequently, this information is not relevant to this inquiry." IFR further asserts that organizational documents "are not relevant to the disclosure of assets of the corporate defendant against which OHM has its judgment." IFR is incorrect. OHM is clearly entitled to ask the judgment debtor, in this case IFR, about its relationships with other entities and it is equally entitled to explore the nature of those relationships as disclosed in any organizational documents. In this regard, the following observations by the court in *Caisson*, are particularly appropriate:

[I]t is clear that in an attempt to discover assets by which to satisfy its judgment, plaintiff is entitled to a very thorough examination of the judgment debtor. The judgment debtor in this case is a corporation and the present deponent was and/or is an officer thereof who may be deposed in that capacity. *Moreover, in examining such officer-deponent, the court believes*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 146234 (N.D.Ind.)
(Cite as: Not Reported in F.Supp.)

*that the judgment debtor, through the officer-deponent, can certainly be asked about the entities with whom the judgment debtor had and has financial relationships, and, in turn, the relationship of those entities with others especially if that relationship comes full circle in one way or another.* In a sense, that is precisely the nature and scope of discovery sought in the present motion. The deponent is such an officer and a vigorous examination of the judgment debtor via such officer should not be precluded because this officer of the judgment debtor has a great deal of information about the entities with which the judgment debtor had and has relationships by reason of the fact that there is, in a limited sense, a common identity running through these organizations in the person of the same officer-deponent. The personal use of the corporate form of doing business is certainly completely lawful; nevertheless, we do not think that it can be used to preclude a vigorous examination of a judgment debtor. *(emphasis supplied).*

62 F.R.D. at 335.

IFR's argument also appears to suggest that OHM must make some preliminary showing that related companies are "alter egos" of IFR before it is permitted to ask IFR about those companies. This too is incorrect. OHM is under no obligation to make such a preliminary showing before directing discovery to IFR about its relationships with other entities. There is authority for restricting discovery requests directed *to third parties* seeking information about *their* assets and financial affairs, as in *Strick Corp. v. Thai Teak Products Co., Ltd.,* 493 F.Supp. 1210, 1218 (E.D.Pa.1980) (absent showing that garnishee defendant was "alter ego" of judgment debtor, garnishee would not be required to answer interrogatories regarding its own assets, but would only be required to answer interrogatories pertaining to debtor). However, no such restriction applies where, as in this case, the discovery is directed to the judgment debtor. It is entirely proper for OHM to *ask IFR* about its relationships with other entities, the ownership and organization of related entities, any transactions with them, and even information about their finances. When and if OHM seeks to obtain discovery directly from a third party, particularly the financial records of the third party, the third party may raise its own objections, and some showing of relevance and need may be required of OHM before

the discovery is allowed. *See e.g. Blaw Knox,* 130 F.R.D. at 403;*Magnaleasing,* 76 F.R.D. at 562;*Caisson,* 62 F.R.D. at 334-35. But, that is not the situation here.

**\*4** IFR also objects to OHM's request for production of its tax returns for 1988 to 1990. IFR argues that such a request "is not reasonably calculated to lead to the production of evidence which can lead OHM to current assets upon which it can execute." According to IFR, "[t]he tax returns are history. They do not disclose current assets." The court must again disagree. As previously discussed, the scope of discovery under Rule 69(a) is not limited to information regarding current assets. Discovery of tax returns for previous years, particularly when accompanied by an examination of corporate financial records, may well disclose efforts to drain-off or conceal assets and income. The tax returns are clearly relevant to the subject matter of OHM's inquiry under Rule 69(a), *see First Fidelity Bank N.A.,* and OHM's request is restricted to a reasonable period in the past.

Having determined that all of the information contained in OHM's discovery requests is properly within the scope of discovery under Rule 69(a), the court must still address IFR's motion for **protective order** as it relates to the handling of **confidential** information. In this regard, IFR's motion asserts that "OHM and IFR are competitors and disclosure of any of the detailed financial and client-related information produced here would provide OHM with a competitive advantage." IFR also maintains that organizational documents pertaining to IFR and any related companies would "disclose business strategy and planning."

Rule 26(c) provides, in pertinent part:

Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending .., may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... (7) that a trade secret or other **confidential** research, development, or commercial information not be disclosed or be disclosed only in a designated way....

Under these provisions, the party seeking a

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

protective order bears the burden of demonstrating "good cause" to support the issuance of such an order. *Baker v. Liggett Group, Inc., 132 F.R.D. 123, 125 (D.Mass.1990); Litton Industries v. Chesapeake & Ohio Ry., 129 F.R.D. 528, 529 (E.D.Wis.1990); Cuno Inc. v. Pall Corp., 117 F.R.D. 506, 508 (E.D.N.Y.1987); U.S. v. Hooker Chemicals & Plastics Corp., 90 F.R.D. 421, 425 (W.D.N.Y.1981).* "To successfully meet the burden of establishing good cause, a party moving for a protective order must demonstrate a particular need for protection. There must be evidence that a clearly defined and serious injury will result if discovery is allowed." 2 SHEPARD'S, DISCOVERY PROCEDINGS IN FEDERAL COURT § 10.2, at 4-5 (2d ed. 1991). In this regard, courts have generally required a "particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements...." *8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2035, at 265 (1970); see Anderson v. Cryovac, Inc., 805 F.2d 1, 7 (1st Cir.1986); United States v. Exxon Corp., 94 F.R.D. 250, 251 (D.D.C.1981); Hooker, 90 F.R.D. at 425;Reliance Insurance Co. v. Barrons, 428 F.Supp. 200, 202-03 (S.D.N.Y.1977).* Where, as here, a party is seeking protection with respect to confidential business information, it must demonstrate that the information sought is, indeed, confidential and that disclosure might be harmful to its business. *American Standard Inc. v. Pfizer Inc., 828 F.2d 734, 740 (Fed. Cir.1987); Exxon, 94 F.R.D. at 251;Parsons v. General Motors Corp., 85 F.R.D. 724, 726 (N.D.Ga.1980); United States v. IBM Corp., 67 F.R.D. 40, 46 (S.D.N.Y.1975).*

**\*5** IFR's showing in this case is minimal. The court, nevertheless, believes that issuance of a protective order is appropriate in this instance, since it appears that the legitimate interests of both parties can be accommodated simply by restricting disclosure of information designated by IFR as confidential to OHM's outside counsel. Such a procedure would contemplate a mechanism for court review of IFR's confidentiality designations, provide sufficient protection for IFR's confidential business information and allow OHM's outside counsel complete access to all of the information which OHM is seeking.

For the foregoing reasons, OHM's motion to compel discovery is GRANTED, in part, and DENIED, in

part, and IFR's motion for protective order is GRANTED, in part, and DENIED, in part. IFR is ORDERED to provide OHM with all of the documents described in OHM's "Rider to Deposition Notice," within twenty (20) days of this date, subject to the following **PROTECTIVE ORDER:**

1. Industrial Fuels & Resources, Inc. (hereinafter referred to as "IFR") shall be permitted to restrict disclosure of any and all confidential business information provided pursuant to any deposition or discovery request by OHM Resource Recovery Corp. (hereinafter referred to as "OHM") to OHM's outside counsel, by designating such information as "Confidential-Outside Attorneys' Eyes Only."

2. As used in this Order, the term "Confidential-Outside Attorneys' Eyes Only Matter" shall mean and refer to all documents and material including but not limited to, documents produced in discovery, depositions, deposition exhibits, any portion of the foregoing, and any information contained therein that is obtained by or produced in discovery and designated as being "Confidential-Outside Attorneys' Eyes Only" by the supplying party in accordance with this Order. In designating information as Confidential-Outside Attorneys' Eyes Only, IFR shall make such designation in good faith. Confidential Outside Attorneys' Eyes Only material shall include: (a) all copies of documents, records and things designated by IFR as "Confidential-Attorneys' Eyes Only" and (b) all information contained in or otherwise derived from such documents, records or things.

3. Any document designated by IFR as "Confidential-Outside Attorneys' Eyes Only" shall be marked, respectively, on the cover page with a stamp containing language substantially similar to the following: **CONFIDENTIAL-OUTSIDE ATTORNEYS' EYES ONLY.**

4. All Confidential-Outside Attorneys' Eyes Only matter shall be:

(a) retained in the custody of the respective counsel of record, who shall be responsible for restricting disclosure in accordance with the provisions of this Order:

(b) disclosed only to the parties' outside attorneys

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.
Not Reported in F.Supp., 1991 WL 146234 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.)**

Page 5

(and their employees).

5. In the event OHM objects to a designation of material as **Confidential**-Outside Attorneys' Eyes Only, the material shall be treated as designated until this Court rules to the contrary. OHM shall not be obligated to challenge the proprietary of such a designation at the time made, and failure to do so shall not preclude a subsequent challenge thereto. OHM shall have the burden of moving the court to void the designation. IFR shall have the burden of satisfying the court of the need for protection.

*6 6. IFR may designate information disclosed at a deposition as **Confidential**-Outside Attorneys' Eyes Only, by indicating on the record at the deposition that the testimony is **Confidential**-Outside Attorneys' Eyes Only and subject to the provisions of this **Protective Order**. Each court reporter participating in any such deposition shall be provided a copy of this Order and shall adhere to its provisions. The designating party shall direct the court reporter to mark the designated portions of the transcript with the appropriate legend.

7. Any party may submit **Confidential**-Outside Attorneys' Eyes Only matter to the court, or otherwise use or refer to such material in these proceedings. When **Confidential**-Outside Attorneys' Eyes Only information is embodied in a document or in deposition testimony that is filed with this court, is shall be designated accordingly and shall be filed and maintained under seal by the Clerk of the Court. Such documents or transcripts of testimony shall be filed in the Clerk's office in sealed envelopes on which will be endorsed the title and docket number of this action, an indication of the nature of the contents of such sealed envelope, and a statement substantially in the following form:

This envelope contains documents and/or testimony which have been filed by [name of party] and designated by counsel **confidential**-attorney's eyes only, and subject to the terms of **protective order** of this Court, it is not to be opened nor the contents displayed or revealed except by order of the Court.

8. If OHM's attorneys shall hereafter desire to give, show, make available or communicate designated documents, depositions or information contained therein in any way to any person other than those

referred to in paragraphs 4(c) and 5(c) above, such attorneys shall designate those documents, depositions or information, identify the persons with whom they wish to communicate and inform IFR's attorneys of their desire to communicate such documents, depositions or information. If counsel for the parties are subsequently unable to agree on the terms and conditions of disclosure to such persons, disclosure may be made only on such terms as the court may order.

9. During the pendency of this action or at any time thereafter, designated matter shall not be disclosed to any city, state or federal government or agency, except pursuant to subpoena or order of court. Any party receiving a subpoena, petition, motion or order calling for the production of **Confidential**-Outside Attorneys' Eyes Only matter.

10. The parties can, by mutual written consent, modify the terms of this Order without prior approval of the court.

11. Within thirty (30) days after the satisfaction of judgment in the above-entitled action, all originals and reproductions of all documents subject to this **Protective Order**, except exhibits marked in depositions, and deposition transcripts and pleadings, shall be returned to the producing party. The provisions of this **Protective Order** will continue to be binding after the termination of this action.

*7 SO ORDERED.

> FN1.Indiana Rules of Procedure, Trial Rule 69(E) conditions the enforcement of proceedings supplemental to execution, in part, upon a showing that the plaintiff "has no cause to believe that levy of execution against the defendant will satisfy the judgment." While this requirement would apply if OHM were seeking the "enforcement of proceedings supplemental to execution" under Indiana Rule 69(a), it does not affect OHM's right to conduct post-judgment discovery under Federal Rule 69(a). See *Blaw Knox Corp. v. AMR Industries, Inc.,* 130 F.R.D. 400, 402 (E.D.Wis.1990); *Evans v. Chicago Football Franchise Ltd.,* 127 F.R.D. 492 (N.D.Ill.1989).

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1991 WL 146234 (N.D.Ind.)
**(Cite as: Not Reported in F.Supp.)**


N.D.Ind.,1991.
OHM Resource Recovery Corp. v. Industrial Fuels &
Resources, Inc.
Not Reported in F.Supp., 1991 WL 146234
(N.D.Ind.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.