Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                    Petitioner,


          -against-


AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,


                    Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

**MEMORANDUM OF RESPONDENT AMERICAN TELECOMMUNICATION, INC.
CHILE S.A. IN OPPOSITION TO COMVERSE, INC.'S ORDER TO SHOW
CAUSE AND IN SUPPORT OF CROSS-MOTION FOR PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ i

I.  COUNTER STATEMENT OF FACTS ...............................................................1

    A.   COMVERSE'S COMPLAINTS AGAINST ATI CHILE
          AND ATI CHILE'S COUNSEL ARE
          UNWARRANTED ............................................................................2

    B.   ATI CHILE AND ATI CHILE'S COUNSEL HAVE
          ACTED IN GOOD FAITH .............................................................4

II.  ARGUMENT ......................................................................................................6

    A.   COMVERSE MISREPRESENTS ATI CHILE'S
          RESPONSIVENESS TO THE INFORMATION
          SUBPOENAS ..................................................................................6

    B.   ATI CHILE IS ENTITLED TO A PROTECTIVE
          ORDER ...........................................................................................8

         1.   Good Cause Exists for Entry of a Protective Order ...................8

         2.   Protective Orders are Standard During Post-
               Judgment Discovery .................................................................9

         3.   Comverse's Objections to an Attorney's Eyes Only
               Provision are Groundless ........................................................11

    C.   ATI CHILE'S RESPONSES REGARDING ITS
          SISTER COMPANIES WERE COMPLETE AND
          TRUTHFUL .................................................................................13

    D.   COMVERSE IS NOT ENTITLED TO COSTS OR
          FEES .............................................................................................17

III.  CONCLUSION ................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cefalu v. Village of Elk Grove*,
   No. 94 C 1990, 1999 WL 167029 (N.D.Ill. Mar. 22, 1999) ....................................13

*Consol. Theaters v. Warner Bros. Circuit Mgm't Corp.*,
   216 F.2d 920 (2d Cir. 1954)...............................................................................5-6

*Davis-Delaney-Arrow, Inc. v. Gerson-Ogden, Inc.*,
   427 N.Y.S.2d 559 (Sup. Ct. New York County 1980) ..........................................10

*Four Star Capital Corp. v. Nynex Corp.*,
   183 F.R.D. 91 (S.D.N.Y. 1997) .............................................................................8

*Gerling Int'l Ins. Co. v. C.I.R.*,
   839 F.2d 131 (3d. Cir. 1988)................................................................................16

*OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.*,
   No. S90-511, 1991 WL 146234 (N.D.Ind. Jul. 24, 1991) ...........................11, 12, 13

*PCI Parfums et Cosmetiques Intern. v. Perfumania, Inc.*,
   No. 93 Civ. 9009.................................................................................................15

*Sommer v. Aronow*,
   No. 95 Civ. 9230 (LMM), 1996 WL 399820 (S.D.N.Y. July 16, 1996) .............8, 9

*U.S. v. $184,505.01 in U.S. Currency*,
   72 F.3d 1160 (3d. Cir. 1995), *cert. den.* 519 U.S. 807 (1996)................................4

*U.S. v. King*,
   No. 94 CR 455 (LMM), 1997 WL 582882 (S.D.N.Y. Sept. 19, 1997) .................16

STATUTES

F.R.C.P. 4 ................................................................................................................3

F.R.C.P. 37(a)(5)(A) ..............................................................................................17

CPLR 3103(a) ..................................................................................................10, 11

CPLR 5240...............................................................................................10, 11, 18

OTHER AUTHORITIES

Weinstein, Korn & Miller 11 *New York Civil Practice CPLR* (2d ed. 2007)................10

Respondent American Telecommunication, Inc. Chile S.A. ("ATI Chile"), by its attorneys Dorsey & Whitney LLP, respectfully submits this memorandum of law together with (i) the Declaration of Brooke E. Pietrzak, dated April 7, 2008 (the "Pietrzak Dec."), and the exhibits thereto; and (ii) the Declaration of Rafael Alfaro, dated April 7, 2008 (the "Alfaro Dec."), and the exhibits thereto.  These documents are submitted in opposition to Comverse, Inc.'s ("Comverse") Order to Show Cause seeking an order of this Court (i) compelling ATI Chile to respond to three of the 68 requests contained in the Information Subpoena regarding ATI Chile, prior to the entry of an appropriate protective order protecting certain confidential information elicited by those three requests; (ii) compelling ATI Chile to further respond to the Information Subpoenas regarding the other respondents in this proceeding, namely, American Telecommunication Inc., Bolivia S.A.; American Telecommunication do Brasil Ltda.; American Telecommunication Inc. Ecuador ATI ECUADOR S.A.; and American Telecommunication Peru S.A. (collectively the "Sister Companies"); and (iii) awarding attorneys' fees and costs.  These documents are also submitted in support of ATI Chile's Cross-Motion For A Protective Order.

## I.

## <u>COUNTER-STATEMENT OF FACTS</u>

Comverse spends the majority of its memorandum of law unjustifiably maligning ATI Chile and its counsel rather than setting forth its legal arguments.  While it is unfortunate that it must do so, ATI Chile must briefly respond to these unfounded and misleading accusations before turning to the merits of this matter.

**A.    COMVERSE'S COMPLAINTS AGAINST ATI CHILE**
**AND ATI CHILE'S COUNSEL ARE UNWARRANTED**

Comverse claims that ATI Chile's conduct has somehow forced it to make yet

another needless application to this Court. *See* Memorandum Of Law In Support Of

Comverse, Inc.'s Order To Show Cause ("Comverse Mem."), at p. 1. This allegation is

completely inaccurate, as Comverse mischaracterizes the circumstances leading to the

filing of these prior applications and conveniently fails to mention their ultimate fates.

The first Order to Show Cause, which was filed by Comverse on or about September 5,

2006 in a prior proceeding before this Court (the "September Order to Show Cause"),

sought a preliminary injunction enjoining ATI Chile from violating the non-competition

and non-disclosure provisions of the Value Added Reseller Agreement (the "VAR

Agreement"), that Comverse and ATI Chile entered into on or about July 22, 2004. A

true and correct copy of the VAR Agreement, without exhibits, is attached to the Pietrzak

Dec. as Exhibit A. The September Order to Show Cause was subsequently withdrawn by

Comverse on September 15, 2006, *see* Stipulation and Order attached to the Pietrzak Dec.

as Exhibit B, and Comverse's underlying claims were ultimately decided against

Comverse by the Arbitral Tribunal in the subsequent arbitration held in March of 2007

(the "Arbitration").

The second Order to Show Cause, which was filed by Comverse on or about

October 5, 2006, (the "October Order to Show Cause") sought a temporary restraining

order and a preliminary injunction enjoining ATI Chile from continuing to prosecute a

case that it had commenced against Comverse in Chile. The October Order to Show

Cause was denied by this Court. *See* Opinion and Order dated October 23, 2006,

attached to the Pietrzak Dec. as Exhibit C. It is disingenuous for Comverse to claim that

ATI Chile keeps forcing it to file Orders to Show Cause with the Court when Comverse's two prior such motions were (i) withdrawn and (ii) denied and proven to be unwarranted.

Comverse next made an application to this Court in the present proceeding on December 7, 2007 to confirm the award that was made by the Arbitral Tribunal (the "Petition to Confirm"). ATI Chile did not oppose the Petition to Confirm, but instead properly sought: (i) to assert as an offset the substantial amounts awarded to ATI Chile against Comverse in the award by the Arbitral Tribunal (the "Arbitration Award"), relief which the Court granted to ATI Chile; and (ii) to keep the Arbitration Award permanently filed under seal. Despite ATI Chile's lack of opposition to Comverse's Petition to Confirm, Comverse still complains, citing the failure of the Sister Companies to respond. While Dorsey & Whitney LLP ("Dorsey") does not represent the Sister Companies in this proceeding, and therefore does not put forth an argument on their behalf, there is no requirement that a party put in a response to a petition to confirm and Comverse cites no such requirement in its papers.

Comverse's last application to this Court before it filed the instant Order to Show Cause was for an Order For Alternative Method of Service of Process. Comverse claims that as a "ploy" Dorsey refused to accept service of Comverse's Petition to Confirm, which is a baseless accusation. Service of a petition on a foreign corporation is governed by the U.S. Federal Rules of Civil Procedure, Rule 4(h)(2) and 4(f). Pursuant to these provisions, the possible methods of service on foreign corporations such as ATI Chile and the Sister Companies include (1) service in accordance with the local law of the country where the company is based; (2) service by a form of mail (sent by the U.S. court clerk) requiring a return receipt; or (3) service via letter rogatory through the country's

central authority designated for such effecting such service.  Comverse complains that it

was "forced to spend time and money," *see* Comverse Mem. at p. 3, making this

application for an alternative method of service, yet service on an attorney is not one of

the options available to it under the applicable rules.  ATI Chile was therefore within its

rights in not authorizing its counsel to accept service on its behalf and obliging Comverse

to comply with the Federal Rules of Civil Procedure.  In fact, the Court's Order directed

Comverse to serve the Petition to Confirm not just upon Dorsey, but also on ATI Chile's

Chilean counsel and on ATI Chile itself.  Thus, the Court itself required Comverse to

take additional steps to effect service. It should also be noted that an attorney cannot

accept service of process on behalf of a client without authorization from that client.  *See*

*U.S. v. $184,505.01 in U.S. Currency*, 72 F.3d 1160, 1164 n. 10 (3d. Cir. 1995), *cert. den.*

519 U.S. 807 (1996) ("[T]he validity of service of process upon the attorney depends

upon actual authority on the part of the attorney to receive process on behalf of the

individual.").

**B.    ATI CHILE AND ATI CHILE'S**
**COUNSEL HAVE ACTED IN GOOD FAITH**

Contrary to the image Comverse has tried to portray, ATI Chile has acted in good

faith during the long relationship it had with Comverse as a value added reseller, during

the Arbitration and during the current post-judgment phase.  ATI Chile did not default on

any of its payment obligations to Comverse during the 17 years the parties worked

together.  In fact, Comverse never claimed a payment default until after it abruptly

terminated the contractual relationship between the parties on a "without cause" basis.

Comverse did not simply terminate the lengthy relationship, but did so in a way that, as

the Arbitration Award confirmed, committed multiple breaches of the parties' contract,

which seriously damaged ATI Chile's ability to survive as a business. *See* Arbitration

Award, at pp. 37, 46, 50 and 53. The Arbitral Tribunal held that as a result of these

breaches ATI Chile suffered millions of dollars of damages. *See id.* It was this egregious

misconduct by Comverse's business people that underscored the need for a protective

order with an Outside Attorneys' Eyes Only provision during the arbitration, and it does

so again in this post-judgment context. Having wrongfully made every effort to destroy

ATI Chile's business, Comverse now has the audacity to complain about ATI Chile's

inability to promptly pay the net award. Comverse complains of "machinations" and

"ploys" throughout its brief, but ATI Chile is simply tying to get back on its feet after it

was dealt a life-threatening blow by Comverse.

Similarly, Dorsey has, in good faith, kept Comverse clearly apprised of the scope

of its engagement throughout the post-arbitration phase. On December 12, 2007, for

example, Dorsey accurately and properly stated that it "represented the ATI respondents

in the arbitration proceedings, but that does not give us authority to accept service of the

petition on their behalf." *See* Pietrzak Dec. at Exhibit D. Likewise, on January 3, 2008,

Dorsey informed counsel for Comverse that "We have subsequently been retained by

American Telecommunication, Inc. Chile S.A. ("ATI Chile"), alone, to respond on its

behalf to Comverse's petition to confirm the arbitration award. . . ." *See* Pietrzak Dec. at

Exhibit E. The scope of an attorney-client relationship is the prerogative of the client and

Dorsey communicated the parameters of its representation to Comverse's counsel in a

timely and accurate manner. *See Consol. Theaters v. Warner Bros. Circuit Mgm't Corp.*,

216 F.2d 920, 927 (2d Cir. 1954) (recognizing that "an attorney's power of representation

is confined to the matters which have been entrusted to him …").  Consequently, there is nothing nefarious about counsel's conduct herein.

## II.

## ARGUMENT

### A.    COMVERSE MISREPRESENTS ATI CHILE'S RESPONSIVENESS TO THE INFORMATION SUBPOENAS

Comverse contends that ATI Chile has engaged in a "strategy of avoidance and delay," and "has failed to provide meaningful responses to the information subpoenas." Comverse Mem., at pp. 7-8.  Nothing could be further from the truth.

Comverse served five information subpoenas on ATI Chile, consisting of one information subpoena regarding ATI Chile and four information subpoenas regarding the Sister Companies (collectively, the "Information Subpoenas").  True and correct copies of the Information Subpoenas are attached to the Pietrzak Dec. collectively as Exhibit F. These Information Subpoenas contained 140 inquiries between them.  ATI Chile deemed only three of these inquiries to seek confidential information and indicated that it would provide responses to these particular requests as soon as an appropriate protective order was entered into by the parties, as they already had in the Arbitration.  ATI Chile did not wait until it served its responses to the Information Subpoenas to raise this objection, but rather took the initiative and promptly sent Comverse's counsel a draft protective order on February 29, 2008 – a full 18 days before the responses were due.  *See* Pietrzak Dec. at Exhibit G, attaching email correspondence from Brooke Pietrzak to Deborah Skakel and draft protective order.  Even though this draft was based on the stipulated protective order that the parties had previously agreed to during the Arbitration, Comverse's counsel refused to enter into negotiations regarding the draft document.

Despite Comverse's unwillingness to provide ATI Chile with the protection it needed for its confidential business and financial information, ATI Chile proceeded to respond to the Information Subpoenas in a timely manner on the agreed upon date of March 18, 2008.[1]  ATI Chile fully answered 137 of the 140 inquiries, which constituted all of the inquiries that did not implicate confidential information.  It should be noted that of the three remaining inquiries that did implicate confidential information, ATI Chile partially responded to one of these requests (Request No. 18 in the ATI Chile Information Subpoena) because some of the information responsive to that request is publicly available and therefore would not be designated as confidential.  Comverse's contention that the draft protective order is a "sham" meant to "further delay ATI Chile from providing meaningful response," *see* Comverse Mem., at p. 6, is contradicted by ATI Chile's willingness to respond, nearly in full, to the Information Subpoenas.

As discussed below, the entry of a protective order is completely appropriate in this case.  It is therefore a gross misrepresentation for Comverse to accuse ATI Chile of stonewalling simply because ATI Chile has requested the protection it is fully entitled to for its sensitive financial information.

---

[1] Comverse attempts to make much of the fact that counsel for ATI Chile requested a three week extension of the time for ATI Chile to respond to the Information Subpoenas, which were originally due on February 26, 2008.  First, ATI Chile only had seven days to respond to the Information Subpoenas from the date of service, so requesting an extension with four days remaining was hardly dilatory.  Second, Comverse is well aware that the month of February is the summer holiday in Chile and it would be difficult for ATI Chile to respond to the Information Subpoenas under those circumstances.

**B.**    **ATI CHILE IS ENTITLED TO A PROTECTIVE ORDER**

     1.    Good Cause Exists for Entry of a Protective Order

A protective order should be entered upon a showing that the information sought is confidential, and that "good cause" exists for issuance of the order. *Four Star Capital Corp. v. Nynex Corp.*, 183 F.R.D. 91, 110 (S.D.N.Y. 1997); *see also Sommer v. Aronow*, No. 95 Civ. 9230 (LMM), 1996 WL 399820, at *4 (S.D.N.Y. July 16, 1996) (party moving for a protective order must establish that information at issue is "confidential" and that "disclosure will result in a clearly defined and very serious injury to its business."). ATI Chile can clearly meet this standard for entry of a protective order.

First, ATI Chile and Comverse are now competitors who have just concluded a heated arbitration regarding the breakdown of their prior lengthy business relationship. The Arbitral Tribunal found that ATI Chile and Comverse are now intensely competing for the same customers in the Latin American telecommunications market. *See* Arbitration Award at ¶ 101. There is also a significant amount of distrust between ATI Chile and Comverse based upon the manner in which the business relationship broke down. *See id.* at ¶ 112. In this context, any disclosure of confidential or proprietary documents or information by ATI Chile to Comverse without appropriate safeguards would be highly prejudicial to ATI Chile.

Second, during the Arbitration, the parties agreed that the documents and information they would be disclosing could be highly sensitive and confidential, and therefore appropriate safeguards, in the form of a protective order, needed to be in place. Such concerns regarding the potential disclosure of confidential information have not disappeared simply because the parties are now in a post-judgment setting. Indeed, the

protections are even more necessary at this stage, as ATI Chile tries to rebuild its business in the wake of Comverse's multiple breaches of their contract. The requests at issue seek information regarding bank accounts, financial statements and payments to creditors. *See* Pietrzak Dec. at Exhibit F. The responses to these requests would give Comverse highly detailed information regarding ATI Chile's business plans, including current and potential customers, projects and vendors. *See* Alfaro Dec. at ¶ 2. The information sought by these three requests falls squarely within the definition of confidential information. *See Sommer*, 1996 WL 399820 at *3 (recognizing that information regarding profits and losses and regarding "internal financial information" is considered confidential). A protective order is therefore warranted.

Forcing ATI Chile to turn over its sensitive financial information to the business people at Comverse, who are now its competitors as opposed to its partners, would be harmful to ATI Chile's continued viability. Moreover, given Comverse's misconduct in the past, there is no reason for ATI Chile to rely on mere assurances from Comverse, as opposed to a protective order entered by the Court, that its confidential information will be respected.[2] ATI Chile cannot afford to provide Comverse with a roadmap of its business without the appropriate safeguards.

2.    Protective Orders are Standard During Post-Judgment Discovery

Comverse's claim that "ATI Chile has not provided any controlling legal authority to support its position," *see* Comverse Mem., at p. 7, that it is entitled to a protective order during the post-judgment phase is incorrect.

---

[2] As was reported in *The New York Times* and the *Wall Street Journal*, Comverse's CEO, its general counsel and its CFO resigned in May of 2006 and were charged with federal securities fraud by the U.S. government.

CPLR 5240, which governs post-judgment enforcement procedures, provides that a court may enter an order "denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure." This language tracks the language of CPLR 3103(a), which authorizes the entry of an order "denying, limiting, conditioning or regulating the use of any disclosure device." As the Court recognized in *Davis-Delaney-Arrow, Inc. v. Gerson-Ogden, Inc.*, 427 N.Y.S.2d 559, 560-1 (Sup. Ct. New York County 1980) (citing *Cook v. H.R.H. Const. Corp.*, 302 N.Y.S.2d 364, 365 (2d Dept. 1969)), "Section 5240 was clearly intended to be the equivalent, in CPLR article 52, of CPLR 3103(a), which empowers the Courts to make protective orders with respect to disclosure devices under CPLR Article 31." *See also* Weinstein, Korn & Miller 11 *New York Civil Practice CPLR* (2d ed. 2007) ("In particular, CPLR 5240 may profitably be compared with its counterpart, CPLR 3103 … Accordingly, the commentary to CPLR 3103(a), and the cases decided thereunder, should be consulted for additional discussion of the function and application of this type of protective provision.")

As the case law and the commentaries make abundantly clear, the protections against disclosure of confidential information do not simply disappear because parties are in a post-judgment context. Rather, the same analysis that is applied in the pre-judgment CPLR 3103(a) context should be applied to the post-judgment CPLR 5240 context. In the instant matter, Comverse agreed to a protective order with an Outside Attorneys' Eyes Only provision during the Arbitration that would apply to precisely the type of financial information that is now being sought, without any protection, in the post-judgment context. In fact, the draft Stipulation and Protective Order tracks the operative language from the Stipulation and Protective Order that was executed by the parties and

10

so ordered by the Arbitral Tribunal.  *See* Pietrzak Dec. at Exhibit G (attaching the draft

protective order and the Stipulation and Protective Order that Comverse agreed to during

the Arbitration).  Given that CPLR 5240 is meant to be the equivalent of CPLR 3103,

there is no question that ATI Chile's sensitive financial information, which Comverse's

business people eagerly want access to, should be protected the same as the parties agree

it would have been during the Arbitration.

      Moreover, the cases Comverse cites regarding the "wide range" of post-judgment

discovery available to Comverse (*see* Comverse Mem., at pp. 12-13) are not relevant to

the dispute at hand.  The issue is not whether Comverse is entitled to discovery of

information relevant to enforcement of its judgment, but whether a protective order is

appropriate so that such information may be produced under appropriate safeguards.

None of the cases Comverse cites deny a judgment debtor a protective order to protect

confidential information in the context of post-judgment discovery.

      3.     Comverse's Objections to an Attorneys'
<br>                   <u>Eyes Only Provision Are Groundless</u>

      Comverse's position that ATI Chile is not entitled to an Outside Attorneys' Eyes

Only provision in a protective order during the post-judgment context is also without

merit.

      In *OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.*, No. S90-511, 1991 WL

146234, (N.D.Ind. Jul. 24, 1991), OHM sought post-judgment discovery against IFR, one

of its competitors, and IFR moved for a protective order that would permit the

designation of documents and information as "Confidential" or "Confidential-Attorneys

Eyes Only."  The kinds of information for which IFR sought to restrict access to outside

counsel only included "balance sheets, client lists, financial documents and the like."  *Id.*

at *1.  Because the parties were competitors, the Court found such a protective order to

be appropriate.

> [I]t appears that the legitimate interests of both parties can be accommodated simply by restricting disclosure of information designated by IFR as confidential to OHM's outside counsel.  Such a procedure would contemplate a mechanism for court review of IFR's confidentiality designations, provide sufficient protection for IFR's confidential business information and allow OHM's outside counsel complete access to all of the information which OHM is seeking.

*Id.* at *5.

It should be noted that counsel for ATI Chile provided counsel for Comverse with

a copy of the *OHM* decision before Comverse filed the instant Order to Show Cause.

Counsel for Comverse persisted, however, in proceeding with its application to the Court

and has now completely misconstrued the holding in *OHM* in its papers in an effort to

distinguish the case.  Comverse essentially claims that its "legitimate interests" in using

ATI Chile's "Outside Attorneys' Eyes Only" information outweighs ATI Chile's

"legitimate interests" in protecting that information from Comverse's business people.

This is not the holding of *OHM*, which stands for the proposition that the legitimate

interests of both parties (*i.e.* the one seeking confidential financial information post-

judgment and the one seeking to protect such information post-judgment) could be

accommodated by a protective order with a "Confidential-Attorneys' Eyes Only"

provision.  The same is true in the case of ATI Chile and Comverse, as there is simply no

reason why the sensitive financial information implicated by the three requests at issue

cannot be protected in the manner set forth in the draft protective order.[3]

---

[3] It should be noted that the draft protective order, like the one in *OHM*, allows the parties to challenge any "Confidential" designation they believe may be inappropriate.

Similarly, in *Cefalu v. Village of Elk Grove*, No. 94 C 1990, 1999 WL 167029, at *4 (N.D.Ill. Mar. 22, 1999), the Court ordered that a deposition in the context of post-judgment discovery be held under an outside attorneys' eyes only protective order given "the confidentiality concerns expressed by plaintiff and the atmosphere of distrust and animosity that appears to exist between the parties."  As has been discussed previously, the degree of distrust between ATI Chile and Comverse is high following Comverse's destruction of a 17-year relationship between the two companies in a manner confirmed to be wrongful and substantially damaging to ATI Chile.  It should be noted that a copy of the *Cefalu* case was also provided to counsel for Comverse prior to its application for an Order to Show Cause.

*OHM* and *Cefalu* establish that a protective order including an outside attorney's eyes only provision is appropriate in the instant case.  Comverse claims that ATI Chile has provided only "purported" legal authority for its position, yet it notably fails to cite any decisions to the contrary.

## C.    ATI CHILE'S RESPONSES REGARDING ITS SISTER COMPANIES WERE COMPLETE AND TRUTHFUL

Comverse suggests that ATI Chile "refuses to be forthcoming" with respect to its knowledge regarding its Sister Companies' assets.  *See* Comverse Mem. at 11.  In response to the Information Subpoenas, however, ATI Chile provided sworn responses from Rafael Alfaro Macherone, Chairman of the Board of ATI Chile, setting forth the extent of ATI Chile's knowledge regarding the Sister Companies.  Comverse has provided no basis for doubting the veracity of such responses, but only idle speculation and more mischaracterizations of the record.

Comverse suggests that, during the Arbitration, ATI Chile "provided detailed information concerning the operations of its Sister Companies in connection with their counterclaims against Comverse" and implies that ATI Chile was appearing on behalf of these other corporations.  *See* Comverse Mem. at 11.  However, the Sister Companies did not assert any counterclaims against Comverse in the Arbitration, only ATI Chile did, and it notably did so only on its own behalf.  Moreover, Comverse has not pointed to any instance where ATI Chile indicated that it possessed financial information regarding the Sister Companies similar to the financial information requested in the Information Subpoenas.

Comverse also suggests that Victor Acuña, a member of ATI Chile's board of directors, testified during the September 13-14, 2006 preliminary injunction hearing before this Court that Luis Nuñez, ATI Chile's CEO, was the "'legal representative' of, and had knowledge regarding, ATI's Sister Companies."  *See* Comverse Mem. at 11. Comverse completely mischaracterizes Mr. Acuña's testimony.  The subject matter of Mr. Acuña's testimony at that juncture was not ATI Chile's Sister Companies generally, or the finances of ATI Chile's Sister Companies, but specifically whether ATI Chile's Sister Companies had any pending bids in Latin America.  *See* Pietrzak Dec. at Exhibit H, attaching relevant pages of September 13, 2006 Transcript before this Court, at 76:3-13.  Mr. Acuña testified that he had no such knowledge, but suggested that Mr. Nuñez might.  *Id*.  Moreover, Comverse never examined Mr. Nuñez to determine whether in fact he had such knowledge.  Thus, the testimony at the preliminary injunction hearing did not establish that Mr. Nuñez had any knowledge regarding the Sister Companies, let alone

knowledge about the Sister Companies' finances similar to the information requested in the Information Subpoenas.

Comverse also states that it is "difficult to fathom" that ATI Chile does not have, or cannot obtain, financial statements from its sister companies. *See* Comverse Mem. at 12. However, ATI Chile has submitted an unrebutted sworn declaration that it has no such records. Moreover, ATI Chile is not obligated to obtain such records from the Sister Companies, as it does not have control over this information.

"When determining the sufficiency of 'custody and control' of material for purposes of Fed. R. Civ. P. 34, the nature of the relationship between the party and nonparty corporations is the key." *PCI Parfums et Cosmetiques Intern. v. Perfumania, Inc.*, No. 93 Civ. 9009 (KMW / RLE), 1998 WL 646635, at *2 (S.D.N.Y. Sept. 21, 1998). As between sister companies under common control, "the requisite 'possession or control' has been found only where the sister corporation was found to be the alter ego of the litigating entity . . . or where the litigating corporation has acted with its sister in effecting the transaction giving rise to the lawsuit and is litigating on its sister's behalf." *Id.* at *2.

ATI Chile did not litigate on behalf of its Sister Companies in the underlying proceedings. *See* Arbitration Award at ¶ 12 (the disputes in the arbitration "are disputes between the Claimant and ATI Chile only and have been decided by the Arbitral Tribunal on that basis."). Nor does the record establish that ATI Chile is somehow the "alter ego" of the Sister Companies. Where corporations are sister corporations, an "alter ego" relationship requires a finding of both "common control" and that the "corporate entities had been disregarded by themselves or [their common owner] in their course of their

business …" *Gerling Int'l Ins. Co. v. C.I.R.*, 839 F.2d 131, 141 (3d. Cir. 1988); *see also U.S. v. King*, No. 94 CR 455 (LMM), 1997 WL 582882, at *2 (S.D.N.Y. Sept. 19, 1997). Comverse cannot satisfy either, let alone both, of these prongs.

As for Comverse's assertion that "according to official records obtained by Comverse's counsel in Brazil, ATI Chile owns approximately 98% of the shares of American Telecommunication do Brasil Ltda," *see* Comverse Mem. at 12, this statement is false.

On December 26, 2005, ATI Chile transferred its ownership of American Telecommunication Ltda. ("ATI Brasil"), which was evidenced by 659,043 shares of the company, to American Telecommunication Holdings S.A. ("ATI Holdings") for a total price of US$230,980. *See* Alfaro Dec. at ¶ 2 and Exhibit A thereto, which is a true and correct copy of the signed and notarized document evidencing this transfer (the "Transfer Document"), entitled "Cesión de Cuotas Sociales American Telecommunication, Inc. Chile S.A. A American Telecommunication Holdings S.A." (in English "Transfer of Ownership of American Telecommunication, Inc. Chile S.A. to American Telecommunication Holdings S.A."). The transfer of ownership is set forth in the paragraph entitled "SEGUNDO" and the total price of the shares is set forth in the paragraph entitled "TERCERO" of the Transfer Document. *Id.*

On August 1, 2006, ATI Brasil filed a document modifying its bylaws with the Junta Comercial Do Estado Do Rio De Janeiro (the "Bylaw Modification"). *See* Alfaro Dec. at ¶ 3 and Exhibit B thereto, which is a true and correct copy of the Bylaw Modification, entitled "Alteracão Do Contrato Social De American Telecommunication Ltda. (in English "Alteration of the Ownership Contract of American Telecommunication

Ltda.").  The Bylaw Modification, among other items, (i) changed the address of ATI

Brasil from a location in Sao Paulo to a location in Rio de Janeiro and (ii) acknowledged

the transfer of the ownership of ATI Brasil from ATI Chile to ATI Holdings pursuant to

the Transfer Document.  *Id.*  The change in ATI Brasil's address is set forth at page 3 in

Paragraph A)I under the heading "RESOLVEM."  The acknowledgement of the transfer

of ownership is set forth at page 2 in Paragraph II, under the heading

"CONSIDERANDO."  *Id.*

ATI Chile therefore does not currently own 98% of the shares of ATI Brasil, as

Comverse claims, nor has ATI Chile maintained any ownership interest in ATI Brasil

since December of 2005.

### D.    COMVERSE IS NOT ENTITLED TO COSTS OR FEES

At the conclusion of the Arbitration, the Arbitral Tribunal did not grant either

party costs or fees, because it found that "[e]ach party has been partially successful in this

arbitration" and that "[b]oth parties have full co-operated in the conduct of the arbitration,

so there is no issue of one party having caused additional or wasted costs."  *See*

Arbitration Award at ¶ 117.  Comverse has no basis for suggesting that ATI Chile's post-

judgment conduct in connection with this matter has changed such that Comverse is

entitled to costs and fees.

F.R.C.P. 37(a)(5)(A) provides that if a motion to compel is granted, costs and fees

may be granted to the moving party, unless:

> (i) the movant filed the motion before attempting in good faith to
> obtain the disclosure or discovery without court action; (ii) the
> opposing party's nondisclosure, response, or objection was
> substantially justified; or (iii) other circumstances make an award
> of expenses unjust.

ATI Chile respectfully submits that based upon the law presented herein, Comverse's motion to compel should be denied and Comverse's request for costs and fees will therefore be moot.  Assuming *arguendo* that Comverse's motion is granted, which it should not, Comverse is not entitled to attorneys' fees and costs under the circumstances.

First, Comverse did not meaningfully consult with ATI Chile before filing the motion.  ATI Chile proposed a standard and routine protective order, based on the protective order the parties had previously agreed to during the Arbitration.  ATI Chile then provided Comverse with various sources of legal authority, both from treatises and from case law, establishing that a protective order, including one with an outside attorneys' eyes only provision, is valid in the post-judgment context.  Comverse repeatedly refused to agree to any protective order, stating only that it would (i) use the information provided by ATI Chile solely for the purpose of enforcement and (ii) use the provisions of Article 52 in a manner consistent with CPLR 5240.  Such "protections" were well below what ATI Chile was entitled to under the law, and, without the force of a Court Order behind them, did not instill any confidence in ATI Chile under the circumstances.

Second, ATI Chile's objection to responding to the three remaining requests until a suitable protective order was entered was substantially justified.  As has been noted throughout this memorandum, ATI Chile has serious concerns regarding the disclosure of sensitive financial information to a competitor.  This is especially true given that Comverse was previously found to have committed multiple breaches of the parties' contract thereby causing ATI Chile millions of dollars in damages.  Given the distrust

and animosity between the parties, and the issues ATI Chile has already experienced with Comverse's business people, ATI Chile's desire for a protective order before providing Comverse with this critical information was warranted. Moreover, ATI Chile has cited several legal authorities upon which it reasonably relied when objecting to the disclosure of this information in the absence of such an order.

Third, an award of attorneys' fees and costs in the face of the good faith conduct by ATI Chile and its counsel would be unjust. ATI Chile did not withhold its responses to the Information Subpoenas, but rather fully responded to 137 of the 140 inquiries and indicated that it would fully respond to the remaining three inquiries once a suitable protective order was in place. With respect to the three remaining requests, ATI Chile partially answered one (Request No. 18) because certain responsive information was publicly available. ATI Chile did not blanketly refuse to respond to the Information Subpoenas, nor did it withhold information that did not fall within the definition of confidential-outside attorneys' eyes only. ATI Chile also forwarded examples of legal authority that supported its position to Comverse prior to the filing of the instant Order to Show Cause.

## III.

## <u>CONCLUSION</u>

For all the reasons discussed herein, the Court should deny Comverse, Inc.'s

Order to Show Cause in its entirety, enter the proposed Protective Order and award ATI

Chile any other relief that the Court deems appropriate.

DATED: April 7, 2008                    DORSEY & WHITNEY LLP


<u>/s/Brooke E. Pietrzak</u>
Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
250 Park Avenue
New York, NY 10177
(212) 415-9200

*Attorneys for Respondent American*
*Telecommunication, Inc. Chile S.A.*

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                    Petitioner,


          -against-


AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,


                    Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

## CROSS-MOTION FOR PROTECTIVE ORDER

Respondent American Telecommunication, Inc. Chile S.A. ("ATI Chile"), for the reasons

set forth in (1) the accompanying Memorandum of American Telecommunication, Inc. Chile

S.A. in Opposition to Comverse, Inc.'s Order to Show Cause and in Support of Cross-Motion for

Protective Order, (2) the accompanying Declaration of Rafael Alfaro Macherone, and the

exhibits attached thereto, and (3) the accompanying Declaration of Brooke E. Pietrzak, and the

exhibits attached thereto, hereby cross-moves for a Protective Order in a form substantially similar to the attached Protective Order.

DATED: April 7, 2008

Respectfully submitted,

DORSEY & WHITNEY LLP

/s/Brooke E. Pietrzak
Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
250 Park Avenue

New York, NY 10177

(212) 415-9200

*Attorneys for Respondent American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | **[PROPOSED]**<br>**PROTECTIVE ORDER** |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

IT IS HEREBY ORDERED BY THE COURT, that the following terms and conditions shall govern the treatment of confidential and proprietary information in this proceeding:

1.      DEFINITIONS:      In connection with the information and document exchange in this proceeding, including the production of documents and information that contain confidential, trade secret or other proprietary information, or any other information the disclosure of which would cause competitive harm, embarrassment, oppression to the disclosing individual or entity (hereinafter "Confidential Information"), which a party or nonparty deems to contain Confidential Information, may be designated by such party as "CONFIDENTIAL" or "CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY" pursuant to the terms of this Protective Order.  The designation "CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY" shall apply only to documents or other materials that contain significant competitive or proprietary information, confidential financial or business information, technical information or

other trade secrets, which would not be disclosed in the ordinary course of business without an

obligation of confidentiality and/or which if otherwise disclosed would cause the disclosing party

competitive harm or could place the receiving party at a competitive advantage.

2.    DESIGNATION:

(a)    <u>Production</u>:    Any documents or written information designated to be

"CONFIDENTIAL," shall be so designated by the producing party or nonparty at the time of

their production by stamping the designated materials with the legend "CONFIDENTIAL" or

"CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY," or if necessary, by separate

written statement, or as set forth in Paragraph 3 of this Protective Order.

(b)    <u>Filing with the Court</u>: All Confidential Information, properly designated

under this Protective Order, that is filed with the Court during this proceeding, shall be filed

under seal in sealed envelopes or other appropriate sealed containers on which shall be labeled

with the title of this proceeding, an indication of the nature of the content of such sealed

envelope or container, the designation of "CONFIDENTIAL" or "CONFIDENTIAL-OUTSIDE

ATTORNEYS EYES ONLY" and a statement substantially as follows:

> FILED UNDER SEAL BY [NAME OF PARTY] PURSUANT TO THE
> PROTECTIVE ORDER ENTERED IN THIS PROCEEDING, AND IS
> TO BE MAINTAINED UNDER SEAL UNTIL FURTHER ORDER OF
> THE COURT

Filing of Confidential Information under seal shall not prevent or limit access in any

manner consistent with this Order of that information by the Court or counsel of record for the

parties.

(c)    The designation of any document as CONFIDENTIAL or

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY shall not preclude any party from

showing such Confidential Information to any person who appears as the author or as an

addressee or recipient on the face of the document, or who has been identified by the designating

party as having been provided with the document or the information therein by the designating

party;

(d)     Confidential Information shall be used solely for the purposes of this

proceeding.  However, nothing in this Protective Order is intended to prevent or restrict any

party or nonparty from using or disclosing its own Confidential Information in any manner or for

any purpose.  Neither shall this Order restrict the use or disclosure by a party or nonparty of

materials obtained in good faith and independently of discovery in this proceeding or obtained or

obtainable from another source or already in the possession or knowledge of a party or nonparty,

who is not obligated to maintain such documents in confidence.

3.     REDESIGNATION OF MATERIAL:     A producing party or nonparty may

redesignate under Paragraphs 1 through 3 hereof any material that it has previously produced,

but did not previously designate as Confidential Information, provided, however, that such

"redesignation" shall be effective only as of the date it is received.  The redesignating party or

nonparty shall notify each other party in writing specifically identifying the documents by

production number or otherwise and whether those documents should be redesignated as

CONFIDENTIAL or CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY.  Upon receipt

of such written notice, receiving counsel shall:

(a)     immediately take reasonable steps to retrieve any redesignated material in

the possession of any person not identified as a "Qualified Person" under Paragraph 6 hereof and

notify any person known to have possession of the material of the effect of such designation;

(b)     if not objecting to the redesignation, affix the appropriate legend on the

redesignated material in accordance with Paragraphs 2 and 3 hereof;

(c)       if objecting to the redesignation, counsel shall treat the materials at issue as designated pending resolution of the objection.  Any objections shall be in accordance with Paragraph 5 hereof.

If the materials are redesignated in accordance with the terms of this Protective Order, failure to originally designate those materials as Confidential Material shall not be deemed a waiver of any claims of confidentiality and shall not be used as grounds for a claim of such a waiver.

4.     PRIVILEGED MATERIAL:  In the event that any privileged materials are inadvertently produced, such production shall not be deemed a waiver of the attorney-client privilege, work-product doctrine or other privilege or immunity.  Upon notification of such inadvertent disclosure, the receiving party shall immediately make every effort to prevent further disclosure of the materials, collect and return any copies of the privileged materials and inform any person(s) having received or reviewed such materials as to the privileged nature of the materials.

5.     OBJECTIONS:       A party may move the Court for an order that material designated as confidential or privileged information is not, in fact, confidential or privileged.  On such a motion, the party asserting confidentiality or privilege shall have the burden of proving that the information designated CONFIDENTIAL, CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY or PRIVILEGED is Confidential Information as defined in Paragraph 1 above or is otherwise entitled to protection.  Before such a motion is brought, the parties will attempt to resolve their differences informally.  No party shall be obligated to challenge a confidential or privileged designation, and failure to do so shall not preclude a subsequent challenge to such a designation.  Designations, challenges to designations, and failures to challenge designations

made pursuant to this Order are not an admission or waiver of any party, and are not admissible in evidence on the hearing of any issue in this proceeding, including the issue of whether the information is in fact confidential or privileged.

6.    QUALIFIED PERSONS:    Materials designated as Confidential Information may be disclosed or made available by the party or nonparty receiving such information only to a "Qualified Person," as defined below:

(a)    Documents designated as CONFIDENTIAL may be disclosed to:

(i)    the Court and court personnel;

(ii)    outside counsel of record to the parties to this proceeding, and the members and employees of the law firms of counsel of record, and organizations retained by counsel to provide litigation support services in this proceeding and the employees of those organizations;

(iii)    court reporters, stenographers or translators whose services are used in connection with this proceeding, and other persons working for such reporters, stenographers or translators;

(iv)    directors, officers and employees of each party, including in-house counsel, and individuals named as parties, who must see such documents to assist in this proceeding; and

(v)    such other persons who the parties may designate by written agreement or by Order of the Court, permitting additional disclosure.

(b)    Documents designated CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY may be disclosed or made available by the party receiving such information only

to Qualified Persons as defined in subparagraph 6(a), excluding the parties to this proceeding as defined in subparagraph 6(a)(iv);

(c)      Any Qualified Persons under subparagraphs 6(a)(iii), (iv) and (v), shall – before disclosure or provision of any CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY material - be given a copy of this Order and shall agree in writing in the form attached hereto as Exhibit A, to be bound by the terms of this Protective Order, and the disclosing party shall promptly deliver to all other parties a copy of the executed agreement;

(d)      Confidential Information may be shown to a Qualified Person as designated in subparagraphs 6(a) (iii), (iv), and (v), only if the following approval procedure is used:

(i)      the party seeking approval shall provide all other parties (via overnight mail) with:

(1)      the name of the designated person;

(2)      the present employer and title of the designated person; and

(3)      an executed copy in the form attached hereto as Exhibit A or B, as required, acknowledging that the person will be bound by the terms of this Protective Order; and

(ii)      within seven (7) days after receipt (as evidenced by the overnight delivery tracking slip) of the information and written acknowledgement described in subparagraph 6(d)(i), any party may object to the person proposed for approval by specifically stating in writing the reasons why that party believes such person should not receive CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials. Failure to object within seven (7) days shall be deemed as approval of the designated person.  No

6

CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials shall be disclosed to a designated person when there is an outstanding objection until such objection is resolved by the Court or the parties, or the fifteen (15) day period set forth in subparagraph 6(d)(iii) has expired without a motion being filed by the objecting party;

(iii)     if a party objects, the parties shall within seven (7) days from the receipt of the notice of objection (mailed via overnight delivery), confer and attempt to resolve the dispute.  If the parties cannot resolve the dispute, then the objecting party may move the Court, within fifteen (15) days from the receipt of the notice of objection, for an order denying access to the designated person of CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials; and

(e)     this Order shall be binding on the parties, their agents, successors, heirs, assigns, subsidiaries, employees, and other persons or organizations over which they have control.

7.     RETURN OR DESTRUCTION OF CONFIDENTIAL AND CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY MATERIAL:     Within forty-five (45) days of the final disposition of the proceeding, each party or counsel in possession, custody or control of Confidential Information, or any tabulations, analyses, studies or compilations derived therefrom, shall either destroy or return (at the producing party's option) those materials. Destruction of such materials, including any copies stored electronically, shall be certified in writing by an officer of the receiving party.  However, counsel for each party may retain hardcopy abstracts or summaries of discovery materials or copies of materials which contain attorney-work product or which incorporate Confidential Information in documents filed with the Court.

8.      Comverse shall indemnify and hold harmless, and to pay or reimburse on demand, ATI Chile, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this Protective Order by Comverse or by any Qualified Person to whom Comverse has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that ATI Chile disclosed to Comverse.

9.      The Court shall retain jurisdiction to enforce the provisions of the Order and to make such modifications and additions to this Order as the Court may from time to time deem appropriate.


SO ORDERED this ____ day of _____ 2008


_____
Honorable Peter K. Leisure

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

### NOTICE OF PROTECTIVE ORDER
### AND CONFIDENTIAL UNDERTAKING
### (Non Experts and Consultants)

I hereby certify my understanding that Confidential and/or Confidential—Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Protective Order (the "Order"), entered by the Court in the proceeding entitled Comverse. Inc. v. American Telecommunication. Inc. Chile SA., et al.; Case No. 07 CV 11121 (PKL).

I further certify that my full name and address are: _____

_____; my present employer is:_____

_____; and the address of my present employment is:_____

_____;    and    my

present occupation and/or job title or description is:_____

9

I further certify that I have received a copy of the Order and have carefully read and understand the provisions of the Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as such shall apply to me.  I further agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the terms and restrictions of the Order.  I further agree that I shall not disclose Confidential or Confidential—Outside Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the termination of this proceeding, or sooner if so requested, I shall return to counsel all Confidential and Confidential—Outside Attorneys Eyes Only material and information in my possession or control, including all copies and excerpts thereof.

I understand that violation of the Order may be punishable by contempt.

Dated:_____, 2008                    _____
                                                (Signature)

                                                _____
                                                Print Name

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

EXHIBIT B

**NOTICE OF PROTECTIVE ORDER
AND CONFIDENTIAL UNDERTAKING
(Consultants and Experts)**

I hereby certify that I have been retained as a consultant or expert witness in the proceeding entitled <u>Comverse. Inc. v. American Telecommunication. Inc. Chile SA., et al.</u>; Case No. 07 CV 11121 (PKL). A copy of my Curriculum Vitae is attached hereto.

I further certify my understanding that Confidential and Confidential—Outside Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Protective Order (the "Order"), entered in this proceeding.

I further certify that I have been provided a copy of and have read and understand the Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as such shall apply to me. I further agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the terms

and restrictions of the Order.  I further agree that I shill not disclose Confidential or

Confidential—Outside Attorneys Eyes Only information to anyone other than persons permitted

to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the conclusion of my involvement in the litigation, I will return all

Confidential and Confidential—Outside Attorneys Eyes Only material and information,

summaries, abstracts and indices thereof which come into my possession, and documents or

things which I have prepared relating thereto, to counsel for the party by whom I am employed

or retained.

I understand that violation of the Order may be punishable by contempt.


Dated:_____, 2006          _____
                                                                    (Signature)

                                                                    _____
                                                                    Print Name