Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                Petitioner,

    -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

**DECLARATION OF
<u>BROOKE E. PIETRZAK</u>**

    I, BROOKE E. PIETRZAK, declare as follows:

    1.    I am a partner with the law firm of Dorsey & Whitney LLP, attorneys for

respondent American Telecommunication, Inc., Chile S.A. ("ATI Chile") in this action.  I submit

this declaration in support of (a) ATI Chile's opposition to Comverse, Inc.'s ("Comverse") Order

to Show Cause and (b) ATI Chile's cross-motion for a protective order.

2.      Attached hereto as Exhibit A is a true and correct copy of the Value Addeded Reseller Agreement (the "VAR Agreement"), without exhibits, entered into between Comverse and ATI Chile on or about July 22, 2004.

3.      Attached hereto as Exhibit B is a true and correct copy of the Stipulation and Order dated September 15, 2006 whereby Comverse withdrew the Order to Show Cause it filed with this Court on or about September 5, 2006.

4.      Attached hereto as Exhibit C is a true and correct copy of the Opinion and Order dated October 23, 2006 whereby this Court denied Comverse's Order to Show Cause filed on or about October 5, 2006.

5.      Attached hereto as Exhibit D is a true and correct copy of email correspondence from Neil McDonell to Lindsay Bush, dated December 12, 2007.

6.      Attached hereto as Exhibit E is a true and correct copy of email correspondence from Neil McDonell to Deborah Skakel, dated January 3, 2008.

7.      Attached hereto as Exhibit F are true and correct copies of ATI Chile's responses to the Information Subpoenas regarding ATI Chile, American Telecommunication Inc. Bolivia S.A. ("ATI Bolivia"), American Telecommunication Do Brasil Ltda. ("ATI Brasil"), American Telecommunication Inc. Ecuador ATIECUADOR S.A. ("ATI Ecuador") and American Telecommunication Peru S.A. ("ATI Peru").

8.      Attached hereto as Exhibit G are true and correct copies of email correspondence from Brooke Pietrzak to Deborah Skakel, dated February 29, 2008, the draft of the protective

order, which was attached thereto; and the Stipulation and Protective Order entered by the

Arbitral Tribunal on November 10, 2006.

9.     Attached hereto as Exhibit H are true and correct excerpts from the Transcript of

the hearing before this Court held on September 13, 2006.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in New

York, New York on April 7, 2008.

/s/ Brooke E. Pietrzak

_____

BROOKE E. PIETRZAK

# EXHIBIT A

COMVERSE , INC.
AND
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.

VALUE ADDED RESELLER AGREEMENT





R 000001
CONFIDENTIAL

## Table of Contents

PARTIES AND UNDERSTANDING.................................................................. 1

A.  INTRODUCTION

    1.     DEFINITIONS................................................................................. 1

    2.     TERM.............................................................................................. 2

    3.     SCOPE OF AGREEMENT............................................................ 2

B.  GENERAL OBLIGATIONS OF THE PARTIES

    4.     LICENSES..................................................................................... 3

    5.     TITLE............................................................................................ 5

    6.     COMVERSE'S WARRANTIES.................................................... 5

    7.     ATI'S WARRANTIES.................................................................. 6

    8.     INDEMNIFICATION................................................................... 6

    9.     LIMITATION OF LIABILITY..................................................... 7

    10.    DEFAULT AND OPPORTUNITY TO CURE.............................. 7

    11.    TERMINATION........................................................................... 8

C.  SALES

    12.    ORDERS....................................................................................... 9

    13.    ACCEPTANCE OF AND SHIPMENT OF ORDERS................... 9

    14.    CUSTOMER'S CANCELLATION OF A PURCHASE ORDER... 10

    15.    DELIVERY.................................................................................. 10

    16.    ACCEPTANCE OF SYSTEMS................................................... 10

    17.    PRICE AND PAYMENT TERMS................................................ 10

D.  SPECIFIC OBLIGATIONS OF THE PARTIES

    18.    TRAINING AND OTHER COMVERSE OBLIGATIONS............ 13

    19.    OTHER ATI OBLIGATIONS..................................................... 13

    20.    SERVICE LEVEL AGREEMENT/SUPPORT SERVICES.......... 13



R 000002
CONFIDENTIAL

E.  PRODUCT MODIFICATIONS

20.     CATEGORIES, COSTS AND OWNERSHIP RIGHTS ........................................11

F.  LAWS AND REGULATIONS

21.     COUNTRY/INTERNATIONAL ....................................................................11

G.  MISCELLANEOUS

22.     GENERAL PROVISIONS ..........................................................................13

## SCHEDULES

| Schedule | Title |
|---|---|
| A | Description of the Licensed Software, Equipment and Documentation |
| B | Designated Territories |
| C | End-User Software Sub-License Agreement |
| D | Technical Activity Matrix and Description |
| E | Converse's Trademarks |
| F | Service Level Agreement/Support Services |
| G | Non-Disclosure Agreement for Distributor's Personnel and Agents |
| H | Installation Hardware Functionality Test Plan |



R 000003
CONFIDENTIAL

## PARTIES AND UNDERSTANDING

This Value Added Reseller Agreement (the "Agreement") is made by and between Comverse, Inc., on behalf of itself and its subsidiaries, with its corporate offices at 100 Quannapowitt Parkway, Wakefield, MA 01880, USA, (hereinafter referred to as "Comverse"), and American Telecommunication, Inc. Chile S.A., with its primary place of business at La Concepción 177, Providencia, Santiago de Chile (hereinafter referred to as "ATI").

WHEREAS, ATI desires to become a Value Added Reseller of Comverse and thereby obtain certain purchasing/licensing and distribution rights to certain of Comverse's enhanced voice messaging and information processing systems; and

WHEREAS, Comverse wishes to grant such rights to ATI upon the terms and conditions set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

## A.     INTRODUCTION

1.     **DEFINITIONS**

1.1     For the purpose of this Agreement, the terms below shall have the following definitions as indicated:

1.1.1     "Effective Date" – the earliest date that a duly authorized officer of both parties sign this Agreement.

1.1.2     "Equipment" – certain enhanced voice messaging and information processing equipment of Comverse as more fully described in Schedule A attached hereto.

1.1.3     "Software" – means the executable (object code) version of Comverse's proprietary computer software as further described in Schedule A attached hereto.

1.1.4     "System(s)" – means collectively the Equipment and Software as those terms are defined above.

1.1.5     "Documentation" – all existing written user manuals, reference manuals, training manuals, release notes and/or other relevant materials as may be further described in Schedule A attached hereto and that are produced by Comverse to assist ATI in instructing the end-user customers on how to use the System, and all such new manuals, release notes and other materials developed during the term of this Agreement by Comverse and/or provided hereunder.

1.1.6     "Collateral Material" – means all marketing documents used to describe the System(s).

1.1.7     "Designated Territories" – unless otherwise specified herein, only those geographic locations as more fully described in Schedule B attached hereto.

1.1.8     "Services" – means the activities for which ATI has primary or support responsibility as described in Schedule D attached hereto.

Release 1.5

R 000004
CONFIDENTIAL

1.1.9    "Non-Disclosure Agreement" -- means the Non-Disclosure Confidentiality Agreement dated October 16, 2003 between the parties and attached hereto as Schedule G.

2.    **TERM**

2.1    The initial term of this Agreement shall commence on the Effective Date and unless otherwise terminated as provided herein, shall continue in full force and effect for two (2) years.

2.2    Upon and after the end of the initial term of this Agreement, this Agreement shall continue in full force and effect, for successive one year terms provided that (a) either party may terminate this Agreement for convenience upon ninety (90) days prior written notice to the other party or (b) this Agreement is not otherwise terminated as provided herein.

3.    **SCOPE OF AGREEMENT**

3.1    Comverse hereby appoints ATI and ATI hereby accepts such appointment, to be a reseller of the Systems, subject to the provisions set forth below. With respect to the accounts located within Chile, Bolivia, Ecuador, and Peru, and for TIM Brazil in Brazil and Telefonica Celular del Paraguay S.A. in Paraguay, ATI shall be Comverse's exclusive reseller. With respect to the accounts located within Colombia, Uruguay, and Mexico, and for all other accounts located within Brazil and Paraguay, ATI shall be Comverse's non-exclusive reseller. Accounts located within other countries will be handled on a case-by-case basis. In making such appointment, Comverse hereby grants to ATI the rights to market and distribute the Systems in the Designated Territories only, by providing the Services. Comverse agrees to sell and license to ATI, and ATI may purchase and license from Comverse, the System(s) for the purposes of reselling and sublicensing the System(s).

3.1.1    ATI and Comverse shall work together to develop a business plan and market analysis (including sales forecasts) for each account.

3.1.2    ATI and Comverse shall update each business plan and market analysis described above on a yearly basis and one quarter prior to the termination of the current term. Such plan shall include a support implementation plan with respect to each account (including manpower, procedures and processes). Comverse shall have the right not to pursue any prospective accounts. ATI agrees that the business plan forms the basis for evaluating the success of the business plan developed and agreed upon by the parties.

3.1.3    Comverse shall have the right to distribute Systems in the Designated Territories directly or indirectly to multi-national accounts with facilities in the Designated Territories and to any potential customer who states its refusal to deal directly with ATI. In the event of such distribution by Comverse, compensation for ATI shall be decided on a case by case basis.

3.1.4    ATI agrees that it shall not, directly or indirectly, market, sell, license, lease, distribute and/or otherwise transfer any products similar to, or competitive with, the Systems within the Designated Territories or outside of the Designated Territories during the term of this Agreement and for a period of one year following any termination of this Agreement. The products listed in the attached Schedule I shall be excluded from this non-competition prohibition. The parties agree that this list may change from time to time with any such changes to be put in writing and mutually agreed upon by the parties.

R 000005
CONFIDENTIAL

3.2    In performing its obligations hereunder, ATI shall employ its own personnel and shall be responsible for them and their acts. Converse shall in no way be liable for ATI, its employees or its agents for any losses, injuries, or damages caused by or attributed to the acts and/or omissions of ATI, its employees, or its agents.

**B.    GENERAL OBLIGATIONS OF THE PARTIES**

**4.    LICENSES**

4.1    Software and Documentation -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, license to distribute and sublicense the Software and the Documentation in the Designated Territories only, for use only on the Equipment on which or with which it was shipped. ATI is granted no rights (a) to the source code version of Software or (b) to translations or derivative works of the Software or the Documentation.

4.1.1    ATI shall hold the Software and Documentation in confidence and agrees not to modify or copy, in whole or in part, the Software and/or Documentation except as described in Section 4.1.4 below. ATI further agrees to take all steps necessary to insure that the Software and Documentation, in whole or in part, are not disclosed to or duplicated for, any unauthorized third parties, including but not limited to those steps ATI would take to protect information, data or other property of its own that it regards as proprietary or confidential.

Except as may be otherwise explicitly authorized in writing by Comverse, ATI agrees it shall not inspect, decompile, disassemble or reverse engineer the Software, or tamper with, bypass or alter the security features of same.

4.1.2    ATI may sublicense the Software in object code form only and the Documentation in the Designated Territories only, without any right of further distribution or sublicensing.

4.1.3    Sublicenses to Software shall be granted by ATI to each end-user customer only pursuant to written sublicense agreements with provisions that substantially conform to the end-user software sublicense set forth in Schedule C attached hereto. All copies of the Software licensed by ATI shall have reproduced on them all copyright and other proprietary notices specified by Comverse. ATI agrees to enforce all such sublicense agreements.

4.1.4    Comverse grants ATI the right to produce copies of translated Documentation and Collateral Material only to the extent required to market to and support the accounts.

4.2    Trademarks -- Subject to the provisions of Section 3.1 above, Comverse hereby grants ATI a non-exclusive, non-transferable license to use, in the distribution of the Systems, certain designated trademarks of Comverse as set forth in Schedule E attached hereto.

4.2.1    Except as may be otherwise explicitly authorized in writing by Comverse, ATI shall not remove or alter, nor permit the removal or alteration of, any designated Comverse trademarks, tags, labels or other identifying markings placed by Comverse on any Systems products, packages or containers provided hereunder without the prior written consent of Comverse. In no event shall ATI have the right to market, sell, lease, license or otherwise distribute, directly or indirectly, the Systems under the name of any third party.

R 000006
CONFIDENTIAL

4.2.2   Comverse may, at any time, unilaterally add to or delete from the list of trademarks set forth in Schedule E.

5.   **TITLE**

5.1   Title to all risks of loss of or damage to the Equipment shall be transferred from Comverse to ATI upon shipment of the Equipment to ATI.

5.2   Title to all Software and Documentation furnished to ATI hereunder, and all intellectual property rights therein, including without limitation all rights in any patents and copyrights, shall remain vested in Comverse and its licensors at all times. ATI agrees that the Software, Documentation and any related materials provided hereunder are entitled to protection under the patent and copyright laws of the United States and the Designated Territories, and ATI shall not remove any patent, copyright or other proprietary notices of Comverse or its licensors from same.

6.   **COMVERSE'S WARRANTIES**

6.1   Comverse hereby represents and warrants that it has full right, interest and authority to enter into and perform its obligations under this Agreement.

6.2   Comverse warrants that the Equipment delivered hereunder will be free from material defects in workmanship and materials for a period of one (1) year starting forty-five (45) days after the date of initial shipment of the Equipment to ATI (the "Warranty Period"). If any item of Equipment shall require repair or replacement by Comverse in accordance with such warranty, Comverse will effect replacement or repair as soon as possible but not later than thirty (30) days. Comverse also warrants that the repaired or replacement item will be free from material defects in workmanship and materials for the balance of the Warranty Period of the replaced item, or for ninety (90) days, whichever is longer. Comverse warrants all spare parts will be free from material defects in workmanship and materials for a period of ninety (90) days from the date of installation. Any changes to the Warranty Period ATI may negotiate with end-user customers must be approved in advance by Comverse.

6.3   Comverse warrants that during the Warranty Period, all Software licensed hereunder will substantially conform to Comverse's applicable then current published specifications when delivered. ATI must notify Comverse in writing of any defect in the Software, and if the Software is found to be substantially defective, Comverse's sole obligation under this warranty is to correct such defect in a reasonable manner determined by Comverse. Comverse does not warrant that the Software will meet all requirements of ATI or its end-user customers, or that the operation of the Software will be completely error free, or that all Software defects will be corrected. Comverse will correct any and all service affecting Software deficiencies or provide an adequate work-around(s) for same.

6.4   The foregoing warranties above are contingent upon proper use and maintenance of the System by ATI and/or its end-user customers, and are Comverse's sole responsibility hereunder. In addition, however, the foregoing warranties shall not apply to defects or failures in the System due, without limitation, to the following: (i) accident, neglect or misuse; (ii) failure or defect of electrical power, electrical static discharges, external electrical circuitry, air-conditioning or humidity control; (iii) the use of items not provided by Comverse; (iv) unusual stress; or (v) any party other than Comverse or a customer representative trained and certified by Comverse or ATI modifying, adjusting, repairing, servicing or installing the System.

6.5   If Comverse is unable, after reasonable efforts, to repair or replace the Equipment or to correct the Software, ATI's sole remedy shall be the refund of the purchase price paid by it.

R 000007
CONFIDENTIAL

6.6 Upon the expiration of the Warranty Period for each System, Comverse will provide the support services described in the attached Schedule F so long as the end-user customers have signed the Comverse form of support agreement with ATI.

6.7 SUBJECT TO THE FOREGOING WARRANTIES, COMVERSE MAKES NO OTHER WARRANTIES HEREUNDER, WHETHER EXPRESS, IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

7. ATI'S WARRANTIES

7.1 ATI represents and warrants that it has the full power and authority to enter this Agreement, has obtained all applicable government approvals to enter and to perform this Agreement, will keep such approvals in force, and shall obtain such additional government approvals as may from time to time be required.

7.2 ATI warrants that all ATI personnel and agents who provide services on behalf of ATI hereunder will be fully qualified to provide such services under the laws of the country where such services are provided and trained and approved by Comverse.

7.3 ATI warrants that it shall at all times promote the Systems and Comverse's goodwill and reputation, at its own expense, and shall conduct its business in a highly ethical manner and in accordance with its obligations under this Agreement.

7.4 ATI warrants that, at the request of Comverse, ATI's personnel and agents shall sign non-disclosure agreements with Comverse in the form attached hereto as Exhibit G.

8.0 INDEMNIFICATION

8.1 Comverse agrees to defend, indemnify and hold ATI harmless from and against any and all loss, damage, liability or expense (including reasonable attorneys' fees) assessed against ATI or incurred by ATI, arising out of any claim, suit or proceeding brought against ATI asserting or alleging that the System in the form furnished hereunder constitutes an infringement of any United States patent, trademark or copyright, provided ATI notifies Comverse promptly in writing of any such claim, suit or proceeding and gives full and complete authority, information, and assistance to Comverse in the defense of such claim, suit or proceeding, and provided further that Comverse shall have sole control of the defense of any such claim, suit or proceeding and of all negotiations for its settlement or compromise.

8.2 If the System is held to be infringing and its use is enjoined, Comverse shall be discharged from its prospective liabilities if, at its own expense and election, it does one of the following: (1) procure for ATI the right to continue using the System; (2) modify the System so it becomes non-infringing; or (3) remove the System and refund the purchase price paid by ATI for such infringing System(s) the use of which is prevented using an amortization schedule of three (3) years. Comverse shall not have any liability to ATI under this Agreement if any allegation of infringement is based upon the interconnection and/or modification and/or use of the System in combination with other devices not furnished by Comverse where the System would not by itself be infringing, or upon any use of the System for which the System was not designed, or if the infringement arises out of compliance with ATI's specifications or designs or out of modifications made to the System unless such modifications are made by Comverse.

8.3 The foregoing states Comverse's entire liability with respect to infringement of patents, trademarks or copyrights by the System hereunder.

R 000008
CONFIDENTIAL

8.4    ATI agrees to defend, indemnify and hold Comverse harmless from and against any and all loss, damage, liability or expenses (including reasonable attorneys' fees) assessed against Comverse or incurred by Comverse, arising out of any claim, suit or proceeding brought against Comverse relating to or arising from (a) ATI's breach of warranties as set forth in Section 7. above and (b) any personal injury (including without limitation death) or property damage caused by or attributed to the acts and/or omissions of ATI, its employees or its agents.

R 000009
CONFIDENTIAL

9.     LIMITATION OF LIABILITY

9.1     IN NO EVENT SHALL COMVERSE BE LIABLE HEREUNDER FOR ANY INDIRECT, SPECIAL, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER BASED ON CONTRACT, TORT OR ANY OTHER LEGAL THEORY, EVEN IF COMVERSE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9.2     IN NO EVENT SHALL COMVERSE'S LIABILITY HEREUNDER EXCEED THE AMOUNT RECEIVED FROM ATI BY COMVERSE FOR THE PURCHASE ORDER TO WHICH THE LIABILITY PERTAINS.

10.     DEFAULT AND OPPORTUNITY TO CURE

10.1     Subject to the provisions of Section 11.1 below, neither party shall be deemed to be in default under the terms of this Agreement unless the party alleging the default sends a written notice setting forth the nature of the alleged default, and the defaulting party shall fail to substantially cure such default within thirty (30) days following the receipt of such notice.

11.     TERMINATION

11.1     For Cause – This Agreement may be terminated by either party upon the failure of the other party to cure any material default following the notice and opportunity to cure set forth in Section 10. above, provided, however, that:

     11.1.1    Only twenty (20) days prior written notice by Comverse shall be required and this Agreement shall terminate after said twenty (20) day period if ATI fails to make any payments due hereunder and ATI fails to cure said violation to Comverse's satisfaction within said twenty (20) day period; and

     11.1.2    Either Comverse or ATI will have the right to terminate this Agreement immediately without notice to the other party if the other party intentionally or negligently violates any of its obligations under the Non-Disclosure Agreement or Sections 4. or 7 above or in the event that any of ATI's personnel or agents violate any of their obligations set forth in their non-disclosure agreements with Comverse; and

     11.1.3    Sixty (60) days prior written notice shall be required and this Agreement shall terminate after said sixty (60) day period if any of the following remain uncured: (i) if the other party becomes insolvent or unable to pay its debts in the ordinary course of its business; (ii) if a voluntary or involuntary petition under applicable bankruptcy laws is filed by or against the other party; (iii) if a receiver is appointed for the business affairs of the other party or the other party makes an assignment for the benefit of creditors; (iv) if the other party liquidates or ceases doing business as a going concern; or (v) if there is a change in the control or majority ownership of ATI not otherwise expressly assented to by Comverse.

     11.1.4    Comverse shall have the right to terminate this Agreement immediately in the event that ATI is acquired by a competitor of Comverse.

11.2     For Convenience – This Agreement may be terminated by either party with the appropriate prior written notice pursuant to the provisions of Section 2.2 herein.



11.3 <u>Remedies</u> – In the event this Agreement is not renewed by ATI or Comverse pursuant to Section 11.2 above or is terminated by Comverse pursuant to Section 11.1 above, then the following shall occur:

11.3.1 Comverse shall fill any pending purchase orders from ATI;

11.3.2 the licenses provided to ATI hereunder shall terminate on the effective date of termination;

11.3.3 all sublicenses granted to the Registered Accounts prior to the effective date of termination shall continue in full force and effect;

11.3.4 any purchase orders received by ATI prior to the effective date of termination must be delivered to Comverse. No commissions will be payable to ATI after termination;

11.3.5 ATI shall notify promptly its accounts in writing that it is no longer an authorized Comverse ATI;

11.3.6 Final plans to transition the accounts to another source of distribution and support shall be determined by Comverse after consultation with ATI; and

11.3.7 Comverse shall have no liability to ATI for damages of any kind, including incidental or consequential damages, on account of such termination or expiration of this Agreement. Without limiting the generality of the foregoing, Comverse shall not be liable to ATI on account of such termination or expiration for reimbursement or damages for the loss of goodwill, prospective profits or anticipated sales, or on account of any expenditures, investment, leases or commitments made by ATI or for any reason whatsoever based upon or growing out of such termination or expiration.

12. **ORDERS**

12.1 Unless otherwise agreed, the prices for the Systems on all orders placed by ATI hereunder must be stated in U.S. dollars.

12.2 ATI may purchase and license each System for accounts by submitting purchase orders for same by hard copy or facsimile, provided however, that all such orders are subject to acceptance by Comverse's corporate office. Under no circumstances will Comverse accept, or be obligated to accept, purchase orders hereunder directly from any of accounts without the prior written consent of Comverse.

12.3 Except as otherwise provided, ATI will place firm purchase orders for Systems, meaning an end-user customer has issued a purchase order to ATI such that Comverse has at least sixty (60) days lead time before any scheduled shipment of Systems is required. At the time of its placement of an order with Comverse, ATI shall provide Comverse with a letter certifying its receipt of a firm purchase order from an end-user customer. All shipments are subject to availability. Comverse will use reasonable efforts to fill orders with shorter shipping date schedules, provided that Comverse may charge ATI, after consultation, its then current expedite charge for filling such an order as requested. Unless Comverse expressly agrees in writing, no additional or different provisions appearing anywhere on ATI's purchase order shall become part of such order.

13. **ACCEPTANCE AND SHIPMENT OF ORDERS**



Release 1.5

R 000011
CONFIDENTIAL

13.1   Comverse agrees to notify ATI promptly regarding a) whether Comverse accepts or rejects each of ATI's purchase orders, b) shipping details associated with each order, and c) any subsequent changes in Comverse's delivery schedule and/or shipping plans.

15.   DELIVERY

15.1   Comverse shall deliver each System to ATI F.O.B. Comverse's principal plant of manufacture. In the absence of specific shipping instructions from ATI, Comverse will select a common and/or freight forwarder carrier, but shall not thereby assume any liability in connection with the shipment of any System delivered hereunder.

15.2   Insurance coverage for in-transit goods, beyond such coverage provided by the common carrier/freight forwarder, is the sole responsibility of the ATI.

16.   ACCEPTANCE OF SYSTEMS

16.1   Upon delivery to ATI of each System, ATI and Comverse shall work jointly to obtain acceptance from the customer in accordance with mutually agreed upon Acceptance Test Procedures ("ATP"). After complete delivery of a System to the end-user customer, acceptance of a System shall occur on completion of ATP or commercial deployment, whichever occurs first.

17.   PRICE AND PAYMENT TERMS

17.1   Comverse and ATI will discuss and agree upon the margins, and delivery schedules for each purchase hereunder. ATI agrees that the terms it provides to an end-user customer will be consistent with the terms agreed upon with Comverse.

17.2   Comverse may modify the prices presented to ATI upon sixty (60) days prior written notice to ATI. No such modification shall apply to any items for which Comverse has accepted a purchase order prior to the effective date of such modification.

17.3   All products sold to ATI will be invoiced upon shipment by Comverse. All payments to Comverse shall be made in U.S. dollars. In the event of any default in payment by ATI, Comverse may decline to make further shipments.

17.4   Prices do not include any customs, duties, value added tax, income tax or any other tax or assessment which may be levied by local authorities. Any such amounts levied, whether withheld at source or otherwise, will be added to the prices.

17.5   Without first obtaining Comverse's approval, ATI shall have no right of offset with respect to any payment owed to Comverse due to issues ATI is experiencing with an end-user customer paying ATI in accordance with the agreed upon payment terms between ATI and such end-user customer.

D.   SPECIFIC OBLIGATIONS OF THE PARTIES

18.   TRAINING AND OTHER COMVERSE OBLIGATIONS

18.1   Comverse agrees to comply with its requirements as set forth in Schedules D and F including without limitation, the requirements to provide to ATI certain technical training, certification and re-certification services, and to perform certain general localization and sales plan activities:

19.   OTHER ATI OBLIGATIONS

19.1   ATI agrees to comply with its requirements as set forth in the attached Schedules D, F and G.

20.   SERVICE LEVEL AGREEMENT/SUPPORT SERVICES

20.1   The parties agree to comply with each of its respective requirements under the terms of the Service Level Agreement and consistent with the description of support services provided in Schedule F attached hereto.

## E.   PRODUCT MODIFICATIONS

21.   CATEGORIES, COST AND OWNERSHIP RIGHTS

21.1   The parties agree that from time to time during the term of this Agreement, Comverse may change the System(s) offered hereunder in the form of product modifications and that Comverse may charge ATI for such modifications.

## F.   LAWS AND REGULATIONS

22.   COUNTRY/INTERNATIONAL

22.1   ATI shall at all times cooperate promptly with Comverse to enable Comverse to comply with the provisions of any United States Export Administration Act, War Powers Act, and any other law or Executive Order relating to control of exports or transfer of technology, and the regulations of the United States Departments of State, Commerce and Defense relating thereto (in present form or as amended in the future) as they may apply to ATI's activities. ATI shall also comply with the requirements of the United States Foreign Corrupt Practices Act and United States Anti-Boycott Regulations (in present form or as amended in the future) as they may apply to ATI's activities hereunder. In particular, with respect to the United States Foreign Corrupt Practices Act, ATI agrees that it and its owners, officers, directors, employees, or agents thereof have not and will not pay, offer, promise, or authorize the payment, directly or indirectly, of any monies or anything of value to any government official or employee, any political party or candidate for political office for the purpose of influencing such official's acts or decisions to obtain or retain business as contemplated under this Agreement.

22.2   This Agreement and ATI's performance hereunder is specifically made subject to any and all laws, regulations, orders or other restrictions on the export from the United States of America of computer software, hardware, telecommunications equipment and technical knowledge or know-how relating thereto, which may be imposed from time to time by the Government of the United States of America. ATI agrees that Systems purchased/licensed hereunder will not be exported or otherwise transferred, directly or indirectly, in whole or in part, without ATI first obtaining Comverse's written consent and a license from the U.S. Department of Commerce and/or any other appropriate agency of the U.S. Government, as required. ATI further agrees that it will obtain the written assurance of each of its Registered Accounts to which each System is distributed such that each Registered Account will comply with said export control laws, regulations, orders and restrictions.



R 000013
CONFIDENTIAL

22.3    ATI shall immediately advise Comverse of any new import or export law, regulation, order or other restriction in the Designated Territories which might affect the implementation of this Agreement and ATI agrees to comply with all each law, regulation, order or restriction.

## G.    MISCELLANEOUS

### 23.    GENERAL PROVISIONS

23.1    All notices required to be given hereunder shall be in writing and shall be deemed given if delivered personally, or if sent by facsimile (whereby the receiving party shall acknowledge receipt of same by facsimile within two (2) business days from receipt of the initial facsimile) with a copy of such notice sent by air mail, to the person identified below at the address as set forth at the beginning of this Agreement, or such other person or address as may be specified in a written notice delivered in accordance with this Section 23.1:

If to COMVERSE:                    Attention:
                                   Legal Department
                                   100 Quannapowitt Parkway
                                   Wakefield, MA  01880

If to ATI:              Attention:
                                   _____

23.2    ATI may not assign its rights or obligations hereunder without the prior written consent of Comverse.

23.3    ATI and Comverse agree that during the term of this Agreement and for a period of twelve (12) months thereafter, neither party shall, directly or indirectly, solicit, induce, attempt to induce any employees of the other to its employ.

23.4    This Agreement shall be governed by, and construed in accordance with, the laws of the state of New York, USA, without reference to the conflict of laws provisions thereof and not including the United Nations Convention on Contracts for the International Sale of Goods.

23.5    If any provision of this Agreement is held to be invalid under any applicable law, such provision shall, to the extent of such invalidity, be deemed to be omitted here from, and all other provisions of this Agreement shall continue in full force and effect.

23.6    In the event that any provision of the Schedules to this Agreement are deemed to be in conflict with the provisions of this Agreement, the provisions of this Agreement shall control.

23.7    Any failure by either party to enforce strict performance by the other party of any provision herein shall not constitute a waiver of the right to subsequently enforce such provision or any other provision of this Agreement.

23.8    Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York in accordance with the then prevailing Rules of the American Arbitration Association. Any such arbitration shall be held in English. Any arbitrator(s) used shall be knowledgeable in telecommunications and data processing systems. The parties consent to the jurisdiction of the Courts of New York, New York in connection with respect to any award made by the arbitrator(s). Each party shall bear its own costs, expenses and fees (including attorneys' fees) incurred in connection with this Section 23.8. The

parties hereby acknowledge that monetary damages may not be a sufficient remedy for breaches of the Non-Disclosure Agreement or Sections 4 and 5 above and that either party, as appropriate, may be entitled to such injunctive or equitable relief for actions or claims arising solely under the Non-Disclosure Agreement or Sections 4 or 5, as may be deemed proper by a court of competent jurisdiction.

23.9   Neither party shall liable to the other party for any failure to perform hereunder due to contingencies beyond its reasonable control, including but not limited to, strikes, riots, wars, fires, Acts of God, or acts required to comply with any governmental regulations.

23.10   This Agreement and the Non-Disclosure Agreement constitute the entire agreement between Comverse and ATI with respect to the subject matter of this Agreement and supercede all statements, representations, and understandings which have been made by either party or their agents or representatives prior to the execution of this Agreement. No modification of this Agreement shall be binding upon either party unless made in writing and executed on behalf of that party by its duly authorized representative.



IN WITNESS WHEREOF, the parties hereto have set their hands and seals by a duly authorized representative as of the date(s) written below.

COMVERSE, INC.

_____
Signature

_Brian E. Heffernan_____
Print Name

_Assistant General Counsel_____
Title

_July 23, 2004_____
Date

AMERICAN TELECOMMUNICATIONS, INC. CHILE S.A.

_____
Signature

_____
Print Name

_____
Title

_22 / 07 / 04_____
Date

FISCALIA
AMERICAN TELECOMMUNICATIONS, INC.

R 000016
CONFIDENTIAL

# EXHIBIT B

USDC ...
DOC ...
ELE... ICALLY FILED
DO ...#
DA... FILED: 9/15/2006

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

RECEIVED
SEP 15 2006
JUDGMENT CLERK'S OFFICE

|  |  |
|---|---|
| COMVERSE, INC.,<br><br>        Plaintiff,<br><br>    vs.<br><br>AMERICAN TELECOMMUNICATION, INC.<br>CHILE S.A.,<br><br>        Defendant. | Case No. 06 Civ. 6825<br><br>ECF CASE |

**STIPULATION AND ORDER**

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned

counsel, that Plaintiff's application for a preliminary injunction is withdrawn without prejudice.

IT IS FURTHER STIPULATED AND AGREED, that Defendant's time to respond to

the Complaint in the underlying action is extended indefinitely.

Dated:    September 15, 2006
        New York, New York

Dated:    September 15, 2006
        New York, New York

By: _Deborah A. Skakel_
Deborah A. Skakel (DS 8599)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Plaintiff Comverse, Inc.

By: _Neil E. McDonell_
Neil E. McDonell (NM 1715)
DORSEY & WHITNEY
250 Park Avenue
New York, New York 10177
(212) 415-9200
Attorneys for Defendant American
    Telecommunication, Inc. Chile S.A.

SO ORDERED on this 15th day of September, 2006

_Peter K. Leisure_
Hon. Peter K. Leisure
United States District Judge

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                Plaintiff,

 - against -

AMERICAN TELECOMMUNICATIONS,
INC. CHILE S.A.,

                Defendant.

**OPINION AND ORDER**

06 Civ. 6825(PKL)

**APPEARANCES**

DEBORAH SKAKEL, ESQ.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Attorneys for Plaintiffs

NEIL EDWIN MCDONELL, ESQ.
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177

Attorneys for Defendant

**LEISURE, District Judge:**

Plaintiff Comverse, Inc. ("Comverse") moves the Court, by way of an order to show cause, for an order (a) compelling defendant American Telecommunications, Inc. Chile S.A. ("ATI") to proceed with the pending arbitration (the "Pending Arbitration") between the two parties and (b) enjoining ATI from prosecuting the action it initiated in the Tribunal de Defensa de la Libre Competencia (the "Chilean Competition Tribunal") as well as from commencing or prosecuting, in any other jurisdiction, any other court proceeding arising out of Comverse and ATI's Value Added Reseller Agreement (the "VAR"). For the reasons that follow, Comverse's motion is denied.

## BACKGROUND

Comverse, an American company, is a provider of software and telecommunications systems. ATI is a Chilean company that distributes telecommunications products. (1st Am. Compl. ¶¶ 3, 4.) On or around July 22, 2004, Comverse and ATI entered into the VAR, in which they agreed that ATI would serve as an international reseller of equipment and software provided by Comverse. (1st Am. Compl. ¶¶ 3, 4, 8.) The VAR contains an arbitration provision that reads in pertinent part: "Any controversy or claim arising out of or related to this Agreement shall be submitted to binding arbitration in New York, New York

2

in accordance with the then prevailing Rules of the American Arbitration Association." (1st Am. Compl. Ex. A § 23.8.)

On July 26, 2006, Comverse instituted arbitration proceedings against ATI alleging various breaches of the VAR. As of September 27, 2006, the date of Comverse's First Amended Complaint, the arbitration panel had still not been fully constituted. (1st Am. Compl. ¶ 14). On September 13, 2006 this Court held a hearing on a previous application for a preliminary injunction by Comverse wherein Comverse sought an order enforcing the non-compete and confidentiality provisions of the VAR while the arbitration panel was being constituted. On September 15, 2006 the parties entered into a confidential agreement and Comverse withdrew its application for the preliminary injunction. (1st Am. Comp. ¶ 27.) On the same day that this Court held a hearing on Comverse's first request for a preliminary injunction, ATI filed a claim (the "Chilean Action") against Comverse Chile SA (an affiliate of Comverse) with the Tribunal de Defensa de la Libre Competencia (the "Chilean Competition Tribunal"), a specialized court in Chile with jurisdiction over competition matters. (Ortúzar Decl. ¶¶ 3, 5, Ex. A.)

ATI's initiation of the Chilean Action serves as a request that the Chilean National Economic Prosecutor — the Chilean governmental body charged with enforcing Chilean competition law

3

before the Chilean Competition Tribunal, <u>see</u> art. 2, Decreto Ley No. 211, de 1973 (2006) (the "Chilean Competition Law"), (Ortúzar Decl. ¶ 7) — investigate the complaint and decide whether to prosecute the action against Comverse. (<u>See</u> Cruz Decl. ¶ 13g; Skakel Supp. Decl. Ex. A at 14.) It will not result in ATI's claims being taken directly to the Chilean Competition Tribunal. (Cruz Decl. ¶ 13g)  Rather, any prosecution would be conducted by the Chilean National Economic Prosecutor. (<u>See</u> Cruz Decl. ¶ 13g).

ATI also requested that the Chilean Competition Tribunal grant it preliminary injunctive relief (the "Chilean Preliminary Injunction"), namely that it compel Comverse to continue supplying ATI with equipment, software, and services as it had done under the VAR. (<u>See</u> Skakel Supp. Decl. Ex. A at 14.)  The Chilean Competition Law permits for such a proceeding prior to a prosecution, if warranted, being commenced by the Chilean National Economic Prosecutor; the party requesting the injunction may do so on its own. (<u>See</u> Cruz Decl. ¶ 13e.)  The proceedings for the Chilean Preliminary Injunction took place on October 7, 2006 (Trans. Oct. 5, 2006 15:4-8, 23:10-12), four days before Comverse fully presented its arguments in its Reply Memorandum of Law.  On October 12, 2006, the Chilean Competition Tribunal denied ATI's request for the Chilean Preliminary

Injunction. (Rol C No. 108-06, Cuaderno de medidas cautelares; see Official Translation No. 10, 18-5/2006.)

There are several substantial similarities between the factual predicates to ATI's claims in the Chilean Action and its counterclaims in the Pending Arbitration.  For example, in both the Chilean Action and in the Pending Arbitration, ATI claims that the non-compete provision of the VAR is unenforceable (Skakel Supp. Decl. Ex. A at 14; 1st Am. Comp. Ex. C ¶ 125); that Comverse improperly approached ATI's customers directly (Skakel Supp. Decl. Ex. A at 12, 14; 1st Am. Comp. Ex C ¶ 103-107); and that Comverse improperly solicited ATI's employees to enter its employ (Skakel Supp. Decl. Ex. A at 12, 14; 1st Am. Comp. Ex C ¶ 103-107.)

## DISCUSSION

### I.    Order to Compel Arbitration

Comverse petitions this Court for an order compelling ATI to "proceed with the [Pending Arbitration" in accordance with the arbitration clause of the VAR. (Order to Show Cause for Prelim. Inj. and TRO.)  The VAR is an agreement affecting interstate and international commerce. (See Skakel Decl. Ex. A § 3.1.)  Accordingly, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. (2006), governs the arbitration clause of the VAR.  See 9 U.S.C. §§ 1-2; Shaw Group, Inc. v. Triplefine Int'l Corp., 322 F.3d 115, 120 (2d Cir. 2003)(citing cases).  Section

4 of the FAA provides that a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; Jacobs v. USA Track & Field, 374 F.3d 85, 88 (2d Cir. 2004). In evaluating a petition to compel arbitration, "the role of courts is 'limited to determining two issues: i) whether a valid agreement or obligation to arbitrate exists, and ii) whether one party to the agreement has failed, neglected or refused to arbitrate.'" Jacobs, 374 F.3d at 88 (quoting Shaw Group Inc., 322 F.3d at 120 see also Laif X Sprl v. Axtel, S.A. de C.V., 390 F.3d 194, 198 (2d Cir. 2004). Thus, a court can compel arbitration if it finds in the affirmative on both of these issues.

First, neither ATI nor Comverse contests the validity of the arbitration clause in the VAR. Further, both parties have demonstrated that they consider the clause valid through participating in the Pending Arbitration, and ATI has actively furthered the arbitration by asserting its own counterclaims. (See 1st Am. Compl. Ex. C; Tr. Prelim. Inj. Hr'g Sept. 13, 2006 45:8-45:25). According to Comverse, ATI's claims in the Chilean Action "closely parallel" these counterclaims in the Pending Arbitration. (Reply Mem. Law Further Supp. Comverse's 2d Appl'n

Prelim. Inj. ("Reply Mem.") at 5.)  As the parties agree that
the arbitration agreement is valid, the Court is not in the
position to find otherwise.

Second, ATI has not "fail[ed], neglect[ed], or
refus[ed]...to arbitrate." 9 U.S.C. § 4.  As noted above, both
parties are currently engaged in the pending arbitration, and
ATI has actively furthered the arbitration.  Indeed, Comverse
does not dispute that ATI is participating in the arbitration
and that ATI's claims in the Chilean Action are "identical" to
counterclaims it has submitted to arbitration in the Pending
Arbitration. (Reply Mem. at 4 n.2 ("It is undisputed that ATI
has been participating in the [Pending Arbitration] and has
manifested its intention to continue doing so"); Mem. Law in
Supp. of Comverse's 2d Appl'n Prelim. Inj. & Appl'n TRO at 10.)
Further, ATI's commencement of the Chilean Action is not in
itself a failure, neglect, or refusal to arbitrate.  The
litigation of certain claims arguably within the scope of the
arbitration clause, without an "attendant refusal to arbitrate,"
does not constitute a failure to arbitrate. Laif X Sprl, 390
F.3d at 199.  Because ATI has not failed, neglected, or refused
to arbitrate, it is not in breach of its obligation to arbi-
trate.  Accordingly, on the present record, the Court will not
compel ATI to arbitrate. See, e.g., Downing v. Merrill Lynch,
Pierce, Fenner & Smith, Inc., 725 F.2d 192, 195 (2d Cir. 1984).

7

## II. Preliminary Injunction

Comverse seeks a preliminary injunction enjoining ATI from prosecuting the Chilean Action and from prosecuting any other court proceeding involving claims arising out of or related to the VAR, pending resolution of the dispute in the Pending Arbitration. (1st Am. Compl. at 9.)  The power of a federal court "to enjoin foreign suits by persons subject to their jurisdiction is well established." China Trade & Dev. v. M.V. Choong Yong, 837 F.2d 33, 35 (2d Cir. 1987).  Narrowly viewed, the injunction operates to restrain the litigant rather than purporting to restrain the foreign court directly. See id. However, "principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint.'" Paramedics Electromedicina Comercial, Ltda. v. GE Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004)(quoting China Trade, 837 F.2d at 36). This is because "an anti-suit injunction, though directed at the litigants, 'effectively restricts the jurisdiction of the court of a foreign sovereign.'" Laif X Sprl, 390 F.3d at 199 (quoting Paramedics Electromedicina, 369 F.3d at 655.

Notwithstanding the general hesitation to issue a foreign anti-suit foreign injunction, it is well established that in order to obtain a preliminary injunction the movant must show: (a) irreparable harm and (b) either (1) likelihood of success on

the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. See Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir. 1993); Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979). These elements must be established by a preponderance of the evidence. Shred-It, USA, Inc. v. Mobile Data Shred, Inc., 202 F. Supp. 2d 228, 233 (S.D.N.Y. 2002)(citing Addington v. Texas, 441 U.S. 418, 423 (1979)); see also S.E.C. v. Moran, 922 F. Supp. 867, 889 (S.D.N.Y. 1996). Whether injunctive relief should issue or not "'rests in the sound discretion of the district court....'" Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)(quoting Thornburgh v. American Coll. of Obstetricians and Gynecologists, 476 U.S. 747, 755 (1986)). This analytic framework applies to a preliminary anti-suit injunction as it does to any other sort of preliminary injunction. See Jam. Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92 (2d Cir. 2006).

In applying this test, the Court is mindful that, "'[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 433 (2d Cir. 2004)(quoting Weinberger

9

v. Romero-Barcelo, 456 U.S. 305, 312 (1982)). Although this
rule is usually applied in actions where a private party seeks
to enjoin government action, see, e.g., Rodriguez by Rodriguez
v. DeBuono, 175 F.3d 227 (2d Cir. 1998), it also applies to
suits between private parties see, e.g., Standard & Poor's Corp.
v. Commodity Exchange, Inc., 683 F.2d 704 (2d Cir. 1982). See
Register.com, 356 F.3d at 424.

The Chilean Action is before the Chilean Competition
Tribunal and thus implicates the public interest. The Chilean
Competition Law, which provides for the establishment of the
Chilean Competition Tribunal, see Chilean Comp. Law, tit. II,
(Ortúzar Decl. ¶ 5) charges both the Chilean Competition
Tribunal and the National Economic Prosecutor with the
application of the Chilean Competition Law in order to safeguard
free competition in the markets. See Chilean Comp. Law, art. 2.
(Ortúzar Decl. ¶ 5.) The Chilean Competition Court may order
any provisional injunctive relief that is necessary to safeguard
the common interest. Chilean Comp. Law, art. 26. Moreover, final
determinations by the Chilean Competition Tribunal are to be
supported in part by the court's economic considerations.
Chilean Comp. Law, art. 25. (Cruz Decl. ¶ 8.) Although the
determinations of the Chilean Competition Tribunal may well have
implications for the private parties involved in proceedings
before it, these are incidental to the tribunal's stated purpose

10

of safeguarding the freedom of economic markets in the public interest. See Chilean Comp. Law, arts. 1, 2. (Cruz Decl. ¶ 9.)

**A.    Irreparable Harm**

"'Irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.... Accordingly, the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered.'" Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005)(quoting Rodriguez by Rodriguez v. DeBuono, 175 F.3d 227, 234 (2d Cir. 1998)); Reuters, Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990). Irreparable harm is an "injury for which a monetary award cannot be adequate compensation." Javaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)(citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)). Further, "[i]rreparable harm must be shown by the moving party to be imminent, not remote or speculative." Reuters, 903 F.2d at 907 (citing Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 972 (2d Cir. 1989)); see also Freedom Holdings, 408 F.3d at 114. The movant is required to establish not a mere possibility of irreparable harm, but that it is "likely to suffer irreparable harm if equitable relief is denied." JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990).

"Likelihood sets, of course, a higher standard than 'possibility.'" Id.

Comverse contends that, if the Court does not enjoin ATI from proceeding with the Chilean Action, Comverse will suffer irreparable harm by virtue of the resultant deprivation of its contractual right to arbitrate its claims. Comverse's claim of irreparable harm can be divided into two related components, the first pertaining generally to the entirety of the Chilean Action and the second specifically to the Chilean Preliminary Injunction proceeding. Generally, Comverse claims that it will suffer this harm by being compelled to litigate in contravention of the arbitration clause in the VAR. More specifically, Comverse argues that any ruling by the Chilean Competition Tribunal on ATI's application for a preliminary injunction in the Chilean Action threatens to render the Pending Arbitration a hollow formality.

It is indeed the case that courts in this district have found that the deprivation of a party's contractual right to arbitration constitutes irreparable harm. See, e.g., Reliance Nat'l Ins. Co. v. Seismic Risk Ins. Servs., 962 F. Supp. 385, 390 (S.D.N.Y. 1997); Int'l Fashion Prods., B.V. v. Calvin Klein, Inc., No. 95 Civ. 0982(JFK), 1995 U.S. Dist. LEXIS 2598, at *4, 1995 WL 92321, at *2 (S.D.N.Y. March 7, 1995). The deprivation of the right to arbitration is of particular weight in light of

the "strong federal policy favoring arbitration as an alternative means of dispute resolution." Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001); see David L. Threlkeld & Co. v. Metallgesellschaft Ltd. (London), 923 F.2d 245, 248 (2d Cir. 1991).

However, the Chilean Action will not deprive Comverse of its contractual right to arbitrate its disputes with ATI. As this Court has stated before, "it is fundamental that arbitration agreements are creatures of contract law." Energy Trans., Ltd. V. M.V. San Sebastian, 348 F.Supp.2d 186, 201 (S.D.N.Y. 2004)(internal quotations omitted). It follows that only the parties to the arbitration agreement are bound by the agreement. Sec. Ins. Co. of Hartford v. TIG Ins. Co., 360 F.3d 322, 325 (2d Cir. 2004); NBC v. Bear Stearns & Co., 165 F.3d 184, 186 (2d Cir. 1999)("because commercial arbitration is a creature of contract, only the parties to the arbitration contract are bound to participate."); PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996)(citing AT&T Technologies, Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)). As described above, the Chilean Action is an action which the Chilean National Economic Prosecutor may bring against Comverse; except for the request for the Chilean Preliminary Injunction, ATI itself will not prosecute this action. The National Economic Prosecutor is not a party to the VAR and so is not

bound by the arbitration clause therein. Accordingly, as Comverse has no contractual right to arbitrate a dispute with the Chilean National Economic Prosecutor, Comverse is not deprived of this right by the absence of a preliminary injunction.

Comverse's specific contention is that the Chilean Preliminary Injunction would cause Comverse irreparable harm. The Court will not consider this contention because it is no longer relevant now that the Chilean Competition Tribunal has decided that the Chilean Preliminary Injunction will not issue. Regardless of whether the issuance of the Chilean Preliminary Injunction likely would have caused Comverse imminent, irreparable harm, the Chilean Competition Tribunal's decision has nullified that potential cause of harm.

Comverse has failed to carry its burden of demonstrating that it will likely suffer irreparable harm if this Court does not enjoin ATI from proceeding with the Chilean Action, let alone any as-of-yet unspecified legal action. This is particularly the case given the public interest implications of the requested injunction: as discussed above, the National Economic Prosecutor is charged with safeguarding free competition in the markets. Absent a showing of imminent, irreparable harm, this Court will not consider the other factors for the issuance of a preliminary injunction, see Freedom

Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005),

including the factors for the issuance of an anti-suit

injunction.  See China Trade & Dev. v. M.V. Choong Yong, 837

F.2d 33, 36 (2d Cir. 1987).

### CONCLUSION

For the forgoing reasons, plaintiff's motion is denied.

SO ORDERED.
New York, New York

October **23** , 2006


_____
U.S.D.J.

Copies of this Order have been sent to:

Deborah Skakel, Esq.
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, NY 10036-2714

Neil Edwin McDonell, Esq.
Dorsey & Whitney LLP
250 Park Avenue
New York, NY 10177

# EXHIBIT D

| | |
|---|---|
| **From:** | McDonell, Neil |
| **Sent:** | Wednesday, December 12, 2007 10:32 AM |
| **To:** | 'Bush, Lindsay' |
| **Cc:** | Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth |
| **Subject:** | RE: Comverse v. ATI: petition to confirm arbitration award |

**Importance:** High

Lindsay,

As I previously advised you, I am simply not authorized to accept service of the petition on behalf of any of the ATI companies. As you know, Dorsey & Whitney LLP represented the ATI respondents in the arbitration proceedings, but that does not give us authority to accept service of the petition on their behalf.

Article 27(4) of the AAA's International Dispute Resolution Procedures is incorporated into the arbitration agreement and, thus, represents a contractual obligation of Comverse, Inc. The Stipulated Protective Order also imposes obligations on Comverse, which it cannot disregard. Comverse is not relieved of its obligations by your unfounded suggestion that nothing in the award is "so highly confidential." Article 27(4) of the IDRP, and the obligations it imposes on Comverse, are not conditioned on any such assessment, and information designated confidential under the Stipulated Protective Order remains protected until the arbitral tribunal rules otherwise. As you know, the tribunal retains jurisdiction to enforce the terms of their order.

It is therefore Comverse's own obligation to have the award (and any document revealing details of the award) filed under seal, since it is petitioning to have the award confirmed. It is also Comverse's obligation to bring these considerations and confidentiality obligations to the attention of the Court, in order to fulfill its own obligations. Normally courts respect the confidentiality of arbitration proceedings and permit the award (and any document revealing details of the award) to be filed under seal, in connection with a petition to confirm an award. Thus, public disclosure of the award is not "required by law." Of course, if a judgment is entered on an award, the judgment would reveal the amounts awarded, but not normally the other details of the award.

It is evident now that Comverse breached its arbitration agreement (and violated the Stipulated Protective Order) by originally filing the award in the public record and not under seal. To the extent the petition reveals details of the award (particularly details beyond than the amounts awarded), its filing in the public record also breaches Comverse's arbitration agreement. In fact, the petition does evidently reveal details not previously made public in Comverse's prior, unsuccessful injunction applications.

I urge Comverse to comply with its obligations and to immediately rectify all prior breaches.

Sincerely,
Neil


**Neil E. McDonell**
Partner
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y  &  W H I T N E Y  LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.415.9344  **F:** 212.953.7201  **C:** 914.907.6772
*USA CANADA EUROPE ASIA*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received
this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments,
including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.
Thank you.*

-----Original Message-----
**From:** Bush, Lindsay [mailto:BushL@dicksteinshapiro.com]
**Sent:** Tuesday, December 11, 2007 6:46 PM
**To:** McDonell, Neil
**Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
**Subject:** RE: Comverse v. ATI: petition to confirm arbitration award

Neil,

Based on the assumption that you still represent ATI (and since we have not heard otherwise in response to our prior email), and in the interest of time, please be advised of the following.

We will inform the Court in our application for alternative method of service that you have refused to accept service on behalf of the ATI entities, despite your continuing representation of such entities.

Comverse's petition was not filed under seal in its entirety. While we do not believe that any part of the petition meets the legal criteria for filing under seal, we have had the award (exhibit E to the petition) temporarily filed under seal, pending the resolution of this issue. As you know, Comverse's statement of claim, ATI's statement of defense and the VAR Agreement have all been previously publicly filed and filing them under seal at this point is unnecessary and inappropriate. There is nothing confidential in either the March 22, 2007 letter from Santiago Montt Vicuna to the arbitrators (which was not marked as "Confidential") or the petition itself.

We note that ICDR Article 27 applies only to awards, not the petition or the other documents attached thereto. We further note that an award may be made public as required by law. Since Comverse now has to convert the arbitration award into a judgment, it is required to file the award with the Court in order to do so. As you may know, the law in this Court is that judicial documents are presumptively available to the public unless countervailing considerations overcome that presumption. Should the ATI entities wish to file a motion to seal based upon such "countervailing considerations," they are free to do so. It is Comverse's position that nothing in the award is so "highly confidential" (particularly given the prior injunction applications and the public documents filed in connection therewith) so as to require filing the award under seal.

Regards,
Lindsay

Lindsay A. Bush
Associate, Business Litigation Group
Dickstein Shapiro LLP
1177 Avenue of the Americas | New York, NY 10036
Tel: 212.277.6676 | Fax: 917.591.1303
bushl@dicksteinshapiro.com

---

**From:** McDonell, Neil [mailto:mcdonell.neil@dorsey.com]
**Sent:** Tuesday, December 11, 2007 1:23 PM
**To:** Bush, Lindsay
**Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
**Subject:** RE: Comverse v. ATI: petition to confirm arbitration award
**Importance:** High

Lindsay,

I am not authorized to accept service on behalf of any of the ATI entities.

Was Comverse's petition and exhibits filed with the Court under seal? I note that Article 27(4) of the AAA's

International Dispute Resolution Procedures provides that "[a]n award may be made public only with the consent of all parties or as required by law." I also refer to the Stipulated Protective Order issued in the arbitration and Comverse's obligations thereunder.


Sincerely,
Neil


**Neil E. McDonell**
Partner
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y & W H I T N E Y  LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.415.9344  **F:** 212.953.7201  **C:** 914.907.6772
*USA CANADA EUROPE ASIA*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**CONFIDENTIAL COMMUNICATION**
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.*

*Thank you.*


    -----Original Message-----
    **From:** Bush, Lindsay [mailto:BushL@dicksteinshapiro.com]
    **Sent:** Tuesday, December 11, 2007 12:08 PM
    **To:** McDonell, Neil
    **Cc:** Pietrzak, Brooke; Graff, Howard; Skakel, Deborah; Scher, Elizabeth
    **Subject:** Comverse v. ATI: petition to confirm arbitration award

    Neil,

    Attached please find a courtesy copy of the petition to confirm the arbitration award (with exhibits) that was filed with the court on Friday. Please note that we have filed this as a related case to the case presently pending before Judge Leisure, so no judge has been assigned to date. Please let us know whether you will accept service on behalf of the various ATI entities.


    Regards,
    Lindsay


    Lindsay A. Bush
    Associate, Business Litigation Group
    Dickstein Shapiro LLP
    1177 Avenue of the Americas | New York, NY 10036
    Tel: 212.277.6676 | Fax: 917.591.1303
    bushl@dicksteinshapiro.com


    ------------------------------------------------------
    This e-mail message and any attached files are confidential
    and are intended solely for the use of the addressee(s)
    named above. This communication may contain material
    protected by attorney-client, work product, or other
    privileges. If you are not the intended recipient or person
    responsible for delivering this confidential communication
    to the intended recipient, you have received this
    communication in error, and any review, use, dissemination,
    forwarding, printing, copying, or other distribution of
    this e-mail message and any attached files is strictly
    prohibited. Dickstein Shapiro reserves the right to monitor
    any communication that is created, received, or sent on its
    network.  If you have received this confidential
    communication in error, please notify the sender

immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
=========================================================================

---------------------------------------------------------

This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
=========================================================================

# EXHIBIT E

| From: | McDonell, Neil |
|---|---|
| Sent: | Thursday, January 03, 2008 10:37 AM |
| To: | 'Skakel, Deborah' |
| Cc: | Bush, Lindsay; Pietrzak, Brooke; Epstein, Eric |
| Subject: | RE: Comverse v. ATI --SDNY proceeding |

Debbie,

I did not advise you on December 12, 2007, or at any other time, that we represent the ATI entities in connection with Comverse's SDNY proceeding to confirm the arbitration award.  To the contrary, I made clear that we represented those entities only in connection with the arbitration.  In that regard, I reminded you of Comverse's confidentiality obligations under the governing ICDR arbitration rules and the Tribunal's stipulated protective order.

We have subsequently been retained by American Telecommunication, Inc. Chile S.A. ("ATI Chile"), alone, to respond on its behalf to Comverse's petition to confirm the arbitration award, which -- as you know -- includes an award in ATI Chile's favor against Comverse.  We have not been retained to appear in the SDNY proceeding on behalf of any of the other ATI entities that participated in the arbitration, and thus we will be appearing in the SDNY proceeding solely for ATI Chile.

In response to your question, ATI Chile intends to request that the arbitration award remain filed permanently under seal.  Indeed, Comverse is obliged to join in ATI Chile's request, pursuant to its own confidentiality obligations.  Accordingly, the arbitration award should remain under seal until the Court resolves this issue.

Please copy my partner Brooke Pietrzak and my associate Eric Epstein on any future emails on this matter.

Sincerely,
Neil

**Neil E. McDonell**
Partner
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
**D O R S E Y  &  W H I T N E Y  LLP**
250 Park Avenue
New York, NY 10177-1500
**P:** 212.415.9344  **F:** 212.953.7201  **C:** 914.907.6772
*USA CANADA EUROPE ASIA*
. . . . . . . . . . . . . . . . . . . . . . . . . . . . .
CONFIDENTIAL COMMUNICATION
*E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items.  Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted  the e-mail, all attachments and any copies thereof. Thank you.*

-----Original Message-----
**From:** Skakel, Deborah [mailto:SkakelD@dicksteinshapiro.com]
**Sent:** Wednesday, January 02, 2008 10:42 PM
**To:** McDonell, Neil
**Cc:** Bush, Lindsay
**Subject:** Comverse v. ATI --SDNY proceeding

Neil--

You previously advised us, on December 12, 2007, that you continue to represent the ATI entities in connection with Comverse's SDNY proceeding to confirm the arbitration award against those ATI entities (the "Award"). We have not been informed to the contrary in the interim. Since your December 12th e-mail, however, we have not heard anything further from you regarding whether you intend to make an application, on behalf of the ATI entities, to permanently seal the Award. We advised you of our position -- that the Award had been filed *temporarily* under seal, but did not meet the legal criteria for filing under seal permanently -- and invited you, on December 12th, to advise us promptly as to whether you intended to make an application to have the Award filed under seal permanently. To date, you have not responded to our e-mail. Accordingly, please let us know by noon on January 4, 2008, whether you intend to make such an application; otherwise we will advise the Court to unseal the temporarily sealed Award.
--Debbie Skakel

---------------------------------------------------------
This e-mail message and any attached files are confidential
and are intended solely for the use of the addressee(s)
named above. This communication may contain material
protected by attorney-client, work product, or other
privileges. If you are not the intended recipient or person
responsible for delivering this confidential communication
to the intended recipient, you have received this
communication in error, and any review, use, dissemination,
forwarding, printing, copying, or other distribution of
this e-mail message and any attached files is strictly
prohibited. Dickstein Shapiro reserves the right to monitor
any communication that is created, received, or sent on its
network.  If you have received this confidential
communication in error, please notify the sender
immediately by reply e-mail message and permanently delete
the original message.

To reply to our email administrator directly, send an email
to postmaster@dicksteinshapiro.com

Dickstein Shapiro LLP
http://www.DicksteinShapiro.com
===========================================================================

# EXHIBIT F

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | |
| Petitioner, | |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | Case No. 07 CV 11121 (PKL) ECF CASE |
| Respondents. | |

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH RESTRAINING NOTICE REGARDING JUDGMENT DEBTOR AMERICAN TELECOMMUNICATION, INC. CHILE S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice regarding ATI Chile (the "Requests").

## General Objections and Responses

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.    ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.    ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.    ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.    ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.    ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.    ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.    ATI Chile objects to the Requests to the extent that they seek the disclosure of sensitive business and financial information and/or information that is confidential or proprietary or constitutes trade secrets, and no such information will be disclosed without a suitable protective order.

8.    ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

9.      These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

**<u>Specific Objections and Responses</u>**

Subject to and without waiver of the foregoing General Objections and Responses, ATI

Chile responds as follows:

<u>Request No. 1</u>

What is your full name and address?

<u>Response to Request No. 1</u>

Rafael Alfaro Macherone. La Concepción 177, Providencia, Santiago, Chile.

<u>Request No. 2</u>

What office or position do you hold with the debtor?

<u>Response to Request No. 2</u>

Chairman of the Board of ATI Chile.

<u>Request No. 3</u>

What are the names and addresses of the other corporate officers?

<u>Response to Request No. 3</u>

Luis Alberto Núñez, CEO and Sergio Proboste Paz, VP International Sales, both at La

Concepción 177, Providencia, Santiago, Chile.

<u>Request No. 4</u>

What are the names and addresses of the shareholders and directors?

<u>Response to Request No. 4</u>

Shareholders: American Telecommunication Holdings S.A. and Rafael Alfaro Macherone, both at  La Concepción 177, Providencia, Santiago, Chile.

Directors: Rafael Alfaro Macherone, Víctor Acuña Ascuí, Luis Alberto Núñez Asecio, Julio Carrasola Roselott and Javier Acuña Larraín, all at La Concepción 177, Providencia, Santiago, Chile.

<u>Request No. 5</u>

When was the business of the debtor commenced?

Response to Request No. 5

ATI Chile objects to this Request on the basis that it is vague and ambiguous, particularly in referring to "the business of the debtor." Subject to and without waiving the foregoing general and specific objections, ATI Chile was incorporated on March 25, 1980.

Request No. 6

What is the nature of the business?

Response to Request No. 6

ATI Chile objects to this Request on the basis that it is vague and ambiguous, particularly in referring to "the nature of the business." Subject to and without waiving the foregoing general and specific objections, ATI Chile is a value added reseller of telecommunication products and services.

Request No. 7

What books of account does the judgment debtor maintain?

Response to Request No. 7

ATI Chile maintains complete accounting books, as required by Chilean law.

Request No. 8

By whom or under whose supervision have the books of account been kept?

Response to Request No. 8

The books of account for ATI Chile are kept by the CEO.

Request No. 9

In whose possession are the books and records?

Response to Request No. 9

The books of account for ATI Chile are kept in the CEO's possession.

Request No. 10

What bank accounts has the debtor maintained during the past 2 years?

Response to Request No. 10

ATI Chile objects to this Request on the ground that it seeks the disclosure of sensitive business and financial information without a suitable protective order having been entered. ATI Chile will answer this Request upon the entry of a suitable protective order.

Request No. 11

Has debtor closed any bank account since the summons in this action was served?

Response to Request No. 11

No.

Request No. 12

If so, give name and address of bank.

Response to Request No. 12

N/A.

Request No. 13

How much was on deposit at time the account was closed?

Response to Request No. 13

N/A.

Request No. 14

Give date, name and address of payee of the last check drawn?

Response to Request No. 14

N/A.

Request No. 15

What was the amount of said check and the consideration therefor?

Response to Request No. 15

N/A.

Request No. 16

What safe deposit boxes or other depositories has the judgment debtor kept or used for the past 2 years?

Response to Request No. 16

None.

Request No. 17

When was the last inventory of the debtor's property taken, by whom, and what was the total dollar value?

Response to Request No. 17

ATI Chile objects to this request as vague and ambiguous, particularly in referring to the debtor's "property."  Subject to and without waiving the foregoing general and specific objections, ATI Chile's inventory is kept as a running total by an automated system managed by ATI Chile's CEO, and the most recent inventory dollar value as set forth in the balance sheet of December 31, 2007, is US$5,666,408.67.

Request No. 18

Has the debtor issued any financial statements within the past two years and if so to whom issued, including mercantile and trade agencies?

Response to Request No. 18

ATI Chile objects to this Request on the basis that it seeks the disclosure of sensitive business

and financial information without a suitable protective order having been entered. ATI Chile also objects to this Requests on the basis that it is vague and ambiguous, particularly in referring to "financial statements." Subject to and without waiving the foregoing general and specific objections, each year ATI Chile issues financial statements to the Servicio de Impuestos Internos (the Chilean Tax Bureau). ATI Chile will further answer this Request upon the entry of a suitable protective order.

Request No. 19

At what addresses does the debtor conduct its business?

Response to Request No. 19

ATI Chile conducts its business at Puerto Madero 9710, Sector Bodega No. 6A, Pudahuel, Santiago, Chile.

Request No. 20

Which of these premises are under a written lease and which are owned by the debtor?

Response to Request No. 20

The premises at Puerto Madero 9710 are under a written lease.

Request No. 21

What are the rents paid?

Response to Request No. 21

The monthly rent for the premises at Puerto Madero 9710, as of December 31, 2007, is UF 101,50 plus IVA tax per month. This amount is equal to approximately $2,370,122.90 Chilean pesos, or approximately US $4,791.60 per month.

Request No. 22

Does the landlord hold any security?

Response to Request No. 22

ATI Chile objects to this request as vague and ambiguous, particularly in referring to "security," and in the lack of specificity as to which landlord is referred to in the request. Subject to and without waiving the foregoing general and specific objections, the landlord of the Puerto Madero 9710 premises holds an amount on deposit from ATI Chile.

Request No. 23

How much security?

Response to Request No. 23

ATI Chile objects to this request as vague and ambiguous, particularly in referring to "security," and in the lack of specificity as to which landlord is referred to in the request. Subject to and without waiving the foregoing general and specific objections, the landlord of the premises at Puerto Madero 9710 holds the equivalent of one month's rent for said premises, or approximately US$4,791.60.

Request No. 24

What assets does the debtor have at the present time?

Response to Request No. 24

ATI Chile objects to this request as vague and ambiguous, particularly in the lack of specificity as to what information is requested regarding ATI Chile's assets. Subject to and without waiving the foregoing general and specific objections, ATI Chile has assets consisting of inventory, accounts receivable, fixed assets and other items.

Request No. 25

Where are these assets located?

Response to Request No. 25

The assets of ATI Chile are located at Puerto Madero 9710, Sector Bodega No. 6A, Pudahuel, Santiago, Chile.

Request No. 26

Are there any mortgages or other liens on the debtor's property?

Response to Request No. 26

No.

Request No. 27

What repayments of loans has the debtor made within the past four months and to whom repaid?

Response to Request No. 27

None.

Request No. 28

What payments over $100 have been made to any other creditor within the past 4 months?

Response to Request No. 28

ATI Chile objects to this Request on the ground that it seeks the disclosure of sensitive business and financial information without a suitable protective order having been entered. ATI Chile will answer this Request upon the entry of a suitable protective order.

Request No. 29

What property has the debtor transferred or otherwise disposed of during the past year other than in the usual course of business?

Response to Request No. 29

None.

Request No. 30

Has the debtor assigned any of its accounts receivable and if so, to whom?

Response to Request No. 30

ATI Chile objects to this request on the basis that it overly broad and unduly burdensome insofar as, on its face, it is not limited in terms of time, and ATI Chile was incorporated 28 years ago, in 1980. Subject to and without waiving the foregoing general and specific objections, ATI Chile has not assigned any of its accounts receivable during the last year.

Request No. 31

Has any execution or attachment been levied against the debtor's property within the past four months and if so, give particulars including property seized and at whose suit?

Response to Request No. 31

No.

Request No. 32

Where did the debtor file its Federal and State or other required income tax returns for the past 2 years?

Response to Request No. 32

ATI Chile files its income tax returns at the Santiago Poniente Office of Servicio de Impuestos Internos (the Chilean Tax Bureau).

Request No. 33

What personal withdrawals from the debtor have been made by each officer, director or managing executive of the debtor, during the past year?

Response to Request No. 33

None.

Request No. 34

Does the debtor pay the premiums of any life insurance or annuities policies for any stockholder, officer, director or key employee or a member of the family of any such person?

Response to Request No. 34

No.

Request No. 35

If so, what are the names of the companies and the numbers and amounts of each policy?

Response to Request No. 35

N/A.

Request No. 36

Who are the beneficiaries in each policy?

Response to Request No. 36

N/A.

Request No. 37

What is the present cash value of each such policy?

Response to Request No. 37

N/A.

Request No. 38

Does the debtor own an auto, truck, trailer, tractor, airplane or boat?

Response to Request No. 38

No.

Request No. 39

Is it covered by a chattel mortgage, conditional sale or other security agreement?

Response to Request No. 39

N/A.

Request No. 40

Was it bought on the installment plan?

Response to Request No. 40

N/A.

Request No. 41

Where is it kept?

Response to Request No. 41

N/A.

Request No. 42

Does debtor own any real estate?

Response to Request No. 42

No.

Request No. 43

Does debtor have shares or a proprietary lease in a cooperative or condominium?

Response to Request No. 43

No.

Request No. 44

Does debtor own any chattel or real estate mortgages?

Response to Request No. 44

No.

Request No. 45

Does debtor hold any participating interest in any real estate or chattel mortgage?

Response to Request No. 45

No.

Request No. 46

Does debtor lease any other property?

Response to Request No. 46

No.

Request No. 47

Does debtor own any stocks, bonds, defense bonds or other securities?

Response to Request No. 47

No.

Request No. 48

Describe each item.

Response to Request No. 48

N/A.

Request No. 49

Does debtor receive royalties from any patent, copyright or invention?

Response to Request No. 49

No.

Request No. 50

Does debtor own a seat in any stock, cotton, produce, commercial or other exchange?

Response to Request No. 50

No.

Request No. 51

Is the debtor a trustee or executor under any will or testament, insurance policy or trust

agreement?

Response to Request No. 51

No.

<u>Request No. 52</u>

Did debtor ever borrow money and pledge or deposit as collateral security any property, real or personal?

<u>Response to Request No. 52</u>

ATI Chile objects to this request on the basis that it overly broad and unduly burdensome insofar as, on its face, it is not limited in terms of time, and ATI Chile was incorporated 28 years ago, in 1980. Subject to and without waiving the foregoing general and specific objections, ATI Chile has not borrowed money and pledged or deposited as collateral security any property, real or person, in the past four months.

<u>Request No. 53</u>

If so, state names and addresses of persons with whom such security was deposited.

<u>Response to Request No. 53</u>

N/A.

<u>Request No. 54</u>

Does debtor have an interest in any mortgage, mechanic's lien or other lien on real property?

<u>Response to Request No. 54</u>

No.

<u>Request No. 55</u>

Are there any judgments in debtor's favor?

<u>Response to Request No. 55</u>

No.

<u>Request No. 56</u>

If so, state details and amounts.

Response to Request No. 56

N/A.

Request No. 57

Does anybody owe debtor money?

Response to Request No. 57

Yes.

Request No. 58

If so, give details.

Response to Request No. 58

Víctor Acuña Ascuí – US$3,157.85
Administradora de Fondos de Cesantía – US$7,825.89
Tecnología Digital S.A. – US$12,790,90

Request No. 59

Are there any judgments against debtor?

Response to Request No. 59

Apart from the judgment against ATI Chile in the instant proceeding, no.

Request No. 60

If so, state details and amounts.

Response to Request No. 60

See Response to Request No. 59.

Request No. 61

Has debtor ever before been examined by a judgment creditor?

Response to Request No. 61

No.

Request No. 62

Has debtor any right or interest in any action now pending in any court?

Response to Request No. 62

Apart from the instant proceeding, no.

Request No. 63

Is debtor a party to any action now pending in any court?

Response to Request No. 63

Yes.

Request No. 64

Does anyone hold any property or money in trust for debtor?

Response to Request No. 64

No.

Request No. 65

Has debtor borrowed money from any bank or other lending institution within the past 2 years?

Response to Request No. 65

Yes.

Request No. 66

What deposits has debtor with any utility company?

Response to Request No. 66

None.

Request No. 67

Does debtor have an interest in insurance or other claims now pending?

Response to Request No. 67

No.

Request No. 68

If so, give details.

Response to Request No. 68

N/A.

American Telecommunication, Inc. Chile S.A.

By: _____

Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.

_____



18

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                    Petitioner,

          -against-

AMERICAN TELECOMMUNICATION, INC.          Case No. 07 CV 11121 (PKL)
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,          ECF CASE
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                    Respondents.

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION PERU S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American

Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the

information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice

regarding American Telecommunication Peru S.A. (the "Requests").

## General Objections and Responses

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.      ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.      ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.      ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.      ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.      ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.      ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.      ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.      These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

**Specific Objections and Responses**

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

N/A.

Request No. 5

Do you hold collateral in which the debtor has or may have an interest?

Response to Request No. 5

No.

Request No. 6

What is the description and value of each item of collateral?

Response to Request No. 6

N/A.

Request No. 7

What interest does the debtor appear to have in each item of collateral?

Response to Request No. 7

N/A.

Request No. 8

Is the judgment debtor indebted to you?

Response to Request No. 8

No.

Request No. 9

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

Response to Request No. 9

N/A.

Request No. 10

Do you hold any lien, mortgage or otherwise, against property of the debtor?

Response to Request No. 10

No.

Request No. 11

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

Response to Request No. 11

N/A.

Request No. 12

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

Response to Request No. 12

N/A, as no assets of ATI Peru are in the possession of ATI Chile.

Request No. 13

What are the full details of the same in regard to each asset?

Response to Request No. 13

N/A.

Request No. 14

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

Response to Request No. 14

No.

Request No. 15

What are the full details of each such transaction?

Response to Request No. 15

N/A.

Request No. 16

Has the debtor given you a statement of his financial condition?

Response to Request No. 16

No.

Request No. 17

What assets are disclosed therein (or in the alternative supply a copy thereof)?

Response to Request No. 17

N/A.

Request No. 18

What is debtor's social security number and last place of employment?

Response to Request No. 18

ATI Chile does not possess this information regarding ATI Peru.


American Telecommunication, Inc. Chile S.A.

By: _____
Rafael Alfaro Macherone
Chairman of the Board


Subscribed and sworn to before me
this 18th day of March, 2008.

_____
Notary Public

6

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                          Petitioner,


          -against-


AMERICAN TELECOMMUNICATION, INC.          Case No. 07 CV 11121 (PKL)
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,      ECF CASE
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,


                          Respondents.

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American

Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the

information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice

regarding American Telecommunication Inc. Ecuador ATIECUADOR S.A. (the "Requests").

## General Objections and Responses

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.   ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.   ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.   ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.   ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.   ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.   ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.   ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.   These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

## Specific Objections and Responses

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

N/A.

Request No. 5

Do you hold collateral in which the debtor has or may have an interest?

Response to Request No. 5

No.

Request No. 6

What is the description and value of each item of collateral?

Response to Request No. 6

N/A.

Request No. 7

What interest does the debtor appear to have in each item of collateral?

Response to Request No. 7

N/A.

Request No. 8

Is the judgment debtor indebted to you?

Response to Request No. 8

No.

Request No. 9

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

Response to Request No. 9

N/A.

Request No. 10

Do you hold any lien, mortgage or otherwise, against property of the debtor?

Response to Request No. 10

No.

Request No. 11

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

Response to Request No. 11

N/A.

Request No. 12

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

Response to Request No. 12

N/A, as no assets of ATI Ecuador are in the possession of ATI Chile.

Request No. 13

What are the full details of the same in regard to each asset?

Response to Request No. 13

N/A.

Request No. 14

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

Response to Request No. 14

No.

Request No. 15

What are the full details of each such transaction?

Response to Request No. 15

N/A.

Request No. 16

Has the debtor given you a statement of his financial condition?

Response to Request No. 16

No.

Request No. 17

What assets are disclosed therein (or in the alternative supply a copy thereof)?

Response to Request No. 17

N/A.

Request No. 18

What is debtor's social security number and last place of employment?

Response to Request No. 18

ATI Chile does not possess this information regarding ATI Ecuador.

American Telecommunication, Inc. Chile S.A.

By: _____

Rafael Alfaro Macherone
Chairman of the Board

Subscribed and sworn to before me
this 18th day of March, 2008.

_____

6

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                    Petitioner,

          -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                    Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American

Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the

information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice

regarding American Telecommunication Inc. Bolivia S.A. (the "Requests").

## General Objections and Responses

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.      ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.      ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.      ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.      ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.      ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.      ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.      ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.      These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

2

## **Specific Objections and Responses**

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

N/A.

Request No. 5

Do you hold collateral in which the debtor has or may have an interest?

Response to Request No. 5

No.

Request No. 6

What is the description and value of each item of collateral?

Response to Request No. 6

N/A.

Request No. 7

What interest does the debtor appear to have in each item of collateral?

Response to Request No. 7

N/A.

Request No. 8

Is the judgment debtor indebted to you?

Response to Request No. 8

No.

Request No. 9

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

Response to Request No. 9

N/A.

Request No. 10

Do you hold any lien, mortgage or otherwise, against property of the debtor?

<u>Response to Request No. 10</u>

No.

<u>Request No. 11</u>

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

<u>Response to Request No. 11</u>

N/A.

<u>Request No. 12</u>

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

<u>Response to Request No. 12</u>

N/A, as no assets of ATI Bolivia are in the possession of ATI Chile.

<u>Request No. 13</u>

What are the full details of the same in regard to each asset?

<u>Response to Request No. 13</u>

N/A.

<u>Request No. 14</u>

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

<u>Response to Request No. 14</u>

No.

<u>Request No. 15</u>

What are the full details of each such transaction?

<u>Response to Request No. 15</u>

N/A.

Request No. 16

Has the debtor given you a statement of his financial condition?

Response to Request No. 16

No.

Request No. 17

What assets are disclosed therein (or in the alternative supply a copy thereof)?

Response to Request No. 17

N/A.

Request No. 18

What is debtor's social security number and last place of employment?

Response to Request No. 18

ATI Chile does not possess this information regarding ATI Bolivia.


American Telecommunication, Inc. Chile S.A.

By: _____
Rafael Alfaro Macherone
Chairman of the Board


Subscribed and sworn to before me
this 18th day of March, 2008.

_____

6

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                        Petitioner,

        -against-

AMERICAN TELECOMMUNICATION, INC.            Case No. 07 CV 11121 (PKL)
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,        ECF CASE
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                        Respondents.

**AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S OBJECTIONS AND
RESPONSES TO COMVERSE, INC.'S INFORMATION SUBPOENA WITH
RESTRAINING NOTICE  REGARDING JUDGMENT DEBTOR AMERICAN
TELECOMMUNICATION DO BRASIL LTDA.**

Pursuant to Article 52 of the Civil Practice Law and Rules ("CPLR"), American

Telecommunication, Inc. Chile S.A. ("ATI Chile") hereby responds and objects to the

information requests set forth in Comverse, Inc.'s Information Subpoena with Restraining Notice

regarding American Telecommunication do Brasil Ltda. (the "Requests").

**General Objections and Responses**

ATI Chile makes the following General Objections and Responses to the Requests. These objections, responses and limitations are stated here to avoid restating them for each Request. The assertion of the same, similar, or additional objections in response to specific Requests does not waive any of ATI Chile's General Objections. ATI Chile reserves the right to amend or supplement these General Objections and Responses as may be appropriate.

1.     ATI Chile objects to the Requests to the extent that they purport to impose obligations and burdens beyond those permitted by Article 52 of the CPLR.

2.     ATI Chile objects to the Requests to the extent that they seek information that is not relevant to the instant proceeding.

3.     ATI Chile objects to the Requests to the extent that they seek information not in ATI Chile's possession, custody, or control.

4.     ATI Chile objects to the Requests to the extent that they are vague, ambiguous, and/or overly broad (both in terms of time, scope and subject matter).

5.     ATI Chile objects to the Requests to the extent that they are designed to create unreasonable annoyance, expense, and/or burden.

6.     ATI Chile objects to providing any information protected by the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or doctrine.

7.     ATI Chile's responses and objections are set forth without prejudice to its rights to assert additional objections or otherwise supplement these objections and responses.

8.     These objections, responses and limitations are made without in any way waiving, or intending to waive, the right to challenge by objection or otherwise any request for further responses to these or any other requests for information, or other discovery requests relating to the subject matter of the Requests, and ATI Chile hereby reserves the same.

**Specific Objections and Responses**

Subject to and without waiver of the foregoing General Objections and Responses, ATI Chile responds as follows:

Request No. 1

Do you have a record of any account in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 1

No.

Request No. 2

As to each such account, what is the exact title of the account, the date opened, amounts presently on deposit; if closed, the amount on deposit when closed and date closed?

Response to Request No. 2

N/A.

Request No. 3

Do you have a record of any safe deposit box in which the judgment debtor may have an interest, whether under the name of the debtor, under a trade or corporate name, or in association with others, as of the date of the subpoena or within 1 year prior thereto?

Response to Request No. 3

No.

Request No. 4

As to each such box, what is the exact designation of the lessees thereof, the date hired, the date discontinued, the names of those having access?

Response to Request No. 4

N/A.

<u>Request No. 5</u>

Do you hold collateral in which the debtor has or may have an interest?

<u>Response to Request No. 5</u>

No.

<u>Request No. 6</u>

What is the description and value of each item of collateral?

<u>Response to Request No. 6</u>

N/A.

<u>Request No. 7</u>

What interest does the debtor appear to have in each item of collateral?

<u>Response to Request No. 7</u>

N/A.

<u>Request No. 8</u>

Is the judgment debtor indebted to you?

<u>Response to Request No. 8</u>

No.

<u>Request No. 9</u>

As to each indebtedness, what is the amount of the original indebtedness, the date incurred,

amount repaid and date of such repayment?

<u>Response to Request No. 9</u>

N/A.

<u>Request No. 10</u>

Do you hold any lien, mortgage or otherwise, against property of the debtor?

Response to Request No. 10

No.

Request No. 11

What is the nature of each such lien, the full description of the property affected by the lien, the location and identity of the office of the filing or recording and full indexing information?

Response to Request No. 11

N/A.

Request No. 12

Are any of the assets of the debtor, in your possession or care, subject to liens, attachments or other encumbrances?

Response to Request No. 12

N/A, as no assets of ATI Brasil are in the possession of ATI Chile.

Request No. 13

What are the full details of the same in regard to each asset?

Response to Request No. 13

N/A.

Request No. 14

Do you have any other transactions with the debtor, directly or indirectly, as a result of which the debtor may now have, or may in the future become entitled to, money or credit?

Response to Request No. 14

No.

Request No. 15

What are the full details of each such transaction?

Response to Request No. 15

N/A.

<u>Request No. 16</u>

Has the debtor given you a statement of his financial condition?

<u>Response to Request No. 16</u>

No.

<u>Request No. 17</u>

What assets are disclosed therein (or in the alternative supply a copy thereof)?

<u>Response to Request No. 17</u>

N/A.

<u>Request No. 18</u>

What is debtor's social security number and last place of employment?

<u>Response to Request No. 18</u>

ATI Chile does not possess this information regarding ATI Brasil.


American Telecommunication, Inc. Chile S.A.

By: _____

Rafael Alfaro Macherone
Chairman of the Board


Subscribed and sworn to before me
this 18th day of March, 2008.

6

# EXHIBIT G

**Pietrzak, Brooke**

| | |
|---|---|
| **From:** | Pietrzak, Brooke |
| **Sent:** | Friday, February 29, 2008 4:59 PM |
| **To:** | 'Skakel, Deborah' |
| **Cc:** | Bush, Lindsay; Scher, Elizabeth; McDonell, Neil; Epstein, Eric |
| **Subject:** | Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., et al.; Case No. 07 CV 11121 |
| **Attachments:** | SDNY Protective Order.doc |



SDNY Protective
Order.doc (59 ...

Hi Debbie:

Please find attached a draft Stipulation and Protective Order for use in the SDNY proceeding.  It is based upon the one Comverse agreed to in the Comverse/ATI AAA arbitration.  If you have any questions or comments, please let me know.

Have a good weekend,
Brooke

Brooke E. Pietrzak
Partner

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
D O R S E Y  &  W H I T N E Y  LLP
250 Park Avenue
New York, NY 10177-1500
P: 212.735.0781  F: 212.953.7201
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CONFIDENTIAL COMMUNICATION
E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.
Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.
Thank you.


CONFIDENTIAL COMMUNICATION: E-mails from Dorsey & Whitney LLP normally contain confidential and privileged material, and are for the sole use of the intended recipient. Use or distribution by an unintended recipient is prohibited, and may be a violation of law. If you believe that you received this e-mail in error, please do not read this e-mail or any attached items. Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof. Thank you.

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC.,<br><br>          Petitioner,<br><br>    -against-<br><br>AMERICAN TELECOMMUNICATION, INC.<br>CHILE S.A., AMERICAN<br>TELECOMMUNICATION INC. BOLIVIA S.A.,<br>AMERICAN TELECOMMUNICATION DO<br>BRASIL LTDA., AMERICAN<br>TELECOMMUNICATION INC. ECUADOR<br>ATIECUADOR S.A., and AMERICAN<br>TELECOMMUNICATION PERU S.A.,<br><br>          Respondents. | Case No. 07 CV 11121 (PKL)<br><br>ECF CASE<br><br>**STIPULATION AND<br>PROTECTIVE ORDER** |

IT IS STIPULATED AND AGREED by and between Petitioner Comverse, Inc.

("Comverse") and Respondent ATI Telecommunication, Inc. Chile S.A. ("ATI Chile"), and is

hereby ORDERED by the Court, that the following terms and conditions shall govern the

treatment of confidential and proprietary information in this proceeding:

    1.    DEFINITIONS:    In connection with the information and document exchange

in this proceeding, including the production of documents and information that contain

confidential, trade secret or other proprietary information, or any other information the disclosure

of which would cause competitive harm, embarrassment, oppression to the disclosing individual

or entity (hereinafter "Confidential Information"), which a party or nonparty deems to contain

Confidential Information, may be designated by such party as "CONFIDENTIAL" or

"CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY" pursuant to the terms of this

Stipulation and Protective Order.  The designation "CONFIDENTIAL-OUTSIDE ATTORNEYS

EYES ONLY" shall apply only to documents or other materials that contain significant competitive or proprietary information, confidential financial or business information, technical information or other trade secrets, which would not be disclosed in the ordinary course of business without an obligation of confidentiality and/or which if otherwise disclosed would cause the disclosing party competitive harm or could place the receiving party at a competitive advantage.

     2.     DESIGNATION:

     (a)     <u>Production</u>:     Any documents or written information designated to be "CONFIDENTIAL," shall be so designated by the producing party or nonparty at the time of their production by stamping the designated materials with the legend "CONFIDENTIAL" or "CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY," or if necessary, by separate written statement, or as set forth in Paragraph 3 of this Stipulation and Protective Order.

     (b)     <u>Filing with the Court</u>: All Confidential Information, properly designated under this Protective Order, that is filed with the Court during this proceeding, shall be filed under seal in sealed envelopes or other appropriate sealed containers on which shall be labeled with the title of this proceeding, an indication of the nature of the content of such sealed envelope or container, the designation of "CONFIDENTIAL" or "CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY" and a statement substantially as follows:

     FILED UNDER SEAL BY [NAME OF PARTY] PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS PROCEEDING, AND IS TO BE MAINTAINED UNDER SEAL UNTIL FURTHER ORDER OF THE COURT

Filing of Confidential Information under seal shall not prevent or limit access in any manner consistent with this Order of that information by the Court or counsel of record for the parties.

(c)    The designation of any document as CONFIDENTIAL or

CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY shall not preclude any party from

showing such Confidential Information to any person who appears as the author or as an

addressee or recipient on the face of the document, or who has been identified by the designating

party as having been provided with the document or the information therein by the designating

party;

(d)    Confidential Information shall be used solely for the purposes of this

proceeding.  However, nothing in this Stipulation and Protective Order is intended to prevent or

restrict any party or nonparty from using or disclosing its own Confidential Information in any

manner or for any purpose.  Neither shall this Order restrict the use or disclosure by a party or

nonparty of materials obtained in good faith and independently of discovery in this proceeding or

obtained or obtainable from another source or already in the possession or knowledge of a party

or nonparty, who is not obligated to maintain such documents in confidence.

3.    REDESIGNATION OF MATERIAL:    A producing party or nonparty may

redesignate under Paragraphs 1 through 3 hereof any material that it has previously produced,

but did not previously designate as Confidential Information, provided, however, that such

"redesignation" shall be effective only as of the date it is received.  The redesignating party or

nonparty shall notify each other party in writing specifically identifying the documents by

production number or otherwise and whether those documents should be redesignated as

CONFIDENTIAL or CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY.  Upon receipt

of such written notice, receiving counsel shall:

3

(a)      immediately take reasonable steps to retrieve any redesignated material in the possession of any person not identified as a "Qualified Person" under Paragraph 6 hereof and notify any person known to have possession of the material of the effect of such designation;

(b)      if not objecting to the redesignation, affix the appropriate legend on the redesignated material in accordance with Paragraphs 2 and 3 hereof;

(c)      if objecting to the redesignation, counsel shall treat the materials at issue as designated pending resolution of the objection.  Any objections shall be in accordance with Paragraph 5 hereof.

If the materials are redesignated in accordance with the terms of this Stipulation and Protective Order, failure to originally designate those materials as Confidential Material shall not be deemed a waiver of any claims of confidentiality and shall not be used as grounds for a claim of such a waiver.

4.      PRIVILEGED MATERIAL:  In the event that any privileged materials are inadvertently produced, such production shall not be deemed a waiver of the attorney-client privilege, work-product doctrine or other privilege or immunity.  Upon notification of such inadvertent disclosure, the receiving party shall immediately make every effort to prevent further disclosure of the materials, collect and return any copies of the privileged materials and inform any person(s) having received or reviewed such materials as to the privileged nature of the materials.

5.      OBJECTIONS:      A party may move the Court for an order that material designated as confidential or privileged information is not, in fact, confidential or privileged.  On such a motion, the party asserting confidentiality or privilege shall have the burden of proving that the information designated CONFIDENTIAL, CONFIDENTIAL-OUTSIDE ATTORNEYS

EYES ONLY or PRIVILEGED is Confidential Information as defined in Paragraph 1 above or is otherwise entitled to protection. Before such a motion is brought, the parties will attempt to resolve their differences informally. No party shall be obligated to challenge a confidential or privileged designation, and failure to do so shall not preclude a subsequent challenge to such a designation. Designations, challenges to designations, and failures to challenge designations made pursuant to this Order are not an admission or waiver of any party, and are not admissible in evidence on the hearing of any issue in this proceeding, including the issue of whether the information is in fact confidential or privileged.

6.     QUALIFIED PERSONS:     Materials designated as Confidential Information may be disclosed or made available by the party or nonparty receiving such information only to a "Qualified Person," as defined below:

(a)     Documents designated as CONFIDENTIAL may be disclosed to:

(i)     the Court and court personnel;

(ii)     outside counsel of record to the parties to this proceeding, and the members and employees of the law firms of counsel of record, and organizations retained by counsel to provide litigation support services in this proceeding and the employees of those organizations;

(iii)     court reporters, stenographers or translators whose services are used in connection with this proceeding, and other persons working for such reporters, stenographers or translators;

(iv)     directors, officers and employees of each party, including in-house counsel, and individuals named as parties, who must see such documents to assist in this proceeding; and

5

(v)      such other persons who the parties may designate by written agreement or by Order of the Court, permitting additional disclosure.

(b)      Documents designated CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY may be disclosed or made available by the party receiving such information only to Qualified Persons as defined in subparagraph 6(a), excluding the parties to this proceeding as defined in subparagraph 6(a)(iv);

(c)      Any Qualified Persons under subparagraphs 6(a)(iii), (iv) and (v), shall – before disclosure or provision of any CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY material - be given a copy of this Order and shall agree in writing in the form attached hereto as Exhibit A, to be bound by the terms of this agreement, and the disclosing party shall promptly deliver to all other parties a copy of the executed agreement;

(d)      Confidential Information may be shown to a Qualified Person as designated in subparagraphs 6(a) (iii), (iv), and (v), only if the following approval procedure is used:

(i)      the party seeking approval shall provide all other parties (via overnight mail) with:

(1)      the name of the designated person;

(2)      the present employer and title of the designated person; and

(3)      an executed copy in the form attached hereto as Exhibit A or B, as required, acknowledging that the person will be bound by the terms of this agreement; and

(ii)      within seven (7) days after receipt (as evidenced by the overnight delivery tracking slip) of the information and written acknowledgement described in

subparagraph 6(d)(i), any party may object to the person proposed for approval by specifically

stating in writing the reasons why that party believes such person should not receive

CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials.

Failure to object within seven (7) days shall be deemed as approval of the designated person.  No

CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials

shall be disclosed to a designated person when there is an outstanding objection until such

objection is resolved by the Court or the parties, or the fifteen (15) day period set forth in

subparagraph 6(d)(iii) has expired without a motion being filed by the objecting party;

(iii)    if a party objects, the parties shall within seven (7) days from the

receipt of the notice of objection (mailed via overnight delivery), confer and attempt to resolve

the dispute.  If the parties cannot resolve the dispute, then the objecting party may move the

Court, within fifteen (15) days from the receipt of the notice of objection, for an order denying

access to the designated person of CONFIDENTIAL or CONFIDENTIAL—OUTSIDE

ATTORNEYS EYES ONLY materials; and

(e)    this Order shall be binding on the parties, their agents, successors,

heirs, assigns, subsidiaries, employees, and other persons or organizations over which they have

control.

7.    RETURN OR DESTRUCTION OF CONFIDENTIAL AND CONFIDENTIAL-

OUTSIDE ATTORNEYS EYES ONLY MATERIAL:    Within forty-five (45) days of the

final disposition of the proceeding, each party or counsel in possession, custody or control of

Confidential Information, or any tabulations, analyses, studies or compilations derived

therefrom, shall either destroy or return (at the producing party's option) those materials.

Destruction of such materials, including any copies stored electronically, shall be certified in

writing by an officer of the receiving party. However, counsel for each party may retain hardcopy abstracts or summaries of discovery materials or copies of materials which contain attorney-work product or which incorporate Confidential Information in documents filed with the Court.

8.      Comverse hereby agrees to indemnify and hold harmless, and to pay or reimburse on demand, ATI Chile, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this Stipulation and Protective Order by Comverse or by any Qualified Person to whom Comverse has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that ATI Chile disclosed to Comverse.

9.      The Court shall retain jurisdiction to enforce the provisions of the Order and to make such modifications and additions to this Order as the Court may from time to time deem appropriate.

Respectfully submitted,

Dated: March __, 2008                      Dated March __, 2008

_____           _____
DICKSTEIN SHAPIRO LLP                  DORSEY & WHITNEY LLP
Howard Graff                           Neil E. McDonell
Deborah A. Skakel                      Brooke E. Pietrzak
Lindsay A. Bush                        Eric Epstein
1177 Avenue of the Americas            250 Park Avenue
New York, New York                     New York, New York
(212) 277-6500                         (212) 415-9200
Attorneys for Petitioner Comverse, Inc.  Attorneys for Respondent American
                                       Telecommunication, Inc. Chile S.A.


SO ORDERED this ___ day of _____ 2008


_____
Honorable Peter K. Leisure

9

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

### NOTICE OF PROTECTIVE ORDER
### AND CONFIDENTIAL UNDERTAKING
#### (Non Experts and Consultants)

I hereby certify my understanding that Confidential and/or Confidential—Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Stipulation and Protective Order (the "Order"), entered by the Court in the proceeding entitled Comverse. Inc. v. American Telecommunication. Inc. Chile SA., et al.; Case No. 07 CV 11121 (PKL).

I further certify that my full name and address are: _____

_____ ; my present employer is:_____

_____ ; and the address of my present employment is:_____

_____ ;    and    my

present occupation and/or job title or description is:_____

10

I further certify that I have received a copy of the Order and have carefully read and understand the provisions of the Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as such shall apply to me.  I further agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the terms and restrictions of the Order.  I further agree that I shall not disclose Confidential or Confidential—Outside Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the termination of this proceeding, or sooner if so requested, I shall return to counsel all Confidential and Confidential—Outside Attorneys Eyes Only material and information in my possession or control, including all copies and excerpts thereof.

I understand that violation of the Order may be punishable by contempt.


Dated:_____, 2008        _____
                                   (Signature)


                                   _____
                                   Print Name

11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMVERSE, INC., | Case No. 07 CV 11121 (PKL) |
| Petitioner, | ECF CASE |
| -against- | |
| AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A., | |
| Respondents. | |

EXHIBIT B

**NOTICE OF PROTECTIVE ORDER
AND CONFIDENTIAL UNDERTAKING
(Consultants and Experts)**

I hereby certify that I have been retained as a consultant or expert witness in the proceeding entitled <u>Comverse. Inc. v. American Telecommunication. Inc. Chile SA., et al.</u>; Case No. 07 CV 11121 (PKL). A copy of my Curriculum Vitae is attached hereto.

I further certify my understanding that Confidential and Confidential—Outside Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Stipulation and Protective Order (the "Order"), entered in this proceeding.

I further certify that I have been provided a copy of and have read and understand the Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as such shall apply to me.  I further agree to subject myself to the jurisdiction of the United States District Court for the Southern District of New York for purposes of enforcement of the terms

12

and restrictions of the Order.  I further agree that I shill not disclose Confidential or

Confidential—Outside Attorneys Eyes Only information to anyone other than persons permitted

to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the conclusion of my involvement in the litigation, I will return all

Confidential and Confidential—Outside Attorneys Eyes Only material and information,

summaries, abstracts and indices thereof which come into my possession, and documents or

things which I have prepared relating thereto, to counsel for the party by whom I am employed

or retained.

       I understand that violation of the Order may be punishable by contempt.


Dated:_____, 2006            _____

                                            (Signature)


                                            _____

                                          Print Name

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

------------------------------------------------x
In the Matter of the Arbitration Between          :

COMVERSE, INC.,                                   :    STIPULATION AND
                                                  :    PROTECTIVE ORDER
                    Claimant,                     :
                                                  :    AAA Case No.
          – and –                                 :    50 494 T 00319 06
                                                  :
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,      :
                                                  :
                    Respondent.                   :
------------------------------------------------x

      IT IS STIPULATED AND AGREED by and between Claimant Comverse, Inc.
("Comverse") and Respondent American Telecommunication, Inc. Chile S.A. ("ATI"), and is
ORDERED by the Arbitration Panel, that the following terms and conditions shall govern the
treatment of confidential and proprietary information in this arbitration:

      1.    DEFINITIONS: In connection with the information and document exchange in
this arbitration, including the production of documents and information that contain confidential,
trade secret or other proprietary information, or any other information the disclosure of which
would cause competitive harm, embarrassment or oppression to the disclosing individual or
entity (hereinafter "Confidential Information"), which a party or nonparty deems to contain
Confidential Information, may be designated by such party as "CONFIDENTIAL" or
"CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" pursuant to the terms of this
Stipulation and Protective Order.    The designation "CONFIDENTIAL–OUTSIDE
ATTORNEYS EYES ONLY" shall apply only to documents or other materials that contain
significant competitive or proprietary information, confidential financial or business information,
technical information or other trade secrets, which would not be disclosed in the ordinary course

219712.01

of business without an obligation of confidentiality and which if otherwise disclosed would cause the disclosing party competitive harm or could place the receiving party at a competitive advantage.

2.    DESIGNATION:

(a)    Production:    Any documents or written information designated to be "CONFIDENTIAL" shall be so designated by the producing party or nonparty at the time of their production by stamping the designated materials with the legend "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY", or if necessary, by separate written statement, or as set forth in Paragraph 3 of this Stipulation and Protective Order.

(b)    Filing with the American Arbitration Association ("AAA"):    All Confidential Information, properly designated under this Protective Order, that is filed with the AAA during this arbitration, shall be filed under seal in sealed envelopes or other appropriate sealed containers on which shall be labeled with the title of this arbitration, an indication of the nature of the content of such sealed envelope or container, the designation of "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" and a statement substantially as follows:

> FILED UNDER SEAL BY [NAME OF PARTY] PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS ACTION, AND IS TO BE MAINTAINED UNDER SEAL UNTIL FURTHER ORDER OF THE ARBITRATORS

Filing of Confidential Information under seal shall not prevent or limit access in any manner consistent with this Order of that information by the Arbitrators, the AAA or counsel of record for the parties.

(c)    The    designation    of    any    document    as    CONFIDENTIAL    or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY shall not preclude any party from

2

219712.01



showing such Confidential Information to any person who appears as the author or as an addressee or recipient on the face of the document, or who has been identified by the designating party as having been provided with the document or the information therein by the designating party;

(d)    Confidential Information shall be used solely for the purposes of this arbitration. However, nothing in this Stipulation and Protective Order is intended to prevent or restrict any party or nonparty from using or disclosing its own Confidential Information in any manner or for any purpose. Neither shall this Order restrict the use or disclosure by a party or nonparty of materials obtained in good faith and independently of discovery in this arbitration or obtained or obtainable from another source or already in the possession or knowledge of a party or nonparty, who is not obligated to maintain such documents in confidence.

(e)    The terms of this Stipulation and Protective Order shall not prejudice the right of any party to introduce at the arbitration hearing information designated as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY pursuant to this Order.

3.    REDESIGNATION OF MATERIAL:  A producing party or nonparty may redesignate under Paragraphs 1 through 3 hereof any material that it has previously produced, but did not previously designate as Confidential Information, provided, however, that such "redesignation" shall be effective only as of the date it is received. The redesignating party or nonparty shall notify each other party in writing specifically identifying the documents by production number or otherwise and whether those documents should be redesignated as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY. Upon receipt of such written notice, receiving counsel shall:

3

219712.01

     (a)    immediately take reasonable steps to retrieve any redesignated material in the possession of any person not identified as a "Qualified Person" under Paragraph 6 hereof and notify any person known to have possession of the material of the effect of such designation;

     (b)    if not objecting to the redesignation, affix the appropriate legend on the redesignated material in accordance with Paragraphs 2 and 3 hereof;

     (c)    if objecting to the redesignation, counsel shall treat the materials at issue as designated pending resolution of the objection.  Any objections shall be in accordance with Paragraph 5 hereof.

If the materials are redesignated in accordance with the terms of this Stipulation and Protective Order, failure to originally designate those materials as Confidential Material shall not be deemed a waiver of any claims of confidentiality and shall not be used as grounds for a claim of such a waiver.

4.    PRIVILEGED MATERIAL:  In the event that any privileged materials are inadvertently produced, such production shall not be deemed a waiver of the attorney-client privilege, work-product doctrine or other privilege or immunity.  Upon notification of such inadvertent disclosure, the receiving party shall immediately make every effort to prevent further disclosure of the materials, collect and return any copies of the privileged materials and inform any person(s) having received or reviewed such materials as to the privileged nature of the materials.

5.    OBJECTIONS:  A party may move the Arbitration Panel for an order that material designated as confidential or privileged information is not, in fact, confidential or privileged.  On such a motion, the party asserting confidentiality or privilege shall have the

4

burden of proving that the information designated CONFIDENTIAL, CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY or PRIVILEGED is Confidential Information as defined in paragraph 1 above or is otherwise entitled to protection. Before such a motion is brought, the parties will attempt to resolve their differences informally. No party shall be obligated to challenge a confidential or privileged designation, and failure to do so shall not preclude a subsequent challenge to such a designation. Designations, challenges to designations, and failures to challenge designations made pursuant to this Order are not an admission or waiver of any party, and are not admissible in evidence on the hearing of any issue in this case, including the issue of whether the information is in fact confidential or privileged.

6.    QUALIFIED PERSONS: Materials designated as Confidential Information may be disclosed or made available by the party or nonparty receiving such information only to a "Qualified Person," as defined below:

(a)    Documents designated as CONFIDENTIAL may be disclosed to:

(i)    the AAA and the Arbitrators;

(ii)    outside counsel of record to the parties to this action, and the members and employees of the law firms of counsel of record, and organizations retained by counsel to provide litigation support services in this action and the employees of those organizations;

(iii)    court reporters, stenographers or translators whose services are used in connection with this action, and other persons working for such reporters, stenographers or translators;

5

219712.01

      (iv)     directors, officers and employees of each party, including in-house counsel, and individuals named as parties, who must see such documents to assist in the prosecution or defense of that party's claims in the lawsuit;

      (v)     consultants or experts retained by the parties in connection with this arbitration, and the employees of such experts or consultants who are assisting them in this action. Each consultant or expert must execute the certification set forth as Exhibit B hereto, and the disclosing party shall deliver to all other parties a copy of the executed certification; and

      (vi)     such other persons who the parties may designate by written agreement or by Order of the Arbitrators, permitting additional disclosure.

      (b)     Documents designated CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY may be disclosed or made available by the party receiving such information only to Qualified Persons as defined in subparagraph 6(a), **excluding** the parties to this litigation as defined in subparagraph 6(a)(iv);

      (c)     Any Qualified Persons under subparagraphs 6(a)(iii), (iv) and (vi), shall – before disclosure or provision of any CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY material - be given a copy of this Order and shall agree in writing in the form attached hereto as Exhibit A, to be bound by the terms of this agreement, and the disclosing party shall promptly deliver to all other parties a copy of the executed agreement;

      (d)     Confidential Information may be shown to a Qualified Person as designated in subparagraphs 6(a) (iii), (iv), (v), and (vi), only if the following approval procedure is used:

      (i)     the party seeking approval shall provide all other parties (via overnight mail) with:

219712.01

(1)    the name of the designated person;

(2)    the present employer and title of the designated person; and

(3)    an executed copy in the form attached hereto as Exhibit A or B, as required, acknowledging that the person will be bound by the terms of this agreement; and

(ii)    within five (5) days after receipt (as evidenced by the overnight delivery tracking slip) of the information and written acknowledgement described in subparagraph 6(d)(i), any party may object to the person proposed for approval by specifically stating in writing the reasons why that party believes such person should not receive CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY materials. Failure to object within five (5) days shall be deemed as approval of the designated person. No CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials shall be disclosed to a designated person when there is an outstanding objection until such objection is resolved by the Arbitration Panel or the parties, or the fifteen (15) day period set forth in subparagraph 6(d)(iii) has expired without a motion being filed by the objecting party;

(iii)    if a party objects, the parties shall within seven (7) days from the receipt of the notice of objection (mailed via overnight delivery), confer and attempt to resolve the dispute. If the parties cannot resolve the dispute, then the objecting party may move the Arbitration Panel, within fifteen (15) days from the receipt of the notice of objection, for an order denying access to the designated person of CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials; and

7

219712.01

(e)   this Order shall be binding on the parties, their agents, successors, heirs, assigns, subsidiaries, employees, and other persons or organizations over which they have control.

7.  POST-ARBITRATION:  Within forty-five (45) days of the final termination of this action, each party or counsel in possession, custody or control of Confidential Information, or any tabulations, analyses, studies or compilations derived therefrom, shall either destroy or return (at the producing party's option) those materials.  Destruction of such materials, including any copies stored electronically, shall be certified in writing by an officer of the receiving party.  However, counsel for each party may retain hardcopy abstracts or summaries of discovery materials or copies of materials which contain attorney-work product or which incorporate Confidential Information in documents filed with the AAA or Arbitration Panel.

8.  Comverse hereby agrees to indemnify and hold harmless, and to pay or reimburse on demand, ATI, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this agreement and Order by Comverse or by any Qualified Person to whom Comverse has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that ATI disclosed to Comverse.

9.  ATI hereby agrees to indemnify and hold harmless, and to pay or reimburse on demand, Comverse, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this agreement and Order by ATI or by any Qualified Person to

8

whom ATI has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS
EYES ONLY materials that Comverse disclosed to ATI.

    10.  The Arbitration Panel shall retain jurisdiction to enforce the provisions of the Order
and to make such modifications and additions to this Order as the Panel may from time to time
deem appropriate.

Respectfully submitted,

Dated: October __30__, 2006

_DICKSTEIN SHAPIRO LLP_
Howard Graff
Deborah A. Skakel
Lindsay A. Bush
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Claimant Comverse, Inc.

Dated: October __30__, 2006

**DORSEY & WHITNEY LLP**
Neil E. McDonell
Brooke Pietrzak
Mario Diaz-Cruz, III
Anthony Rutherford
250 Park Avenue
New York, NY 10177-1500
(212) 415-9200
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

Dated: October ___, 2006

**MONTT Y CIA. S.A.**
Beatriz Lynch
Santiago Montt
Avda. Los Conquistadores 1700, piso 11
Providencia, Santiago
Chile
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

9

219712.01

whom ATI has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS' EYES ONLY materials that Comverse disclosed to ATI.

    10.  The Arbitration Panel shall retain jurisdiction to enforce the provisions of the Order and to make such modifications and additions to this Order as the Panel may from time to time deem appropriate.

Respectfully submitted,

Dated:  October ___, 2006

Dated:  October 16, 2006

**DICKSTEIN SHAPIRO LLP**
Howard Graff
Deborah A. Skakel
Lindsay A. Bush
1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Claimant Comverse, Inc.

**DORSEY & WHITNEY LLP**
Neil E. McDonell
Brooke Pietrzak
Mario Diaz-Cruz, III
Anthony Rutherford
250 Park Avenue
New York, NY 10177-1500
(212) 415-9200
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

Dated:  October ___, 2006

**MONTT Y CIA. S.A.**
Beatriz Lynch
Santiago Montt
Avda. Los Conquistadores 1700, piso 11
Providencia, Santiago
Chile
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

9

21971201

SO ORDERED this 10th day of November, 2006

David J. A. Cairns
Chairperson of Arbitration Panel

10

219712.01

**EXHIBIT A**

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In the Matter of the Arbitration Between     :

COMVERSE, INC.,              :  AAA Case No.
                         :  50 494 T 00319 06
        Claimant,          :

  – and –                 :

AMERICAN TELECOMMUNICATION, INC. CHILE S.A., :

        Respondent.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**NOTICE OF PROTECTIVE ORDER
AND CONFIDENTIAL UNDERTAKING
(Non Experts and Consultants)**

      I hereby certify my understanding that Confidential and/or Confidential–Attorneys Eyes

Only information will be provided to me by counsel, pursuant to the terms and restrictions of the

Stipulation and Protective Order (the "Order"), entered by the Arbitration Panel, in the

arbitration entitled Comverse, Inc. v. American Telecommunication, Inc. Chile S.A., Arbitration

No. 50 494 T 00319 06.

      I further certify that my full name and address are: _____

_____ ; my present employer is: _____

_____ ; and the address of my present employment

is: _____ ;

and my present occupation and/or job title or description is: _____ .

      I further certify that I have received a copy of the Order and have carefully read and

understand the provisions of the Order, and hereby agree to fully comply with the Order and all

219712.01

of its terms and restrictions as such shall apply to me. I further agree to subject myself to the jurisdiction of the American Arbitration Association International Center for Dispute Resolution for purposes of enforcement of the terms and restrictions of the Order. I further agree that I shall not disclose Confidential or Confidential–Outside Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the termination of this action, or sooner if so requested, I shall return to counsel all Confidential and Confidential–Outside Attorneys Eyes Only material and information in my possession or control, including all copies and excerpts thereof.

I understand that violation of the Order may be punishable by contempt.

Dated: _____, 2006            _____
                                          (Signature)

                                          _____
                                          Print Name

2

219712.01

**EXHIBIT B**

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

---------------------------------------------------x

In the Matter of the Arbitration Between   :

COMVERSE, INC.,                 :   AAA Case No.
                             :   50 494 T 00319 06

        Claimant,        :

  – and –                :

AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,  :

        Respondent.    :

---------------------------------------------------x

**NOTICE OF PROTECTIVE ORDER
AND CONFIDENTIAL UNDERTAKING
(Consultants and Experts)**

    I hereby certify that I have been retained as a consultant or expert witness in the action

entitled *Comverse, Inc. v. American Telecommunication, Inc. Chile S.A.*, Arbitration No. 50 494

T 00319 06. A copy of my *Curriculum Vitae* is attached hereto.

    I further certify my understanding that Confidential and Confidential–Outside Attorneys

Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions

of the Stipulation and Protective Order (the "Order"), entered in this arbitration.

    I further certify that I have been provided a copy of and have read and understand the

Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as

such shall apply to me. I further agree to subject myself to the jurisdiction of the American

Arbitration Association International Center for Dispute Resolution for purposes of enforcement

of the terms and restrictions of the Order. I further agree that I shall not disclose Confidential or

219712.01

Confidential–Outside Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the conclusion of my involvement in the litigation, I will return all Confidential and Confidential–Outside Attorneys Eyes Only material and information, summaries, abstracts and indices thereof which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the party by whom I am employed or retained.

I understand that violation of the Order may be punishable by contempt.

Dated: _____, 2006          _____
                                         (Signature)

                                         _____
                                         Print Name

2

219712.01



# EXHIBIT H

# In The Matter Of:

*COMVERSE, INC., v.*
*AMERICAN TELECOMMUNICATION,*

---

*September  13, 2006*

---

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 69d2comH.txt, Pages 1-81

**Word Index included with this Min-U-Script®**

---

Page 73

[1] were awarded in Ecuador a very interesting system where we go
[2] deep into the switches of the operator, get information, bring
[3] it out and the software uses them to get revenue assurance.
[4] That is one project that is done with a company by the name of
[5] Tektronic, that's a leader in the industry. And that's a very
[6] interesting project. I am sure that we have bids for that
[7] particular application in other countries, but I don't know
[8] where or, you know. So we have maybe more than ten, you know,
[9] but they don't overlap.
[10] **Q.** And with respect to the product that you just described,
[11] sir, this product by which you can derive revenue assurance, is
[12] that what you said?
[13] **A.** Yeah, you check that the traffic that goes through the
[14] system will be billed at the end of the day to somebody.
[15] **Q.** Very good. With respect to that product, do you have an
[16] understanding as to whether Comverse has a similar or
[17] competitive product to that one that you have just described?
[18] **A.** I do not know because Comverse bought a company I think by
[19] the name of Keenan, I think it is, but we were notified that we
[20] were not part of that. It was a Comverse product, but ATI did
[21] not have access to that product. They were going to distribute
[22] it in all territories throughout other channels, even through
[23] the duration of the VAR.
[24] **Q.** With respect to this product that sounds like Comverse just
[25] purchased, ATI was not going to be distributing that product,

---

Page

[1] connection with every bid that ATI's sister company has
[2] submitted for service or support that it is not with respect to
[3] a Comverse platform or system?
[4] **A.** That's what I said. Most probably I think they are not.
[5] **Q.** But you don't know -- I'm sorry, sir. I don't mean to --
[6] I'm just trying to ask the question with a little more
[7] specificity.
[8] **A.** I don't know.
[9] **Q.** That's fine. If you don't know, I can appreciate that.
[10]     Mr. Acuna, with respect to any of these bids to which
[11] you have just testified, are any of those bids with respect to
[12] non-ATI product and not a Comverse product either? In other
[13] words, take Comverse products off the table and take ATI's own
[14] products off the table, to your knowledge has ATI prepared and
[15] submitted a bid in connection with the product of another
[16] vendor or supplier?
[17] **A.** Yeah, the Tektronic I told you, for example.
[18] **Q.** Forgive me, Tektronic was the one where you can pull out
[19] information --
[20] **A.** Yes.
[21] **Q.** -- on the revenue side.
[22] **A.** Yes.
[23] **Q.** Other than the Tektronic bid, are you aware of any
[24] others --
[25] **A.** No.

---

Page 74

[1] correct?
[2] **A.** No. We want it because it is a good product.
[3] **Q.** I understand. But Comverse did not appoint you to
[4] distribute that product.
[5] **A.** Right.
[6] **Q.** But I want to make it clear, is it fair to say that you
[7] don't know whether this product that is new to Comverse's
[8] portfolio that we agree it purchased that you are not
[9] distributing is similar to something that ATI also has in its
[10] portfolio?
[11] **A.** I don't know.
[12] **Q.** You don't know?
[13] **A.** No.
[14] **Q.** Just to make sure I have got everything, Mr. Acuna, to your
[15] knowledge, other than what you already told me about, are there
[16] any other bids that you understand are outstanding or pending
[17] that a sister company of ATI or ATI Chile has submitted in
[18] Latin America for Latin America business?
[19] **A.** There may be other bids for service.
[20] **Q.** With respect to those other bids for service, do you have
[21] an understanding as to whether any of those bids are for
[22] service of Comverse systems or platforms?
[23] **A.** I would say most probably not, not Comverse platforms. We
[24] have enough problems to keep going in the same direction.
[25] **Q.** So most probably not, but are you able to tell me that in

---

Page 7

[1] **Q.** -- that involve a third-party supplier or vendor?
[2] **A.** No.
[3] **Q.** Mr. Acuna, do you have an understanding as to whether any
[4] of the ATI sister companies have submitted bids in connection
[5] with business outside of Latin America?
[6] **A.** No.
[7] **Q.** No, you don't know of any or, no, they haven't?
[8] **A.** I don't have knowledge. You asked me if I have knowledge?
[9] No, I don't.
[10] **Q.** You don't have knowledge. Is that something that I would
[11] have to ask Mr. Nuñez about?
[12] **A.** You can. I don't know if he will answer you, but yes,
[13] certainly you may ask him. We have delivered product outside
[14] of Latin America as far as I know only twice. One was in
[15] Morocco and the other was in Vietnam, and those were through
[16] Comverse. Comverse acted as our reseller and sold those
[17] products in those two places. And probably we don't have
[18] anything else because it is too complicated for practical
[19] reasons, no.
[20] **Q.** Forgive me, but other than the sister companies which you
[21] described for us which are in Latin America, are there any
[22] sister companies that are outside Latin America?
[23] **A.** Yes.
[24] **Q.** And where are they located, sir?
[25] **A.** In Italy, in Spain, well, we have a dormant company here in

---