Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

                Petitioner,

      -against-

AMERICAN TELECOMMUNICATION, INC.
CHILE S.A., AMERICAN
TELECOMMUNICATION INC. BOLIVIA S.A.,
AMERICAN TELECOMMUNICATION DO
BRASIL LTDA., AMERICAN
TELECOMMUNICATION INC. ECUADOR
ATIECUADOR S.A., and AMERICAN
TELECOMMUNICATION PERU S.A.,

                Respondents.

Case No. 07 CV 11121 (PKL) (HBP)

ECF CASE

**RESPONDENT AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S REPLY IN
FURTHER SUPPORT OF ITS CROSS-MOTION FOR PROTECTIVE ORDER**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

A.    COMVERSE'S LATEST MISSTATEMENTS ................................................1

B.    COMVERSE'S STATEMENTS REGARDING THE CONFIDENTIALITY ORDER
       AGREED TO IN THE ARBITRATION ALSO ARE INACCURATE AND
       MISLEADING........................................................................................4

C.    THE PROPOSED PROTECTIVE ORDER WOULD NOT INTERFERE WITH
       COMVERSE'S ENFORCEMENT OF ITS JUDGMENT .................................5

D.    COMVERSE MISCHARACTERIZES THE ATI BRASIL SALE ...................6

CONCLUSION.......................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cefalu v. Village of Elk Grove,*
    No. 94 C 1990, 1999 WL 167029 (N.D.Ill. Mar. 22, 1999) ..............................................6 n. 3

*Grace v. Bank Leumi Trust Co. of NY,*
    443 F.3d 180 (2d Cir. 2006) ...................................................................................................8

*Hunter Douglas, Inc. v. Comfortex Corp.,*
    No. CIV. A. M8-85 (WHP), 1999 WL 14007 (S.D.N.Y. Jan. 11, 1999) ........................3 n. 1

*In re Borriello,*
    329 B.R. 367 (Bankr. E.D.N.Y. 2005)......................................................................................9

*North Fork Bank v. Schmidt,*
    265 A.D.2d 466 (2d Dep't 1993)...............................................................................................8

*OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.,*
    No. S90-511, 1991 WL 136234 (N.D.Ind. Jul. 24, 1991) .................................................6 n. 3

*PCI Parfums et Cosmetiques Int'l v. Perfumanis, Inc.,*
    No. 93 Civ 9009, 1998 WL 646635 (S.D.N.Y. Sept. 21, 1998) .......................................3 n. 1

STATUTES

N.Y. Debtor & Creditor Law § 273-a ............................................................................................8

N.Y. Debtor & Creditor Law § 275 ................................................................................................9

Respondent American Telecommunication, Inc. Chile S.A. ("ATI Chile") respectfully submits this reply in further support of its cross-motion for a protective order, and in reply to Comverse's Inc.'s ("Comverse") Reply Memorandum of Law in Opposition to Respondent American Telecommunication, Inc. Chile S.A.'s Cross-Motion for a Protective Order and in Further Support of Its Order to Show Cause (the "Comverse Mem.").

First, ATI Chile is compelled to correct Comverse's latest serious misstatements regarding the facts underlying the present motions.

## A.    COMVERSE'S LATEST MISSTATEMENTS

Comverse repeatedly claims that "ATI Chile and its Sister Companies owe Comverse in excess of US$22 million." *See* Comverse Mem. at 1 (emphasis in original). This is incorrect.  After netting the amounts that the Arbitral Tribunal determined that ATI Chile and Comverse each owed to the other, the Court held that ATI Chile owed Comverse only $1,320,497.13, plus interest of $21,815.34.  *See* February 4, 2008 Order, Docket No. 19.  Even adding the judgments the Court entered against ATI Chile's Sister Companies, the total is millions of dollars less that the $22 million figure Comverse asserts throughout its brief.

Comverse also provides no support for its assertion that "at least US$18 million of this money has been owed to Comverse since as early as January 2006." *See* Comverse Mem. at 2.  The Arbitral Tribunal made no such finding, and in fact found that much of the amount claimed by Comverse was not owed when it commenced the arbitration, because conditions in the relevant purchase orders (i.e., successful acceptance testing) had not been met:

> The payment of a part of the purchase orders was often dependent, as explained earlier, on ATP or commercial deployment of the Systems.  Accordingly, at the time of sale or delivery part-payment was due at an indeterminate date in the future.

Decision ¶ 115.  Accordingly, the Arbitral Tribunal *denied* Comverse's request for pre-judgment interest on such amounts.

Likewise, Comverse's unsupported claim that it terminated the VAR Agreement "due in large part to ATI's non-payment of over $22 million" (*see* Comverse Mem. at 3) is contradicted by the record.  The Tribunal specifically found that Comverse terminated the VAR Agreement for "convenience," not for "cause" (*see* Decision ¶ 29), and Comverse later concedes that it terminated the VAR Agreement by invoking the provision allowing termination for "convenience."  *See* Comverse Mem. at 4.

Comverse suggests that ATI Chile's reference to Comverse's "abrupt" termination of the VAR Agreement "without cause" was an unjustified attempt to "malign" Comverse.  *See* Comverse Mem. at 3.  The Tribunal found, however, that after a "relatively stable and successful business relationship" lasting 17 years (*see* Decision ¶ 13), Comverse terminated the VAR Agreement without cause on only 90-days' notice.  *See* Decision ¶¶ 13, 29.  Under the circumstances, "abrupt" is an apt description of the termination.  The fact that Comverse had the bargaining power to negotiate a one-sided contract permitting such termination does not make the abrupt termination any less brutal or life-threatening for ATI Chile.  Even worse, the Arbitral Tribunal determined that Comverse did not simply terminate the contract, it wrongfully proceeded to hire away many of ATI Chile's key engineers in breach of the VAR Agreement – engineers who are the lifeblood of any engineering services company and essential to its ability to remain in

business and find a new supplier. *See* Decision ¶¶ 66, 97. If this is not reprehensible conduct, what is?

Comverse's unsupported claim (*see* Comverse Mem. n. 2) that ATI Chile violated the non-compete provision of the VAR Agreement also is false. To the contrary, the Arbitral Tribunal specifically found that Comverse had "not demonstrated any breach" of such provision by ATI Chile, and further that there was "an absence of any evidence" of such a breach. *See* Decision ¶¶ 101-2. Thus, Comverse's first application to this Court in September 2006 was unwarranted and understandably withdrawn. The Tribunal dismissed ATI Chile's claim that the non-compete provision was invalid only on the basis that the issue was "moot," not because the overbroad provision was determined to be valid and enforceable against ATI Chile. *See* Decision ¶¶ 103-4.

Comverse also wrongly accuses ATI Chile of acting in bad faith. *See* Comverse Mem. n. 3. The Tribunal explicitly concluded that ATI Chile had acted in good faith, in the passage quoted by Comverse on the very next page of its brief. *See* Comverse Mem. at 5; Decision ¶ 112.

Moreover, Comverse persists in stating that ATI Chile litigated on behalf of its Sister Companies in the arbitration. *See* Comverse Mem. at 13. This is not true. The Arbitral Tribunal held as follows in that regard:

> The Respondents' clarification of its position during the hearing, set out above, does not state that any of the ATI sister companies join in the counterclaims of ATI Chile against the Claimant. The post hearing brief of the Respondents was submitted in the name of ATI Chile, and submissions in respect of the counterclaims were all on behalf of ATI Chile.

Decision ¶ 12. [1]

---

[1]     With regard to the extent of ATI Chile's obligation to provide information regarding its Sister Companies, Comverse suggests that the case *PCI Parfums et Cosmetiques Int'l v.*

3

**B.  COMVERSE'S STATEMENTS REGARDING THE CONFIDENTIALITY ORDER AGREED TO IN THE ARBITRATION ALSO <u>ARE INACCURATE AND MISLEADING</u>**

ATI Chile correctly stated in its opposition papers that the "egregious misconduct by Comverse's business people. . .underscored the need for a protective order with an Outside Attorneys' Eyes Only provision during the arbitration, and it does so again in this post-judgment context." *See* ATI Chile Mem. at 5. Comverse claims that this assertion is "false," on the basis that "it was counsel for Comverse that drafted the initial Stipulation and Protective Order – <u>with the Attorneys' Eyes Only designation</u> – and sent it to counsel for ATI Chile. . . ." *See* Comverse Mem. at 6 (emphasis in original).

Comverse's response is inaccurate and misleading in two ways. First, ATI Chile never stated nor suggested that it created the initial draft of the Protective Order. Comverse did prepare the first draft, *after* ATI Chile requested such an order during the parties' prior preliminary conference with the Arbitral Tribunal. Second, ATI Chile also participated actively in drafting the final stipulated order to make sure that it addressed ATI Chile's stated concerns. Attached hereto as Exhibit A is ATI Chile's markup of Comverse's initial draft Protective Order. ATI Chile added stronger language to Comverse's draft, because it did not trust Comverse's business people (or even its in-

---

*Perfumanis, Inc.*, No. 93 Civ. 9009, 1998 WL 646635, at *2 (S.D.N.Y. Sept. 21, 1998) is distinguishable because the recipient of the subpoena was not a party to the underlying litigation. *See* Comverse Mem. at 18. *PCI* does not state that its holding is limited to those facts, and even if it were, ATI Chile similarly is not a judgment debtor in connection with the claims between Comverse and ATI Chile's sister companies. ATI Chile also brings to the Court's attention the case of *Hunter Douglas, Inc. v. Comfortex Corp.*, No. CIV. A. M8-85 (WHP), 1999 WL 14007, at *3 (S.D.N.Y. Jan. 11, 1999) ("The critical inquiry is whether the affiliate can exercise custody and control over the documents." . . . [T]he test focuses on whether the corporation has 'access to the documents' and 'ability to obtain the documents.'"), which ATI Chile's counsel found after filing its prior brief.

4

house counsel[2]) with its confidential business information in view of Comverse's prior wrongful conduct. *See* ATI Chile Mem. at 5. Therefore, this was far from a case of a *pro forma* protective order that was agreed to without serious consideration by the parties. The same concerns that informed that protective order also underlie ATI Chile's need for a protective order in this post-judgment phase.

## C.    THE PROPOSED PROTECTIVE ORDER WOULD NOT INTERFERE WITH COMVERSE'S ENFORCEMENT OF ITS JUDGMENT

Comverse continues to insist that the proposed protective order would obstruct Comverse's ability to enforce its judgment. Nothing could be further from the truth.

*First*, it is not ATI Chile's intention to obstruct Comverse's enforcement of its judgment. ATI Chile will readily accept any modifications to its proposed protective order, if actually needed, to enable Comverse to enforce its judgment. Unfortunately, Comverse has refused to negotiate a mutually agreeable protective order with ATI Chile, and has opposed any protective order, rather than proposing specific modifications to the text of the proposed protective order to resolve its purported concerns.

*Second*, contrary to the parade of horrors that Comverse suggests would result from the adoption of ATI Chile's proposed protective order, the proposed protective order is completely consistent with Comverse's desire to enforce its judgment. Comverse suggests that if information is designated Outside Attorneys' Eyes Only, Comverse's outside attorneys would be precluded from (1) serving a restraining notice on a bank

---

[2]    Comverse's prior general counsel was charged with securities fraud and subsequently pleaded guilty and paid restitution of $3 million. *See* "SEC Settles Options Backdating Case against William Sorin, Former General Counsel of Comverse Technology, Inc.", www.sec.gov/news/press/2007/2007-4.htm. Comverse's CEO and its CFO likewise resigned in 2006 and were charged with federal securities fraud by the U.S. government, and the former CFO has already pleaded guilty and agreed to pay nearly $2.4 million in restitution. There was nothing ordinary about Comverse's corrupt business culture.

holding an ATI Chile account, (2) serving a restraining notice on an ATI Chile customer, or (3) asking a local marshal or sheriff to seize assets. *See* Comverse Mem. at 8. That is incorrect, because (1) pursuant to Section 6(a)(1) of the proposed protective order, material designated Outside Attorneys' Eyes Only may be shown to court personnel (i.e., a local marshal or sheriff), and (2) pursuant to Section 2(c) of the proposed protective order, material designated Outside Attorneys' Eyes Only may be shown to any individual who is an original author, addressee or recipient of the document (i.e., a bank with respect to a bank statement, or a customer with respect to a document regarding a transaction between the customer and ATI Chile). [3]

*Third*, Comverse suggests that ATI Chile has "manufacture[d] out of whole cloth" a request for business plans and other sensitive financial information. *See* Comverse Mem. at 12. However, the responses to the requests at issue – which seek information regarding ATI Chile's "bank accounts," finances, and payments to creditors – would necessarily give Comverse such information. *See* Alfaro Dec. ¶ 2.

## D.    COMVERSE MISCHARACTERIZES THE ATI BRASIL SALE

Comverse's suggestion that ATI Chile still owns American Telecommunication Ltda. ("ATI Brasil") is incorrect, as Comverse's counsel has known for more than a year. The transfer of ownership occurred months before Comverse gave notice terminating its VAR Agreement with ATI Chile and many months before Comverse initiated the Arbitration in July 2006. ATI Chile has produced contemporaneous documentation evidencing the transfer of ownership to American Telecommunication Holdings S.A.

---

[3] Comverse still has failed to meaningfully distinguish the cases *OHM Res. Recovery Corp. v. Indus. Fuels & Res., Inc.*, No. S90-511, 1991 WL 136234 (N.D.Ind. Jul. 24, 1991) and *Cefalu v. Village of Elk Grove*, No. 94 C 1990, 1999 WL 167029 (N.D.Ill. Mar. 22, 1999), which demonstrate simply that a protective order with an attorneys' eyes only provision can be consistent with a judgment creditor's legitimate need to enforce its judgment.

6

("ATI Holdings") in December 2005, including (i) a signed and notarized copy of a document reflecting the transfer of 659,043 shares of ATI Brasil to ATI Holdings, and (ii) a document filed with the Junta Comercial Do Estado Do Rio De Janeiro modifying ATI Brasil's bylaws and acknowledging this transfer. *See* Exhibits A and B to the Declaration of Rafael Alfaro, dated April 7, 2008. Whether or not the records in Brazil have been updated yet to reflect this fact is irrelevant: Comverse's Brazilian counsel nowhere states or shows in his declaration that such records are necessary under the applicable law for the transfer to have been effective in December 2005. Nor does Comverse's Brazilian counsel discuss the time it can take for filings in Brazil to show up in the record.

Moreover, the fact that ATI Holdings is the parent company of ATI Brasil is no surprise to Comverse. Comverse's counsel has known this fact for more than a year, because ATI Chile forthrightly disclosed its corporate structure during the pre-hearing phase of the Arbitration. The corporate relationship was clearly set forth in the Declaration of Victor Acuña dated January 25, 2007, submitted two months before the Arbitration hearings. *See* ¶ 12 noting that the parent company of the Sister Companies (including ATI Brasil) is ATI Holdings. Comverse ultimately concedes that "it may be true that ATI Chile is no longer the 98% owner of ATI Brasil." *See* Comverse Mem. at 20.

Comverse's contention that the transfer of ownership of ATI Brasil "has all the indicia of a fraudulent transfer" also is unwarranted. *Id.* In order to establish that there has been a fraudulent conveyance under New York law, it must be shown "(i) that the conveyance was made without fair consideration; (ii) that the conveyor is a defendant in

an action for money damages or that a judgment in such action has been docketed against him; and (iii) that the defendant has failed to satisfy the judgment." *Grace v. Bank Leumi Trust Co. of NY*, 443 F.3d 180, 188 (2d Cir. 2006), *cert. denied* 127 S.Ct. 962 (2007); *see also* N.Y. Debtor & Creditor Law ("N.Y. DCL")§ 273-a.   ATI Chile transferred ownership of its shares in ATI Brasil in December of 2005, seven months before Comverse commenced the arbitration against ATI Chile.  ATI Chile, therefore, was not a defendant in an action for money damages at the time of the transfer, and N.Y. DCL § 273-a does not apply.  *See North Fork Bank v. Schmidt*, 265 A.D.2d 466, 468 (2d Dep't 1993).  The failure to meet this prong alone defeats a claim of fraudulent conveyance. Moreover, Comverse has not shown that the 2005 conveyance was made without fair consideration.

The evidence submitted shows that ATI Holdings paid ATI Chile $230,908 in December 2005 for ATI Chile's shares in ATI Brasil.  Because ATI Brasil's business was largely based on its ability to distribute and service Comverse equipment and software, the value of its shares at the end of 2005 was evidently dependent on whether Comverse would exercise its option to terminate the VAR Agreement in 2006.  If, as Comverse contends (*see* Comverse Mem. at 21), ATI Chile and ATI Holdings should already have expected in December 2005 that Comverse might terminate the distributorship, it is hard to see what value the ATI Brasil shares might have going forward, if the distributorship on which ATI Brasil's business was based suddenly ended in mid-2006.  Comverse has not shown that the purchase price was unfair under these circumstances.  The value of ATI Brasil's shares in December 2004, before the parties' successful 17-year relationship

began to breakdown, is – on Comverse's own assumptions – of questionable relevance to what constituted fair consideration in December 2005.

Comverse's other contention, that the transfer of ownership violated N.Y. DCL § 275 (*see* Comverse Mem. at 22), therefore cannot be established. In order to state such a claim, the creditor "must establish (1) that the defendant provided less than fair consideration for the transfer and (2) the transferor intended or believed that he would incur debts beyond his ability to pay them as they matured." *In re Borriello*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005). Comverse has proven neither of the required elements.

## CONCLUSION

For all the foregoing reasons, ATI Chile respectfully requests that the Court deny Comverse, Inc.'s Order to Show Cause in its entirety, enter the proposed Protective Order and award ATI Chile any other relief that the Court deems appropriate.

Respectfully submitted,

DATED: April 17, 2008          DORSEY & WHITNEY LLP
        New York, New York

/s/Brooke E. Pietrzak
Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
250 Park Avenue
New York, NY 10177
(212) 415-9200

*Attorneys for Respondent American Telecommunication, Inc. Chile S.A.*

# EXHIBIT A

**McDonell, Neil**

| | |
|---|---|
| **From:** | McDonell, Neil |
| **Sent:** | Friday, October 27, 2006 9:07 AM |
| **To:** | Deborah Skakel (E-mail) |
| **Cc:** | Beatriz Lynch (E-mail); Brooke Pietrzak (E-mail); Rutherford, Tony |
| **Subject:** | ATI/Comverse |
| **Sensitivity:** | Confidential |
| **Attachments:** | DOCSNY-#219712-v1-Protective_Order(2).DOC |



DOCSNY-#219712-
v1-Protective_O...

Debbie,

Here's my mark-up of your draft.  Beatriz may have some additional comments.

Neil

**Neil E. McDonell**
**Dorsey & Whitney LLP**
250 Park Avenue
New York, NY 10177
mcdonell.neil@dorsey.com
(212) 415-9344 (phone)
(914) 907-6772 (mobile)
(212) 953-7201 (fax)

www.dorsey.com

CONFIDENTIAL COMMUNICATION:  E-mails from this firm normally contain confidential and privileged material, and are for the sole use of the intended recipient.  Use or distribution by an unintended recipient is prohibited, and may be a violation of law.  If you believe that you received this e-mail in error, please do not read this e-mail or any attached items.  Please delete the e-mail and all attachments, including any copies thereof, and inform the sender that you have deleted the e-mail, all attachments and any copies thereof.  Thank you.

**DRAFT**

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of the Arbitration Between           :

COMVERSE, INC.,                                    :     STIPULATION AND
                                                   :     PROTECTIVE ORDER
      Claimant,                                    :
                                                   :     AAA Case No.
 – against –                                       :     50 494 T 00319 06
                                                   :
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,       :
                                                   :
      Respondent.                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

IT IS STIPULATED AND AGREED by and between Claimant Comverse, Inc.

("Comverse") and Respondent American Telecommunication, Inc. Chile S.A. ("ATI"), and is

ORDERED by the Arbitration Panel, that the following terms and conditions shall govern the

treatment of confidential and proprietary information in this arbitration:

     1.    DEFINITIONS: In connection with the information and document exchange in

this arbitration, including the production of documents and information that contain confidential,

trade secret or other proprietary information, or any other information the disclosure of which

would cause competitive harm, embarrassment or oppression to the disclosing individual or

entity (hereinafter "Confidential Information"), which a party or nonparty deems to contain

Confidential Information, may be designated by such party as "CONFIDENTIAL" or

"CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" pursuant to the terms of this

Stipulation and Protective Order. The designation "CONFIDENTIAL–OUTSIDE

ATTORNEYS EYES ONLY" shall apply only to documents or other materials that contain

significant competitive or proprietary information, confidential financial or business information,

technical information or other trade secrets, which would not be disclosed in the ordinary course

of business without an obligation of confidentiality and which if otherwise disclosed would cause the disclosing party competitive harm or could place the receiving party at a competitive advantage.

2.    DESIGNATION:

(a)    Production:    Any documents or written information designated to be "CONFIDENTIAL" shall be so designated by the producing party or nonparty at the time of their production by stamping the designated materials with the legend "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY", or if necessary, by separate written statement, or as set forth in Paragraph 3 of this Stipulation and Protective Order.

(b)    Filing with the American Arbitration Association ("AAA"):    All Confidential Information, properly designated under this Protective Order, that is filed with the AAA during this arbitration, shall be filed under seal in sealed envelopes or other appropriate sealed containers on which shall be labeled with the title of this arbitration, an indication of the nature of the content of such sealed envelope or container, the designation of "CONFIDENTIAL" or "CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY" and a statement substantially as follows:

> FILED UNDER SEAL BY [NAME OF PARTY] PURSUANT TO THE PROTECTIVE ORDER ENTERED IN THIS ACTION, AND IS TO BE MAINTAINED UNDER SEAL UNTIL FURTHER ORDER OF THE ARBITRATORS

Filing of Confidential Information under seal shall not prevent or limit access in any manner consistent with this Order of that information by the Arbitrators, the AAA or counsel of record for the parties.

(c)    The designation of any document as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY shall not preclude any party from

2

showing such Confidential Information to any person who appears as the author or as an addressee or recipient on the face of the document, or who has been identified by the designating party as having been provided with the document or the information therein by the designating party;

(d)     Confidential Information shall be used solely for the purposes of this arbitration. However, nothing in this Stipulation and Protective Order is intended to prevent or restrict any party or nonparty from using or disclosing its own Confidential Information in any manner or for any purpose. Neither shall this Order restrict the use or disclosure by a party or nonparty of materials obtained in good faith and independently of discovery in this arbitration or obtained or obtainable from another source or already in the possession or knowledge of a party or nonparty, who is not obligated to maintain such documents in confidence.

(e)     The terms of this Stipulation and Protective Order shall not prejudice the right of any party to introduce at the arbitration hearing information designated as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY pursuant to this Order.

3.     REDESIGNATION OF MATERIAL:   A producing party or nonparty may redesignate under Paragraphs 1 through 3 hereof any material that it has previously produced, but did not previously designate as Confidential Information, provided, however, that such "redesignation" shall be effective only as of the date it is received. The redesignating party or nonparty shall notify each other party in writing specifically identifying the documents by production number or otherwise and whether those documents should be redesignated as CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY. Upon receipt of such written notice, receiving counsel shall:

3

(a)    immediately take reasonable steps to retrieve any redesignated material in the possession of any person not identified as a "Qualified Person" under Paragraph 6 hereof and notify any person known to have possession of the material of the effect of such designation;

(b)    if not objecting to the redesignation, affix the appropriate legend on the redesignated material in accordance with Paragraphs 2 and 3 hereof;

(c)    if objecting to the redesignation, counsel shall treat the materials at issue as designated pending resolution of the objection.  Any objections shall be in accordance with Paragraph 5 hereof.

If the materials are redesignated in accordance with the terms of this Stipulation and Protective Order, failure to originally designate those materials as Confidential Material shall not be deemed a waiver of any claims of confidentiality and shall not be used as grounds for a claim of such a waiver.

4.    PRIVILEGED MATERIAL:    In the event that any privileged materials are inadvertently produced, such production shall not be deemed a waiver of the attorney-client privilege, work-product doctrine or other privilege or immunity.    Upon notification of such inadvertent disclosure, the receiving party shall immediately make every effort to prevent further disclosure of the materials, collect and return any copies of the privileged materials and inform any person(s) having received or reviewed such materials as to the privileged nature of the materials.

5.    OBJECTIONS:    A party may move the Arbitration Panel for an order that material designated as confidential or privileged information is not, in fact, confidential or privileged.    On such a motion, the party asserting confidentiality or privilege shall have the

4

burden of proving that the information designated CONFIDENTIAL, CONFIDENTIAL-OUTSIDE ATTORNEYS EYES ONLY or PRIVILEGED <u>is Confidential Information as defined in paragraph 1 above</u><s>embodies trade secrets or other confidential research, development or commercial information</s> or is otherwise entitled to protection. Before such a motion is brought, the parties will attempt to resolve their differences informally. No party shall be obligated to challenge a confidential or privileged designation, and failure to do so shall not preclude a subsequent challenge to such a designation. Designations, challenges to designations, and failures to challenge designations made pursuant to this Order are not an admission or waiver of any party, and are not admissible in evidence on the hearing of any issue in this case, including the issue of whether the information is in fact confidential or privileged.

6.    QUALIFIED PERSONS: Materials designated as Confidential Information may be disclosed or made available by the party or nonparty receiving such information only to a "Qualified Person," as defined below:

(a)    Documents designated as CONFIDENTIAL may be disclosed to:

(i)    the AAA and the Arbitrators;

(ii)    <u>outside</u> counsel of record to the parties to this action, and the members and employees of the law firms of counsel of record, and organizations retained by counsel to provide litigation support services in this action and the employees of those organizations;

(iii)    court reporters<u>,</u> <s>or</s> stenographers <u>or translators</u> whose services are used in connection with this action, and other persons working for such reporters,<s>or</s> stenographers <u>or translators</u>;

219712.01

(iv)    directors, officers and employees of each party, including in-house counsel, and individuals named as parties, who must see such documents to assist in the prosecution or defense of that party's claims in the lawsuit;

(v)    consultants or experts retained by the parties in connection with this arbitration, and the employees of such experts or consultants who are assisting them in this action. Each consultant or expert must execute the certification set forth as Exhibit B hereto, and the disclosing party shall deliver to all other parties a copy of the executed certification; and

(vi)    such other persons who the parties may designate by written agreement or by Order of the Arbitrators, permitting additional disclosure.

(b)    Documents designated CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY may be disclosed or made available by the party receiving such information only to Qualified Persons as defined in subparagraph 6(a), **excluding** the parties to this litigation as defined in subparagraph 6(a)(iv);

(c)    Any Qualified Persons under ~~identified in~~ subparagraphs 6(a)(iii), (iv) and (vi), shall – before disclosure or provision of any CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY material –– be given a copy of this Order and shall agree in writing in the form attached hereto as Exhibit A, to be bound by the terms of this agreement, and the disclosing party shall promptly deliver to all other parties a copy of the executed agreement;

(d)    Confidential Information may be shown to a Qualified Person as designated in subparagraphs 6(a) (iii), (iv), (v), and (vi), only if the following approval procedure is used:

6

(i)    the party seeking approval shall provide all other parties (via overnight mail) with:

(1)    the name of the designated person;

(2)    the present employer and title of the designated person; and

(3)    an executed copy in the form attached hereto as Exhibit A or B, as required, acknowledging that the person will be bound by the terms of this agreement; and

(ii)    within five (5) days after receipt (as evidenced by the overnight delivery tracking slip) of the information and written acknowledgement described in subparagraph 6(d)(i), any party may object to the person proposed for approval by specifically stating in writing the reasons why that party believes such person should not receive CONFIDENTIAL or CONFIDENTIAL–OUTSIDE ATTORNEYS EYES ONLY materials. Failure to object within five (5) days shall be deemed as approval of the designated person. No CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials shall be disclosed to a designated person when there is an outstanding objection until such objection is resolved by the Arbitration Panel or the parties, or the fifteen (15) day period set forth in subparagraph 6(d)(iii) has expired without a motion being filed by the objecting party;

(iii)    if a party objects, the parties shall within seven (7) days from the receipt of the notice of objection (mailed via overnight delivery), confer and attempt to resolve the dispute. If the parties cannot resolve the dispute, then the objecting party may move the Arbitration Panel, within fifteen (15) days from the receipt of the notice of objection, for an order denying access to the designated person of CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials; and

7

(e)    this Order shall be binding on the parties, their agents, successors, heirs, assigns, subsidiaries, employees, and other persons or organizations over which they have control.

7.  POST-ARBITRATION:  Within forty-five (45) days of the final termination of this action, each party or counsel in possession, custody or control of Confidential Information, or any tabulations, analyses, studies or compilations derived therefrom, shall either destroy or return (at the producing party's option) those materials.  Destruction of such materials, including any copies stored electronically, shall be certified in writing by an officer of the receiving party. However, counsel for each party may retain hardcopy abstracts or summaries of discovery materials or copies of materials which contain attorney-work product or which incorporate Confidential Information in documents filed with the AAA or Arbitration Panel.

8.  Comverse hereby agrees to indemnify and hold harmless, and to pay or reimburse on demand, ATI, its subsidiaries and its affiliates, and all their officers, directors, employees and attorneys for any and all losses, liabilities, claims, judgments, awards, actions, proceedings, damages, costs and expenses (including attorneys' fees and other legal expenses) arising directly or indirectly out of any breach of this agreement and order by Comverse or by any Qualified Person to whom Comverse has disclosed CONFIDENTIAL or CONFIDENTIAL—OUTSIDE ATTORNEYS EYES ONLY materials that ATI disclosed to Comverse.

Respectfully submitted,

Dated: _____, 2006                     Dated: _____, 2006


**DICKSTEIN SHAPIRO LLP**                          **DORSEY & WHITNEY LLP**
Howard Graff                                        Neil E. McDonell
Deborah A. Skakel                                   Brooke Pietrzak
Lindsay A. Bush                                     Mario Diaz-Cruz, III

1177 Avenue of the Americas
New York, New York 10036
(212) 277-6500
Attorneys for Claimant Comverse, Inc.

<u>Anthony Rutherford</u>
250 Park Avenue
New York, NY 10177-1500
(212) 415-9200
Attorneys for Respondent American
Telecommunication, Inc. Chile S.A.

Dated: _____, 2006

_____
**MONTT Y CIA. S.A.**
Beatriz Lynch
Santiago Montt
Avda. Los Conquistadores 1700, piso 11
Providencia, Santiago
Chile
<u>Attorneys for Respondent American</u>
<u>Telecommunication, Inc. Chile S.A.</u>

SO ORDERED this _____ day of _____, 2006

_____
David J. A. Cairns
Chairperson of Arbitration Panel

9

219712.01

**DRAFT**

**EXHIBIT A**

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
In the Matter of the Arbitration Between          :

COMVERSE, INC.,                                   :    AAA Case No.
                                                  :    50 494 T 00319 06
                       Claimant,                  :

        – against –                               :

                                                  :
AMERICAN TELECOMMUNICATION, INC. CHILE S.A.,      :

                       Respondent.                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**NOTICE OF PROTECTIVE ORDER**
**AND CONFIDENTIAL UNDERTAKING**
**(Non Experts and Consultants)**

   I hereby certify my understanding that Confidential and/or Confidential–Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and restrictions of the Stipulation and Protective Order (the "Order"), entered by the Arbitration Panel, in the arbitration entitled <u>Comverse, Inc. v. American Telecommunication, Inc. Chile S.A.</u>, Arbitration No. 50 494 T 00319 06.

   I further certify that my full name and address are: _____

_____; my present employer is: _____

_____; and the address of my present employment

is: _____;

and my present occupation and/or job title or description is: _____.

   I further certify that I have received a copy of the Order and have carefully read and

understand the provisions of the Order, and hereby agree to fully comply with the Order and all

219712.01

of its terms and restrictions as such shall apply to me.  I further agree to subject myself to the

jurisdiction of the American Arbitration Association International Center for Dispute Resolution

for purposes of enforcement of the terms and restrictions of the Order.  I further agree that I shall

not disclose Confidential or Confidential–OUTSIDE Attorneys Eyes Only information to anyone

other than persons permitted to have access to such material or information pursuant to the terms

and restrictions of the Order.

I further certify that upon the termination of this action, or sooner if so requested, I shall

return to counsel all Confidential and Confidential–OUTSIDE Attorneys Eyes Only material and

information in my possession or control, including all copies and excerpts thereof.

I understand that violation of the Order may be punishable by contempt.

Dated: _____, 2006             _____

                                          (Signature)


                                          _____

                                          Print Name

2

219712.01

**DRAFT**

10/26/06 12:18 PM ~~10/26/06 10:49 AM~~

## EXHIBIT B

AMERICAN ARBITRATION ASSOCIATION
INTERNATIONAL CENTER FOR DISPUTE RESOLUTION
NEW YORK CITY REGIONAL OFFICE

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In the Matter of the Arbitration Between     :

COMVERSE, INC.,          : AAA Case No.
                : 50 494 T 00319 06

   Claimant,         :

 – against –          :

AMERICAN TELECOMMUNICATION, INC. CHILE S.A., :

   Respondent.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

### NOTICE OF PROTECTIVE ORDER
### AND CONFIDENTIAL UNDERTAKING
### (Consultants and Experts)

   I hereby certify that I have been retained as a consultant or expert witness in the action

entitled <u>Comverse, Inc. v. American Telecommunication, Inc. Chile S.A.</u>, Arbitration No. 50 494

T 00319 06. A copy of my *Curriculum Vitae* is attached hereto.

   I further certify my understanding that Confidential and Confidential–OUTSIDE

Attorneys Eyes Only information will be provided to me by counsel, pursuant to the terms and

restrictions of the Stipulation and Protective Order (the "Order"), entered in this arbitration.

   I further certify that I have been provided a copy of and have read and understand the

Order, and hereby agree to fully comply with the Order and all of its terms and restrictions as

such shall apply to me. I further agree to subject myself to the jurisdiction of the American

Arbitration Association International Center for Dispute Resolution for purposes of enforcement

of the terms and restrictions of the Order. I further agree that I shall not disclose Confidential or

219712.01

Confidential–Attorneys Eyes Only information to anyone other than persons permitted to have access to such material or information pursuant to the terms and restrictions of the Order.

I further certify that upon the conclusion of my involvement in the litigation, I will return all Confidential and Confidential–<u>OUTSIDE</u> Attorneys Eyes Only material and  information, summaries, abstracts and indices thereof which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the party by whom I am employed or retained.

I understand that violation of the Order may be punishable by contempt.


Dated: _____, 2006               _____
                                                                          (Signature)

                                                                          _____
                                                                          Print Name