Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

        Petitioner,

    -against-

AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A.,

        Respondents.

Case No. 07 CV 11121 (PKL) (HBP)

ECF CASE

**RESPONDENT AMERICAN TELECOMMUNICATION, INC. CHILE S.A.'S MEMORANDUM OF LAW IN OPPOSITION TO COMVERSE'S MOTION FOR CONTEMPT SANCTIONS AGAINST ATI CHILE AS WELL AS LUIS ALBERTO NUÑEZ AND RAFAEL ALFARO**

## TABLE OF CONTENTS

**Page**

I. STATEMENT OF FACTS ...................................................................................................2

II. ARGUMENT .......................................................................................................................5

    A. THE SANCTIONS WOULD IMPROPERLY PREEMPT THE CHILEAN BANKRUPTCY PROCEEDING ................................................................................5

    B. THE SANCTIONS MAY NOT BE USEFUL AS A COERCIVE MEASURE .............7

    C. COMVERSE'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED ......................................................................................................................9

III. CONCLUSION ..................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Bank of Credit and Commerce Int'l (Overseas) Ltd. v. Tamraz*,
  No. 97 Civ. 4759 (SHS), 2006 WL 1643202 (S.D.N.Y. June 13, 2006) ..............................7, 9

*Cunard Steamship Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452 (2d Cir. 1985) .....................5

*Huber v. Marine Midland Bank*, 51 F.3d 5 (2d Cir. 1995) ...........................................................8

*JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A.*, 412 F.3d 418 (2d Cir. 2005) ...............5

*Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130 (2d Cir. 2007) ......................................9

*In re: Sphinx, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006)............................................................6

**STATUTES**

Federal Rule of Civil Procedure 37 ................................................................................1, 5, 9, 10

11 U.S.C. § 1501 et seq. ........................................................................................................ 5-6

Respondent American Telecommunication, Inc. Chile S.A. ("ATI Chile"), which filed for bankruptcy in Chile on May 16, 2008, respectfully submits this memorandum of law in opposition to Comverse's motion for contempt sanctions under Federal Rule of Civil Procedure 37(b)(2)(A)(vii). Comverse has requested contempt sanctions against ATI Chile, as well as two of its executive officers and directors, Luis Alberto Nuñez and Rafael Alfaro, for noncompliance with the Court's April 18, 2008 Order (Docket No. 32) (the "Order"). The Order required ATI Chile to respond to requests 10, 18 and 28 of Comverse's post-judgment information subpoenas regarding ATI Chile, and requests 16 and 17 of Comverse's post-judgment information subpoenas regarding ATI Chile's Sister Companies. [1] The Order also granted Comverse $5,000 in attorneys' fees against ATI Chile. Comverse has requested that the Court sanction ATI Chile by directing it to pay a daily fine of $250 and by directing the issuance of warrants for the arrest of Messrs. Nuñez and Alfaro (the "Sanctions").

Comverse's motion should be denied for two reasons. First, Comverse is now only one of ATI Chile's creditors that will seek discovery and payments from ATI Chile while ATI Chile is in bankruptcy proceedings. These creditors' demands are properly dealt with in an orderly and centralized manner by the Chilean bankruptcy courts. Compelling ATI Chile to comply with the Order would inappropriately preempt that process and give Comverse priority over other creditors, including the preferred creditors, of ATI Chile. The sanctions Comverse has proposed – a large daily fine and the drastic measure of the arrest of Messrs. Nuñez and Alfaro – also would hurt ATI Chile's ability to manage its cash flow and business affairs, successfully continue its operations while in

---

[1] ATI Chile's Sister Companies are American Telecommunication Inc. Bolivia S.A., American Telecommunication do Brasil Ltda., American Telecommunication Inc. Ecuador ATIECUADOR S.A., and American Telecommunication Peru S.A.

bankruptcy, maximize the value to all its creditors, and eventually emerge from bankruptcy. Harming ATI Chile further at this time would not be in the best interests of ATI Chile or its creditors as a whole, including Comverse. In these circumstances, traditional principles of comity toward foreign bankruptcy proceedings, as well as the mandates of Chapter 15 of the United State Bankruptcy Code with regard to cooperation in cross-border bankruptcy proceedings, suggest that the Court should refrain from sanctioning ATI Chile and refrain from sanctioning Messrs. Nuñez and Alfaro, so as to permit ATI Chile's bankruptcy in Chile to proceed in the best interests of ATI Chile and all its creditors. ATI Chile's declaration of bankruptcy does not somehow make it or Messrs. Nuñez and Alfaro criminals. Yet this is precisely the kind of treatment Comverse is seeking with its motion.

Second, the sanctions Comverse has proposed do not appear to be well-tailored to ensuring that Comverse will obtain the remaining post-judgment discovery it seeks. Arresting members of ATI Chile's executive leadership and imposing a severe financial penalty when ATI Chile already is in bankruptcy will further undermine ATI Chile's ability to continue its operations, so that it will be more difficult for ATI Chile to comply with its creditors' demands, including Comverse's demands. These sanctions also are not necessary. If sanctions are not imposed, ATI Chile can continue rehabilitating itself under Chilean bankruptcy protections, and respond to Comverse's demands through Chilean bankruptcy procedures.

## I.  STATEMENT OF FACTS

Comverse initiated this proceeding with its application to confirm an arbitration award issued following an arbitration between Comverse and ATI Chile and its Sister Companies. *See* Docket No. 1. The underlying arbitration concerned the abrupt breakup

2

by Comverse, on a "without case" basis, of a 17-year relationship that ATI Chile had with Comverse as a value added reseller. Comverse did not simply terminate the lengthy relationship, but did so in a way that, as the Arbitration Award confirmed, committed multiple breaches of the parties' contract, which seriously damaged ATI Chile's ability to survive as a business. *See* Arbitration Award at pp. 37, 40, 50 and 53. The Arbitral Tribunal held that as a result of these breaches ATI Chile suffered millions of dollars of damages. *Id*. Unfortunately, Comverse did its work well in crippling ATI Chile's business, resulting in ATI Chile filing for bankruptcy protection.

On May 16, 2008, ATI Chile filed for bankruptcy in Santiago, Chile. *See* May 16, 2008 Letter from Neil E. McDonell to Judges Leisure and Pitman, attaching ATI Chile's bankruptcy filing. Certain additional documents necessary for ATI Chile's bankruptcy to proceed were subsequently filed with the 19th Civil Court of Santiago. *See* May 21, 2008 Letter from Neil E. McDonell to Judges Leisure and Pitman.

The next steps in ATI Chile's bankruptcy proceeding in Chile are set forth in the accompanying Declaration of Omar Morales Carrasco, dated June 12, 2008 ("Carrasco Dec."). In Chile, when the Civil Court declares a company to be bankrupt, it appoints a provisional trustee (a "Sindico"), who acts as the receiver throughout the bankruptcy, and a deputy. *See* Carrasco Dec. ¶ 2. The main creditors representing 2/3 of the total debt of the debtor (in this case Comverse would be one such creditor) may either ratify the Sindico at the first creditors' meeting or nominate a new person to serve in that capacity. *Id*. The creditors' meeting should take place not less than 30, and not more than 40, business days after the resolution declaring bankruptcy is officially published. *Id*.

In order to become a Sindico, an individual must take an exam given by the Superintendency of Bankruptcies, which is equivalent to obtaining a special license, and then be appointed by Presidential Decree. Carrasco Dec. ¶ 3. Once appointed as a Sindico, a person's name will appear on list of trustees in bankruptcy. *Id*. If the creditors in a bankruptcy do not ratify the Court's appointment of a Sindico, and instead opt to choose their own, they must select an individual from this list. *Id*.

When the debtor has money available for distribution, the Sindico must distribute it between the different categories of creditors. Carrasco Dec. ¶ 4. Preferred creditors take precedence over all other creditors and include labor claims, lien property and taxes owed to the government. *Id*. If there is more than one creditor in the same category, the money is to be distributed on a pro rata basis among them. *Id*. Once the debt of all the creditors in one category is fully satisfied, the Sindico may distribute funds to the next category. *Id*. Creditors such as Comverse, whose claims are based on civil claims (including contract and tort claims) are in the last category of creditors. *Id*. Penalties imposed by a court (whether domestic or foreign) similarly do not receive any preference and are treated the same as any non-preferred debt. *Id*.

If the creditors, such as Comverse, in a bankruptcy wish to obtain information about the debtor, the proper method for doing so is to submit such requests to the Sindico, who will then respond. Carrasco Dec. ¶ 5.

The Sindico is responsible for proposing the date of default, which is considered to be the date on which the debtor became insolvent. Carrasco Dec. ¶ 6. Any payment after the date of default and prior to the declaration of bankruptcy (and appointment of the Sindico) is revocable. *Id*. For making such a payment, the debtor could by guilty of

negligent bankruptcy for making payments during the insolvency period (which, as noted, may be determined retroactively), and subject to penalties including imprisonment. *Id*. The date of default can extent as far back as two years prior to the date of the declaration of bankruptcy. *Id*.

## II.  ARGUMENT

**A.    THE SANCTIONS WOULD IMPROPERLY PREEMPT
         THE CHILEAN BANKRUPTCY PROCEEDING**

The Second Circuit has "repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding." *JP Morgan Chase Bank v. Altos Hornos De Mexico, S.A.*, 412 F.3d 418, 424 (2d Cir. 2005). In particular, where, as here, the debtor resides and does business in the foreign jurisdiction, "American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Cunard Steamship Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir. 1985). In addition, where, as here, "[t]he granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion," comity is appropriate. *Id*. Therefore, under these circumstances, "creditors of an insolvent foreign corporation may be required to assert their claims against a foreign bankrupt before a duly convened foreign bankruptcy tribunal." *Id*. at 458-9.

Chapter 15 of the U.S. Bankruptcy Code, enacted in 2005, codifies the mandate to grant comity to foreign bankruptcy proceedings and to cooperate with foreign courts in regard to cross-border bankruptcies. *See* 11 U.S.C. § 1501 et seq. The objectives of Chapter 15 are:

5

> [C]ooperation between United States courts, trustees, examiners, debtors and debtors in possession and the courts and other competent authorities of foreign countries; greater legal certainty for trade and investment; fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and other interested entities, including the debtor; the protection and maximization of the debtor's assets; and the facilitation of the rescue of financially troubled businesses.

*In re: Sphinx, Ltd.*, 351 B.R. 103, 112 (Bankr. S.D.N.Y. 2006). Notably, "Congress directed the court to focus on the interests of *all* creditors and other interested parties, not just those of U.S. parties." *Id*. at 113 (emphasis in original).

In particular, Chapter 15 mandates that U.S. courts "shall cooperate to the maximum extent possible with a foreign court or a foreign representative, either directly or through the trustee." 11 U.S.C. § 1525. In this case, in 3-4 weeks' time, a Sindico should be appointed to act as ATI Chile's receiver in the Chilean bankruptcy proceeding. Carrasco Dec. ¶ 2. The Sindico is the appropriate representative of the corporation to respond to the information requests and determine which transfers of funds should take place and in which order. *Id.* ¶¶ 4-5. It is respectfully submitted that this Court should permit the Sindico to be appointed and to then have an opportunity to respond to the April 18 Order. This approach is consistent with the principles of comity and Chapter 15. It will be for the Sindico to decide whether to intervene in this proceeding as ATI Chile's foreign representative, as provided in Chapter 15, and for the Sindico to retain U.S. counsel to represent it in the United States for that purpose.

By contrast, the Sanctions requested by Comverse would violate the principles of comity for foreign bankruptcy proceedings, and the mandate of Chapter 15, in a number of ways. First, under Chilean bankruptcy law, a debtor cannot transfer funds after the date of default, which is the day, determined by the Court, when the debtor stopped

paying its creditors. Carrasco Dec. ¶ 6. In the instant case, the date of default would clearly predate the date of ATI Chile's noncompliance with the Order (May 19, 2008) since ATI Chile had already filed for bankruptcy on May 16, 2008, and the date of default could be found to be up to two years prior to the date of the declaration of bankruptcy, depending on when the company is deemed to have become insolvent. *Id*.

Second, the Sanctions would improperly prioritize Comverse's claims against ATI Chile above the claims of other creditors. Comverse is an unsecured creditor of ATI Chile and its claims therefore are subordinate to preferred creditors, such as labor claims, lien property and taxes due to the government. *See* Carrasco Dec. ¶ 4. Penalties imposed by a court similarly are treated as non-preferred claims. *Id*.

Third, the Sanctions would hurt ATI Chile's ability to continue its operations, comply with the demands of its other creditors while in bankruptcy, and eventually emerge from bankruptcy.

Fourth, the Sanctions would not serve the purpose of coordinating Comverse's present post-judgment discovery proceeding against ATI Chile with ATI Chile's bankruptcy proceeding.

The Court therefore should deny the motion for sanctions.

**B.    THE SANCTIONS MAY NOT BE USEFUL AS A COERCIVE MEASURE**

Under F.R.C.P. 37(b)(2), the District Court "has considerable discretion in determining whether a coercive sanction is necessary and, if so, the form it will take." *Bank of Credit and Commerce Int'l (Overseas) Ltd. v. Tamraz*, No. 97 Civ. 4759 (SHS), 2006 WL 1643202, at *3 (S.D.N.Y. June 13, 2006). The District Court should consider the following factors when imposing a coercive sanction:

> (1) the character and magnitude of the harm threatened by the continued contumacy, (2) the probable effectiveness of the sanction in bringing about compliance, and (3) the contemnor's financial resources and the consequent seriousness of the sanction's burden.

*Id*. All three of these factors weigh against imposing the Sanctions requested by Comverse.

First, the "harm" to Comverse from ATI Chile's noncompliance with the Order is minimal. With respect to the information requests, Comverse will have a full opportunity to seek this post-judgment discovery as one of ATI Chile's creditors. Carrasco Dec. ¶ 5. In fact, as one of ATI Chile's main creditors, Comverse will be involved in the nomination of the Sindico who will manage ATI Chile's bankruptcy and provide responses to these sorts of inquiries. *Id*. ¶ 2. With respect to ATI Chile's nonpayment of $5,000 in Comverse's attorneys' fees, such nonpayment, while a failure to comply with the Order, cannot be causing significant harm to Comverse, and also should be viewed in light of ATI Chile's inability to transfer funds following the date of default. *See Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995) ("[A] party's complete inability, due to poverty or insolvency, to comply with an order to pay court-imposed monetary sanctions is a defense to a charge of civil contempt.").

Second, the proposed Sanctions are not well-tailored to bring about compliance with the Order. The proposed fine for ATI Chile's noncompliance does not appear likely to serve as an effective coercive measure, given that ATI Chile already is in bankruptcy. The proposed arrest of ATI Chile's executive officers would also be counterproductive, as it would severely limit ATI Chile's ability to continue its day-to-day operations and thus its ability to comply with the Order. Arrest is not an appropriate coercive sanction

8

for civil contempt if its only purpose is "punitive." *Tamraz*, 2006 WL 1643202, at *3. Here, the proposed arrest of Messrs. Nuñez and Alfaro would clearly be punitive given Comverse's contention that they "purposefully" decided not to comply with the Order (*see* Comverse Mem. at 1), and Comverse's demand that they be "held accountable for their behavior" (*see* Comverse Mem. at 8). In actuality, Messrs. Nuñez and Alfaro were acting in accordance with Chilean bankruptcy law and procedure. The arrest of ATI Chile's officers also would not be consistent with the mandate of "just" sanctions under Rule 37, which requires that the severity of the sanction be "commensurate with the non-compliance." *Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 140 (2d Cir. 2007). The arrest of Mssrs. Nuñez and Alfaro would be an excessive measure, given ATI Chile's substantial compliance with Comverse's post-judgment discovery requests as a whole, the limited harm to Comverse due to ATI Chile's noncompliance with the Order, and the fact that ATI Chile's noncompliance took place in the context of its ATI Chile's filing for bankruptcy.

Third, given that ATI Chile is currently an insolvent company and is in bankruptcy proceedings in Chile, the "contemnor's financial resources" (*see Tamraz*, 2006 WL 1643202, at *3) weigh against the imposition of monetary sanctions as well as the proposed arrest of Mssrs. Nuñez and Alfaro. It would hardly be "just" to hold these gentlemen personally in contempt for a payment ATI Chile cannot make and information it should not provide at the expense of other creditors, including preferred creditors.

C. **COMVERSE'S REQUEST FOR ATTORNEYS' FEES SHOULD BE DENIED**

A request for payment of attorneys' fees in connection with a motion under Rule 37(b) should be denied if "the failure was substantially justified or other circumstances

make an award of expenses unjust." F.R.C.P. 37(b)(2)(C).  Here, two circumstances make an award of expenses unjust.  First, the request for attorneys' fees should be denied because the motion itself is not justified for the reasons stated herein.  Second, the request for attorneys' fees should be denied because, given that ATI Chile has filed for bankruptcy in Chile, it likely has no ability to pay such an award.  Indeed, as was brought to the Court's attention in Dorsey & Whitney LLP's motion to withdraw as ATI Chile's counsel, ATI Chile has failed to timely pay eight Dorsey invoices dated from August 17, 2007 through April 7, 2008, which total $178,918.34 and remain due.  *See* May 14, 2008 Declaration of Brooke E. Pietrzak, ¶¶ 9-15.  It would be unjust to impose Comverse's attorneys' fees on ATI Chile as an insolvent company that has proven unable to pay the fees of its own counsel.

### III.  CONCLUSION

For all the foregoing reasons, ATI Chile respectfully requests that the Court deny in its entirety Comverse, Inc.'s motion for contempt sanctions, and deny in its entirety Comverse's request for the attorneys' fees it incurred in the making of this motion.

Respectfully submitted,

DATED: June 12, 2008
          New York, New York

DORSEY & WHITNEY LLP

/s/Brooke E. Pietrzak
Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
250 Park Avenue
New York, NY 10177
(212) 415-9200

*Attorneys for Respondent American Telecommunication, Inc. Chile S.A.*

Neil E. McDonell (NM-1715)
Brooke E. Pietrzak (BP-7314)
Eric Epstein (EE-8992)
DORSEY & WHITNEY LLP
250 Park Avenue
New York, New York 10177
(212) 415-9200

*Attorneys for Respondent*
*American Telecommunication, Inc. Chile S.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COMVERSE, INC.,

           Petitioner,

-against-

AMERICAN TELECOMMUNICATION, INC. CHILE S.A., AMERICAN TELECOMMUNICATION INC. BOLIVIA S.A., AMERICAN TELECOMMUNICATION DO BRASIL LTDA., AMERICAN TELECOMMUNICATION INC. ECUADOR ATIECUADOR S.A., and AMERICAN TELECOMMUNICATION PERU S.A.,

           Respondents.

Case No. 07 CV 11121 (PKL)

ECF CASE

### DECLARATION OF OMAR MORALES CARRASCO

I, OMAR MORALES CARRASCO, state as follows:

1.    I am a lawyer licensed to practice law in Chile (since 1994). I have worked in commercial law, collection proceedings and have intervened in bankruptcy proceedings. I make this Declaration in support of ATI Chile's Opposition to Comverse Inc.'s Motion For Contempt Sanctions Against ATI Chile As Well As Luis Nuñez and Rafael Alfaro. The following is a general explanation of the bankruptcy law in Chile.

2. When the Civil Court declares a company to be bankrupt, it appoints a provisional trustee (a "Sindico"), who acts as the receiver throughout the bankruptcy, and a deputy. The main creditors representing 2/3 of the total debt of the debtor may either ratify the Sindico at the first creditors' meeting or nominate a new person to serve in that capacity. The creditors' meeting should take place not less than 30, and not more than 40, business days after the resolution declaring bankruptcy is officially published.

3. In order to become a Sindico, an individual must take an exam given by the Superintendency of Bankruptcies, which is equivalent to obtaining a special license, and then be appointed by Presidential Decree. Once appointed as a Sindico, a person's name will appear on list of trustees in bankruptcy. If the creditors in a bankruptcy do not ratify the Court's appointment of a Sindico, and instead opt to choose their own, they must select an individual from this list.

4. When the debtor has money available for distribution, the Sindico must distribute it between the different categories of creditors. Preferred creditors take precedence over all other creditors and include labor claims, lien property and taxes owed to the government. If there is more than one creditor in the same category, the money is to be distributed on a pro rata basis among them. Once the debt of all the creditors in one category is fully satisfied, the Sindico may distribute funds to the next category. Creditors whose claims are based on civil claims (including contract and tort claims) are in the last category of creditors. Penalties imposed by a court (whether domestic or foreign) similarly do not receive any preference and are treated the same as any non-preferred debt. Any creditor is required to appear in the bankruptcy proceedings to obtain a recognition of being a creditor of the debtor in bankruptcy.

5.  If the creditors in a bankruptcy wish to obtain information about the debtor, the proper method for doing so is to submit such requests to the Sindico, who will then respond.

6.  The Sindico is responsible for proposing the date of default, which is considered to be the date on which the debtor became insolvent. Any payment after the date of default and prior to the declaration of bankruptcy (and appointment of the Sindico) is revocable. For making such a payment, the debtor could be guilty of negligent bankruptcy for making payments during the insolvency period (which, as noted, may be determined retroactively), and subject to penalties including imprisonment. The date of default can extend anytime from the declaration of bankruptcy to as much as two years prior to the declaration of bankruptcy.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 12, 2008, at Santiago, Chile.

_____
OMAR MORALES CARRASCO